UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BRIAN KENNEDY, AND MICHELLE
KENNEDY, Individually and as mother and
next friend of BRIAN KENNEDY, JR.,
MITCHELL KENNEDY and DYLAN KENNEDY
            Plaintiffs
VS.
TOWN OF BILLERICA, DANIEL C. ROSA, JR.,
Individually and as Chief of the Billerica Police
Department, JOHN BARRETTO, Individually and
as former Chief of the Billerica Police Department,
PAUL W. MATTHEWS, Individually and as
former Chief of the Billerica Police Department,
ROBERT LEE, Individually and as former Deputy
Chief of the Billerica Police Department, THOMAS
CONNORS, FRANK A. MACKENZIE,
RICHARD RHONSTOCK, ROBERT BAILEY,
JOHN ZARRO, MARK TSOUKALAS, TARA
CONNORS, MARTIN E. CONWAY, ANDREW
DEVITO, RICHARD HOWE, STEVEN ELMORE,
WILLIAM MCNULTY, DONALD
MACEACHERN, MICHAEL A. CASEY,
RICHARD NESTOR, ROBERT BROWN,
WILLIAM G. WEST, GREGORY KATZ,
GERALD B. ROCHE, BRIAN MICCICHE,
WILLIAM MACDONALD, SCOTT PARKER,
ALAN MUNN, TIMOTHY F. MCKENNA and
JOHN DOE
            Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAGISTRATE JUDGE

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is an action against officers of the Town of Billerica police department, the current and former Chiefs of Police for the Town of Billerica and the Town of Billerica for civil rights and other violations causing loss and damage to the plaintiffs, Brian Kennedy, Michelle Kennedy, Brian Kennedy, Jr., Mitchell Kennedy and Dylan Kennedy, arising out of a

1

conspiratorial campaign by members of the Town of Billerica Police Department over a 13 year period to harass, intimidate and terrorize the plaintiffs through acts of violence and by abuse of their powers of arrest. Defendant Chiefs of Police, Daniel Rosa ("Rosa"), John Barretto ("Barretto"), Paul W. Matthews ("Matthews"), and Robert Lee ("Lee"), and Defendant Officers Thomas Connors ("Lt. Connors"), Frank MacKenzie ("MacKenzie"), Richard Rhonstock ("Rhonstock"), Robert Bailey ("Bailey"), John Zarro ("Zarro"), Mark Tsoukalas ("Tsoukalas"), Tara Connors ("Connors"), Martin E. Conway ("Conway"), Andrew DeVito ("DeVito"), Richard Howe ("Howe"), Stephen Elmore ("Elmore"), William McNulty ("McNulty"), Donald MacEachern ("MacEachern"), Michael Casey ("Casey"), Richard Nestor ("Nestor"), Robert Brown ("Brown"), William G. West ("West"), G. Katz ("Katz"), Gerald Roche ("Roche"), Brian Micciche ("Micciche"), William MacDonald ("MacDonald"), Scott Parker ("Parker"), Alan Munn ("Munn"), Timothy F. McKenna ("McKenna") and several unidentified officers from the Billerica Police Department, who are hereinafter collectively referred to as John Doe ("Doe") (collectively referred to as the "Individual Defendants"), violated the plaintiffs' state and federal civil rights by arresting the plaintiffs without probable cause multiple times, by maliciously prosecuting the plaintiffs without probable cause, and by otherwise tortuously injuring the plaintiffs.

The claims against the Town of Billerica and their Chiefs of Police (collectively referred to as the "Municipal Defendants") arise from their gross negligence in failing to adequately train, supervise and discipline the Individual Defendants named herein, who at the relevant times hereto were members of Town of Billerica Police Department, and from the environment created by Chiefs of Police as a result of their deliberate indifference and willful blindness towards the rights of individual citizens, which caused police officers to believe that the Town of Billerica

2

and its Chiefs of Police tolerated misuse of authority by its police officers.

## JURISDICTION

This action is brought pursuant to 42 U.S.C. § 1983, 1985 and 1988 in accordance with the First, Fourth, Fifth Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. § 1331 and 1343 as well as the aforementioned statutory provisions. plaintiffs invoke the pendant jurisdiction of this court to hear and to decide claims arising under M.G. L. Ch. 12 § 11, M. G. L. Ch. 258 § 4 and the decisional law of the Commonwealth of Massachusetts.

## PARTIES

1. The plaintiff, Brian Kennedy, is a citizen of the United States of America and a resident of the Commonwealth of Massachusetts.

2. The plaintiff, Michelle Kennedy, is a citizen of the United States of America and a resident of the Commonwealth of Massachusetts.

3. The plaintiff, Brian Kennedy, Jr. is a minor and is a citizen of the United States of America and a resident of the Commonwealth of Massachusetts.

4. The plaintiff, Mitchell Kennedy, is a minor and is a citizen of the United States of America and a resident of the Commonwealth of Massachusetts.

5. The plaintiff, Dylan Kennedy, is a minor and is a citizen of the United States of America and a resident of the Commonwealth of Massachusetts.

6. The Defendant Town of Billerica is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts and is or was at the times relevant to the claims brought in this Complaint the employer of the defendants Rosa, Barretto, Matthews, Lee, Lt. Connors, MacKenzie, Rhonstock, Bailey, Zarro, Tsoukalis, Connors, Conway, DeVito, Howe,

Elmore, McNulty, MacEachern, Casey, Nestor, Brown, West, Katz, Roche, Micciche, MacDonald, Parker, Munn, McKenna and Doe.

7. The Defendant, Daniel Rosa, at various times relevant hereto was a duly appointed Chief of Police of the Town of Billerica Police Department acting under color of law and is named in his individual and official capacity.

8. The Defendant, John Barretto, at various times relevant hereto was a duly appointed Chief of Police of the Town of Billerica Police Department acting under color of law and is named in his individual and official capacity.

9. The Defendant, Paul W. Matthews, at various times relevant hereto was a duly appointed Chief of Police of the Town of Billerica Police Department acting under color of law and is named in his individual and official capacity.

10. The Defendant, Robert Lee, at various times relevant hereto was a duly appointed Deputy Chief of Police of the Town of Billerica Police Department acting under color of law and is named in his individual and official capacity.

11. The Defendant, Thomas Connors, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

12. The Defendant, Frank MacKenzie, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

13. The Defendant, Richard Rhonstock, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

14. The Defendant, Robert Bailey, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

15. The Defendant, John Zarro, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

16. The Defendant, Mark Tsoukalis, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

17. The Defendant, Tara Connors, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

18. The Defendant, Martin E. Conway, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

19. The Defendant, Andrew DeVito, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

20. The Defendant, Richard E. Howe, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

21. The Defendant, Steven Elmore, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual

and official capacities.

22. The Defendant, William McNulty, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

23. The Defendant, Donald MacEachern, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

24. The Defendant, Michael A. Casey, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

25. The Defendant, Richard Nestor, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

26. The Defendant, Robert Brown, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

27. The Defendant, William G. West, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

28. The Defendant, Gregory Katz, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

29. The Defendant, Gerald B. Roche, at various times relevant hereto was a duly

appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

30. The Defendant, Brian Micciche, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

31. The Defendant, William MacDonald, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

32. The Defendant, Scott Parker, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

33. The Defendant, Alan Munn, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

34. The Defendant, Timothy F. McKenna, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

35. The Defendant, John Doe, at various times relevant hereto was a duly appointed and acting officer of the Billerica Police Department and is named in his individual and official capacities.

## STATEMENT OF FACTS

36. For more than a decade the Individual Defendants have collectively engaged and continue to engage in a conspiracy to terrorize, intimidate, harass, humiliate, injure and deprive

7

the plaintiffs of their liberty and happiness. In furtherance of this conspiracy, the defendants have wrongfully arrested and maliciously prosecuted the plaintiffs on numerous occasions for crimes the defendants knew they did not commit; attempted to interfere with plaintiffs' defense of the criminal charges brought against them by threatening plaintiffs' witnesses; solicited perjured testimony from witnesses in order to justify the wrongful arrests of the plaintiffs and bolster the prosecution of bogus charges; violated normal bail and release procedures in order to extend the time that the plaintiffs would be incarcerated; subjected the plaintiffs to humiliation during periods of incarceration; threatened and engaged in unprovoked and unlawful physical violence against the plaintiffs causing them to suffer physical injuries; subjected the plaintiffs to an inordinate amount of surveillance and improperly stopped and issued numerous bogus citations to the plaintiffs; deliberately failed and refused to prosecute individuals who have perpetrated crimes against the plaintiffs; and threatened other individuals who either worked for or socialized with the plaintiffs.

37.   This course of conduct, which continues through this day, began after Mrs. Kennedy rejected the romantic advances made by Officer MacKenzie in the summer of 1991. Officer MacKenzie was so angered by Mrs. Kennedy's rejection that shortly thereafter he pulled over a car in which Mr. Kennedy was a passenger for the sole purpose of warning Mr. Kennedy to "keep a leash on your wife and watch your back". Officer MacKenzie threatened Mr. Kennedy that "[he] did not know who he was fucking with."

38.   On September 22 1991, at approximately 3:00 AM, only days after Officer MacKenzie threatened Mr. Kennedy, Mr. Kennedy's pick-up truck was set on fire and totally destroyed while it was parked in the driveway of his home. When Office Doyle responded to the fire, Mrs. Kennedy informed him of the recent threats made by Officer MacKenzie. The case

was assigned to Lieutenant Connors for investigation.

39.    While the arson was under investigation, on September 30, 1991 at approximately 5:15 PM, Officer MacKenzie, who was in uniform at the time, threatened Mr. and Mrs. Kennedy as they were shopping at the CVS Pharmacy in Billerica. Officer MacKenzie told them "if [they] didn't shut up they would be living in a shelter."

40.    Two days later Mr. Kennedy was a passenger in a tow truck being operated by Herb Vacca. Mr. Vacca was towing Mr. Kennedy's pick up truck that had been fire bombed on September 22, 1991, when he was pulled over by Officers MacKenzie and Steven Elmore, without justification. After running Mr. Vacca's plates and having no reason to issue a citation to Mr. Vacca, Officer MacKenzie released Mr. Vacca. As Mr. Vacca pulled away Officer MacKenzie was seen pointing at the burnt pick up truck and laughing.

41.    On October 7, 1991, Mrs. Kennedy met with Chief Barretto and reported to him the threats she and her husband had received from Officer MacKenzie and expressed their concern that Officer MacKenzie was involved in the arson of Mr. Kennedy's pick-up truck. Chief Barretto indicated he would speak to Officer MacKenzie about Mrs. Kennedy's concerns and get back to her. The Kennedys never heard back from Chief Barretto.

42.    Within just a few weeks of the arson, Mr. and Mrs. Kennedy learned from Chief Barretto that Lieutenant Connors had completed his investigation and concluded that although the fire was arson, there were no suspects. Lieutenant Connors completed his investigation without ever speaking with Mr. or Mrs. Kennedy and to the best of their knowledge without ever interviewing any of the Kennedys' neighbors. To this day, the Billerica Police Department has failed to adequately investigate the arson and as a result nobody has been prosecuted for this crime.

43. In October, 1991, Mr. and Mrs. Kennedy were followed by marked Billerica police cars as they drove through town. When Mrs. Kennedy called to report this to Chief Barretto, she spoke with Deputy Chief Lee because Chief Barretto was on vacation. Deputy Lee told Mrs. Kennedy that he didn't believe her and accused her and Mr. Kennedy of being liars.

44. The scope of the harassment grew more extended when on October 17, 1991, Officer MacKenzie pulled over Mrs. Kennedy's mother and had her car towed and impounded.

45. On November 22, 1991, Mrs. Kennedy learned from Tracey Heffernan that two days earlier, Officer MacKenzie had offered to pay Ms. Heffernan $500.00 if she would beat Mrs. Kennedy to the point that she required hospitalization. Both Mrs. Kennedy and Ms. Heffernan met with Chief Barretto and informed him of this incident.

46. Less than one month later on December 17, 1991, Mr. Kennedy received a call from Officer MacKenzie, threatening to beat him. Officer MacKenzie challenged Mr. Kennedy to meet him at the local middle school to fight. Mr. Kennedy did not accept the challenge but Mrs. Kennedy called and reported the incident to Chief Barretto that same morning.

47. The next day Mr. Kennedy was assaulted by Officer MacKenzie's friend, Paul Parent. Mr. Kennedy was at Concord Shores bar when he was confronted by Mr. Parent, who asked if Mr. Kennedy had a problem with Officer MacKenzie. He told him that if he didn't stop reporting Officer MacKenzie to Chief Barretto he would have a problem with him. When Mr. Kennedy tried to walk away he was tackled from behind by Mr. Parent. Several uniformed officers who responded to a call from the bartender, David Lumbert, as well as several off duty Billerica police officers, including Officer MacKenzie, who were at the bar, tried to force Mr. Kennedy into the parking lot out of the view of witnesses. Mr. Kennedy was ultimately able to escape, but Mr. Lumbert insisted that criminal charges be brought against Mr. Parent. Mr. Parent

was prosecuted and ultimately was found responsible for the assault. While the case was pending Officer MacKenzie attempted to intimidate the witnesses, including Mr. Lumbert.

48. On December 19, 1991 Mr. and Mrs. Kennedy once again met with Chief Barretto to discuss the many incidences involving Officer MacKenzie and members of the Billerica Police Department. They requested that Chief Barretto put an end to threats and harassment. Chief Barretto told the Mr. and Mrs. Kennedy that he would speak to the officers, however, nothing was ever done. As a result the harassment continued. Marked Billerica police cars continued to follow Mr. and Mrs. Kennedy and they continued to receive citations for traffic violations they did not commit.

49. Over the next several years Mr. and Mrs. Kennedy were threatened, intimidated and harassed by members of the Billerica Police Department. Mr. and Mrs. Kennedy were regularly issued citations by Billerica police officers for motor vehicle violations that they did not commit. During a two year period from March, 1992 to April, 1993, Mr. Kennedy received four motor vehicle citations and Mrs. Kennedy received three motor vehicle citations, all from the Billerica Police Department. The majority if not all of these citations were baseless and in some instances dismissed. In other instances, however, the citations led to findings based upon the influences of the officer in court. As a result of the many citations they received both Mr. and Mrs. Kennedy had their licenses suspended.

50. On May 21, 1993, Mr. and Mrs. Kennedy were leaving a restaurant/bar in Billerica when they were confronted by Officer MacKenzie, who was off duty at the time and with several other off duty Billerica police officers. Mr. and Mrs. Kennedy felt threatened by the officers and had one of the waitresses, escort them to their vehicle. As they were walking to their car, Officer MacKenzie challenged Mr. Kennedy to fight him and the other officers. When Mr. Kennedy

didn't respond Officer MacKenzie spat in his face.

51. On June 5, 1993, Officer Nestor followed Mr. and Mrs. Kennedy as they were driving on Lowell Street in Billerica. Officer Nestor, who was off duty at the time, pulled along side the Kennedys' car and swerved towards it, forcing the Kennedy's car off the road. Officer Nestor repeated this several times until the Kennedys pulled over and stopped their vehicle. When Mrs. Kennedy accused Officer Nestor of running them off the road, Officer Nestor became hostile towards the Kennedys. Following this incident Officer Nestor fabricated assault charges against Mrs. Kennedy and a warrant was issued for her arrest. At the trial of this matter, the judge entered a required finding of not guilty at the close of the prosecutor's case.

52. On June 19, 1993, Mr. Kennedy's brother, Michael, was confronted by Officer MacKenzie, who was on duty and in uniform. Officer MacKenzie warned Michael that he better shut up Mr. and Mrs. Kennedy. Then without any justification, Officer MacKenzie maliciously beat Michael Kennedy, causing him to suffer two black eyes. Officer MacKenzie then fabricated charges against Michael Kennedy claiming that he had assaulted and battered him. When Michael Kennedy went to the Billerica Police Department to file a complaint against Officer MacKenzie he was ignored and intimidated by the officers at the station.

53. On June 28, 1993, Mr. and Mrs. Kennedy once again met with Chief Barretto to complain of the continued harassment they were suffering from members of the Billerica Police Department. When Mrs. Kennedy called Chief Barretto on July 11, 1993, to follow up on their meeting, Chief Barretto told her to stop calling him as he did not want to discuss her problems any more and suggested that she get a lawyer.

54. In the early evening of September 5, 1993, Mrs. Kennedy was driving with her grandmother when she was pulled over by Officers Nestor and Roche who accused her of

operating a motor vehicle without a license. Mrs. Kennedy explained and the Officers knew that she a valid license to operate her vehicle at that time since her license was only suspended between the hours of 10:00 PM and 10:00 AM. Nevertheless, Officers Nestor and Roche ignored this information and arrested Mrs. Kennedy for operating a motor vehicle without a license and also charged her with threats.

55. The next day Mrs. Kennedy was visiting her friend, Casey Heffernan, when Officers Nestor and Roche knocked on Mr. Heffernan's door and claimed they were looking for Mrs. Kennedy. When Mr. Heffernan refused to open the door the officers threatened him. Nevertheless Mr. Heffernan refused to open the door and the officers left. Subsequently Mrs. Kennedy received a citation in the mail from Officer Roche charging her with operating a motor vehicle without a license. Ultimately Mrs. Kennedy was acquitted of this charge.

56. At around the same time, Mrs. Kennedy observed Officer Roche puncture two tires on Mr. Kennedy's truck while it was parked in the Kennedys' driveway. Mrs. Kennedy reported this incident to Chief Barretto, but as far as the Kennedys know there was no investigation into this matter nor was there any action taken against Officer Roche.

57. Thereafter, out of concern for her daughter's safety, Mrs. Kennedy's mother, Joyce Tibbets, went to the Billerica Police Station to complain about the threats, harassment and intimidation her daughter and son-in-law were being subjected to by members of the Billerica Police Department. Once again Ms. Tibbets' complaint was not addressed.

58. In October, 1993, shortly after Mrs. Kennedy was found not guilty of assaulting Officer Nestor, Mrs. Kennedy was picking up her son, Brian, Jr., from a karate class when she noticed Officer Nestor sitting in a police cruiser outside the building where her son's class was being held. Officer Nestor followed Mrs. Kennedy and her son from the karate studio all the

way to her home. Later that evening, Officer Nestor with Officer MacKenzie, followed Mrs. Kennedy to a MacDonalds in Billerica where they tried to intimidate her by shining their lights in her car and driving next to her while she went through the drive-thru.

59.    On July 21, 1997, there was a fight involving an individual named, Daniel DuFault ("DuFault") and John Oblenis ("Oblenis"), who upon information and belief is the nephew of Officer McNulty. Mr. Oblenis was allegedly sprayed with mace during the altercation. Mrs. Kennedy happened to be present at the scene of the incident but left when the altercation started. At the time of the incident, Mr. Kennedy was at home with his son and his friend William Ashton. The Kennedys' neighbor, witnessed Mr. Kennedy at home at the time of the altercation. Even though Mr. Kennedy was not present, John Oblenis allegedly informed the Billerica Police Department that Mr. Kennedy had punched him and sprayed him with mace.

60.    Anxious to corroborate Mr. Oblenis' complaint, members of the Billerica Police Department, including Officer Zarro and Officer Casey, interviewed several witnesses to the fight, including Kenneth Lewis, and attempted to convince them that Mr. Kennedy participated in the assault on John Oblenis. Officer Casey spoke with Mrs. Kennedy, who informed him of the alibi witnesses. Officer Casey told Mrs. Kennedy that he did not want to hear about it and that the Kennedys should tell it to the judge.

61.    Two witnesses to the fight, Fred Kendall and Eugene DeFransisco, spoke with the Billerica Police and insisted that Mr. Kennedy was not present during the fight. John Oblenis' father approached Mr. Kendall and Mr. DeFrancisco the following day and threatened to kill them if they testified on behalf of Mr. Kennedy.

62.    Nevertheless, on July 22, 1997, Officer McNulty swore out a criminal complaint in the Lowell District Court charging Mr. Kennedy with Assault and Battery by Dangerous Weapon

and Assault and Battery.

63. Also on July 22, 1997, Mrs. Kennedy had received a call from Ruth and Karen Atkinson, who live on Wilson Street across from John Oblenis warning her that Patty Stickney was threatening to jump Mrs. Kennedy. Mrs. Kennedy reported this to the Billerica Police Department. While she was waiting for the police to respond to her complaint she was outside her house when Patty Stickney drove by and threatened to kill her.

64. When Officer Brown arrived, Mrs. Kennedy informed him of threat made by Ms. Stickney. Officer Brown indicated that he had to respond to another call but that he would drive by Wilson Street and investigate her complaint. Shortly thereafter Ms. Stickney returned to Mrs. Kennedy's neighborhood, wielding a bat and threatening to slice Mrs. Kennedy's throat. Officer Brown never informed Mrs. Kennedy of the results of his investigation and no charges were brought against Ms. Stickney.

65. Later that day Ms. Stickney went to the Billerica Police station and filed a complaint against Mrs. Kennedy and Daniel DuFault alleging that they damaged her car with rocks and Mrs. Kennedy was charged with Malicious Destruction of Property. Ultimately the case against Mrs. Kennedy was dismissed.

66. While this case was pending in the Lowell District Court, Mr. and Mrs. Kennedy continued to be followed and harassed by members of the Billerica Police Department. They received numerous citations for traffic violations that were fabricated by the Billerica police officers.

67. On October 8, 1997, John Oblenis assaulted and battered Mrs. Kennedy and her friend Amy Baum. Both women suffered visible bruises to their faces and bodies. Mrs. Kennedy immediately reported the incident to the Billerica Police Department and Officer

MacEachern was assigned to investigate. Officer MacEachern took photographs that clearly depicted Mrs. Kennedy's bruises. In addition, Officer MacEachern took a statement from a witness who corroborated Mrs. Kennedy's claim that Mr. Oblenis had punched her in the face. Despite the substantial evidence of the criminal conduct on the part of Mr. Oblenis, the Billerica Police Department never arrested or prosecuted Mr. Oblenis for this crime. Instead Mrs. Kennedy received a summons issued by the Billerica Police Department charging her with Threats.

68. On October 14, 1997, Officer Brown pulled over Mr. Kennedy and without justification issued him a citation for Speeding and Failure to Wear Safety Restraints.

69. Also in the fall of 1997 there was an incident in the Kennedy's neighborhood that involved children throwing rocks at Ms. Kaizer's lawn ornaments. Ms. Kaizer called the police and spoke with Officer McNulty. Officer Elmore and another officer responded to the call and spoke with Ms. Kaizer. One of the officers told Ms. Kaizer that he wanted to "nail Mr. Kennedy to the wall." In a follow up conversation with Officer McNulty, Officer McNulty tried to convince Ms. Kaizer to bring charges against Brian, Jr. for throwing rocks despite Ms. Kaizer's insistence that she never saw Brian, Jr. throw rocks. Ultimately a criminal complaint was filed against Brian, Jr.

70. In or around the same time in November of 1997, Billerica Police Lieutenant Connors' car was burglarized and his hat, badge and cellular phone were stolen. Although there were no witnesses, Detective Howe told Officers Micciche and Katz to question Mr. Kennedy about the incident. Mr. Kennedy, who had nothing to do with the burglary refused to speak with the officers. Subsequently, Detective Howe confronted Mr. Kennedy at a local junkyard. When Mr. Kennedy complained that members of the Billerica Police Department were following him,

Detective Howe intimated that members of the Billerica Police Department were pressuring him to provide information regarding Lieutenant Connors' stolen property. Detective Howe encouraged Mr. Kennedy to contact either him or Officer Casey at the police station if he was willing to provide information about the stolen property.

71. Mr. Kennedy did eventually contact Officer Casey and Officer Casey went to the Kennedys' home to speak with Mr. Kennedy. Mr. Kennedy again complained about the unfair harassment he was being subjected to by the Billerica Police Department and asked Officer Casey to have it stop. Officer Casey was unsympathetic towards Mr. Kennedy's complaints and offered no assistance. Instead, Officer Casey interrogated Mr. Kennedy about the stolen badge. When Mr. Kennedy refused to cooperate with Officer Casey's interrogation, Officer Casey angrily left the Kennedy home.

72. On January 30, 1998, Mr. Kennedy was scheduled to go on trial for the Assault and Battery allegedly committed against John Oblenis. A week earlier, the Kennedys had arranged to bring two alibi witnesses, to the trial. However, when the Kennedys went to pick up the witnesses on the day of the trial, they refused to go to court. The Kennedys believe that the witnesses were pressured by members of the Billerica Police Department not to show up for the trial. Mr. Oblenis appeared at court with several witnesses, whom he had convinced to testify falsely against Mr. Kennedy. Mr. Kennedy's lawyer informed him that the case could not be continued and warned Mr. Kennedy about the risk of going to trial without the alibi witnesses. Reluctantly and despite his innocence, Mr. Kennedy accepted the recommendation of his attorney and entered into a plea bargain to avoid a jail sentence. Mr. Kennedy was sentenced to two and one-half years in the House of Correction in Billerica, which sentence was stayed until March 31, 1998 on the condition that he not have any additional trouble with the law.

73. On February 18, 1998, the Kennedys were present at the Lowell District Court for a hearing on the criminal charges brought by Ms. Kaiser against their son at the insistence of the Billerica Police Department. The hearing was continued because Officer Elmore failed to attend. Officer Elmore had been informed by other children from the Kennedys' neighborhood, who had witnessed the incident, that Brian, Jr. was not responsible. When the Kennedys returned from court that day, Mr. Kennedy called the Billerica Police Department and left a message informing Officer Elmore of the next hearing date. Officer Elmore returned Mr. Kennedy's call and agreed to meet with him at his home that evening to discuss the charges against his son. When Officer Elmore arrived that evening he immediately began interrogating Mr. Kennedy about Lieutenant Connors' stolen badge. Officer Elmore relayed a message from Lieutenant Connors that if Mr. Kennedy helped him find out who had the badge, he would take care of Brian Jr.'s court case. Mr. Kennedy told Officer Elmore that he didn't know anything about the missing badge.

74. Because Mr. Kennedy refused to cooperate with Officer Elmore, Officer Elmore went to Scott Ashton's house and misrepresented to Mr. Ashton that Mr. and Mrs. Kennedy had signed a statement implicating him with possession of Lieutenant Connors' stolen badge. Officer Elmore told Mr. Ashton that even though the Billerica police knew the Kennedys had nothing to do with the stolen property, they wanted to get the Kennedys in trouble and that he could save himself if he implicated the Kennedys. Even though Mr. Ashton insisted that the Kennedys had nothing to do with the stolen property, he was ultimately pressured into implicating the Kennedys and signed a statement that Mr. and Mrs. Kennedy assisted his brother, William Ashton, in hiding the stolen property at the mobile home next to the Kennedys. Subsequently, Mr. Ashton retracted his statement and issued another statement confirming that he had been pressured by the Billerica Police Department to lie about the Kennedys'

involvement. Following his meeting with Scott Ashton, Officer Elmore called Mr. Kennedy and informed him that he could not help Brian, Jr. and that he would be charging Mr. Kennedy with Receiving Stolen Property in connection with Lieutenant Connors' badge.

75. The next morning Casey Heffernan, who had witnessed Mr. Ashton with Lieutenant Connors' property on the evening it was taken from Lieutenant Connors' car and who subsequently returned most of the stolen property to Lieutenant Connors, went to the Billerica Police Department and explained to Officers Elmore, Casey and MacKenzie that the Kennedys had nothing to do with the property stolen from Lieutenant Connors. The officers laughed at him and told him to tell it to the judge. The next day, on February 20, 1998, Officer Elmore swore out a complaint against Mr. and Mrs. Kennedy charging them with Receiving Stolen Property and Intimidation of a Witness in connection with the theft of Lieutenant Connors' property.

76. One day earlier, Officer McNulty, who was aware of the terms of Mr. Kennedy's sentence on the Oblenis assault case and the impact that new criminal charges would have, swore out a criminal complaint against Mr. Kennedy charging him with operating a motor vehicle without a license based on the stop by Officer Brown on October 14, 1997. Officer McNulty also swore out a criminal complaint against Mrs. Kennedy charging her with operating a motor vehicle without a license based upon a citation issued by Officer Katz on December 30, 1997.

77. In an effort to bolster their case against the Kennedys, Lieutenant Connors and Officer Elmore approached Daniel DuFault, who was serving a sentence in the Billerica House of Correction and offered to have him released early if he would sign a statement implicating Mr. Kennedy in connection with the possession of Lieutenant Connors' badge. Officer Elmore deliberately lied to Mr. DuFault and told him that Mr. Kennedy had signed a statement implicating him in connection with the stolen property. Nevertheless Mr. DuFault insisted that

Mr. Kennedy had nothing to do with the stolen property.

78. In addition, Lieutenant Connors tried to coerce William Ashton into implicating Mr. Kennedy. William Ashton was arrested and charged with Receiving Stolen Property in connection with Lieutenant Connors' property. Mr. Ashton was kept in the custody of the Billerica Police Department for an entire weekend during which he was repeatedly beat by Lieutenant Connors because he refused to sign a statement implicating Mr. Kennedy.

79. On September 11, 1998, ten months after they were first charged with the crimes relating to Lieutenant Connors' stolen property, the Kennedys appeared for trial. Judge Neil Walker sent Mr. and Mrs. Kennedy's cases to the jury session, but without any notice or opportunity to be heard, vacated the stayed sentence Mr. Kennedy received in connection with his plea to the Oblenis assault and despite Mr. Kennedy's compliance with conditions imposed in connection with the stayed sentence, Judge Walker committed Mr. Kennedy to the Billerica House of Correction for a period of two and one half years.

80. On September 14, 1998, the trial on the charges of Receiving Stolen Property began. After the completion of the prosecution's case, Judge Melhan allowed Mr. and Mrs. Kennedy's Motion for Required Findings of Not Guilty on both counts. Despite his acquittal of these charges, which had triggered the removal of the stay and the imposition of the jail sentence on the Oblenis case, Mr. Kennedy remained incarcerated for Eighty-three (83) days until December 3, 1998, when Judge Walker reconsidered his earlier decision to vacate the stay and ordered that Mr. Kennedy be released from the Billerica House of Correction.

81. Following Mr. Kennedy's release from prison, the defendant members of the Billerica Police Department continued to harass Mr. and Mrs. Kennedy. On duty and off duty officers continued to follow Mr. And Mrs. Kennedy and continued to issue them citations for