moving violations that they did not commit. In January, 1999, Billerica police officers, including

Officer West, regularly showed up at a job site where Mr. Kennedy was working. The police

attempted to intimidate Mr. Kennedy's workers by taking down their names without justification.

82. On August 5, 1999, Mrs. Kennedy, while at a Dunkin Donuts in Lowell, was

approached by Billerica Police Officer Micciche, who was off duty at the time. In the presence

of several witnesses, including a clerk who was working at the Dunkin Donuts, Officer Micciche

began cursing and verbally abusing Mrs. Kennedy. As Mrs. Kennedy was trying to leave, Mr.

Kennedy happened to arrive at the Dunkin Donuts. When Mr. Kennedy learned what had

happened he confronted Officer Micciche. Officer Micciche threatened Mr. Kennedy stating

"You're going to get it. Your time is going to come. Me and my brothers rule." Officer

Micciche directed the store clerk to call the police. The clerk responded that she was calling the

police on him, not for him. Officer Smith of the Lowell Police Department arrived and spoke

with the clerk. He then spoke with Mrs. Kennedy, who informed him of the threats made by

Officer Micciche. Officer Smith seemed concerned and then went to speak with Officer

Micciche. When he returned from speaking with Officer Micciche he concluded "Its nothing.

Forget about it."

83. Mrs. Kennedy was not satisfied with this response; so she called the Lowell Police

Department seeking to file a complaint against Officer Micciche. The Lowell Police Department

thereafter called and informed Officer Micciche of the Kennedys' intention to seek a criminal

complaint against him. In response Officer Micciche filed a complaint against Mr. and Mrs.

Kennedy. The Kennedys received summonses in the mail informing them of the criminal

complaints filed by Officer Micciche charging them with making threats. The complaint made

by the Kennedys was never prosecuted by the Lowell Police Department. Ultimately both Mr.

and Mrs. Kennedy were found not guilty of these charges brought by Officer Micciche. Later Mrs. Kennedy learned that Officer Micciche told Scott Ashton "I wouldn't even think twice about killing [Mrs. Kennedy]".

84.    On or about January 22, 2000, Mr. and Mrs. Kennedy and a friend were helping Daniel DuFault move from his sister, Tina Huber's house. Mr. DuFault instructed Mr. Kennedy as to what items belonged to him and they worked together in loading the items onto a truck. One of the items that Mr. DuFault took was a carpet. While Mr. DuFault was removing the carpet, Mr. DuFault's brother-in-law, William Huber, arrived and began arguing with Mr. DuFault about taking the carpet. At this time Mr. and Mrs. Kennedy left. The following day Ms. Huber went to the Billerica Police Department and filed a report with Lieutenant Bailey. Purportedly, relying on information from her husband, Ms. Huber informed Lieutenant Bailey that her brother, Daniel DuFault had vandalized her property. Upon information and belief when Ms. Huber informed Lieutenant Bailey that Mr. and Ms Kennedy had also been present, Lieutenant Bailey coerced Ms. Huber to file a criminal complaint against Mr. Kennedy for Malicious Destruction of Property even though she insisted that Mr. Kennedy was not responsible for the destruction. Ultimately, Ms. Huber refused to cooperate with the prosecution against Mr. Kennedy and the charges were dismissed.

85.    In the spring of 2001, Mr. and Mrs. Kennedy were at the DeMoulas supermarket in Billerica. As they were entering the store, Mr. Kennedy was approached by an unknown male and female. The male menaced Mr. Kennedy with a knife in front of several witnesses and the female jumped on his back and was screaming "Stop harassing Johnny (Oblenis). You shouldn't try to get Micciche fired." Billerica Police Officer MacDonald responded to the scene and interviewed Mr. Kennedy and several other witnesses who identified the assailant. The next day

22

Mrs. Kennedy spoke with Officer MacDonald, who informed her that if it were up to him he would arrest the assailant, but that his sergeant told him that he had to set it up for a hearing. To this day the assailant has never been prosecuted for this crime.

86.    One Friday evening in July, 2001, Mrs. Kennedy was driving through town when she was pulled over by two marked police cars, one belonging to the Town of Billerica and the other belonging to the State Police. Officer Brown, who was driving a marked Billerica police car, got into a verbal confrontation with Mrs. Kennedy and stated "First Billerica, then Tewksbury and now the State police." Mrs. Kennedy was placed under arrest for operating a motor vehicle without a license despite that fact that she had a valid license. After observing the hostility displayed by Officer Brown, the State Police officer insisted that he take Mrs. Kennedy into custody. The State Police released Mrs. Kennedy that evening when they confirmed that she had a valid license.

87.    Two days later, on Sunday morning Mrs. Kennedy was again pulled over by Officer Brown, who again falsely arrested her for operating a motor vehicle without a license. Mrs. Kennedy's mother brought paperwork from the Registry of Motor Vehicles confirming Mrs. Kennedy's license was valid and ultimately Mrs.Kennedy was released from the custody of the Billerica Police Department.

88.    During October, 2001, Mrs. Kennedy learned that her son, Brian,  Jr. had begun to have problems with one of his teachers at school. Mrs. Kennedy learned that the teacher's name was Tara Connors and immediately became concerned that the teacher may be related to Lieutenant Connors and that this teacher was acting out against Brian, Jr. because of the history between the Mr. and Mrs. Kennedy and Lieutenant Connors. Mrs. Kennedy explained the situation to the principal and a meeting involving all of Brian Jr.'s teachers, including Ms.

23

Connors, the principal and Mr. and Mrs. Kennedy was convened on October 31, 2001. At the meeting Mrs. Kennedy learned that Ms. Connors was the daughter of Lieutenant Connors. Mrs. Kennedy then confronted Ms. Connors about the lengthy history of horrific acts of harassment that her family has endured by Lieutenant Connors and members of the Billerica Police Department.

89.    Shortly thereafter, Mrs. Kennedy saw Lieutenant Connors and he threatened Mrs. Kennedy by stating "This is war."

90.    One week later, on November 9, 2001, in the early morning hours several members of the Billerica Police Department, including Chief Rosa, Officers DeVito, Conway and Doe arrived at the Kennedys' home and began banging on their windows, breaking one window and waking the Kennedys' children. When Mr. and Mrs. Kennedy stepped outside to speak with the officers, they were questioned by Officer Conway about a fight that had taken place that evening in the Kennedys' neighborhood. As they were talking with the police officers, Billy Ashton, who had been babysitting for the Kennedys earlier that evening, came to the door and he was immediately tackled by the police officers and arrested. When Mrs. Kennedy protested that Mr. Ashton had done nothing wrong, she too was arrested even though she had not committed any crimes.

91.    Mrs. Kennedy was handcuffed and taken to the Billerica police station where the police fabricated charges of Assault and Battery with a Dangerous Weapon and Malicious Destruction of Property against her. While in the holding cell and still handcuffed, Mrs. Kennedy was confronted by Sergeant Rohnstock, who in the presence of Chief Rosa and another officer, ripped off her sweatshirt, leaving her exposed in the cold cell with only her halter top and sweatpants. When the unknown officer tried to give Mrs. Kennedy a blanket, Chief Rosa, took

24

the blanket and threw it over the camera just outside the cell. Sergeant Rohnstock then punched

Mrs. Kennedy in the back while Chief Rosa and the officer stood by and watched.

92.    Later, Sergeant Rohnstock returned to Ms. Kennedy's cell with Lieutenant

Connors. Lieutenant Connors screamed at Ms. Kennedy, accusing her of having "a big fucking

mouth." He told her "I've had enough of your shit. Nobody takes their son out my daughter's

class. You'll learn yet. This is war. I'm going to get your kid. I'm going to go after the other

one this time. Your bail is going to be $5,000.00."

93.    Ms. Kennedy remained in the cold cell until the next morning, when she was taken

to Lowell District Court. At court Mrs. Kennedy learned that the Billerica police had obtained a

warrant for the arrest of her son, Mitchell, for allegedly committing the same crimes with which

she had been charged. At her arraignment, Mrs. Kennedy's bail was set at $2,500.00. By the

time Mr. Kennedy raised the money for the bail, Mrs. Kennedy had been transferred to MCI

Framingham and by the time Mr. Kennedy arrived at Framingham that evening, it was too late

for Mrs. Kennedy to be bailed.

94.    Billerica Police Officers were waiting for Mr. Kennedy as he returned to his

neighborhood from Framingham that evening. The car he was in was pulled over and Mr.

Kennedy was grabbed and thrown to the ground were he was repeatedly kicked and punched

about the head and body by approximately 5 police officers, including Officers Tsoukalis and

Doe. Mr. Kennedy, who suffered contusions and abrasions as a result of said assault, was then

handcuffed and taken to the Billerica Police Station where the Billerica police fabricated charges

of Assault and Battery with a Dangerous Weapon, Malicious Destruction of Property and

Resisting Arrest against him.

95.    While in the holding cell that evening, Mr. Kennedy was confronted by Lieutenant

25

Connors who told him that his bail would be set at $5,000 and also told Mr. Kennedy "Your wife's got a big mouth. You want to get my family involved. Leave my family out of it. The war is on." Mr. Kennedy remained incarcerated for four nights since it was a holiday weekend. He was never provided medical treatment for his injuries and he remained in the holding cell without any toilet paper as the police officers refused to provide him with any.

96.    Over the weekend, while Mr. Kennedy was being held at the Billerica Police Station, several people went to the police station seeking to obtain the bail money from Mr. Kennedy so that they could bail Mrs. Kennedy from Framingham. Each time the police refused to release the money and then laughed as they informed Mr. Kennedy of this. As a result Mrs. Kennedy was forced to remain incarcerated in MCI Framingham until Monday, when Attorney Thomas Mixon, who had been contacted by the Kennedys' neighbors, went to the Billerica police station and demanded the release of the money.

97.    One of the individuals who went to the Billerica police station that weekend was told by Lieutenant Connors to tell Mrs. Kennedy that "there is a bullet waiting for [Mrs. Kennedy]."

98.    For three nights while both their parents remained incarcerated the Kennedys' three children were forced to live with their grandmother. They were frightened and terrorized by the ordeal. Ultimately all of the charges against Mitchell Kennedy were dismissed.

99.    On January 28, 2002, at approximately 3:30 PM, Mr. Kennedy was pulled over by Officer Tsoukalis, who was operating a marked Billerica police car. Officer Tsoukalis was entirely without justification for stopping Mr. Kennedy. When Officer Tsoukalis approached Mr. Kennedy he asked him "How did my boot feel?" This comment was an obvious reference to the beating Mr. Kennedy suffered when he was arrested by Officer Tsoukalis and other members

26

of the Billerica police department on November 9, 2001.

100.  On March 31, 2002, Mrs. Kennedy was at the Billerica Boys Club where she was picking up some damaged skate board ramps that she had been authorized to take. Officer Parker arrived in uniform in a marked Billerica Police car and confronted Mrs. Kennedy about the jumps. Even though Mrs. Kennedy informed Officer Parker that she had been authorized to take the jumps, he insisted that she unload the jumps from her friend's truck.

101.  After unloading the jumps from her friend's truck Officer Parker accosted Mrs. Kennedy and shoved her. Mrs. Kennedy ran from Officer Parker and locked herself in her car. Officer Parker followed after Mrs. Kennedy and began screaming at her and kicking her car.

102.  Officer Dean Royston of the Billerica Police Department arrived at the scene and observed Officer Parker kicking Mrs. Kennedy's car and yelling vulgarities at her. Officer Royston reported the incident to the captain on duty at the Billerica Police Department that day. Despite Officer Royston's report, Mr. and Mrs. Kennedy are unaware of any action being taken against Officer Parker.

103.  Approximately two weeks later the Kennedy children were skateboarding in their neighborhood with several other children when Officer Munn arrived in a marked Billerica Police car. Officer Munn demanded that the children get off the road and he placed a call to a tow company to remove the skate board jumps, which had been built by the children. When the tow company failed to arrive Officer Munn called the Town of Billerica Department of Public Works and they came and picked up the skate board jumps. Shortly thereafter in response to inquiries by the local newspaper, the jumps were returned to the children by the Town officials. Officer Munn was present at the time the jumps were returned and he told Mr. and Mrs. Kennedy "your time is coming".

27

104. Mrs. Kennedy placed a call to Chief Rosa to inform him of the threat made by Officer Parker. Chief Rosa returned Ms. Kennedy's call, laughed at her and told her never call him again.

105. On June 9, 2002, Ms. Kennedy was driving from her neighborhood with Mr. Kennedy and a friend when she noticed Officer Tsoukalis behind her in a marked Billerica Police car. Officer Tsoukalis followed Mrs. Kennedy to the town line and then pulled her over and issued her a traffic citation for violations she did not commit. As Officer Tsoukalis handed the ticket to Mrs. Kennedy he grabbed her hand and bent her finger causing it to fracture in two places.

106. On another date in June, 2002, Mrs. Kennedy attended a fundraiser for her recently deceased brother's wife and children. Officer Munn was working a detail at the fundraiser as there were several hundred people at the event. Officer Munn for no reason insisted that Mrs. Kennedy leave the event and physically pushed her out of the building.

107. In the summer of 2002 Mitchell Kennedy was visiting with friends in the neighborhood when George Brooks, a boy who lived in the neighborhood, barged into the neighbor's home. George threw Mitchell down on the outside stairs, grabbed him around the neck and sprayed him with an aerosol cleaner in the face.

108. When Mitchell went home and told his mother of the incident Mrs. Kennedy called the Billerica Police Department and Officers Elmore and Nestor responded. When Mrs. Kennedy asked that a complaint be brought against George Brooks the officers refused and insisted "he's just a kid".

109. A week or two thereafter Mitchell was with several children at a nearby pond in Tewksbury when George Brooks arrived and started throwing rocks at the children, including

28

Mitchell. George's father arrived and told him to beat up Mitchell. George who is much bigger than Mitchell tackled him and started hitting him. The other children then came to the rescue of Mitchell and pulled George off of him.

110.  Officer Nestor arrived at the scene even though the incident clearly took place in Tewksbury. After speaking only with George and his father Officer Nestor filed a complaint against Mitchell in Lowell District Court for assault and battery against George and refused to file a cross-complaint on behalf of Mitchell against George.

111.  At the clerk's hearing on the Complaint George admitted that he struck Mitchell first and the case was dismissed.

112.  On September 7, 2002, Mrs. Kennedy observed Officer Tsoukalis in front of her house yelling at the neighborhood children including the Kennedy children. While Mrs. Kennedy was in her driveway, speaking to the children, Officer Tsoukalis drove by and made an obscene gesture towards her. Mrs. Kennedy called Mr. Kennedy on his telephone to inform him about what had happened.

113.  As Mr. Kennedy and his son Brian were returning home that afternoon Officer Tsoukalis approached them from the opposite direction on Pond Street. Upon recognizing Mr. Kennedy's vehicle Officer Tsoukalis swerved his police car into Mr. Kennedy's lane forcing Mr. Kennedy to swerve off the road to avoid being struck Officer Tsoukalis' vehicle.

114.  At around the same time Brian Jr. was in the neighborhood when he was confronted by Officer Tsoukalis who called him names. When Brian Jr. tried to walk away Tsoukalis grabbed him around the neck.

115.  The next day Brian, Jr. went with Mrs. Kennedy to the Lowell District Court and filed a complaint against Officer Tsoukalis.

29

116. Approximately one week later Officer Tsoukalis confronted Mrs. Kennedy in her neighborhood. During this discussion with Officer Tsoukalis Mrs. Kennedy told Officer Tsoukalis that "he needed to get a life".

117. A couple of hours later Mrs. Kennedy was driving her car when she was pulled over by a minimum of six Billerica Police cars. Mrs. Kennedy was placed under arrest and charged with criminal threats against Officer Tsoukalis. While in custody Mrs. Kennedy was informed by Lieutenant Connors that her bail was set at Ten Thousand ($10,000) Dollars. Unable to make the bail, Mrs. Kennedy remained incarcerated until the next morning when she was arraigned at Lowell District Court.

118. Upon hearing the complaint, Judge Neil Walker released Mrs. Kennedy on her own recognizance.

119. While at Court that day Mrs. Kennedy asked the Assistant Clerk about the status of the complaint that she had filed on behalf of Brian, Jr. against Officer Tsoukalis based upon the incident on September 7, 2002 and she was informed that complaint had been denied without a hearing.

120. In January or February of 2004 Mr. Kennedy was confronted by Officer Tsoukalis at the Home Depot store in Tewksbury. Officer Tsoukalis swung a tool at Mr. Kennedy while threatening to kill him.

121. In March, 2004 the Kennedy children were in their neighborhood when they were approached by Officer Tsoukalis. Officer Tsoukalis called Brian, Jr. a moron and when he walked away Officer Tsoukalis turned to Mitchell Kennedy and yelled at him to "get over here". Mitchell remained on his property and Officer Tsoukalis confronted him and shined a flashlight in his face. Officer Tsoukalis taunted Mitchell by claiming his father was a "coward".

30

122. When Mitchell shielded his eyes from the glare of the flashlight and asked Officer Tsoukalis to remove the flashlight from his face Officer Tsoukalis placed Mitchell under arrest for Assault and Battery on a Police Officer. Officer Tsoukalis handcuffed Mitchell's hands behind his back and tossed him into the police car.

123. Mitchell suffered two lacerations to his face during the arrest and was held at the Billerica Police Station for approximately forty-five minutes until his mother came to take him home.

124. In the evening hours of May 17, 2004 Mrs. Kennedy returned home from doing an errand when she observed several police cars at the mobile home next to hers. She learned from a woman in the neighborhood that the woman had moved Mrs. Kennedy's car into another neighbor's driveway so that a load of loam could be dumped in the Kennedys' driveway. Mrs. Kennedy asked a female officer if she could move her car from the neighbor's driveway and she was told that she would have to wait until the neighbor moved his vehicle. When the female officer returned from speaking with the owner inside the mobile home she approached Mr. Kennedy and asked him if he had hit the neighbor's trailer with a hammer. Mr. Kennedy replied that he had not.

125. The other officers, including Officers Casey and Zarro, then began to taunt Mr. Kennedy by calling him a "pussy" and a "bitch" and challenged him to fight. Mr. Kennedy refused to engage in a fight with the police officers. Thereafter the officers remained in the neighborhood for several hours for no apparent reason. Mrs. Kennedy was forced to bring her children to a neighbor's house so they could have a decent night sleep.

126. The following day on May 18, 2004 Mitchell Kennedy was in class taking his MCAS examinations when one of the assistant principals entered the classroom and asked the

31

teacher and the other students to leave the classroom. Thereafter Officer Casey and another police officer confronted Mitchell. Officer Casey greeted Mitchell Kennedy by saying "I've been waiting to meet with you". He then accused Mitchell of breaking into the school and stealing money. He made Mitchell take off his sneaker. After examining the sneaker the police officer left Mitchell in the classroom.

127. Later that day, three men, including George Woods, who owns the trailer next to the Kennedys, confronted the Kennedys at their home and attempted to goad Mr. Kennedy into a fight. One of the men brandished a gun and one of the men threw two bricks at Mrs. Kennedy. Mrs. Kennedy asked a neighbor to call the police. Officer Connors arrived with several other officers including Officer Casey. The Kennedys explained what had transpired, yet the officers took no action against the three men.

128. While the Billerica police officers were at the Kennedys' residence that evening, Mitchell Kennedy began videotaping the events. When Officer Casey saw this he immediately went after Mitchell and threatened that if he did not stop videotaping he would be going to jail. Officer Casey shone a flashlight into the lens of the video camera so as to distort the image on the videotape.

129. In late September, 2004, the Kennedys moved to a new address in Billerica. On Saturday and Sunday, October 2nd and 3rd of 2004, Mrs. Kennedy observed Officer Tsoukalis sitting in a police car across the street from her home. The following Monday Mrs. Kennedy reported this to the Manager for the Town of Billerica and she subsequently learned that Officer Tsoukalis had been transferred to a different patrol area in the Town. Almost immediately, however, Mrs. Kennedy noticed Officer Connors and Doe regularly patrolling her new neighborhood and on several occasions witnessed them pull up to the Kennedys' home and shine

a search light into their windows. On one occasion Mrs. Kennedy observed Officer Connors walking around her property for no apparent reason.

130.    On October 28, 2004 a default warrant issued from the Lowell District Court for the arrest of Mr. Kennedy based upon his failure to appear at court the day before. Officer McKenna arrested Mr. Kennedy on October 28, 2004 at 6:42 PM and he fabricated a charge of Resisting Arrest. As a result Mr. Kennedy was imprisoned overnight. At court the next day Mr. Kennedy's bail was set at $250.00, which he posted and was released. Upon information and belief the Billerica Police Department deliberately waited until the court had closed for business on October 28, 2004 to arrest Mr. Kennedy so that he could be imprisoned overnight.

131.    As a result of these events and the ongoing negligence of the Town and Chiefs Rosa, Barretto, Matthews and Lee, the Kennedys have lived under a constant state of fear since 1991 and continue to live in this state of fear, and have suffered; lost wages, physical injuries, loss of their liberties, loss of consortium and serious emotional distress. Brian Kennedy, Michelle Kennedy, Brian Kennedy, Jr., Mitchell Kennedy and Dylan Kennedy make claims for the maximum damages permitted by law.

132.    Cumulatively, this pattern of conduct by the defendants amounts to a deliberate and willful ongoing conspiracy to violate various constitutional rights of the plaintiffs. These rights include the right to be free from unlawful search and seizure, the right not to be punished except by due process of law, the right to liberty, the right to be free from excessive bail, the right to freedom of association and the right to be secure in one's person.

133.    Plaintiffs have been damaged severely and continue to suffer damages, monetary and otherwise, as a direct and proximate result of the constitutionally violative conduct of the defendants, acting in concert and conspiracy to deprive plaintiffs of their constitutionally

33

guaranteed rights as Americans and citizens of the Commonwealth of Massachusetts.

## STATEMENT OF CLAIMS

### COUNT I
(All Plaintiffs v. Municipal Defendants for Violation of 42 U.S.C. 1983)

134.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 133 above.

135.  Plaintiffs were deprived of their civil rights as secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as a result of the customs and practices of the Town of Billerica and its Police Chiefs Rosa, Barretto, Matthews and Lee, who were deliberately indifferent towards the rights of individual citizens, and also as a result of the gross negligence of the Town of Billerica and its Police Chiefs Rosa, Barretto, Matthews and Lee in failing to properly hire, train and supervise the Individual Defendants.

136.  The plaintiffs were damaged as a direct and proximate result of these customs and practices of the Town of Billerica and its Police Chiefs Rosa, Barretto, Matthews and Lee and the gross negligence of the Town of Billerica and its Police Chiefs Rosa, Barretto, Matthews and Lee.

### COUNT II
(All Plaintiffs v Municipal Defendants for Negligence)

137.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 136 above.

138.  Defendants Town of Billerica and Chiefs Rosa, Matthews, Barretto and Lee owed the plaintiffs a duty to exercise reasonable care in hiring, training and supervising its police officers.

139.  Defendants Town of Billerica and Chief Rosa, Matthews, Barretto and Lee breached their duty by failing to properly hire, train and supervise the Individual Defendants.

140.  As a direct and proximate result of the negligence of the Defendant Town of Billerica and Chiefs Rosa, Matthews, Barretto and Lee, the plaintiffs have suffered damages.

## COUNT III
(All Plaintiffs v. Individual Defendants for Violation of 42 U.S.C. 1983 - Conspiracy to Violate Civil Rights)

141.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 140 above.

142.  By engaging in the conduct described above, the Individual Defendants, acting in concert with each other, acted to conspire and thereby violated the plaintiffs' civil rights, particularly those rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendment to the United States Constitution.

143.  As a direct and proximate result of the conspiracy engaged in by the Individual Defendants to violate the plaintiffs' civil rights the plaintiffs have suffered damages.

## COUNT IV
(All Plaintiffs v. Individual Defendants for Violation of 42 U.S.C.A 1983)

144.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 143 above.

145.  By engaging in the conduct described above, the Individual Defendants violated the plaintiffs' civil rights as secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

146.  As a direct and proximate result of the Individual Defendants' conduct in violating the plaintiffs' civil rights the plaintiffs have suffered damages.

COUNT V
(All Plaintiffs v. Individual Defendants for Violation of M.G.L. ch. 12 § 11H-I)

147.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 146 above.

148.  By engaging in the conduct described above the Individual Defendants, acting singly and in concert with each other, interfered by means of threats, intimidation, and/or coercion with plaintiffs' exercise and enjoyment of their civil rights as guaranteed by Article I of the Massachusetts Declaration of Rights and the First, Fourth, Fifth, Eighth and Fourteenth Amendment to the United States Constitution and thereby violated M.G.L. ch. 12 § 11I.

149.  As a direct and proximate result of the Individual Defendants' conduct in violating the plaintiffs' exercise and enjoyment of their civil rights the plaintiffs have suffered damages.

COUNT VI
(All Plaintiffs v. Individual Defendants for Intentional Infliction of Emotional Distress)

150.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 149 above.

151.  The Individual Defendants knew or should have known that their actions as more specifically set forth above would likely result in the plaintiffs suffering emotional distress.

152.  The Individual Defendants' actions were intentional, reckless, extreme, outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community.

153.  As a direct and proximate result of the Individual Defendants' conduct the plaintiffs suffered severe emotional distress of such a nature that no reasonable person could be expected to endure it.

## COUNT VII
(All Plaintiffs v. All Defendants for Loss of Consortium)

154.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 153 above.

155.  The plaintiffs are related to each other as immediate family members and are entitled by law to the care, comfort, services, and consortium of one another.

156.  As a direct and proximate result of the tortuous conduct of the Defendants, each plaintiff sustained the loss of the care, comfort, services and consortium of the other plaintiffs.


## COUNT VIII
(Michelle Kennedy v. Tsoukalis, Rhonstock, Parker, Nestor, Lieutenant Connors, Micciche, Munn and Doe for Assault)

157.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 156 above.

158.  On various and diverse dates, the Defendants, Tsoukalis, Rhonstock, Parker, Nestor, Lieutenant Connors, Micciche and Munn without right or privilege, intentionally assaulted the plaintiff, Michelle Kennedy.

159.  As a direct and proximate result of the assaults the plaintiff, Michelle Kennedy, suffered damages.


## COUNT IX
(Michelle Kennedy v. Roche, Brown, Conway, Nestor and Doe for False Imprisonment)

160.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 159 above.

161.  On various and diverse dates the plaintiff, Michelle Kennedy was unlawfully and intentionally confined against her will, without right or privilege.  This was the direct result of

the unlawful conduct of the Defendants, Roche, Brown, Conway Nestor and Doe.

162.  As a direct and proximate result of the acts described above, the plaintiff, Michelle Kennedy was falsely imprisoned, deprived of her liberty, and therefore, was damaged.

## COUNT X
(Michelle Kennedy v. Roche, Brown, Rhonstock, Nestor, MacEachern, McNulty, Katz, Micciche, Conway, Lt. Connors, DeVito and Doe for Malicious Prosecution)

163.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 162 above.

164.  On various and diverse dates the Defendants, Roche, Brown, Rhonstock, Nestor, MacEachern, McNulty, Katz, Micciche, Conway, Connors, DeVito and Doe signed criminal complaints or otherwise participated in the prosecution of Michelle Kennedy in criminal actions, including those identified above, and they did so without probable cause and with malice.

165.  As a direct and proximate result of these acts, the plaintiff, Michelle Kennedy suffered emotional distress, humiliation, loss of liberty, monetary damages and other damages.

## COUNT XI
(Brian Kennedy v. Tsoukalis, Nestor, MacKenzie, Lt. Connors and Doe for Assault)

166.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 165 above.

167.  On various and diverse dates the Defendants, Tsoukalis, Nestor, MacKenzie, Lieutenant Connors and Doe without right or privilege, intentionally assaulted the plaintiff, Brian Kennedy.

168.  As a direct and proximate result of the assaults the plaintiff, Brian Kennedy, suffered damages.

## COUNT XII
(Brian Kennedy v. Conway, Tsoukalis and Doe for False Imprisonment)

169. Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 168 above.

170. On various and diverse dates the plaintiff, Brian Kennedy was unlawfully and intentionally confined against his will, without right or privilege. This was the direct result of the unlawful conduct of the Defendants, Conway, Tsoukalis and Doe.

171. As a direct and proximate result of the acts described above, the plaintiff, Brian Kennedy was falsely imprisoned, deprived of his liberty, and therefore, was damaged.

## COUNT XIII
(Brian Kennedy v. Casey, Zarro, MacEachern, McNulty, Howe, Micciche, Katz, Elmore, Lieutenant Connors, MacKenzie, Brown, Bailey and Doe for Malicious Prosecution)

172. Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 171 above.

173. On various and diverse dates the Defendants, Casey, Zarro, MacEachern, McNulty, Howe, Micciche, Katz, Elmore, Lieutenant Connors, MacKenzie, Brown, Bailey and Doe signed criminal complaints or otherwise participated in the prosecution of Brian Kennedy in criminal actions, including those identified above, and they did so without probable cause and with malice.

174. As a direct and proximate result of these acts, the plaintiff, Brian Kennedy suffered emotional distress, humiliation, loss of liberty, monetary damages and other damages.

## COUNT XIV
(Mitchell Kennedy v. Tsoukalis for Assault)

175. Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through

174 above.

176.  The Defendant, Tsoukalis without right or privilege, intentionally assaulted and battered the plaintiff, Mitchell Kennedy as described hereinabove.

177.  As a direct and proximate result of the assault and battery the plaintiff, Mitchell Kennedy, suffered damages.

## COUNT XV
(Mitchell Kennedy v. Tsoukalis for False Imprisonment)

178.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 177 above.

179.  The plaintiff, Mitchell Kennedy was unlawfully and intentionally confined against his will, without right or privilege.  This was the direct result of the unlawful conduct of the Defendant Tsoukalis.

180.  As a direct and proximate result of the acts described above, the plaintiff, Mitchell Kennedy was falsely imprisoned, deprived of his liberty, and therefore, was damaged.

## COUNT XVI
(Mitchell Kennedy v. Tsoukalis, Nestor and Doe for Malicious Prosecution)

181.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 180 above.

182.  On various and diverse dates the Defendants, Tsoukalis, Nestor and Doe signed criminal complaints or otherwise participated in the prosecution of Mitchell Kennedy in criminal actions, including those identified, and they did so without probable cause and with malice.

183.  As a direct and proximate result of these acts, the plaintiff, Mitchell Kennedy suffered emotional distress, humiliation, loss of liberty, monetary damages and other damages.

40

COUNT XVII
(Brian Kennedy, Jr. v. Tsoukalis for Assault)

184.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 183 above.

185.  The Defendant, Tsoukalis without right or privilege, intentionally assaulted the plaintiff, Brian Kennedy, Jr.

186.  As a direct and proximate result of the assault the plaintiff, Brian Kennedy, Jr., suffered damages.

COUNT XVIII
(Brian Kennedy, Jr. v. Tsoukalis and Doe for False Imprisonment)

187.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 186 above.

188.  The plaintiff, Brian Kennedy, Jr. was unlawfully and intentionally confined against his will, without right or privilege.  This was the direct result of the unlawful conduct of the Defendants, Tsoukalis and Doe.

189.  As a direct and proximate result of the acts described above, the plaintiff, Brian Kennedy, Jr. was falsely imprisoned, deprived of his liberty, and therefore, was damaged.

COUNT XIX
(Brian Kennedy, Jr. v. Tsoukalis and Doe for Malicious Prosecution)

190.  Plaintiffs reallege and incorporate as if fully set forth herein paragraphs 1 through 189 above.

191.  On various and diverse dates the Defendants, Tsoukalis and Doe signed criminal complaints or otherwise participated in the prosecution of Brian Kennedy, Jr. in criminal actions,

41

including those identified above, and they did so without probable cause and with malice.

192.  As a direct and proximate result of these acts, the plaintiff, Brian Kennedy, Jr. suffered emotional distress, humiliation, loss of liberty, monetary damages and other damages.

WHEREFORE, the plaintiffs request that this court grant them judgment against the defendants, jointly and severally, on each count which they may be liable, in such amount as is reasonable and just, plus such costs, attorneys' fees, punitive damages and interest as they are entitled by law and that the court grant injunctive relief as it deems appropriate.

**PLAINTIFFS HEREBY INVOKE THEIR RIGHT TO TRIAL BY JURY.**

Respectfully submitted,
Brian Kennedy and Michelle
Kennedy, Individually and as mother
and next friend of Brian Kennedy, Jr.
Mitchell Kennedy and Dylan
Kennedy
by their counsel,

Date:    November 5, 2004

Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904

Frederick V. Gilgun, Jr.
NICHOLSON, SRETER & GILGUN, P.C.
BBO# 551477
33 Bedford Street, Suite 4
Lexington, MA  02420
(781) 861-9160

## VERIFICATION OF COMPLAINT

I have read each of the allegations set forth in the complaint herein and attest and verify the truth of each allegation.  Signed and sworn under pains and penalties of perjury this 5th day of November, 2004.

Brian Kennedy

I have read each of the allegations set forth in the complaint herein and attest and verify the truth of each allegation.  Signed and sworn under pains and penalties of perjury this 5ht day of November, 2004.

Michelle Kennedy, Individually and as Mother and Next Friend of Brian Kennedy, Jr., Mitchell Kennedy and Dylan Kennedy

43