UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************
BRIAN KENNEDY, et al                          *
                                              *
                    Plaintiffs                *
                                              *
v.                                            *    Civil Action no. 04-12357 - PBS
                                              *
TOWN OF BILLERICA, et al                      *
                                              *
                    Defendants                *
*********************************************

## MOTION TO COMPEL AND
## PLAINTIFF'S MEMORANDUM IN SUPPORT THEREOF

### I. **Factual Background**

This case involves a fifteen year history of intimidation, threats, beatings, multiple stops and, literally, dozens of arrests and other acts of harassment by twenty eight (28) defendant Billerica police officers. This pattern of intimidation and harassment began in late 1991, after Michelle Kennedy rejected the sexual advances of defendant Frank MacKenzie and informed his wife of these sexual advances.

Shortly after Mrs. Kennedy's communication to Mrs. MacKenzie, the defendants began their harassment. In September, 1991, the Kennedys' pickup truck was firebombed. Then Brian Kennedy was attacked and beaten in a local pub while several of the defendant police officers, including defendants McKenzie, Nestor, Elmore and McDonald, off duty at the time, stood and watched. Plaintiffs allege that this was the beginning of the long pattern of harassment.

The intimidation continues through the present, despite the multiple complaints and requests for internal affairs investigations by the plaintiffs, from 1991 through to this lawsuit. The most recent incident took place April 24, 2006, when defendant Tsoukalas cornered Ms. Kennedy when she was picking up her son Dylan from school. Cornering her with his police cruiser as she picked up her son from school, defendant Tsoukalas screamed at her "You C--t" and yelled other taunts before driving away.

Before that, in late January or early February, defendant Connors confronted Ray Trainer, who was renting room in his house to the plaintiffs, and threatened Mr. Trainer that his probation would be violated if he did not kick the plaintiffs out. Defendant Connors also told Mr. Trainer he would beat him to death with a golf club if he did not "do the right thing" and get rid of the Kennedys. Fearful of the consequences otherwise, Mr. Trainer had the Kennedys, his lifelong friends, move out.

This conduct is the type engaged in by a department out of control and forms the basis for the plaintiffs' _Monell_ failure to supervise claims. Michelle Kennedy made the first of multiple complaints to the Billerica Police Department on October 7, 1991, after defendant MacKenzie began harassing her husband. She and other witnesses were interviewed in what she understood to be an investigation upon her complaint of police abuse.

Although Mr. and Mrs. Kennedy made multiple requests to three different chiefs and they and others were interrogated in what they understood to be investigations responsive to their complaints, there appears to be no evidence that any such investigations ever really occurred.

Plaintiffs have requested but have received no documentation whatsoever regarding the personnel files of the individual defendants, internal affairs complaints about any of the defendants or any internal affairs files regarding the Kennedys' multiple complaints.

Indeed, defendants did not provide their automatic disclosure until December 30, 2006, despite multiple requests for same. [See letters from plaintiffs' counsel, Exhibits 1-5] All defendants have produced is a box of some 2000 Bates stamped documents, in no apparent order, relating to the various arrests of the plaintiffs.

Plaintiffs have made repeated requests for documents relating to the alleged Internal Affairs investigations in response to the plaintiffs' many complaints, and for personnel files or other IAD files relevant to the defendant town's purported investigation of the plaintiff's claims of harassment and for other evidence of supervision of the individual defendant officers. [See letters from plaintiffs' counsel, Exhibits 1-5]

Defendants have failed to respond to any of these requests and have not identified a single document relating to internal affairs investigations, supervision of the individual defendant officers or of any response to the plaintiffs' multiple complaints or requests for a halt to the pattern of arrests, beatings and harassment that were the subject of the plaintiffs' complaints. Plaintiffs would have the Court conclude that based on this response, the defendants do not intend to rely upon any claim of investigation, supervision or discipline of any of the individual defendants as a defense to the _Monell_ claim plaintiffs have asserted against the defendant town and the defendant chiefs of the Billerica police department.

II. **Procedural Background**

Anticipating the problems inherent in trying a case with twenty nine (29) defendants and some fifteen (15) years worth (and counting) of incidents, at the July 12, 2005, scheduling conference, the Court orally instructed the parties to conduct an "abbreviated" discovery schedule before the court ordered mediation. The Court suggested that the parties conduct just those depositions necessary to engage in a meaningful mediation negotiations.

The Court set a short, seven month, deadline of February 28, 2006 for completing these depositions and referred the case for mediation. The mediation, originally scheduled for November, was delayed until February, at the request of the defendants. The plaintiffs assented to these requests, never expecting that this would cut off their ability to complete discovery, when the defendants showed up at the mediation and refused to mediate.

Plaintiffs' counsel had pointed out at the July 12, 2005 scheduling conference that the Court's proposed schedule did not leave enough time to conduct paper discovery, including requests for documents. In response, the Court noted that under the Federal Court rules regarding automatic disclosure, paper discovery was not necessary and encouraged cooperation of the parties.

Plaintiffs understood this to mean they were to limit depositions in number and scope before the mediation. It was in response to this direction that plaintiffs directed their request for documents relating to their _Monell_ claims to the letters attached hereto. Also consistent with the Court's instructions, plaintiffs' counsel limited the first round of depositions to the seven defendant officers they deemed most heavily involved in the conspiracy against the Kennedys.

Plaintiffs suspended each of these depositions, at least in part so that the could inquire at a later date about the internal affairs and personnel files and related information that the defendants had not yet provided, which the plaintiffs had requested and anticipated receiving. Plaintiffs reasonably expected that they would have the opportunity to conduct further depositions and conclude suspended depositions if the mediation was not successful.

Plaintiffs' counsel made clear to defense counsel at the depositions that the depositions were suspended since the defendants had not yet provided documents to which the plaintiffs were entitled under automatic disclosure regarding the _Monell_ claims. Defendants made no objection, and plaintiffs proceeded with the understanding that they would have the opportunity to resume these depositions in particular and discovery in general if the mediation did not resolve their claims.

At the request of the defendants, the mediation was continued to allow defendants the opportunity to conduct depositions of the plaintiffs. Plaintiffs' counsel expected they would receive the _Monell_ related discovery in the interim, and would be able to conclude depositions they had suspended. These depositions were suspended because plaintiffs were unable to examine witnesses regarding prior IAD complaints or discipline of individual defendants, due to the failure of the defendants to provide discovery on these areas. Consequently, the plaintiffs have been denied any discovery with respect to their _Monell_ failure to supervise claims, the strongest claims in their case.

The parties agreed to the suspension of these, as well as all other depositions, including the depositions the defendants noticed of the plaintiffs and plaintiffs' witnesses, with the mutual understanding that the initial discovery was limited and intended to facilitate mediation. The assumption was that there would be an opportunity to complete discovery if the mediation were not successful. This is not what happened.

Although defendants appeared at the mediation, delayed until February upon defendants request, the defendant began by proclaiming that they were appearing there only upon order of the Court. After offering a token "nuisance value" offer of settlement, the defendants proclaimed that they were not interested in mediation. On this basis, the magistrate determined that any attempt at mediation was futile and adjourned the mediation.

Before the plaintiffs could reschedule the suspended depositions or otherwise resume discovery, the discovery deadline had passed. A joint motion to extend the discovery deadline was denied by the Court.

Now plaintiffs, having proceeded in good faith to mediation and having limited pre-mediation discovery, pursuant to the Court's suggestion, are left with no adequate discovery, indeed no discovery at all with respect to their *Monell* claim, because of the continuance of the aborted mediation with no parallel extension of the discovery deadline. This poses an unfair prejudice from which the plaintiffs now seek appropriate relief, either in the form of an order compelling adequate discovery or an order, pursuant to the F.R.C.P., Rule 37(b)(1) that the defendants be barred from entering evidence of proper supervision or discipline of the individual defendants or contesting the plaintiffs' *Monell* failure to supervise claims, based on the defendants failure to comply with this Court's Rule 26(f) orders regarding expedited discovery.

### III. **Argument**

Given the large number of individual defendants, the number of arrests, beatings and other incidents and the length of time that this pattern of conduct continued, even after multiple complaints by the plaintiffs, the _Monell_ claim is the heart of the plaintiff's case.   While many of the twenty eight (28) individual defendants can argue that their individual participation was minimal, the sheer number of incidents and department officers involved speak to the strength of the _Monell_ claim.

To establish municipal liability under _Monell_, a plaintiff must show a municipal policy or custom and a causal link between this municipal policy or custom and the alleged constitutional deprivation.  The Federal Rules of Civil Procedure, F.R.C.P., Rule 26(b), allow a plaintiff to discover information that would show a pattern of conduct that establishes a _Monell_ claim. Plaintiffs have done so, pursuant to the Court's direction that the parties cooperate with discovery in lieu of formal written discovery requests and the deferral of the mediation date until the eve of the discovery deadline, as set forth above.

The requested internal affairs records are undisputably discoverable, as such documents are the means of establishing the pattern of deliberate indifference that is the basis for the plaintiffs' _Monell_ failure to supervise claim. [see, e.g., _Manns v. Smith_, 181 F.R.D. 329, (S.D. Wa. 1998)]   On this basis, personnel files and internal affairs records are discoverable.  Id., Indeed, such records are essential to the plaintiffs' _Monell_ failure to supervise case.

In _King v. Conde_, 121 F.R.D. 180 (E.D.N.Y.) (1988), the plaintiff sought records of prior complaints against the defendant police officers and records of any prior disciplinary actions or internal investigations brought by the police department against the officers.  In applying its

-7-

analysis, the court stated that the party resisting disclosure bears the burden of proving the justification for withholding the requested information, as such information is relevant in a §1983 claim.

Here, the defendants have never made any claim of privilege or even indicated any objection to production of the internal affairs and personnel records requested. Indeed the plaintiffs reasonably expected that such responses were forthcoming.

It is a basic precept of discovery practice that a party waives his rights to object to discovery unless his objections are timely filed. "Objections served after expiration . . . are waived, unless an extension of time has been obtained. 4A Moore's Federal Practice, 33.27, p.161. See also _Renshaw v. Ravert_ 82 FRD 361 (D. Pa. 1979), _Davis v. Fendler_, 650 F2 1154 (1981), _Fonseca v. Ryan_, 98 FRD 694 (D. N.Y. 1983).

"[F]ederal law disfavors privileges barring disclosure of relevant evidence, and limits 'even those rooted in the [federal] constitution'." _King v. Conde_, 121 F.R.D. 180 at 187 quoting _Herbert v. Lando_, 441 U.S. 153. Hence, civil rights plaintiffs are presumptively entitled to receive documents regarding prior complaints and police history, as well as officers' recollections of events. Id.

Evidence of policies or custom within the defendant police department which may have promoted constitutional violations by its officers are not only relevant, but essential elements of proof to plaintiffs' claim of an unconstitutional policy and practice by the defendant town and police chiefs in failing to discipline or rein in the individual defendant officers. This policy or

custom may be established through the continued inattention in the face of known widespread constitutional deprivations by the defendant town and police chiefs. *Milligan v. City of Newport News*, 743 F.2d 227, 299 (4th Cir. 1984).

The defendants should not be permitted to evade producing relevant and material documents through semantic games that may arise from the absence of formal written discovery, as the plaintiffs refrained from such formalities only at the insistence of the Court that the parties expedite discovery and the promise of cooperation. Indeed, it was this expectation of cooperation that led the plaintiffs to write multiple letters rather than escalate to formal written requests.

Plaintiffs did so in good faith, in an attempt to comply with the Court's direction, in reliance on the Court's comment that written discovery was not necessary under the Federal rules mandating automatic disclosure, and with no reason to think that the defendants would not provide the discovery requested, as the conversations between counsel never raised any objection to production of the requested discovery other than the burden upon counsel of gathering and compiling the requested documents and the implication that this was being done.

F.R.C.P., Rule 37 (c) (1) states that a party that "without substantial justification" fails to disclose information required by Rule 26(a) not only may not use that information at trial, but may be subject as well to "other reasonable sanctions". Such sanctions "may include informing the jury of the failure to make the disclosure". F.R.C.P., Rule 37 (c) (1) "[O]ther reasonable sanctions" commonly include imposing a presumption that the facts that might be established by

the missing documents are established in favor of the plaintiff or that the defendants be barred from contesting facts that might have been established by the documents defendants are refusing to produce.

Plaintiffs seek such a sanction as appropriate if they are to be denied the opportunity to obtain through discovery the evidence necessary to prove these elements of their _Monell_ failure to supervise claim.

## Conclusion

Where the defendants have failed to provide discovery to which the plaintiffs are entitled, the plaintiffs should be provided the opportunity to obtain such discovery or an appropriate order pursuant to F.R.C.P. 37(b)(2)(B), that a presumption be established that no investigation was ever made in response to the internal affairs complaints made by the plaintiffs and that there was no supervision or discipline over the individual defendant officers.

<div style="margin-left:50%">

Respectfully submitted,
Brian Kennedy, et al
by their counsel

</div>

Date: May 19, 2006

<div style="margin-left:50%">

/s/ Andrew M. Fischer
Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904
Afischer@jasonandfischer.com

</div>

kennedy/mtncomp

-10-