UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************
| | |
|---|---|
| BRIAN KENNEDY, et al | * |
| | * |
| Plaintiffs | * |
| | * |
| v. | *   Civil Action No. 04-12357 - PBS |
| | * |
| TOWN OF BILLERICA, et al | * |
| | * |
| Defendants | * |

*********************************************

**MOTION TO COMPEL
AND
TO EXTEND TIME FOR FILING RULE 26 EXPERT WITNESS DISCLOSURE
OR TO ALLOW FILING OF A SUPPLEMENTAL EXPERT WITNESS DISCLOSURE**

Now come the plaintiffs and move this Honorable Court compel the production of documents necessary for the plaintiff's expert to complete his evaluation and expert witness report, as required by Rule 26.  Plaintiffs also move that the Court extend the time for filing their Rule 26 expert witness disclosure or, in the alternative, permit the plaintiffs to supplement their Rule 26 expert witness disclosure upon receipt of additional materials that the defendants have failed to produce

I. **Procedural Background**

This case has been hampered from its outset by the defendants' foot-dragging and delays, beginning with the defendants taking six (6) months just to file an answer.  Defendants did not provide their automatic disclosure until December 30, 2006, over a year after the case was filed, despite multiple requests for same.  [See letters from plaintiffs' counsel, Exhibits 1-5, to plaintiff's May 19, 2006 Motion to Compel, still pending, Docket #23]  All defendants produced in their automatic disclosure is a box of some 2000 Bates stamped documents, in no apparent order, relating to the various arrests of the plaintiffs.

In order to establish their *Monell* failure to supervise claims, plaintiffs have made repeated requests for documents relating to the alleged Internal Affairs investigations in response to the plaintiffs' many complaints, and for personnel files or other IAD files relevant to the defendant town's purported investigation of the plaintiff's claims of harassment and for other evidence of supervision of the individual defendant officers.  [See letters from plaintiffs' counsel, referred to above]

After initial stonewalling, the defendants claimed, at the hearing on May 22, 2006, that internal affairs records were among the more than 2000 Bates stamped but unsorted and disorganized documents produced in their belated automatic disclosure (a number that has now grown to over four thousand five hundred documents)[1], but refused to identify the IAD documents.

Plaintiffs complained both in their earlier motion to compel [Docket #23, still pending] and before the Court at the May 22, 2006 hearing, that they should not be forced to search for the needle in the haystack because of the defendants' ongoing shell games.  Indeed, Rule 34 makes clear that the defendants are required not merely to produce documents, in any mixed up melange, but to produce them "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request".  F.R.C.P., Rule 34(a)  The defendants clearly have failed to do so.

---

[1] The first 2000 documents has since been supplemented by an additional 2500 Bates stamped documents consisting of (1) personnel files of 7 of the defendants, (2) a copy of the defendant police department's policies and procedures manual and (3) some 700 documents produced to plaintiff's counsel in one of the underlying criminal cases, most of which duplicates, randomly, documents from the first 2,000 documents.

At the May 22, 2006 hearing, the Court responded to the plaintiff's complaint from the bench by suggesting that the plaintiffs conduct a deposition of the person with the most knowledge and have that deponent identify the documents. The plaintiffs did so, while also filing a motion to extend the time for their expert witness disclosure until August 31, 2006.

The Court denied plaintiffs' motion, with the notation "as the 30(b)(6) witness was available on July 7, 2006, the report shall be produced by 8/7/06."

The plaintiffs did commence the 30(b)(6) deposition of the defendant Town, who produced the defendant chief, Daniel Rosa, as its person with the most knowledge. However, it soon become evident that Chief Rosa was not the person with the most knowledge and that he did not know how the thousands of pages of Bates stamped documents were sorted. In fact, according to his deposition testimony, still not available except for the expedited pages filed herewith, defendant Rosa was not yet the chief or even involved when the documents were assembled.

**II. The Defendants' 30(b)(6) witness was not the person with the most knowledge and could not identify the relevant documents plaintiff sought regarding IAD investigations of the Kennedys' complaints**.

While defendant Rosa, the present chief of the Billerica police department, did appear on July 7, 2006 in response to the plaintiff's Rule 30(b)(6) deposition notice, his testimony quickly made clear that he was not the person with most knowledge regarding the several thousand pages of Bates stamped documents regarding the Kennedys' complaints and interactions with the defendant Billerica Police Department. Defendant Rosa testified that he did not assemble the documents, but that they were assembled by another of the defendants, defendant Howe, in response, to an FBI investigation made upon complaints by the Kennedys, in 1999, before defendant Rosa was appointed chief.

Defendant Rosa testified that the documents were assembled before he became chief and that he was unaware of what was in the box of documents or how they became Bates stamped, except that they contained defendant Howe's compilation of all the department's files regarding the Kennedys. Defendant Rosa testified that this box was resorted and supplemented in 2002, after the department received the presentment letter preliminary to commencing this case.

However, when plaintiff's counsel begin to ask defendant Rosa to explain what the documents in the box were, it immediately became evident that defendant Rosa could not identify the documents nor could he explain how the documents were organized. It was equally evident that the documents were not maintained in the manner defendant Rosa claimed they were. Although the full deposition transcript is not yet available, plaintiffs ordered an expedited transcript of the relevant portion, where defendant Rosa is asked what the first 38 pages (which came paper clipped together) were, what the next four pages (also paper clipped together) were, and so forth. [The portion of the expedited transcript is filed herewith as **Exhibit A**.]

### III. **Plaintiffs are entitled to documents known to exist in the defendants' possession relevant to their *Monell* failure to supervise claim**.

Plaintiff Michelle Kennedy made the first of multiple complaints to the Billerica Police Department in 1991, after the beating of her husband. She and other witnesses were interviewed in what she understood to be an investigation upon her complaint of police abuse.

Although Mr. and Mrs. Kennedy made multiple requests to three different chiefs and they and others were interrogated in what they understood to be investigations responsive to their complaints, no documents or other records have been identified related to these complaints.

Indeed, the defendants have failed to identify a single document relating to internal affairs investigations, supervision of the individual defendant officers or of any response to the

plaintiffs' multiple complaints or requests for a halt to the pattern of arrests, beatings and harassment that were the subject of the plaintiffs' complaints.

In searching for the needles in the haystack of Bates stamped documents, plaintiffs have found, apparently randomly, witness statements relating to the 1991 beating of Brian Kennedy, which appear several times among the over 2000 documents in the defendants' first automatic disclosure. Plaintiffs have also interviewed witnesses who describe being interviewed by the defendant department in response to Ms. Kennedy's 1991 complaints about the beating of her husband.

Documents relating to these investigations must exist. All common sense would indicate that they are kept together in a file relating to at least this investigation, an investigation which the defendants agree took place.

Plaintiffs would have the Court conclude that the defendants do not intend to rely upon any claim of investigation, supervision or discipline of any of the individual defendants as a defense to the *Monell* claim plaintiffs have asserted against the defendant town and the defendant chiefs of the Billerica police department.

Given the large number of individual defendants, the number of arrests, beatings and other incidents and the length of time that this pattern of conduct continued, even after multiple complaints by the plaintiffs, the *Monell* claim is the heart of the plaintiff's case. While many of the twenty nine (29) individual defendants can argue that their individual participation was minimal, the sheer number of incidents and number of department officers involved speak to the strength of the *Monell* claim.

To establish municipal liability under *Monell*, a plaintiff must show a municipal policy or custom and a causal link between this municipal policy or custom and the alleged constitutional

deprivation. The Federal Rules of Civil Procedure, F.R.C.P., Rule 26(b), allow a plaintiff to discover information that would show a pattern of conduct that establishes a *Monell* claim. Plaintiffs have done so, pursuant to the Court's direction that the parties cooperate with discovery in lieu of formal written discovery requests, as set forth above.

The requested internal affairs records are undisputably discoverable, as such documents are the means of establishing the pattern of deliberate indifference that is the basis for the plaintiffs' *Monell* failure to supervise claim. [see, e.g., *Manns v. Smith*, 181 F.R.D. 329, (S.D. Wa. 1998)] On this basis, personnel files and internal affairs records are discoverable. *Id.*, Indeed, such records are essential to the plaintiffs' *Monell* failure to supervise case.

In *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y.) (1988), a lead case on this issue, the plaintiff sought records of prior complaints against the defendant police officers and records of any prior disciplinary actions or internal investigations brought by the police department against the officers. In applying its analysis, the court stated that the party resisting disclosure bears the burden of proving the justification for withholding the requested information, as such information is relevant in a §1983 claim.

Here, the defendants have never made any claim of privilege or even indicated any objections to production of the internal affairs and personnel records requested. Indeed the defendants claim the documents exist: they just will not tell the plaintiffs where they are.

Evidence of policies or custom within the defendant police department which may have promoted constitutional violations by its officers are not only relevant, but essential elements of proof to plaintiffs' claim of an unconstitutional policy and practice by the defendant town and police chiefs in failing to discipline or rein in the individual defendant officers. This policy or

custom may be established through the continued inattention in the face of known widespread constitutional deprivations by the defendant town and police chiefs. <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 299 (4th Cir. 1984).

The defendant police department should not be permitted to evade accountability for producing and identifying relevant and material documents through semantic games.

### IV. Documents to be produced

Plaintiff's police practices expert, Reginald Allard, has outlined various documents which he needs to complete his evaluation. By letter dated July 24, 2006, Mr. Allard requested (among other things that the plaintiffs are providing), the following items, which the defendants have failed to produce (or have failed to identify), as set forth above:

1. FBI Clearance Letter Concerning the 1999 Investigation.
2. M.G.L. Chapter 31 Concerning Discipline for Just Cause.
3. Specific Training and Training handouts for Defendant officers as to Laws of Arrest.
4. *Written Documentation* of investigations performed at the Sergeant/OIC level for alleged Misconduct or Civilian Service Complaints.

The last of these items relates to the internal affairs documents which the defendants have failed to produce (or have failed to identify), as set forth herein above. Plaintiffs have written to the defendant, pursuant to Local Rule 7.1, requesting these items. [See **Exhibit B**, filed herewith] Plaintiffs also seek a fifth set of documents, consisting of other complaints of excessive force, false arrest and malicious prosecution, which defendants have refused to produce, despite informal requests for same. This fifth category was also the subject of an interrogatory question which the defendants refused to answer, and is the subject of a separate motion to compel, filed on July 27, 2006

**V.** .**Plaintiffs are entitled to sanction, pursuant to F.R.C.P., Rule 37(c)(1)**

F.R.C.P., Rule 37 (c) (1) states that a party that "without substantial justification" fails to disclose information required by Rule 26(a) not only may not use that information at trial, but may be subject as well to "other reasonable sanctions", including costs and attorneys fees for a motion to compel.

Such sanctions "may include informing the jury of the failure to make the disclosure". F.R.C.P., Rule 37 (c) (1) "[O]ther reasonable sanctions" commonly include imposing a presumption that the facts that might be established by the missing documents are established in favor of the plaintiff or that the defendants be barred from contesting facts that might have been established by the documents defendants are refusing to produce.

Plaintiffs seek such a sanction as appropriate if they are to be denied the opportunity to obtain, through discovery, the evidence necessary to prove these elements of their *Monell* failure to supervise claim, as well as an award of the reasonable costs and attorneys fees incurred in bringing this motion.

**VI. Plaintiffs require additional time for their expert witness disclosure due to defendants' failure to produce or identify documents**.

On June 30, 2006, plaintiffs moved for additional time to provide their expert witness disclosure. The Court denied the motion, assuming that the deposition on July 7, 2006 would resolve the plaintiffs difficulties in obtaining (or locating) the records of the defendants' internal affairs investigations. As set forth above, this assumption proved to be incorrect. Today, with the plaintiffs' exert witness disclosure due one week from today, the defendants are still hiding the documents necessary for the plaintiffs' police practices expert to complete a proper analysis.

Accordingly, plaintiffs seek additional time to provide expert witness disclosure and suggest that the Court allow plaintiffs two weeks from the time defendants produce and identify (by Bates stamp number) all records relating to each internal affairs investigation conducted regarding any incidents involving the plaintiffs.

In the alternative, plaintiffs request that the Court **expressly permit them to supplement any expert witness report filed within the August 7, 2006 deadline**

### VII.  Conclusion

First, the Court should allow the plaintiffs additional time to provide their expert witness disclosure.  In the alternative, the Court should enter an order expressly allowing the plaintiffs to supplement their expert witness disclosure.

Second, the Court should order that the defendants produce forthwith the five items plaintiffs seek forthwith.  These items are:

1.  FBI Clearance Letter Concerning the 1999 Investigation.
2. M.G.L. Chapter 31 Concerning Discipline for Just Cause.
3. Specific Training and Training handouts for Defendant officers as to Laws of Arrest.
4. *Written Documentation* of investigations performed at the Sergeant/OIC level for alleged Misconduct or Civilian Service Complaints.
5. All records of any complaints of excessive force, false arrest, malicious prosecution or similar abuse made to the Billerica Police Department from 1985 to the present

Third, should the defendants still fail to provide  – and adequately identify – such documents, to which the plaintiffs are entitled, the Court should enter an appropriate order pursuant to F.R.C.P. 37(b)(2)(B), that a presumption be established that the defendant police department made no internal affairs investigations in response to the internal affairs complaints made by the plaintiffs or by anyone else, and that there was  no supervision or discipline over the individual defendant officers.

The plaintiff further requests that this Court allow an award of attorneys fees, as an appropriate additional sanction under F.R.C.P., Rule 37.

|  |  |
|---|---|
|  | Respectfully submitted,<br>Brian Kennedy, et al<br>by their counsel |
| Date: <u>July 31, 2006</u> | <u>/s/ Andrew M. Fischer</u><br>Andrew M. Fischer<br>BB0# 167040<br>JASON & FISCHER<br>47 Winter Street<br>Boston, MA 02108<br>(617) 423-7904<br>afischer@jasonandfischer.com |

kennedy/mocomp or extend time1.wpd