UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-12357-PBS

---

BRIAN KENNEDY AND MICHELLE KENNEDY Individually,
and as Mother and next friend of BRIAN KENNEDY,
JR., MITCHELL KENNEDY, and DYLAN KENNEDY,
    Plaintiffs
vs.

TOWN OF BILLERICA, ET AL.,
    Defendants

---

  DEPOSITION of POLICE CHIEF DANIEL C. ROSA, JR., called by the Plaintiffs, taken pursuant to the provisions of the Massachusetts Rules of Civil Procedure, before Barry M. Harris, a Court reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Jason & Fischer, 47 Winter Street, 4th Floor, Boston, Massachusetts, on Thursday, July 7, 2006, at 11:00 a.m.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

  Q. Just looking at the documents, Bates stamped 1 through 38, are you able to determine the file from which they came, if there was a heading on the file, or a title to the file?
  A. What was that question, again?
  Q. Can you tell, by looking at those documents, what the heading or the title of the file would have been, that contained those documents?
  A. For sure, I don't think that I could, but I would say this is the driving record, and the motor vehicle incident involving Brian and Michelle Kennedy.
  Q. Do you remember if there was a particular sub-file in the Kennedy box, that pertains to driving records and traffic citations to Brian and Michelle Kennedy?
  A. I believe that there is, but I'm not 100 percent positive, but I will look.
  Q. If you can look at the next batch of documents that are clipped together, which is Bates stamp 39 to Bates stamp 42.
  A. Okay.
  Q. Before I have you look at that, do you know who was responsible for Bates stamping those documents?
  A. I have no idea.
  Q. I ask you the same question. If you can tell from looking at those documents what the heading or the title of the file was from which they came.
  A. Maybe I'm not understanding. I would like to talk to counsel.
MR. SILVERFINE: Off the record.

    (Discussion held off the record.)

Q. (By Mr. Gilgun) So, just so I can reask the question again, can you tell, from looking at those documents, beginning with Bates stamp 39, what the title or heading of the file is from which they came?

A. I can't tell you the heading or the number of the file that this would have gone with, but the file was set up based on the Complaint.

so the Complaint was by paragraph, each Complaint that came to us in that order, and we set it up so that documents relating to a particular Complaint, or paragraph, corresponded, or were together. As you went through, I would say, this particular -- I don't know the number or heading, but I think that this had to do with the badge incident.

Q. Was that file organized in that way to correspond to paragraphs in the Complaint?

A. The first time after we received the original Complaint letter.

Q. The Complaint letter is the letter that was produced at the last deposition known as the "Presentment Letter," in February 2002; is that correct?

A. That's correct.

Q. As opposed to the formal Complaint filed in Federal Court, which was sometime in 2005?

A. That's correct.

Q. Would it have been Detective Howe that would have gone through and organized this box of documents in the filing to correspond to those paragraphs in the Presentment Letter?

A. Yes.

Q. Was it done chronologically so that the document at the front of the box would have related to the first paragraph, that alleged anything about the police?

A. If I said that was true, I would have to assume that, but I know that it was grouped in the way that the Complaint was grouped by paragraph in the Complaint, and that the box was grouped that way.

I can't tell you exactly how the numbers are ordered, or how they line up in the box, but --

Q. Well, if you would look at what has been Bates stamped 43 through 110, which came clipped together, and if you can tell me by reviewing that, what allegations in that Presentment Letter that these documents would relate to?

(The witness looks at documents.)

Q. Chief, can you tell from reviewing those documents, the title or heading on the file from which these documents would have been produced?

A. Those documents would have been produced with William Ashton, who lived with the Kennedys at that time, and was involved in part of the Complaint, and there were some things mentioned in there that William Ashton was involved.

It was a file to do with William Ashton.

Q. And do you remember after the documents or files in the Kennedy box were organized to correspond to the Presentment Letter, whether or not there were actual folders created?

For example, is there a folder that says page 7, paragraph 2, and has documents in it, or were the folders already pre-existing, and just reordered to correspond to the paragraphs in the Presentment Letter?

A. I don't remember; I don't know. I know that they were organized by Presentment Letters organization, as far as the paragraphs in general.

     There may have been sections that dealt with incidents involved, and sections that dealt with people involved like William Ashton.
     Q. How were the documents organized in this box before they were reorganized to correspond to the Presentment Letter?
     A. I don't know.
     Q. Do you know if there was any organization to the files in that box?
     A. I don't know if they were in the box prior to reorganizing them, and gathering them together -- to be put into the --
 MR. SILVERFINE: Objection.
     A. This box was put to me after I instructed Sergeant Laskey to gather it all together into one place, and I wanted to review it.
     Q. In 1999, you indicated that there was a file created in connection with the investigation by the FBI, under the custody of Captain West; is that correct?
     A. I would have to assume that it was under the custody of Captain West.
     Q. But there was an actual Kennedy file created in 1999 to the best of your understanding?
     MR. SILVERFINE: Objection to the form.
     A. To the best of my understanding, yes. I did not physically see the file.
     Q. How did you know about it?
     A. Because I was aware that the FBI had come in, and was coming in, and I knew that Inspector Howe was gathering all the information and documentation to do with the Kennedys. I don't know how he had it organized.
     Q. How did you know that he was gathering documents?
     A. Because we were aware that the Kennedys had filed Complaints with the FBI. I don't know what date it was, but I knew that there was a date set that they were going to come in for investigation by the FBI.
     Q. In any event, you knew that Detective Howe was gathering files?
     A. Files or information, whatever that we had in connection with the Kennedys.
     Q. After the FBI left you, do you know what, if anything, was done with the files that Detective Howe had gathered?
     A. No, I don't know.
     Q. You approached the detective in 2002, and directed him to gather information relating to the Kennedy Presentment Letter, did you have any discussion with him about the documents that you gathered in 1999 at that time that the FBI were investigating the Kennedy matter?
     A. I did.
    Let me put it this way. I had a discussion with him about the documents. He was instructed to get all of those documents together, and everything that we had up to date, and get it organized.
     Q. As far as that discussion, did he inform you, "I already have a headstart on this, because I had compiled documents in 1999 when the FBI was investigating"?
 Was there a discussion that you had gone through this process, and still had a certain folder set aside?
     A. I don't remember that.
 I think that I assumed that there was, knowing that there was quite a bit of information.
     Q. Just to be more specific, between 1999 and 2002 when Detective Howe gathered all the documents together under your direction, you don't know whether an actual file, a box compilation of documents were set aside, designated for the Kennedys, that was in

the office where now Deputy Chief Conners resides?
   A. I'm not 100 percent positive. At that time, I didn't have access to go and look.
   Q. You don't know whether Detective Howe said, "I have those documents, or I can get those documents which were filed"?
   A. I had a discussion, there's no doubt about it, but he was instructed to get all of the Kennedys stuff together in one file, and that is what we did.
   I don't know whether it was discussed in 1999.
   MR. GILGUN: If I can have these next documents marked.
Off the record.

   (Discussion held off the record.)

MR. GILGUN: We are not going to mark it.
   Q. (By Mr. Gilgun) I'm showing you a document that is a copy of an exhibit, with a sticker on it, which I believe is Exhibit 21 of the Rosa deposition.
   The document is dated -- it's a Presentment Letter dated February 20, 2002, and this is a document that you reviewed at the deposition the last time that you were here; is that right?
   A. I believe so.
   Q. I will represent that it's the exhibit that was marked as part of that deposition.
   A. Okay.
   Q. You were indicating that the documents were organized to follow the allegations made in the Presentment Letter, when Detective Howe was organizing the documents in this Kennedy box.
   A. Yes.
   Q. My question to you is, if you look at that letter, and the allegations made by the Kennedys against the Billerica Police Department, they dated to as early as 1991.
   The order of the documents in the first batch of documents that you just reviewed relate to the stolen badge incident, that took place in 1997.
   So, when you say that the documents were organized pursuant to the allegations in the Presentment letter, it's fair to say that they weren't put in the order consistent with the chronology set forth in the Presentment Letter; isn't that correct?
   MR. SILVERFINE: Objection.
   A. I don't understand the question; what you're asking.
   Q. If you just look at the first couple of pages of the Presentment Letter, you can see that the letter reads chronologically, in terms of allegations against the Billerica Police Department?
   A. Yes.
   Q. The earliest allegation dates back to 1991; isn't that correct?
   A. That's correct.
   Q. We just went through three batches of documents, and the first batch was traffic citations; and the driving history of Brian and Michelle Kennedy.
   The second batch of documents that you referred to relating to the stolen badge incident that took place in 1997?
   A. If you say so; you have the documents.
   Q. If you want to look at it, again, and refresh your memory when the stolen badge incident took place, feel free to do that.

    A. This statement is dated 02/20/98.

    Q. The alleged burglary took place in '97. Whether it's '97 or '98 is not my relevant point. My point is that given these batches of documents, are the documents that were produced first in order, they don't correspond to the chronology set forth in the Presentment Letter; do they?

    MR. SILVERFINE: Objection to the form.

    A. I don't know how you got your documents, or whatever. I do know how I had Inspector Howe organize the documents, and we made a duplicate copy of those documents, and we sent them to counsel.

    Q. My question is, then, just to confirm that point, when you presented the documents to counsel, they would have been in the order that was consistent in the chronology set forth in that Presentment Letter?

    A. I'm not positive of that; I didn't review the second set of documents, that we used the whole box of documents and went through it.

    Q. When you set up the box of documents before you copied it, were they set up in order consistent with the Presentment Letter?

    A. Yes.

    Q. So that if they arrived in our office chronologically out of order, it either happened at the time of setting up the box, the time of copying, or the time of copying for counsel?

    A. I don't know.

  MR. SILVERFINE: Just for the record; we can have
only one counsel.

    Q. (By Mr. Gilgun) Is the box still in the order pursuant to the chronology set forth in the Presentment Letter?

    A. I'm not sure.

    Q. When was the last time that you reviewed the box?

    A. Maybe within the last month.

    Q. What was the purpose of reviewing it then?

    A. When I was there, there was a motion filed in Federal Court, that referred to some of the documents within the box. Two weeks ago, whatever it was.

    Q. I would like to show you the next batch of documents that are beginning with Bates stamp 111.

  MR. SILVERFINE: Could I go off the record to
speed things up, again.

  MR. GILGUN: Sure.

  MR. SILVERFINE: Off the record.

    (Discussion held off the record.)

  MR. FISCHER: If you could get these pages
that the documents are no longer in order, we would
like that section expedited

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

I ask you, can you tell me from these 2,000 documents, which ones were created in response to a Complaint made by the Kennedys about police misconduct, or an investigation conducted into police misconduct?

    A. I don't believe so.

COMMONWEALTH OF MASSACHUSETTS    MIDDLESEX, SS.

I, BARRY M. HARRIS, a Court reporter and Notary Public duly commissioned and qualified in and for the Commonwealth of Massachusetts, do hereby certify that there came before me at 11:00 a.m., on the 7th day of July, 2006, the person hereinbefore named, DANIEL C. ROSA, JR., who provided satisfactory evidence of identification, and who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge, touching and concerning the matters in controversy in this cause; that he was thereupon examined upon his oath, and his examination reduced to typewriting under my direction; and that this is a true record of the testimony given by the witness to the best of my ability.

I further certify that I am neither attorney nor counsel for, nor related to or employed by, any of the parties to the action in which this deposition is taken, and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in the action.

My Commission Expires: August 7, 2009.

_____
Barry M. Harris, Notary Public