UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BRIAN KENNEDY, et al       \*
      \*
     Plaintiffs       \*
      \*
v.       \*    C. A. No. 04-CV-12357-PBS
      \*
TOWN OF BILLERICA, et al       \*
      \*
     Defendants       \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
## AND MOTION FOR PROTECTIVE ORDER

_____Now come the plaintiffs and state the following in opposition to the defendants' Motion to Compel and for Sanctions:

_____Defendants motion to compel is a mix of grievances regarding a variety of perceived discovery failures, ranging from failure to produce things that do not exist to appropriate refusal to answer improper deposition questions. Many of the requested documents have been provided. Others either do not exist or are not available to the plaintiffs, and the plaintiffs have so informed the defendants. But by combining all the seeming discovery complaints the defendants attempt to create the false impression of non-cooperation by the plaintiffs.

Plaintiffs attempt to identify each of the defendants grievances and respond to each of the defendants grievances separately as follows:

## I. REQUESTS TO COMPEL

1. **Medical records and bills**: Defendants complain that the plaintiffs have identified medical records and bills for medical treatment in their automatic disclosure. This is true. Plaintiffs identified such records. However, defendants have never asked for these records prior to bringing this motion to compel. This is a violation of Local Rule 7.1 (A)(2), which requires

defendants to confer and attempt in good faith to resolve or narrow discovery disputes. Defendants have failed to do so.

In fact, on July 26, 2006, defendants served requests for production of documents which seek medical bills and records. However, the time for plaintiffs to respond has not yet expired. Consequently, the defendants' motion to compel is premature, at best. In addition, defendants have issued deposition subpoenae for the plaintiffs' medical records. [see Exhibit 1 and 2]

In this context, one must wonder whether the defendants, knowing their requests for medical records are not yet due, are acting in violation of F.R.C.P., Rule 11, was brought for the improper purpose of harassment,[1] at least to the extent they seek to compel production of medical records and bills not yet due.

2. **Records of Attorneys Fees**: As with the medical records, plaintiffs have provided notice to the defendants of records of legal fees in automatic disclosure and defendants, in violation of F.R.C.P., Rule 11 and Local Rule 7.1 have never asked for these records before bringing this motion to compel. Six letters attached to defendants' motion to compel make nary a reference to either medical records or attorneys bills. Thus to the extent that this motion seeks records of attorneys fees, it can only be construed as being brought prematurely and in bad faith.

3. **Records of Barbizon Modeling**: Next, in the middle of page two of their motion, defendants correctly state that "Michelle Kennedy lost career opportunities to become a model including being forced to drop a contract with Barbizon Modeling on Boylston Street." defendants then complain that "*No* records have been produced to support these allegations."

---

[1]Plaintiffs suggest that the true motive for the defendants' motion to compel is to muddy the waters regarding the plaintiffs' several motions to compel presently before the Court.

What defendants do not say is that they never asked for any such records, either formally or informally.  Thus the Court can only look upon a request to compel these records as brought in violation of both F.R.C.P., Rule 11 and Local Rule 7.1.

In fact, plaintiffs have made available a box of photographs, calendars and other materials which defense counsel have declined to come and view.  Instead, over the well intentioned suggestion of undersigned plaintiffs' counsel that defense counsel first come look at the contents of the box [see letter from plaintiffs' counsel, filed as Exhibit B herewith], defendants have insisted that plaintiff make a complete set of copies of everything in the box.[2]

Had defense counsel accepted plaintiffs' invitation, they would have seen the materials from Barbizon Modeling School.  Bringing a motion to compel before doing so is, again, a violation of both F.R.C.P., Rule 11 and Local Rule 7.1.

4.  **Videotapes and audiotapes**:  Defendants both exaggerate the number of video and audio tapes and acknowledge that plaintiffs have produced a number of video and audio tapes. [See letter dated June 7, 2006, included in Exhibit 5 with defendants' motion: "I have received just 5 videotapes and one audiocassette"]  Since that letter, plaintiffs have produced an additional

---

[2]While plaintiffs have invited defense counsel to look at everything in the box, an invitation that defense counsel has declined, plaintiffs are reluctant, for good reason, to provide copies, without limitation.  In the past, defendant MacKenzie has hung a "pin-up" photograph of Michelle Kennedy in the defendant police department's locker room and sexually and racially offensive drawing inferring illicit sex between Ms. Kennedy and an African-American Billerica police officer have been hung on bulletin boards at the defendant Police Department.

The box of materials plaintiffs have produced include, among the photographs, modeling photographs of Michelle Kennedy.  There are also intimate letters between Michelle and Brian Kennedy, other private and personal photographs and calendars that contain many personal entries in addition to notations regarding harassment by the defendants.  Accordingly, plaintiffs have requested that defense counsel enter into a confidentiality agreement to limit the use of these personal items to the litigation between the parties and to prevent these personal items from showing up on a bulletin board at the defendant Billerica Police Department.  Defense counsel has not yet responded to this request.

videocassette containing a compilation of several video recordings and have re-dubbed and

provided a second copy of the audio cassette the defendants complained was at the wrong speed.

[see letter dated June 19, 2006, defendants' Exhibit 5]

Defendants seem obsessed with the fear that plaintiffs are holding back video or audio

tapes, failing to accept plaintiffs' representations that they have produced all the video and audio

tapes they can locate.  Plaintiffs' counsel has pointed out to defense counsel that plaintiffs

recognize that they will not be able to use at trial any video or audio they have not produced and

thus have no incentive to "hide" or hold back any video or audio.

5. **Seventeen "Notebooks"**: The defendants also exaggerate and mis-state Ms.

Kennedy's deposition testimony in stating that there are "some seventeen notebooks" with notes

contemporaneous to the events alleged in the complaint.  [Defendants' motion, page 3]  Indeed,

as Ms. Kennedy explained on the deposition pages cited by the defendants and filed with their

motion,  she would jot down notes not in a "notebook" but in a date book — a calendar. ["Q

Okay, is it a notebook? A No. it's a date book, with the date, the times, the year.  The day."

Deposition of Michelle Kennedy, Vol. 1, p. 101, ll. 10-11, Defendants' Exhibit 3]  Nor are these

date books "voluminous", as defendants claim, without basis.  Rather the date books contain

notes jotted down among other appointments and entries normally found in a date book, most of

which are irrelevant to this case.

The number 17 is the number of years the harassment by the defendants has been going

on, thus 17 date books for 17 calendar years.  The date books that the plaintiffs still have are

among the items in the box of materials defense counsel has declined to view.  These date books

also contain  numerous personal entries irrelevant to this case, such as the unlisted home and cell

telephone numbers of Mr. Kennedy's customers, the dates of Ms. Kennedy's menstrual cycles

and other similar personal and private information.  Much of this information is not only irrelevant to this lawsuit but could be highly embarrassing, especially if posted on a police department bulletin board, as Ms. Kennedy reasonably fears.  Thus, plaintiffs' request that these date books be limited by a confidentiality agreement is hardly unreasonable and certainly does not impair the defendants' ability to obtain any relevant discovery that might be contained in the scribbled notes on Mrs. Kennedy's date books.

6. **Improper deposition questions**: Jumbled with the request to compel production of documents are requests by the defendants to compel answers to questions that are not likely to lead to admissible or relevant information and likely to lead to further harassment and thus improper deposition questions.

These questions seek plaintiff Michelle Kennedy's home address, unlisted home phone number, social security number and whether she is "presently enrolled in a methadone clinic".

These questions are asked in the context of years of harassment of the plaintiffs by the defendant police officers.  Indeed, the gravamen of the plaintiffs' damages is that they were forced to move from their home town of Billerica due to harassment by the defendants.  Efforts to keep their home address hidden from the defendants have, in any event failed, as defendants have driven by the plaintiffs' present home in a threatening enough manner to warrant issuance of a restraining order from this Court. [See Docket #s 26 and 34]

Moreover, each defendant has refused to give his address, telephone number or social security number at deposition, claiming a theoretical rather than any actual fear of harassment.  On the other hand, the plaintiffs' fear of harassment is not theoretical, but quite real, as evidenced by this Court's issuance of a protective order due to ongoing harassment.

The plaintiffs have a right to privacy that includes their social security number and home phone number. While there are circumstances where the disclosure of a social security number is sufficiently warranted to overcome the plaintiffs' right to privacy, the defendants must show a strong and valid reason for intruding upon the plaintiff's privacy rights before social security numbers may be disclosed. See _Aronson v. I.R.S._, 767 F.Supp. 378 (D.Mass. 1991) (citing _Whalen v. Roe_, 429 U.S. 589, 605, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977)), _Fiumara v. Higgins_, 572 F.Supp. 1093, (Dis.N.H., 1983), _Krebs v. Rutgers_, 797 F.Supp. 1246 (D.N.J.1992), _Sherman v. U.S. Dept. of Army_, 244 F.3d 357 (C.A.5 (Tex.) 2001)

Here the defendants have offered no reason why they need the plaintiffs' social security numbers. In fact, they have her social security number, and her husband's, as it is on the first page of their CORI criminal history reports, of which there are multiple copies amidst the over 4,500 Bates stamped pages of apparently random documents the defendants have produced in discovery. Thus, in balancing the discovery needs of the defendants (which appear to be none) with privacy rights of the plaintiffs, the defendants have no basis for seeking the plaintiffs' social security numbers — or home phone numbers, for that matter.[3]

The only remaining deposition question she has not answered is regarding her treatment at a methadone clinic. The blame is not hers but her attorney's, as she and he both were caught off guard by a question out of the blue and the instinctive response of her attorney, the

---

[3]Indeed within days of disclosing her present employer at the second day of her deposition on July 12, 2006, Ms. Kennedy's employer has started receiving anonymous phone calls alluding to Ms. Kennedy's "criminal" past, raising problems for her at her present job, as a home care provider for the elderly. She has not disclosed her present employer to anyone, except to answer the question at her deposition. This is exactly the kind of harassment that is the subject of her §1983 claim. Defense counsel dismissed this as fabricated when undersigned counsel raised it as further basis for the need for a protective order.

undersigned counsel, was that the question raised 5th amendment concerns. Upon investigation, undersigned counsel now understands that not only is there no 5th amendment problem: the answers to the questions are helpful to the plaintiffs' claims.

Ms. Kennedy already has agreed to return for a **third** day of deposition, notwithstanding the seven (7) hour limit imposed by the rules, and is willing to answer questions regarding the methadone treatment, **subject to an appropriate protective order** that the answers be sealed and treated as confidential and not disclosed to any of the 28 defendant officers except as needed for defense in this litigation.

## II. APPROPRIATE RELIEF

Plaintiffs respond as follows to the defendants' six (6) requests for relief:

1. That the plaintiff, Michelle Kennedy, be ordered to immediately produce all records and documents requested within this motion.

This request should be denied as premature at best. Where some of the documents requested in this motion have been produced already, where others have never been requested before the defendants' motion, where others are subject to requests for production of documents not yet due and where others are available for inspection, if the defendants agree to an appropriate confidentiality agreement to limit the use of those items, the Court should order the defendants to itemize any documents they seek not provided in response to document requests or once the confidentiality agreement is signed.

2. That Plaintiff, Michelle Kennedy be ordered to appear at a deposition and to testify fully and completely about the subjects listed herein above, including but not limited to about whether she is presently enrolled in a methadone clinic; where she and her family (the other plaintiffs) live; her social security number; whom and where she is/has been employed; and her telephone numbers.

Plaintiff already has agreed to appear for deposition for a third day and is offering and agreeing herein to answer questions about her methadone treatment **subject to an appropriate protective order**, as set forth above.  [Ex. 3A., p. 30, dep. Page 226, to Defendants' motion, where defendants counsel suspends the deposition generally, to be resumed for a third day, without objection]

However, for the reasons stated above, and for the same reasons defendants refuse to divulge their home addresses, plaintiffs seek an order that they need not provide their home address, telephone number or social security numbers.

Plaintiff Michelle Kennedy has responded to deposition questions about her employment, to her detriment.

3.  That the plaintiff's attorney be ordered to refrain from advising the Plaintiff not to answer questions regarding her personal life including but not limited to about whether she is presently enrolled in a methadone clinic; where she and her family (the other plaintiffs) live; her social security number; whom and where she/he has been employed; and her telephone numbers, and that any further advice of counsel instructing the plaintiff Michelle Kennedy not to answer questions, or the refusal of the Plaintiff Michelle Kennedy to answer questions, will result in further sanctions including precluding the Plaintiff from offering any evidence to each of the subject areas for which she refused to testify.

This requests is moot, given the resolution of the first two requests.

4.  That the plaintiff, Michelle Kennedy, pay for the costs of the transcripts of this further deposition.

Where plaintiff already agreed to a third day of deposition, to answer further questions unrelated to "methadone" or anything else raised in defendants' motion to compel, there is no additional cost to be incurred.

5. That the plaintiff, Michelle Kennedy, pay the attorney's fees, incurred by defendants' counsel for attendance at a further deposition.

To the contrary, defendants should pay for he attorneys fees in responding to this largely frivolous motion, rendered necessary in large part by defendants' continued harassment of the plaintiff, in calling her present employer with veiled references about the plaintiff's criminal past. As for the cost of defense counsel appearing at a third day of deposition: it is not the fault of plaintiff or her counsel that defendants require three days (in violation of local rules) to depose the plaintiff, but plaintiff Michelle Kennedy has already agreed to appear for a third day of deposition, for reasons unrelated to the questions at issue in this motion.

Consequently, if any costs are to be awarded, it should be to the plaintiffs, for having to answer the defendants motion to compel, brought before any meaningful Rule 7.1 communications that would have resolved all of the defendants' discovery complaints, again raising the question of the defendants' real motive in bringing their motion.

6. That the plaintiff, Michelle Kennedy, pay the attorneys' fees and costs associated with the filing of presentation of the present motion. [sic]

Given that the defendants failed to comply with the requirement of Rule 7.1 that they attempt first to resolve discovery disputes directly with counsel, and given plaintiffs' responses herein, defendants should pay plaintiffs' cost in defending what is at best an unnecessary motion.

## III. <u>PROTECTIVE ORDER</u>

During the time plaintiff has spent preparing this opposition, plaintiff has requested that the defendants agree to a protective order limiting the use of photographs, personal papers and other items that the plaintiffs have made available but which defense counsel have declined to come and view. Defense counsel has refused this request.

Plaintiffs file herewith a proposed protective order and seek an order from the Court imposing it.  Plaintiffs note that it is adapted from a confidentiality agreement in a similar police misconduct claim and the original templates are the protective orders promulgated by the office of defense counsel and by the City of Boston before producing police defendant personnel files.

Respectfully submitted,
Brian Kennedy, et al
by their counsel


Date: <u>August 10, 2006</u>                    __/s/Andrew M. Fischer_____
Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904
afischer@jasonandfischer.com

kennedy\oppmotocompel

-10-