UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-CV-12357-PBS

BRIAN KENNEDY AND MICHELLE KENNEDY, )
Individually and as mother and next friend of )
BRIAN KENNEDY, Jr. Individually and as mother and )
next friend of MITCHELL KENNEDY and Individually and as )
mother and next friend of DYLAN KENNEDY, )
         Plaintiffs )
VS. )
 )
TOWN OF BILLERICA, DANIEL C. ROSA, JR. )
Individually and as Chief of the Billerica Police Department, )
JOHN BARRETTO, Individually and as former Chief of the )
Billerica Police Department, PAUL W. MATTHEWS, )
Individually and as former Chief of the Billerica Police )
Department, ROBERT LEE, Individually and as former )
Deputy Chief of the Billerica Police Department, THOMAS )
CONNORS, FRANK A. MACKENZIE, RICHARD )
RHONSTOCK, ROBERT BAILEY, JONN ZARRO, MARK )
TSOUKALAS, TARA CONNORS, MARTIN E. CONWAY, )
ANDREW DEVITO, RICHARD HOWE, STEVEN ELMORE, )
WILLIAM MCNULTY, DONALD MACEACHERN, )
MICHAEL A. CASEY, RICHARD NESTOR, ROBERT )
BROWN, WILLIAM G. WEST, GREGORY KATZ, )
GERALD B. ROCHE, BRIAN MICCICHE, WILLIAM )
MCNULTY, SCOTT PARKER, ALAN MUNN, TIMOTHY )
F. MCKENNA AND JOHN DOE, )
         Defendants )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING INAPPROPRIATE CONTACT WITH WITNESSES BY THE DEFENDANT POLICE OFFICERS AND FOR SANCTIONS**

The Defendants in the above-referenced matter oppose the Plaintiffs' Motion for this Court to issue a Protective Order barring individual Defendants from directly contacting or communicating with any witness listed on the Plaintiffs' Automatic Disclosure on the grounds that no such order is necessary or warranted.

Federal Rule of Civil Procedure Rule 26(b) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in

the pending action. Further, the Advisory Committee notes for Federal Rule 26 describe the purpose of discovery "to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case". Any party in an action has a right to obtain witness statements. This clearly is the intent of the Federal Rules of discovery and the purpose of the duty for each side to list the names and addresses of their respective witnesses.

In this motion, the Plaintiffs allege a pattern and practice by the Defendants of contacting and intimidating witnesses. There is absolutely no factual support for such an allegation. In fact, depositions of two of the witnesses named by the Plaintiffs as having been intimidated have been taken and the witnesses report the opposite. The Plaintiffs have produced no documents and/or affidavits to support any of their contentions with their motion. The allegations and premises put forth by Plaintiffs' counsel that each of "their" witnesses was prepared to provide testimony favorable to the Plaintiffs until being contacted by individual Defendants "acting in concert" has absolutely no factual support.

The Plaintiffs have filed this action against some 28 named Defendant police officers spanning conduct which allegedly occurred over a period of some 15 years (and continuing). The plaintiffs have named 129 witnesses to these alleged events. Given the fact that the plaintiffs have named 29 individual defendants, including the current Chief and Deputy Chief of police, it is virtually impossible for the named defendants not to have contact with any of the named witnesses. Further, many of the witnesses have had regular negative contact with law enforcement, and are likely to have such contact again.

The Plaintiffs have named four witnesses and made allegations of improper contact and influence by the police. The Defendants will address each witness in turn:

2

1. Ray Trainor

The Plaintiffs tell a story in their motion regarding an alleged conversation and threats against Mr. Trainor by Deputy Chief Connors. This alleged contact first came to the attention of the Defendants when the Plaintiffs filed a Motion for Restraining Order by all Plaintiffs dated June 8, 2006, in which they alleged that Mr. Trainor had been threatened with death if he helped them. In response, counsel for the Defendants and some of the Defendants contacted Mr. Trainor. He vehemently denied that he had been threatened and agreed to come to this Court to testify before Judge Saris that he had not been threatened. Sadly, the Judge declined to hear Mr. Trainor at that time. Fortunately, Mr. Trainor was deposed on June 27, 2006. The Defendants attach the entire deposition of Mr. Trainor to this opposition as Exhibit "A". Within that deposition, Mr. Trainor testified that he had agreed to come to this Court to testify that he had never been threatened because the allegation was "completely false". Deposition of Ray Trainor, hereinafter, "RT", page 19. He testified that he had allowed the plaintiffs to pretend that they were living at his address so that they could send their kids to the Billerica schools even though they did not live in the Town. He said that they had never slept at his house but would "sneak in at five in the morning and go stand out front for the bus in case someone was coming by". RT pages 44, 45. Mr. Trainor graphically denied any threats against him throughout the deposition. At one point, he testified that "I can't wait to get on the stand and point right at her and call her a liar for using my name and making these false accusations against me" RT pgs 113,114.

A review of this deposition clearly establishes that there was no undue influence by the Defendants on Mr. Trainor and the fact that the only reason he was contacted by the Defendants was because the Plaintiff had accused Deputy Chief Connors of threatening Murder.

2. John and Teddy Gallinano

In terms of John and Thomas Gallinaro, the Plaintiffs apparently believe that Thomas "Teddy" Gallinaro would be able to testify to some event back in 1991 involving Defendant Officer Frank MacKenzie and other Billerica Police Officers. The Plaintiffs, Brian and Michelle Kennedy, recently stopped by John Gallinaro's house and told him that his brother Teddy had better do the right thing. (See copy of interview report of John Gallinaro, attached hereto and marked Exhibit "B"). According to the statement, the purpose of the Kennedy visit was to send a message to Gallinaro's brother. Again, other than asserting the Plaintiffs' belief as to what a witness might say, there is no evidence that any of the Gallinaros were threatened or promised anything by the Defendants.

3. Amy Baum

As to Amy Baum, the Plaintiffs deposed her on October 12, 2006. She testified that she now lives in Winchendon because she wanted to get away from the Plaintiffs. She stated that she was asked by Michelle and Brian Kennedy to speak to their lawyer and give a statement regarding Deputy Connors which was not accurate. She testified that she called Deputy Connors and offered to speak to him to tell the truth. She did so. She testified that she is in fear of Michelle Kennedy and her live in friend, William Ashton. She said that she was afraid that these two would hurt her because she was not "supporting them". The Defendants will be happy to provide the transcript of Ms. Baum's testimony as soon as it is ready.

4. Tracey Heffernan

As to Tracey Heffernan, the Defendants have provided statements concerning Tracey Heffernan and the Plaintiffs. In fact, these statements were provided to the Plaintiffs in December 2005. In 2006, the Plaintiffs sought original signatures of Ms.

4

Heffernan in the possession of the Billerica Police. In response, Attorney Kesten spoke to Plaintiffs' counsel and indicated that he wished to talk to Ms. Heffernan to ascertain whether she agreed that the documents should be produces. Plaintiffs' counsel indicated that she would not. Chief Rosa spoke to Ms. Heffernan and asked her to speak to Attorney Kesten. She agreed to do so and she spoke to Attorney Kesten on the telephone and agreed to meet with him in Billerica on Labor Day, September 4, 2006. At that meeting, she indicated that she did not wish that the documents be produced. During the meeting, she indicated that she was in regular communications with Michelle Kennedy, indeed, during the Labor Day meeting she informed Attorney Kesten that she would call Michelle during the meeting, she dialed her phone, spoke to someone, and informed Attorney Kesten that she had spoken to Michelle Kennedy during that conversation.

The only reason that the Billerica Police contacted Tracey Heffernan was because the Plaintiffs wanted sensitive documents which had her signature on them. Attorney Kesten asked both Plaintiffs' counsel and the Police Chief whether he could speak to her before he would produce the documents. That was the only reason that the police contacted Ms. Heffernan. We believe that she was happy that we did. See Affidavit of Leonard Kesten, attached as Exhibit "C".

## CONCLUSION

The Plaintiffs have made serious allegations against police officers accusing them of witness intimidation. There is absolutely no support for such an outrageous allegation. The Defendants are entitled to prepare their case as they see fit. This may include helping their lawyers contact witnesses. The Defendants ask that the court deny this Motion, or, in the alternative, hold an evidentiary hearing, including hearing

testimony of the witnesses. The Defendants are confident that if the court does so, it will be quite apparent that these allegations are wholly false and should never been made.

Wherefore, the Defendants request that the Plaintiffs' Motion for a Protective Order be denied.

Respectfully submitted,
DEFENDANTS,
By their attorneys,

/s/ Jeremy Silverfine
Jeremy I. Silverfine, BBO No. 542779
Leonard H. Kesten, BBO No. 542042
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: October 13, 2006