Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO. 04-CV-12357-PBS

-------------------------------

BRIAN KENNEDY AND MICHELLE Y. KENNEDY,
Individually and as Mother and Next Friend
of BRIAN KENNEDY, Individually and as
Mother and Next Friend of BRIAN KENNEDY JR.,
                Plaintiffs

     -vs-

TOWN OF BILLERICA, DANIEL C. ROSA, JR.,
Individually and as Chief of the Billerica
Police Department, JOHN BARRETTO,
Individually and as former Chief of the
Billerica Police Department, PAUL W.
MATTHEWS, Individually and as former Chief
of the Billerica Police Department, ROBERT
LEE, Individually and as former Deputy Chief
of the Billerica Police Department, THOMAS
CONNORS, FRANK A. MACKENZIE, RICHARD
RHONSTOCK, ROBERT BAILEY, JOHN ZARRO,
MARK TSOUKALAS, TARA CONNORS, MARTIN E.
CONWAY, ANDREW DEVITO, RICHRD HOWE, STEVEN
ELMORE, WILLIAM MCNULTY, DONALD MACEACHERN,
MICHAEL A. CASEY, RICHARD NESTOR, ROBERT
BROWN, WILLIAM G. WEST, GREGORY KATZ,
GERALD B. ROCHE, BRIAN MICCICHE, WILLIAM
MCNULTY, SCOTT PARKER, ALAN MUNN, TIMOTHY F.
MCKENNA AND JOHN DOE,
                Defendants

-------------------------------

DEPOSITION OF MICHELLE Y. KENNEDY
VOLUME II

     Deposition taken at the law offices of
Brody, Hardoon, Perkins & Kesten, One Exeter
Plaza, 12th Floor, Boston, Massachusetts, on
Wednesday, July 12, 2006, commencing at 11 a.m.

     DUNN & GOUDREAU COURT REPORTING SERVICE, INC.
     ONE STATE STREET, BOSTON, MASSACHUSETTS 02109

---

Page 2

APPEARANCES:

For the Plaintiff:

Jason & Fischer
By ANDREW M. FISCHER, ESQ.
47 Winter Street, 4th Floor
Boston, Massachusetts 02108

For the Defendant:

Brody, Hardoon, Perkins & Kesten
By JEREMY SILVERFINE, ESQ.
And KAREN PETERS, ESQ.
One Exeter Plaza, 12th Floor
Boston, Massachusetts 02116

Also Present: Daniel C. Rosa, Jr.

Court Reporter: Anne F. Penn, C.S.R., R.P.R.

---

Page 3

INDEX

WITNESS                                PAGE
MICHELLE Y. KENNEDY

Examination by MR. SILVERFINE            4

EXHIBITS
NO.     DESCRIPTION                    PAGE
1       Deposition Transcript            5

---

Page 4

P-R-O-C-E-E-D-I-N-G-S
S-T-I-P-U-L-A-T-I-O-N

It is hereby stipulated and agreed by and between counsel for the respective parties that the deposition may be signed under the pains and penalty of perjury and that the filing of said deposition in court is waived.

It is further stipulated that all objections, except as to the form of the question, and all motions to strike are reserved until the time of trial.

----

MICHELLE Y. KENNEDY
having been duly sworn, after producing acceptable identification, was deposed and testified as follows:

E-X-A-M-I-N-A-T-I-O-N
BY MR. SILVERFINE:

Q  Good morning, Ms. Kennedy. We're here to continue your deposition today, and the same ground rules apply that we spoke about last time you appeared in this office on January 6, 2006. Okay?
A  (Nods head.)
Q  If at any point in time you don't understand

Page 13

1   aid because your husband had hit you or done
2   something to you?
3  A  Yes.
4  Q  Okay. And how many times did you call Tewksbury?
5  A  I don't recall.
6  Q  Okay. Did some of the complaints involve you
7   being beaten up by Brian Kennedy?
8  A  Maybe once or twice.
9  Q  Okay. And what years did that occur?
10 A  I don't recall.
11 Q  And did your husband hit you?
12 A  Yes.
13 Q  Okay. And you reported that to the police?
14 A  Uh-hum, yes.
15 Q  And was your husband prosecuted for that?
16 A  Yes.
17 Q  All right. What happened when he was prosecuted?
18 A  He admitted to his wrongdoing, you know, and never
19   denied it and maybe got put on probation.
20 Q  Did he ever go to jail for this?
21 A  No.
22 Q  Did you go to court and testify?
23 A  I did.
24 Q  And did you ask the court to impose a sentence?

Page 14

1   In other words, did you say he hit me, words to
2   that effect?
3  A  Yes. Well, I didn't have to, he admitted to it.
4  Q  Okay. And were there occasions when you wanted
5   Brian Kennedy out of the home?
6  A  Just for the night until things calmed down.
7  Q  Okay. And did you in fact report that to the
8   police as well?
9  A  Yes.
10 Q  All right. How many times did you ask him to get
11   out of the house with the assistance of the
12   police?
13 A  Again, approximately three maybe.
14 Q  Okay. And this is all with Tewksbury?
15 A  (No response.)
16 Q  Anyplace else?
17 A  Billerica.
18 Q  Okay. How many times did you call Billerica for
19   assistance with a domestic relations incident?
20 A  Well, I think I always, they both always came
21   because I lived right on the line.
22 Q  Okay. And did you ever request a Restraining
23   Order against your husband?
24 A  I don't recall.

Page 15

1  Q  Do you know what a Restraining Order is?
2  A  Yah, you go in front of a judge. Yah, I honestly
3   don't ever remember that.
4  Q  You don't recall ever requesting a 209 A against
5   Brian Kennedy?
6  A  I don't, no.
7  Q  Okay. Would it surprise you if you did?
8  A  Yes, it would.
9  Q  Okay. So just so I understand your testimony
10   today is that it would surprise you if you ever
11   requested a 209 A order against your husband?
12 A  Yes.
13 Q  Okay. And you're saying that never happened?
14 A  That I can recall.
15 Q  Okay. How long a period of time from the
16   beginning of time that you've been involved with
17   Mr. Brian Kennedy until the present, what stretch
18   of time has Mr. Kennedy done any type of violence
19   against you?
20   MR. FISCHER: Objection.
21 A  It's been 14 years, maybe once in 14 years.
22 Q  Once in 14 years?
23 A  Yah, approximately.
24 Q  All right. And when is the last time you recall

Page 16

1   having to report him to police authorities?
2  A  It was in the '90's.
3  Q  In the '90's?
4  A  I believe so.
5  Q  What year was that?
6  A  I don't remember.
7  Q  Okay. Do you recall ever having to report that
8   Brian Kennedy violated a Restraining Order to the
9   police?
10 A  Maybe, there's -- I don't remember at this time.
11 Q  Is there anything affecting your memory today?
12 A  No, nothing.
13 Q  Are you on any medication?
14 A  No.
15 Q  Have you taken any drugs or alcohol?
16 A  No.
17 Q  Are you presently in a Methadone clinic?
18   MR. FISCHER: Objection. Do you want to talk
19   to me about that?
20   THE WITNESS: Yes.
21   MR. SILVERFINE: There is a standing question
22   before the witness, and you know the rules.
23   MR. FISCHER: Well, if there is a Fifth
24   Amendment issue, she's entitled to talk to

4 (Pages 13 to 16)

Page 17

1  counsel.
2      MR. SILVERFINE: She hasn't -- I think she has
3  to answer the question first before. I think
4  that's the rules. There is a standing question
5  before the witness.
6      THE WITNESS: Can I talk to you?
7      MR. FISCHER: She would like to talk to me
8  first.
9  Q  Do you understand my question?
10 A  Yes.
11 Q  Okay. Are you pleading the Fifth on my question?
12 A  I don't understand what pleading the Fifth means.
13     MR. SILVERFINE: Okay. Why don't you go speak
14 to Mr. Fischer. There is a standing question for
15 the record before you. Go speak to your counsel,
16 and then come back in.
17     (Discussion was held off the record.)
18 Q  Mrs. Kennedy, could you answer the last question I
19 asked you.
20     MR. FISCHER: She's been advised, not by me,
21 that she's not obligated to answer that question
22 without a court order. And I suggest you get a
23 court order.
24     MR. SILVERFINE: I'm going to have to get a

Page 18

1  court order.
2  Q  So you understand what this means is we will not
3  be finishing this deposition today, we'll be
4  suspending again because I believe there is
5  information pertinent to this case which has
6  direct relevance that I'll be seeking a court
7  order from your --
8  A  Okay.
9  Q  -- opposition as put forth by Mr. Fischer today to
10 compel an answer.
11 A  Okay.
12 Q  You understand?
13 A  Yes.
14 Q  Okay.
15     MR. FISCHER: As I've indicated, the advice is
16 not from me.
17     MR. SILVERFINE: Well, she is -- she has to
18 answer the question.
19 Q  Are you refusing to answer the question so the
20 record is clear?
21 A  Yes.
22 Q  Okay. And based upon advice of at least
23 Mr. Fischer or counsel today, you're not answering
24 my question?

Page 19

1  A  No.
2      MR. FISCHER: No, that's not correct.
3  A  I knew when I came here --
4      MR. FISCHER: Don't answer anything else.
5  She's not answering the question.
6      THE WITNESS: It has nothing to do with him.
7  Q  You're obligated to answer -- I'm going to quote
8  Mr. Fischer on this. You're obligated to answer
9  my questions unless there is a specific privilege
10 you're asserting, so that's the problem here.
11     MR. FISCHER: She's claiming such a privilege.
12 Q  Okay. What privilege so the record is clear are
13 you asserting?
14     MR. FISCHER: To answer the question would
15 waive the privilege.
16 Q  All right. You need to assert -- what are you
17 asserting that you're refusing to answer the
18 question so the record is clear when I go before
19 the court?
20 A  I don't know what you're saying.
21     MR. FISCHER: As I said on the record, I think
22 it's adequately clear, she's been advised that the
23 question is an improper question short of a court
24 order.

Page 20

1      MR. SILVERFINE: Okay. I respectfully
2  disagree with that.
3      MR. FISCHER: Can I ask, do you have any
4  reason -- any basis for thinking that she's in a
5  Methadone clinic?
6      MR. SILVERFINE: You can't ask me a question;
7  but I think the answer is self-evident by that
8  your client is not responding to my question.
9      MR. FISCHER: If there is a basis for thinking
10 so, then that should have been disclosed in
11 discovery.
12     MR. SILVERFINE: I respectfully disagree. And
13 I think you know as well as I do that I am
14 entitled to ask this question. And I'm going to
15 object to your statement on the record and your
16 inferences thereof. We'll take this up with the
17 court.
18 Q  For the record, is your husband Brian Kennedy in a
19 Methadone clinic as well?
20     MR. FISCHER: Same answer, same objection.
21 Q  So I'm clear on the record, are you refusing to
22 answer that question as well, Mrs. Kennedy?
23 A  Yes.
24 Q  Okay. Have you been involved in the sale or

5 (Pages 17 to 20)

DUNN & GOUDREAU

### Page 21

1  distribution of any narcotics during the past 15
2  years to encompass your complaint?
3      MR. FISCHER: I'm going to instruct the
4  witness not to answer that question on the grounds
5  that it may incriminate -- may violate her Fifth
6  Amendment right not to incriminate.
7  Q  Are you taking the Fifth Amendment privilege on
8     that question?
9  A  Yes.
10     MR. SILVERFINE: Okay.
11     MR. FISCHER: Let me have a moment with the
12  witness.
13     MR. SILVERFINE: You're again coaching the
14  witness. This is the second time you're coaching
15  the witness.
16     THE WITNESS: I don't know what Fifth
17  Amendment means.
18     MR. FISCHER: I'm not coaching the witness. I
19  may waive the privilege. I'm entitled to confer
20  with the witness.
21     MR. SILVERFINE: I haven't said you can't
22  confer. I just want to get a response from the
23  witness, and you won't let the witness respond as
24  to my inquiry. You certainly can put on the

### Page 22

1  record what you want. You certainly can confer
2  with her, by all means, go ahead. You keep
3  interrupting me, and you did this last time as
4  well. Go ahead and confer.
5      (Discussion was held off the record.)
6      (The last question was read.)
7      (The last answer was read.)
8      MR. FISCHER: I'll withdraw the instructions
9  to the witness not to answer the question. I
10  object to the question as neither relevant or
11  probative nor likely to lead to relevant
12  information and inappropriate.
13 Q  Do you understand the question?
14 A  Can you say it again, please.
15 Q  Sure. I asked you if you were involved in the
16    sale and/or distribution of any narcotic
17    substances over the last 15 years to encompass
18    your complaint that's the subject matter of this
19    deposition.
20 A  Never.
21 Q  Okay. How about your husband Brian Kennedy?
22 A  Not to my knowledge.
23 Q  How about Billy Ashton?
24 A  Same, not to my knowledge.

### Page 23

1      MR. SILVERFINE: Okay. For the purposes of
2  the record, I'm going to ask the Court Reporter
3  just take the Exhibit 1 and transfer it to the
4  full transcript with pages on both sides.
5  Q  I put a copy in front of you. Okay.
6     Mrs. Kennedy, I may have asked this earlier, but
7     has your husband besides what you've referenced
8     before, has he been violent to you over the past
9     15 years?
10 A  Within the last 15 years?
11 Q  Yes.
12 A  Uhm --
13     MR. FISCHER: Objection, asked and answered.
14 Q  You can answer.
15 A  Just maybe a push like once, maybe twice at the
16    most.
17 Q  Okay. Did he ever hit you on the head with a
18    bottle?
19 A  Yes.
20 Q  Has he ever hit you or struck you with anything
21    else besides a bottle?
22 A  No, but that was before 15 years ago.
23 Q  Okay. When was that?
24 A  That was I believe the summer that I met

### Page 24

1     Frank MacKenzie, which is '91 maybe.
2  Q  Okay. And have you ever been hospitalized as a
3     result of the actions by your husband Brian
4     Kennedy against you?
5  A  Just that one time.
6  Q  What happened that one time?
7  A  He hit me with a bottle.
8  Q  Did you go to the hospital?
9  A  I did.
10 Q  What kind of injuries did you suffer?
11 A  Stitches.
12 Q  What hospital did you go to?
13 A  I don't remember.
14 Q  You don't remember?
15 A  (Shakes head.)
16 Q  Who is your primary care physician?
17 A  I don't have one right now.
18 Q  You don't have one right now?
19 A  No.
20 Q  What happens if you get hurt?
21 A  I go to the hospital.
22 Q  Which hospital is that?
23 A  There's three in Lowell.
24 Q  Which one would you go to?

**Page 25**

1  A   I go to either or.
2  Q   Tell me the names of the hospitals.
3  A   Saints Memorial and Lowell General.
4  Q   Does your husband have a primary care physician?
5  A   He does.
6  Q   What's the name of his primary care physician?
7  A   I'm not sure of the name.
8  Q   You don't know the name?
9  A   I don't.
10 Q   You've been married how long, ma'am?
11 A   1988.
12 Q   And who is your children's primary care physician?
13 A   Dr. Goldfarb.
14 Q   Where are his offices?
15 A   Burlington, Mass.
16 Q   How many Restraining Orders do you recall getting
17     against Brian Kennedy?
18 A   I don't recall ever getting a Restraining Order
19     against him.
20 Q   Are you saying that didn't happen?
21     MR. FISCHER: Objection, asked and answered.
22 Q   You can answer.
23 A   What did you say?
24 Q   Are you saying that didn't happen?

**Page 26**

1  A   I don't remember it happening.
2  Q   When are you saying to the best of your memory
3      today that you had a violent interaction with
4      Brian Kennedy that required you to call the
5      police?
6      MR. FISCHER: Objection, asked and answered.
7  A   It was around the year that Lieutenant Connors'
8      badge got stolen, around that time.
9  Q   Well, what year is that, ma'am?
10 A   I don't recall off the top of my head right now.
11 Q   You don't recall off the top of your head?
12 A   No.
13 Q   You just suffer from bad memory or --
14 A   So many incidents.
15     MR. FISCHER: Objection, argumentative.
16 Q   So many incidents?
17 A   So many.
18 Q   But those notes you've kept outlined this, right?
19 A   Not all of them.
20 Q   Not all of them. So how do you remember all of
21     these things?
22 A   I remember a lot of them.
23 Q   You do, okay. By the way, the last time you were
24     here, you were talking about all these videos that

**Page 27**

1      you've taken.
2      MR. FISCHER: Objection.
3  A   Yes.
4  Q   Have you produced all the videos to us?
5  A   I produced not all of them.
6  Q   Not all of them. Why is it you haven't produced
7      all of them?
8  A   Haven't had time.
9  Q   You haven't had time?
10 A   (Shakes head.)
11 Q   Okay. How many videos are out there that you
12     haven't produced to the Defendants?
13 A   Just a couple more maybe.
14 Q   A couple more. What's the dates of those videos,
15     ma'am?
16 A   I don't remember.
17 Q   You don't remember. Where are those videos kept,
18     ma'am?
19 A   They're at my house.
20 Q   Okay. And are they in a box?
21 A   They're in the safe I believe.
22 Q   And is there any reason why you haven't produced
23     that to us, ma'am?
24     MR. FISCHER: Can I --

**Page 28**

1  Q   Is there any reason you haven't produced those,
2      ma'am?
3  A   William Ashton has them.
4  Q   William Ashton has lived with you for how long,
5      ma'am?
6  A   On and off for a lot of years.
7  Q   And you also mentioned last time you were here you
8      had three audio tapes, remember that, the last
9      time you were here for your deposition?
10 A   Audio as in sound?
11 Q   Yes.
12 A   Yes.
13 Q   Any reason why you haven't produced two of those
14     audio tapes to us, ma'am?
15 A   I did.
16 Q   Well, you've only produced one audio tape.
17 A   I actually produced a couple. I don't know.
18 Q   So you're saying that your counsel hasn't produced
19     to us all of the audio tapes, is that right?
20 A   I just produced them.
21 Q   When did you just produce them?
22 A   Right before 4th of July.
23 Q   Right before 4th of July.
24 A   Maybe right after.

Page 225

1  A   Billerica.
2  Q   Which Officer?
3  A   The Chief.
4  Q   Chief Rosa?
5  A   Yes.
6  Q   When did you make that accusation?
7  A   The Deanne Misoni incident.
8  Q   Dean --
9  A   Deanne Misoni incident.
10 Q   Deanne Misoni. When was that inside?
11 A   It was in November.
12 Q   Of?
13 A   I don't remember the year.
14 Q   Did you ever make that accusation against a
15     New Hampshire officer?
16 A   I don't believe so, no.
17 Q   Was the Deanne Misoni incident in 2001?
18 A   Let's see --
19     MR. FISCHER: Is that it?
20 A   Yes, it was in November of 2001.
21 Q   Okay. And is that, when you're referring to that,
22     are you referring to paragraph 91?
23 A   Yes.
24 Q   Okay. Are you saying under oath today that you

Page 226

1      never made an accusation against any other officer
2      in this state or any other state about touching
3      your breast?
4  A   I don't ever remember that, no.
5  Q   Whether it be State Police, local police, any
6      other officer.
7  A   Just this. I've talked about this incident to
8      people.
9      MR. SILVERFINE: All right. Why don't we
10     break now. We'll suspend, and we'll hopefully
11     come back with my -- and finish up another day.
12     COURT REPORTER: Mr. Fischer, would you like a
13     copy?
14     MR. FISCHER: And a mini and a disk; and if
15     you could get me a disk of the first day of this
16     deposition. I know it wasn't you.
17     (Whereupon, the deposition was closed
18     at 4:40 p.m.)
19     ----

Page 227

CERTIFICATE OF WITNESS

I, MICHELLE Y. KENNEDY, do hereby certify
under the pains and penalty of perjury that I have
read the foregoing transcript of my testimony, and
further certify that said transcript is a true and
accurate record of my testimony given under oath
(including any and all corrections that may appear
below.)

Page:      Line Number:
Correction/Deletions:
Reason:

Page:      Line Number:
Correction/Deletions:
Reason:

Page:      Line Number:
Correction/Deletions
Reason:

Page:      Line Number:
Correction/Deletions:
Reason:

Page:      Line Number:
Correction/Deletions:
Reason:

Page:      Line Number:
Correction/Deletion
Reason:

Signed under the pains and penalty of perjury
this       day of            .

Page 228

COMMONWEALTH OF MASSACHUSETTS

I, Anne F. Penn, a Certified
Shorthand Reporter and Notary Public in and
for the Commonwealth of Massachusetts, do hereby
certify that the foregoing deposition was taken
before me on the ___ day of _____, 2006;

That the witness named in the
deposition, prior to being examined, was by me
first duly sworn;

That said deposition was taken before
me at the time and place herein set forth, and
was taken down by me in shorthand and
thereafter transcribed into typewriting under
my direction and supervision;

That said deposition is a true record
of the testimony given by the witness and of
all objections made at the time of the
examination.

I further certify that I am neither
counsel for nor related to any party to said
action, nor in any way interested in the
outcome thereof.

IN WITNESS WHEREOF, I have subscribed my
name and affixed my seal this ___ day of _____,
2006.

Anne F. Penn, C.S.R., R.P.R.
Notary Public
Massachusetts
My Commission Expires:
July 10, 2007