UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:  04-CV-12357-PBS

BRIAN KENNEDY AND MICHELLE KENNEDY,   )
Individually and as mother and next friend of   )
BRIAN KENNEDY, Individually and as mother and   )
next friend of BRIAN KENNEDY, JR.,   )
                            Plaintiffs   )
                               )
VS.   )
      )
TOWN OF BILLERICA, DANIEL C. ROSA, JR.   )
Individually and as Chief of the Billerica Police Department,   )
JOHN BARRETTO, Individually and as former Chief of the   )
Billerica Police Department, PAUL W. MATTHEWS,   )
Individually and as former Chief of the Billerica Police   )
Department, ROBERT LEE, Individually and as former   )
Deputy Chief of the Billerica Police Department, THOMAS   )
CONNORS, FRANK A. MACKENZIE, RICHARD   )
RHONSTOCK, ROBERT BAILEY, JONN ZARRO, MARK   )
TSOUKALAS, TARA CONNORS, MARTIN E. CONWAY,   )
ANDREW DEVITO, RICHARD HOWE, STEVEN ELMORE,   )
WILLIAM MCNULTY, DONALD MACEACHERN,   )
MICHAEL A. CASEY, RICHARD NESTOR, ROBERT   )
BROWN, WILLIAM G. WEST, GREGORY KATZ,   )
GERALD B. ROCHE, BRIAN MICCICHE, WILLIAM   )
MCNULTY, SCOTT PARKER, ALAN, TIMOTHY   )
F. MCKENNA AND JOHN DOE,   )
                            Defendants

**DEFENDANTS, FRANK A. MACKENZIE, STEVEN ELMORE, AND MICHAEL A. CASEY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

      The defendants Frank A. MacKenzie ("MacKenzie"), Steven Elmore ("Elmore"), and Michael A. Casey ("Casey") submit this memorandum of law in support of their motion for summary judgment.  *See* Fed. R. Civ. P  56.  As grounds, the defendants state that (1) the statute of limitations ran on several of the plaintiffs' claims before the action was filed in the United States District Court for the District of Massachusetts; (2) the plaintiffs will be unable to show that the defendants violated their civil rights; and (3) that the plaintiffs have otherwise failed to state a claim for relief.

I.  **Background**[1]

1. The plaintiffs filed this Complaint against twenty-nine named Billerica police officers alleging that the defendants have engaged in a conspiracy to terrorize, intimidate, harass, humiliate, injure and deprive the plaintiffs of their liberty and happiness. (See Complaint, attached hereto as "Exhibit 1").

2. The Complaint states various instances of alleged police misconduct which began in the summer of 1991 and continued over a thirteen-year period. (See Exhibit 1, Complaint).

3. All of the allegations against Officer Frank MacKenzie occurred prior to November 5, 2001. (See Exhibit 1, Complaint).

4. The vast majority of the allegations against Officer Steven Elmore ("Elmore") occurred prior to November 5, 2001. (See Exhibit 1, Complaint).

5. The sole allegation against Elmore which occurred after November 5, 2001, took place in the summer of 2002. (See Exhibit 1, Complaint ¶¶ 107, 108).

6. In the summer of 2002, the Complaint alleges that George Brooks ("Brooks"), a boy from the plaintiffs' neighborhood, attacked Mitchell Kennedy ("Mitchell"). (See Exhibit 1, Complaint ¶ 107).

7. Officers Elmore and Richard Nestor ("Nestor") allegedly responded to the plaintiffs' 911 call. (See Exhibit 1, Complaint ¶ 108).

8. Upon Officers Elmore and Nestor's arrival, the plaintiffs' allegedly insisted that criminal charges be brought against Brooks for assault. (See Exhibit 1, Complaint ¶ 108).

---

[1] The facts in this section are drawn from the Statement of Material Undisputed Facts ("Statement of Facts"). As required under summary judgment procedure, such facts must be interpreted in favor of the non-moving party. In so stating undisputed material

9. Officers Elmore and Nestor, however, allegedly refused to bring any charges against Brooks because he's "just a kid". (See Exhibit 1, Complaint ¶ 108).

10. The majority of the allegations against Officer Michael Casey ("Casey") also occurred prior to November 5, 2001. (See Exhibit 1, Complaint).

11. There were only three allegations against Casey which occurred after November 5, 2001. (See Exhibit 1, Complaint).

12. One of the allegations against Casey occurred on May 17, 2004. On that day, the plaintiffs' allege that when Michelle Kennedy returned home from running some errands, she observed several police cars near her mobile home. (See Exhibit 1, Complaint ¶ 124).

13. On that same date, an unidentified female officer allegedly approached Brian Kennedy and asked if he had hit a neighbor's trailer with a hammer. Mr. Kennedy replied that he had not. (See Exhibit 1, Complaint ¶ 124).

14. After this alleged conversation with this unidentified female officer, Officers Casey and Jonn Zarro ("Zarro") allegedly began taunting Mr. Kennedy by calling him a "pussy" and a "bitch". (See Exhibit 1, Complaint ¶ 125).

15. Casey also allegedly challenged Mr. Kennedy to a fight. (See Exhibit 1, Complaint ¶ 125).

16. The plaintiffs further allege that the officers remained in the Kennedys' neighborhood for several hours for no apparent reason. As a result of the defendants' alleged action, Mrs. Kennedy was forced to bring her children to a neighbor's home so they could get a decent night's sleep. (See Exhibit 1, Complaint ¶ 125).

---

facts, the defendants do not concede or rely on these facts for any purpose other than this motion for summary judgment.

17. On May 18, 2004, the plaintiffs' allege that the assistant principal at Mitchell's school entered Mitchell's classroom and asked the teacher and all of the other students to leave because Casey needed to speak with Mitchell. (See Exhibit 1, Complaint ¶126).

18. The plaintiffs' allege that Mitchell was in the process of taking his MCAS examination when Casey and another unidentified officer entered the classroom. (See Exhibit 1, Complaint ¶126).

19. After the teacher and students allegedly left the classroom, the plaintiffs' allege that Casey told Mitchell that he had "been waiting to meet with [him]." (See Exhibit 1, Complaint ¶ 126).

20. Casey then allegedly accused Mitchell of breaking into the school and stealing money. (See Exhibit 1, Complaint ¶ 126).

21. Casey then allegedly made Mitchell take off his sneaker to examine it. After allegedly examining the sneaker, Casey then left Mitchell in the classroom. (See Exhibit 1, Complaint ¶ 126).

22. Later that same day, the plaintiffs' allege that several men confronted the Kennedys at their home and attempted to goad Mr. Kennedy into a fight. (See Exhibit 1, Complaint ¶ 127).

23. One of the men allegedly showed Mr. Kennedy a gun while another allegedly threw two bricks at Mrs. Kennedy. (See Exhibit 1, Complaint ¶ 127).

24. A neighbor allegedly called 911 on behalf of the plaintiffs. Several officers, including Casey, responded to the 911 call. (See Exhibit 1, Complaint ¶ 127).

25. The plaintiffs' allege that despite their explanation as to what had transpired that evening, Casey refused to take any action against the three men. (See Exhibit 1, Complaint ¶ 127).

4

26. Furthermore, at some point during the evening of May 18, 2004, Mitchell began videotaping events as they transpired. (See Exhibit 1, Complaint ¶ 128 and Deposition of Brian Kennedy, Volume II, pp. 348-351, attached hereto as "Exhibit 2").[2]

27. When Casey noticed Mitchell holding the video camera he turned his flashlight toward the camera lens. (See Exhibit 1, Complaint ¶ 128 and Exhibit 2, Deposition of Brian Kennedy, Volume II, pp. 348-351).

28. The plaintiffs' then allege that Casey threatened Mitchell and told him that he would be going to jail if he did not stop using the videotape. (Exhibit 1, Complaint ¶ 128).

29. The Complaint was filed on November 5, 2004. (See Exhibit 1, Complaint).

30. On May 22, 2006, Judge Patti B. Saris ordered the plaintiffs to identify seven defendants who will go to trial. (See Order dated May 22, 2006, attached hereto as "Exhibit 3").

31. On May 26, 2006, the plaintiffs' filed a Status Report with the Court identifying Frank A. MacKenzie, Thomas Conners, Mark Tsoukalas, Daniel C. Rosa, Jr., Steven Elmore, Michael A. Casey and Martin E. Conway as the individuals against whom they initially choose to proceed. (See Status Report, Docket Sheet Document #25, dated May 26, 2006, attached hereto as "Exhibit 4").

**II.    Argument**

    **A.    Summary Judgment Standard.**

As discussed *infra*, summary judgment is appropriate here because "the pleadings, depositions, answers to interrogatories, and admissions on file" show that

---

[2] It is interesting to note the video, which was provided by the plaintiffs to support their allegations, fails to show any evidence of a cause of action against the defendants.

there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Hinchey v. Nynex Corp.*, 144 F.3d 134, 140 (1st Cir. 1998).

> **B.  The Defendants, MacKenzie, Elmore and Casey are Entitled to Summary Judgment in Their Favor on All Counts of the Complaint.**

**1.  The Plaintiffs' Claims Against These Defendants are Barred By the Statute of Limitations.**

The plaintiffs' claims are asserted under the Federal Civil Rights Act and the Massachusetts Civil Rights Acts. The plaintiffs also assert several common law, intentional torts. "Actions arising on account of violations of any law intended for the protection of civil rights… shall be commenced only within three years next after the cause of action accrues." Mass. Gen. Laws, ch. 260, § 5B; *see Rodriguez-Garcia v. Municipality of Caguas*, 354 F. 3d 91, 96 (1st Cir. 2004) *citing Wilson v. Garcia*, 471 U.S. 261, 277-280 (1985) (statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions). In Massachusetts, tort actions "shall be commenced only within three years next after the cause of actions accrues." Mass. Gen. Laws, ch. 260, § 2A.

In this case, the plaintiffs allege that beginning in the summer of 1991, the defendants began a "conspiratorial campaign" to "intimidate, harass, humiliate, injure and deprive the plaintiffs of their liberty and happiness." (Exhibit 1, Complaint). The plaintiffs, however, only filed this cause of action on November 5, 2004, more than *thirteen* years after the alleged harassment began. The plaintiffs should now be barred from recovering for any alleged incident that occurred more than three years prior to the filing of their Complaint. Accordingly, summary judgment should enter for the defendants for any allegation that occurred prior to November 5, 2001.

**Frank A. MacKenzie**

According to the plaintiffs' Complaint, the most recent allegation against defendant Frank MacKenzie ("MacKenzie") occurred in **February 1998**. As the plaintiffs' filed their Complaint on November 5, 2004, more than six and a half years after the last allegation, summary judgment should enter in MacKenzie's favor on Counts III, IV, V, VI, VII, XI, and XIII.

**Steven Elmore**

The vast majority of the allegations brought against defendant Steven Elmore ("Elmore") also occurred prior **February 1998**. There is only one allegation against Elmore that occurred within the statute of limitations period and the plaintiffs' have failed to state a claim for relief with regard to that claim, see discussion below. Accordingly, summary judgment should enter in Elmore's favor for any claims made prior to November 5, 2001.

**Michael A. Casey**

The majority of the allegations brought against defendant Michael A. Casey ("Casey") occurred prior to **February 1998**. There are only two allegations against Casey that occurred within the statute of limitations period and the plaintiffs' have failed to state a claim for relief with regard to those claims, see discussion below. Accordingly, summary judgment should enter in Casey's favor for any claims made prior to November 5, 2001.

> **2.** **Even if the Statute of Limitations Somehow Did Not Apply to Bar the Plaintiffs' Complaint, the Defendants MacKenzie, Elmore and Casey are Otherwise Entitled to Summary Judgment Because the Plaintiffs Have Failed to State a Claim Against them Upon Which Relief Can Be Granted.[3]**

---

[3] As all of the claims alleged against MacKenzie are barred by the statute of limitations, the defendants are not specifically responding to each allegation in this memorandum. If, however, the Court finds that the statute of limitations had not run by the time the

7

      a.      **The Plaintiffs Have Failed to State a Claim for Violation of Their Federal Civil Rights.**

"To establish a violation of 42 U.S.C. § 1983, a plaintiff must show by a preponderance of evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or law of the United States." *Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir. 2005) citing *Soto v. Flores*, 103 F.3d 1056, 1061-62 (1st Cir. 1997), *cert. denied*, 522 U.S. 819 (1997)).

In this case, the plaintiffs cannot prove that the allegations against Elmore and Casey, which occurred within the statute of limitations, deprived them of their rights secured by the Constitution or laws of the United States.

**Steven Elmore**

The only remaining claim against Elmore that occurred within the statute of limitations allegedly took place in the summer of 2002. (Exhibit 1, Complaint ¶¶ 107-108). In the summer of 2002, the Complaint alleges that George Brooks ("Brooks"), a boy from the plaintiffs' neighborhood, attacked Mitchell Kennedy ("Mitchell"). (Exhibit 1, Complaint ¶ 107). Officers Elmore and Richard Nestor ("Nestor") allegedly responded to the plaintiffs' 911 call. (Exhibit 1, Complaint ¶ 108). Upon the officers' arrival, the plaintiffs' allegedly insisted that criminal charges be brought against Brooks for assault. (Exhibit 1, Complaint ¶ 108). The officers, however, allegedly refused to bring any charges against Brooks because he was "just a kid". (Exhibit 1, Complaint ¶ 108).

---

plaintiffs' filed their Complaint, the defendants' state that the same arguments made by Elmore and Casey shall apply to defendant MacKenzie.

The defendants are aware of two separate altercations that occurred between Mitchell and Brooks. (See Billerica Police Department Police Officer's Formal Report dated August 9, 2001, attached hereto as "Exhibit 5" and Billerica Police Department Police Officer's Formal Report dated September 7, 2002, attached hereto as "Exhibit 6"). The first occurred on August 9, 2001 and the second occurred on September 7, 2002. *Id.*

On August 9, 2001, Officers Nestor and Donald MacEachern ("MacEachern") were dispatched to the plaintiffs' neighborhood to handle a dispute between the two boys, Mitchell age eleven (11) and Brooks age thirteen (13). (Exhibit 5, August 9, 2001 report). Upon the officers' arrival, the plaintiffs informed Nestor and MacEachern that Brooks had sprayed Mitchell in the face with an unknown liquid. *Id.* After talking to the plaintiffs', Nestor and MacEachern then spoke with Mr. and Mrs. Brooks. *Id.* Nestor and MacEachern then assessed the situation and decided to counsel the boys, ages eleven and thirteen, about their behavior rather than bring any charges. *Id.* The plaintiffs became upset with the officers for their decision and began verbally abusing the sergeant in charge at the scene. *Id.*

On September 7, 2002, Nestor and MacEachern responded to a call in the plaintiffs' neighborhood for a fight. (Exhibit 6, September 7, 2002 report). Upon arriving at the scene, Mr. and Mrs. Brooks informed the officers that Mitchell and several other youths had assaulted their son. *Id.* Nestor and MacEachern then spoke with the plaintiffs and several other witnesses, who stated that Brooks had actually been the one to initiate the altercation. *Id.* Both sets of parents requested that charges be filed against the other child. *Id.* Nestor and MacEachern filed cross complaints for assault and battery against Mitchell and Brooks. *Id.*

It is worth noting that Elmore was not listed as one of the responding officers on either report. (See Exhibits 5 and 6). Moreover, despite the significance of these alleged

events the plaintiffs' failed to ask Elmore any questions regarding his involvement in either situation during his deposition. (See Deposition of Steven Elmore, attached hereto as "Exhibit 7"). Even if Elmore was present at the scene on August 9, 2001, his failure to bring charges against Brooks was not a violation of the plaintiffs' civil rights. There is no right in the Constitution or the laws of the United States that guarantees that the police will bring charges against any individual whenever another party demands it. Furthermore, if the plaintiffs' were unhappy with the officers' decision, they could have filed an Application for Criminal Complaint with the court on their own. If the incident that the plaintiffs' are referring to is the one the occurred on September 7, 2002, their allegation is moot because the officers did in fact file assault and battery charges against Brooks for his alleged participation in the altercation. Accordingly, the plaintiffs cannot prove that Elmore violated 42 U.S.C. § 1983 and summary judgment should enter in the Elmore's favor on Count IV.

**Michael A. Casey**

The only allegations against Casey that occurred within the statute of limitations took place on May 17, 2004 and May 18, 2004. (Exhibit 1, Complaint ¶¶ 124-128).

On May 17, 2004, the plaintiffs' allege that when Michelle Kennedy returned home from running some errands, she observed several police cars near her mobile home. (Exhibit 1, Complaint ¶ 124). On that same day, an unidentified female officer allegedly approached Brian Kennedy and asked if he had hit a neighbor's trailer with a hammer. (Exhibit 1, Complaint ¶ 124). Mr. Kennedy replied that he had not. (Exhibit 1, Complaint ¶ 124).

After this alleged conversation with this unidentified female officer, Officers Casey and Jonn Zarro ("Zarro") allegedly began taunting Mr. Kennedy by calling him a "pussy" and a "bitch". (Exhibit 1, Complaint ¶ 125). Casey also allegedly challenged

Mr. Kennedy to a fight. (Exhibit 1, Complaint ¶ 125). The plaintiffs further allege that the officers remained in the Kennedys' neighborhood for several hours for no apparent reason. As a result of the defendants' alleged action, Mrs. Kennedy was forced to bring her children to a neighbor's home so they could get a decent night's sleep. (Exhibit 1, Complaint ¶ 125).

On May 17, 2004, Casey responded to a burglary call at 163 Leicester Street, Billerica, Massachusetts. (See Deposition of Michael A. Casey, p. 137-141, attached hereto as "Exhibit 8"). While Casey was investigating the burglary, Brian Kennedy started asking Casey if he had put on any weight. *Id.* at 140. Mr. Kennedy then repeatedly called Casey a "fat fuck". *Id.* Casey responded by calling Mr. Kennedy a "pussy" and told him to "step out onto the street." *Id.* at 140-141. Mr. Kennedy just sat there and laughed. *Id.* at 141. While Casey's comments may have been inappropriate conversation, they certainly did not rise to the level of a civil rights violation.

On May 18, 2004, the plaintiffs' allege that the assistant principal at Mitchell's school entered Mitchell's classroom and asked the teacher and all of the other students to leave. (Exhibit 1, Complaint ¶126). When this allegedly occurred, Mitchell had been in the process of taking his MCAS examination. (Exhibit 1, Complaint ¶126). After everyone had left the classroom, Casey allegedly stated, "I've been waiting to meet with you" and then he allegedly accused Mitchell of breaking into the school and stealing money. (Exhibit 1, Complaint ¶126). Casey then allegedly made Mitchell take off his sneaker in order to examine it. (Exhibit 1, Complaint ¶126). After examining the sneaker, Casey then allegedly left Mitchell in the classroom. (Exhibit 1, Complaint ¶126).

On May 18, 2004, Officers Donald MacEachern ("MacEachern") and Frank ("Mirasolo") responded to the Marshall Middle School for a report of a break-in that

had occurred over the weekend. (See Billerica Police Department Police Officer's Formal Report dated May 18, 2004, attached hereto as "Exhibit 9"). Upon arriving at the scene, MacEachern noticed there were footprints on the roof of the school and two sets of fingerprints on the ceiling window frame. *Id.* It appeared as though the individuals hung from the window frame and lowered themselves into the classroom. *Id.* After talking to Ms. McClean, a teacher, Mirasolo and Elmore then spoke with Brooks and his parents about his possible involvement in the break-in. *Id.* The officers then spoke with Mitchell because of his close relationship to Brooks. *Id.* Both boys denied any involvement and both boys had their sneakers examined by the officers. *Id.* Neither tread, however, matched the marks that had been left on the roof of the school. *Id.*

It is interesting to note, that Casey's name does not appear in the May 18, 2004 report nor does he even remember investigating a break-in at the school. (Exhibit 9 and Exhibit 8, Casey Deposition, pg. 147). Even if, however, Casey was at the school that day, the mere examination of Mitchell's sneaker does not rise to the level of a civil rights violation. Furthermore, Mitchell was not arrested nor was he charged with any crime in connection with the break-in at the school.

Later that same day, the plaintiffs' allege that several men, including Woods, confronted the Kennedys at their home and attempted to goad Mr. Kennedy into a fight. (Exhibit 1, Complaint ¶ 127). One of the men allegedly showed Mr. Kennedy a gun while another allegedly threw two bricks at Mrs. Kennedy. (Exhibit 1, Complaint ¶ 127). A neighbor had called 911. (Exhibit 1, Complaint ¶ 127). Several officers, including Casey, responded to the 911 call. (Exhibit 1, Complaint ¶ 127). The plaintiffs' allege that despite their explanation as to what had transpired that evening, Officer Casey refused to take any action against the three men. (Exhibit 1, Complaint ¶ 127).

Casey was in fact dispatched to respond to a 911 call on May 18, 2004. (Exhibit 8, Casey Deposition at p. 143-144). Upon his arrival, Casey spoke with the plaintiffs. *Id.* at 146. After talking to the plaintiffs, Casey then had a conversation with Woods. *Id.* at 146. Woods told Casey that he had been checking on his trailer when Brian Kennedy suddenly started threatening him. (*Id.* and Billerica Police Department Police Officer's Formal Report dated May 18, 2004, attached hereto as "Exhibit 10"). After the threats were made, the parties got involved in a verbal altercation. *Id.* Casey determined that no physical assault had taken place and therefore he decided to leave the area without filing any charges. *Id.* Casey's failure to file charges against Woods and his companions did not in any manner violate the Kennedys' civil rights.

At some point during the evening on May 18, 2004, Mitchell began videotaping the events as they transpired. (Exhibit 1, Complaint ¶ 128 and Exhibit 2, Deposition of Brian Kennedy, Volume II, pp. 348-351). When Casey noticed the video camera he turned his flashlight toward the camera lens. *Id.* Casey then told Mitchell to move the camera away from him and he furthermore advised Mitchell that he did not want his voice recorded. (Exhibit 8, Casey Deposition at p. 131-132). Casey also told Mitchell that he would put him in jail if he recorded Casey's voice without his permission. *Id.* When Casey made that statement to Mitchell he believed in good faith that Mitchell would be in violation of Mass. Gen. Laws ch. 272, § 99, Interception of Wire Communications, if he recorded Casey's voice without his permission. After speaking with Mitchell, Casey then left the scene. No charges were ever filed against Mitchell and he was never arrested.

None of the incidents alleged by the plaintiffs, rise to the level of a violation of the plaintiffs' federal civil rights. The plaintiffs do not have a right to require that the police bring charges against people they accuse of breaking the law. In each instance,

Elmore and Casey performed an investigation and determined that the situation did not warrant the filing of charges. As such, the plaintiffs cannot claim their civil rights had been violated. While Casey may have at times acted inappropriately, his behavior did not rise to the level that caused the plaintiffs to suffer a deprivation of their civil rights. Accordingly, the plaintiffs cannot prove that either Steven Elmore or Michael A. Casey violated 42 U.S.C. § 1983 and summary judgment should enter in the defendants' favor on Count IV.

### b. The Plaintiffs Have Failed to State a Claim for Conspiracy to Interfere with Their Civil Rights.

The plaintiffs alleged that the defendants engaged in a conspiracy to deprive them of their civil rights. A conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict wrong against or injury upon another and an overt act that results in damages. *See Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1988). To establish a conspiracy under 42 U.S.C. § 1983, however, a plaintiff must "allege and prove both a conspiracy and a deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim …[citation omitted]. The gist of the [section 1983] cause of action is the deprivation and not the conspiracy." *Id.*

As noted above, since federal law does not provide a limitations period for section 1983 claims, the courts look to the statute of limitations provision of the state where the action is filed. *See Piacentini v. Levangie*, 998 F. Supp. 86, 88 (D. Mass. 1998), citing *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985). Massachusetts law prescribes a three-year limitations period for causes of action such as the plaintiffs' section 1983

claims.  *See Street v. Vose*, 936 F.2d 38, 39-40 (1st Cir. 1991), *cert. denied* 502 U.S. 1063 (1992).

As to when a cause of action accrues, that determination is a matter of federal law.  *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 (1st Cir. 1995).  The courts have stated that "[s]ection 1983 claims accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Id.*  To determine when a claimant knew or had reason to know of the alleged injury, the courts look to the common law cause of action most closely analogous to the constitutional right at stake, i.e. the particular alleged deprivation, as an appropriate starting place.  *Id.*

In a conspiracy to violate civil rights, the statute of limitations runs separately from each action constituting a civil rights violation that causes actual damage to the plaintiff.  *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001) *citing Hernandez Jiminez v. Calero Toledo*, 576 F.2d 402, 404 (1st Cir. 1978) and *Kadar Corp. v. Milbury*, 549 F.2d 230, 234-235 (1st Cir. 1977) ("Injury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy'").  *See also Momand v. Universal Film Exchanges*, 172 F.2d 37, 49 (1st Cir. 1948), *cert. denied*, 336 U.S. 967 (1949) (cause of action for each invasion of plaintiff's interest arises at time of that invasion and applicable statute of limitations runs from that point).  Thus, an ensuing conspiracy and subsequent deprivation of other rights does not affect the accrual of the limitations period with respect to a completed object of a conspiracy unless the plaintiff were unaware of the deprivation.  *Hernandez Jiminez*, 576 F. Supp. at 404 n. 1 (if plaintiff is unable to discover earlier violations because of fraudulent concealment statute of limitations could be tolled; conversely, "overt acts" in conspiracy that fall short of being separate violations of rights would not start statute running).

Despite the foregoing, the plaintiffs, in apparent attempt to evade the fatal blow of the application of that limitations period, argue that they have alleged a "single" conspiracy claim consisting of at least sixteen years of intimidation and harassment by twenty-nine named members of the Billerica Police Department and that, as such, the statute of limitations has not yet accrued because the defendants continue to allegedly harass the plaintiffs on an almost daily basis. Basically, their theory is that such recent overt acts opens a conspiracy cause of action that would embrace all earlier alleged acts.

The plaintiffs' conspiracy claims consist of different components – wrongful arrest, malicious prosecution, threatening of plaintiffs' witnesses, violation of normal bail and release procedures, physical violation, bogus citations, refusal to prosecute individuals who have perpetrated crimes against the plaintiffs and threatening other individuals who have either worked or socialized with the plaintiffs. The separateness of these components is confirmed by the fact that the alleged conduct involved different actors.

For example, Casey was not present when Elmore refused to bring charges against Brooks for allegedly attacking Mitchell, and Elmore was not present when Casey refused to bring charges against Woods for allegedly threatening the plaintiffs. Thus it cannot be said that the officers conspired in these circumstances.

Indeed, in *Landrigan v. City of Warwick*, 628 F.2d 736, 741 (1st Cir. 1980), the court treated the component parts of the plaintiff's alleged conspiracy separately and addressed the question whether any of the conduct alleged violated the plaintiff's constitutional rights within the meaning of § 1983. *See Roberts v. Murphy*, 684 F. Supp. 759 (D. Mass. 1988) (attempt by defendants to cover-up incident was separate and distinct wrong occurring after events giving rise to plaintiff's original cause of action which had accrued on date alleged assault was committed). This case law is in keeping

with the rule that a plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Here, the plaintiffs cannot prove that defendants Steven Elmore or Michael A. Casey conspired to deprive them of their constitutional rights nor can they prove that they suffered an actual violation of their rights. Accordingly, summary judgment should enter in the defendants' favor on Count III.

### c. The Plaintiffs Have Failed to State a Claim for Violation of Their Massachusetts Civil Rights.

The plaintiffs also bring civil rights claims pursuant to the Massachusetts Civil Rights Act ("MCRA"), G.L. c. 12, §§ 11H and 11I. The MCRA is "coextensive with 42 U.S.C. §1983 ... except that the Federal statute requires State action whereas its State counterpart does not." *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822-23, 473 N.E. 2d 1128 (1985). Thus, the arguments set forth above regarding § 1983 claim applies with equal force to the State Civil Rights claim, and summary judgment should enter in the Casey and Elmore's favor.

Moreover, the MCRA requires a showing of threats, intimidation or coercion. Mass. Gen .Laws ch. 12, §§ 11H and 11I. Threats, intimidation or coercion is an "essential element" of the plaintiffs' claim. *See Layne v. Superintendent, Mass. Correctional Inst.*, 406 Mass. 156, 158, 546 N.E.2d 166 (1989). "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate [the MCRA]." *Longval v. Commissioner of Correction*, 404 Mass. 325, 333, 535 N.E.2d 588 (1989). As detailed above, the plaintiffs' can produce no evidence that Casey and Elmore took any action to threaten, intimidate or coerce them to forego their rights. Accordingly, the plaintiffs cannot prove actionable threats, intimidation or coercion, and summary judgment should enter in the defendants' favor on Count V.

### d. The Plaintiffs Have Failed to State a Claim for Intentional Infliction of Emotional Distress.

Similarly, the plaintiffs will be unable to prove any of the tort claims they raise with respect to the defendants: "To prevail on [a] claim for intentional infliction of emotional distress, the plaintiffs must establish `(1) that the defendant intended to inflict emotional distress, or knew or should have know that emotional distress was the likely outcome of his conduct, but also (2) that the defendant's conduct was extreme or outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such nature that no reasonable person could be expected to endure it.'" *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997) (quoting *Payton v. Abbot Labs*, 386 Mass. 540, 555 (1982)). The most generous reading of the plaintiffs' complaint regarding the defendants' timely allegations fails to establish a single element of this claim. Accordingly, the plaintiffs cannot prove intentional infliction of emotional distress, and summary judgment should enter in the defendants' favor on Count VI.

### e. The Plaintiff, Brian Kennedy, Has Failed to State a Claim for Assault against Defendant MacKenzie.[4]

To prevail on a claim for assault, Brian Kennedy must demonstrate that MacKenzie "intentionally caused him to be put in imminent apprehension of bodily harm." *Varma v. Anand Corp.*, 2000 WL 33171049 *4 (Mass. Super.) *citing Restatement 2d. Torts* § 21(1). First, all of the allegations against MacKenzie were for incidents that occurred prior to November 5, 2001. (Exhibit 1, Complaint). The most recent allegation against MacKenzie regarding an alleged assault took place on **May 21, 1993**. *Id* at ¶50.

---

[4] As there is no claim for assault against Casey and Elmore, the defendants will address the plaintiffs' allegation against MacKenzie separately.

As all of the claims alleged against MacKenzie were not filed within the applicable statute of limitations summary judgment should enter for MacKenzie on Count XI.

Secondly, when reading the allegations of assault, it is clear that Mr. Kennedy was not placed in "imminent apprehension of bodily harm" by any of MacKenzie's alleged actions. An example of Mr. Kennedy's cavalier attitude towards the alleged assault is evident in response to a question during his deposition about MacKenzie's actions on May 21, 1993. When asked about the night in question Mr. Kennedy simply stated, "Same old thing, got in my face, wanted to fight, ended up spitting in my face, and he [MacKenzie] walked away." (See Deposition of Brian Kennedy, Volume I, p. 115, attached hereto as "Exhibit 11"). It is clear from Mr. Kennedy's response that he was not apprehensive about MacKenzie's actions and that he did not feel as though he was in imminent danger of any bodily harm. Accordingly, the plaintiffs cannot prove that MacKenzie assaulted Brian Kennedy, and summary judgment should enter in MacKenzie's favor on Count XI.

      f.    **The Plaintiffs Have Failed to State a Claim for Malicious Prosecution**

In order to prove a claim for malicious prosecution, the plaintiffs must show that criminal proceedings were instituted against them with malice and without probable cause and that the proceedings terminated in their favor. *McNelley v. Allen*, 54 Mass. App. Ct. 1105 (2002), *citing Correllas v. Viveiros*, 410 Mass. 314, 318 (1991). Central to the tort is that the actor to be made liable must have made "perverse use of the litigation process by instigating criminal proceedings without probable cause and primarily for a purpose other than bringing the targeted person to justice." *Id.* at 2, *quoting Conway v. Smerling*, 37 Mass. App. Ct. 1, 3 (1994). "The want of probable cause is so essential that it 'must be affirmatively proved, and may not be inferred from the

existence of malice, or from the fact of acquittal.'" *Zullo v. Town of Framingham*, 55 Mass. App. Ct. 1112 (2002), 2002 WL 1868147, *quoting Wynne v. Rosen*, 391 Mass. 797, 802 (1984).

As detailed above, neither Elmore nor Casey instituted any criminal proceedings against the plaintiffs within the applicable statute of limitations. Accordingly, the plaintiffs cannot prove a claim for malicious prosecution and as such Count XIII cannot prevail as a matter of law.

     **g.**   **The Plaintiffs Have Failed to State a Claim for Loss of Consortium**

As the plaintiffs have failed to state any claims for relief, the plaintiffs are not entitled to recover for loss of consortium. Therefore summary judgment should enter for the defendants on Count VII.

**III.**   **Conclusion**

For the reasons set forth above, summary judgment should enter in favor of Defendants, Frank A. MacKenzie, Steven Elmore and Michael A. Casey.

        Respectfully submitted,
        Defendants, Frank A. MacKenzie, Steven Elmore, and
        Michael A. Casey,
        By their Attorneys,

        /s/ Jeremy Silverfine
        Leonard H. Kesten, BBO No. 542042
        Jeremy Silverfine, BBO No. 542779
        Karen W. Peters, BBO No. 658903
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        One Exeter Plaza
        Boston, MA 02116
        (617) 880-7100

Dated: February 8, 2007