**Page 1**

```
 1                              VOLUME: I
 2                              PAGES: 1 - 101
 3                              EXHIBITS: See Index
 4
 5
 6            UNITED STATES DISTRICT COURT
 7            DISTRICT OF MASSACHUSETTS
 8
 9
10   ...............................
11   BRIAN KENNEDY, et al.,        )
12              Plaintiffs,        )
13      vs.                        )   No. 04-CV-12357-PBS
14   TOWN OF BILLERICA, et al.,    )
15              Defendants. )
16   ...............................
17
18
19     DEPOSITION OF MARTIN CONWAY, a Witness called by and on
20   behalf of the Defendant, taken pursuant to the aplicable
21   Federal Rules of Civil Procedure, before Vincent Martino,
22   a Notary Public within and for the Comm. Of Massachusetts,
23   held at the Offices of Jason & Fischer, 47 Winter Street,
24   Boston, MA 02108, on Monday, November 27, 2006, commencing
25   at 10:15 a.m.
              COPLEY COURT REPORTING - (617) 423-5841
```

**Page 2**

```
                    I N D E X

   Witness        Direct   Cross   Redirect   Recross
   Martin E. Conway   3


                   E X H I B I T S

   Exhibit Number                          Page
   1    Police Identification              15
   2    Retraction Statement               85
   3    Photographs                        99
```

```
              COPLEY COURT REPORTING - (617) 423-5841
```

**Page 3**

```
 1                    Stipulations
 2          It is agreed by and between counsel for the
 3   respective parties, that the witness will read and sign the
 4   deposition, but notarization and filing of the deposition
 5   are hereby waived.
 6          It is further agreed that all objections, except as
 7   to form, and motions to strike are reserved until the time
 8   of trial.
 9          MARTIN E. CONWAY, of lawful age, being first
10   properly identified and duly sworn, deposes and says as
11   follows in answer to direct interrogatories by Attorney
12   Fischer:
13          MR. FISCHER: Let's mark the police identification
14   as Exhibit Number 1.
15          MR. SILVERFINE: I object.
16          MR. FISCHER: Can I see your identification, sir?
17          MR. SILVERFINE: I don't think he has to show it to
18   you. It is for the notary, not you.
19          MR. FISCHER: I will ask the notary ---
20          MR. SILVERFINE: He has already seen it.
21          MR. FISCHER: Are you having him refuse to produce
22   it?
23          MR. SILVERFINE: He has already shown it to the
24   notary.
25          MR. FISCHER: Then let's mark it as Exhibit 1.
              COPLEY COURT REPORTING - (617) 423-5841
```

**Page 4**

```
 1          MR. SILVERFINE: I don't think we need to do that.
 2          MR. FISCHER: Would you produce it, please?
 3          MR. SILVERFINE: I don't think he has to produce it.
 4          MR. FISCHER: He has to produce it. He has already
 5   produced it once. I want it to be part of the record.
 6          MR. SILVERFINE: I respectfully disagree.
 7          MR. FISCHER: If we have to go to Court to compel
 8   it, I'm going to seek costs against the witness and against
 9   you for instructing him not to produce it.
10          MR. SILVERFINE: Okay. Very good.
11          MR. FISCHER: Mark this portion of the record.
12      Q.  Sir, can you tell us your name?
13      A.  Martin Conway.
14      Q.  How do I know you are Martin Conway?
15      A.  I don't know.
16      Q.  Your lawyer is interfering with my ability to
17   verify that. Now you have verified that with the Court
18   Reporter?
19      A.  Yes.
20      Q.  You have produced verification of that?
21      A.  Yes.
22      Q.  Would you show me that verification?
23          MR. SILVERFINE: No.
24          THE WITNESS: I believe I have already produced it.
25      Q.  Can I see what you have produced?
              COPLEY COURT REPORTING - (617) 423-5841
```

**Page 5**

```
 1      A.  I already produced my ID, sir.
 2      Q.  What did you produce?
 3      A.  My police department ID, sir.
 4      Q.  Can I see it?
 5      A.  I believe I have already produced it for the
 6   record.
 7          MR. FISCHER: You haven't produced it for the record
 8   because I'm trying to mark it for the record. If you have
 9   produced it for the record let's mark it as Exhibit Number
10   1.
11          MR. SILVERFINE: Let's not play games. He produced
12   it to the notary.
13          MR. FISCHER: You are the one playing games. I'm
14   entitled to have it marked as an Exhibit.
15          MR. SILVERFINE: You are not.
16          MR. FISCHER: Tell me where I'm not. Where does the
17   rule say that?
18          MR. SILVERFINE: That's okay. Let's go on. You have
19   already made your point.
20          MR. FISCHER: We will go on after we have marked it.
21          MR. SILVERFINE: You have made your point. Move on.
22      Q.  Can you tell us your address, please.
23      A.  You are talking about my home address?
24      Q.  Yes.
25      A.  Respectfully, for my safety, if you need to contact
              COPLEY COURT REPORTING - (617) 423-5841
```

**Page 6**

```
 1   me you can contact me through the police department, sir.
 2      Q.   How is your safety jeopardized by telling me your
 3   home address?
 4      A.   I don't give out my home address, sir.
 5      Q.   You have refused to identify yourself, now you are
 6   refusing to give your home address?
 7      A.   I have identified myself but ---
 8      Q.   No you haven't. Not to me.
 9      A.   Respectfully, sir, I believe I have.
10      Q.   Do you have a driver's license?
11      A.   Yes.
12      Q.   Can I see your driver's license?
13      A.   I don't know if I brought it with me, sir.
14      Q.   Do you have any photo identification?
15      A.   I produced my department ID, sir.
16          MR. FISCHER: No, you haven't.
17          MR. SILVERFINE: He has.
18          MR. FISCHER: He hasn't. If he has produced it I
19   would be able to see it.
20          MR. SILVERFINE: He has produced it to the notary.
21          MR. FISCHER: Let the notary mark it as an Exhibit.
22   I will make a compromise. I'm willing to not look at it.
23   Let's mark it as an Exhibit so we have a record as to what
24   was produced.
25          MR. SILVERFINE: During the break I will take a look
              COPLEY COURT REPORTING - (617) 423-5841
```

25

```
 1  responsible for getting the officer counsel.
 2      Q.   Would that be true in this lawsuit also?
 3      A.   Yes.
 4      Q.   Did you arrange for counsel for the various
 5  individual officers that are Defendants in this lawsuit?
 6      A.   Yes.
 7      Q.   How did you go about doing that?
 8      A.   I contacted the legal counsel of the International
 9  Brotherhood of Police Officers.
10      Q.   Who is that?
11      A.   At the time it was Attorney Diane Byrnes.
12      Q.   Have you had occasion to arrange counsel for police
13  -- have you had other ---
14           MR. FISCHER: Strike that.
15      Q.   Have there been other occasions where you have had
16  to arrange counsel for Billerica police officers?
17      A.   Yes.
18      Q.   How many times?
19      A.   No idea.
20      Q.   More than once?
21      A.   Yes.
22      Q.   More than five times?
23      A.   Yes.
24      Q.   More than ten times?
25      A.   Probably.
              COPLEY COURT REPORTING - (617) 423-5841
```

28

```
 1      A.   No.
 2      Q.   More than one or two?
 3      A.   Yes.
 4      Q.   More than ten times?
 5      A.   No, I don't believe it to be that many times.
 6      Q.   More than five times?
 7      A.   I'm not sure.
 8      Q.   Would it be fair to conclude based on the best of
 9  your memory that you have had to obtain legal counsel for
10  officers being sued more often than for officers being
11  disciplined?
12           MR. SILVERFINE: Objection as to form.
13           THE WITNESS: I'm not sure. The best example I can
14  give is when I said about counsel, like on this case, there
15  are several officers that are being sued so I believe it is
16  over twenty so what I'm meaning there is to me, that is
17  like twenty times a lawyer has to be notified so maybe I
18  misconstrued your question but that is what I meant by the
19  attorney.
20      Q.   Okay. Let me ask it in a different way. Can you
21  tell me to your best memory how many lawsuits there have
22  been that have resulted in you getting, that you have had
23  to obtain counsel for your brother officers?
24      A.   I don't remember.
25      Q.   Again, is it more than a couple?
              COPLEY COURT REPORTING - (617) 423-5841
```

26

```
 1      Q.   More than twenty times?
 2      A.   Again, I don't know.
 3      Q.   So maybe more than twenty, maybe not?
 4      A.   Yes.
 5      Q.   But more than ten times?
 6      A.   I believe so.
 7      Q.   For what reasons would you need to arrange for
 8  counsel for Billerica police officers?
 9      A.   I'm not sure if I understand your question.
10      Q.   What are the situations in which you need to
11  arrange counsel for Billerica police officers?
12      A.   If an officer is being sued or could be facing
13  disciplinary action.
14      Q.   How long have you been the President of the union?
15      A.   Approximately thirteen years.
16      Q.   In those thirteen years, how many times have
17  officers been sued?
18      A.   I'm not sure.
19      Q.   More than once?
20      A.   I believe so, yes.
21      Q.   More than five times?
22      A.   Again, I'm not sure.
23      Q.   Might it have been more than five times?
24      A.   Could be, yes.
25      Q.   Might it have been ten times?
              COPLEY COURT REPORTING - (617) 423-5841
```

29

```
 1      A.   It could be. I really don't remember.
 2      Q.   Other than this lawsuit and the recent lawsuit
 3  involving Sergeant Gualietri, what other lawsuits do you
 4  remember?
 5      A.   I don't remember the specific lawsuits. I know that
 6  I did contact counsel about some of the officers. I don't
 7  remember the specifics.
 8      Q.   You don't remember any specific lawsuit other than
 9  those two?
10      A.   Not off the top of my head, no.
11           MR. FISCHER: Let me ask you in the course of this
12  deposition if you think of others, that you say something
13  to me, that you interrupt and say I have thought of another
14  lawsuit.
15           THE WITNESS: Okay.
16           MR. FISCHER: Will you do that?
17           THE WITNESS: Yes.
18      Q.   Now you have arranged counsel for officers who have
19  been disciplined?
20      A.   Yes.
21      Q.   Were you President of the union when Dean Royston
22  was disciplined?
23      A.   Yes.
24      Q.   Did you obtain counsel for him?
25      A.   Yes.
              COPLEY COURT REPORTING - (617) 423-5841
```

27

```
 1      A.   Could be.
 2      Q.   Might it have been twenty times?
 3      A.   Again, I'm not sure.
 4      Q.   Do you keep track of that anywhere?
 5      A.   No. Generally on those occasions what I do is I get
 6  in touch, again, with the legal counsel with the IBPO and I
 7  turn it over to them.
 8      Q.   But you are telling us that you can't -- that you
 9  know that there have been more than two, perhaps as many as
10  twenty times when Billerica police officers have been sued
11  in the thirteen years you have been President of the local
12  union?
13           MR. SILVERFINE: Objection as to form.
14           THE WITNESS: No, I believe I said I don't know.
15      Q.   But you believe it is more than two?
16      A.   Yes.
17      Q.   And it may be as many as twenty but you really
18  don't know?
19      A.   I don't recall all the suits, sir.
20      Q.   It is also part of your duty to obtain counsel for
21  officers, legal counsel for officers who are subject to
22  disciplinary action?
23      A.   Yes.
24      Q.   Do you know how many times roughly you have done
25  that in your thirteen years as a police officer?
              COPLEY COURT REPORTING - (617) 423-5841
```

30

```
 1      Q.   How did you do that?
 2      A.   Again, I contacted the chief legal counsel of the
 3  IBPO and they assigned an attorney.
 4      Q.   Did you have any conversations with Dean Royston
 5  in the course of arranging counsel about the accusations
 6  against him and the disciplinary proceedings in the course
 7  of obtaining counsel for him?
 8      A.   Yes.
 9      Q.   What conversations did you have with him?
10      A.   I'm not sure if I understand the question.
11      Q.   I'm asking you to tell me about your conversations
12  with Dean Royston regarding his disciplinary proceedings?
13      A.   I believe that to be privileged under the union,
14  sir.
15      Q.   So that is another area -- you are asserting a
16  privilege?
17      A.   Yes, I believe that my conversation with him is
18  protected by union privilege, sir.
19      Q.   Do you know whether his disciplinary or ---
20           MR. FISCHER: Strike that.
21      Q.   Did you have conversations with other people about
22  Dean Royston's disciplinary proceedings?
23      A.   His counsel.
24      Q.   What is the basis of asserting a privilege as
25  to your conversations with Dean Royston?
              COPLEY COURT REPORTING - (617) 423-5841
```

**Page 31**

```
 1      A.   I believe that my private conversation with him
 2 regarding his union protection is privileged.
 3           MR. FISCHER: I'm now going to ask the cooperation
 4 of defense counsel in determining whether there is any
 5 statutory or other basis for the privilege that Mr. Conway
 6 is I'm trying in good faith claiming. I don't believe there
 7 is such a privilege. Maybe we can work that out. Do you
 8 want to talk to him for a minute?
 9           MR. SILVERFINE: I don't know that I know anything
10 other than what you know.
11           MR. FISCHER: Let me ask counsel if you can provide
12 any statutory or other basis for the privilege?
13           MR. SILVERFINE: I'm not aware of any but, like
14 yourself, I'm hearing this information for the first time.
15 I don't know.
16           MR. FISCHER: Then I'm asking you would you instruct
17 the witness to answer the question.
18           MR. SILVERFINE: I'm not in a position to do that
19 without ---
20           MR. FISCHER: I think you have an obligation to do
21 that.
22           MR. SILVERFINE: I could certainly seek it out. I
23 will go talk to him.
24           MR. FISCHER: Off the record.
25           (Off the Record at 11:15 a.m.)
           COPLEY COURT REPORTING - (617) 423-5841
```

**Page 32**

```
 1                (Back on the Record at 11:45 a.m.)
 2           MR. FISCHER: Back on the record.
 3      Q.   Have you had the opportunity to speak to Mr.
 4 Silverfine?
 5      A.   Yes.
 6      Q.   And I believe you had the opportunity to speak with
 7 other counsel by cell phone?
 8      A.   Yes.
 9      Q.   Who is that other counsel?
10      A.   The law firm of Nolan and Perroni.
11      Q.   N-o-l-a-n?
12      A.   Yes.
13      Q.   And Perroni is spelled?
14      A.   P-e-r-r-o-n-i.
15      Q.   Okay. Are you prepared to answer the questions or
16 are you still asserting your privilege?
17      A.   I believe it is protected by union activity, sir.
18      Q.   What union activity privilege is there?
19      A.   It is my opinion, sir.
20      Q.   It is your opinion?
21      A.   Yes.
22      Q.   Do you have a statutory cite for that opinion?
23      A.   No.
24      Q.   Do you have a case for that opinion?
25      A.   No.
           COPLEY COURT REPORTING - (617) 423-5841
```

**Page 33**

```
 1      Q.   Do you have any legal training?
 2      A.   No.
 3      Q.   You are refusing to answer the question because in
 4 your opinion it is a union communication?
 5      A.   Yes, sir.
 6      Q.   Okay. Did Dean Royston ever tell you why he thought
 7 he was being disciplined?
 8      A.   I don't recall.
 9      Q.   You do recall conversations with Dean Royston?
10      A.   Some.
11      Q.   Tell us what you recall in your conversations with
12 Dean Royston?
13      A.   I'm not sure I understand the question.
14      Q.   What do you recall him telling you and you telling
15 him?
16           MR. SILVERFINE: Can we have a parameter on this or
17 is it whenever?
18      Q.   How many conversations do you recall having with
19 him regarding his being disciplined?
20      A.   I don't remember the exact number.
21      Q.   More than one?
22      A.   I believe so.
23      Q.   Do you recall when they were?
24      A.   No, I don't.
25      Q.   Can you tell me what you recall him saying and what
           COPLEY COURT REPORTING - (617) 423-5841
```

**Page 34**

```
 1 you recall yourself saying?
 2      A.   Well, I informed him that the Chief was going to be
 3 speaking to him and that he may need union representation.
 4      Q.   Do you recall anything else in these conversations?
 5      A.   He came back and said that he needed union
 6 representation.
 7      Q.   Do you recall providing an attorney for him through
 8 the union?
 9      A.   Yes.
10      Q.   Do you remember today who the attorney was?
11      A.   Yes.
12      Q.   Who was the attorney?
13      A.   Attorney Diane Byrnes.
14      Q.   I'm sorry?
15      A.   Diane B-y-r-n-e-s.
16      Q.   Was she the attorney you spoke to or was she the
17 attorney that was provided to Mr. Royston?
18      A.   ---
19      Q.   Or both?
20      A.   Both.
21      Q.   She represented him in this union or on behalf of
22 the union in this disciplinary proceeding?
23      A.   Yes.
24      Q.   Did he grieve that disciplinary proceeding?
25      A.   I believe he did.
           COPLEY COURT REPORTING - (617) 423-5841
```

**Page 35**

```
 1      Q.   Did the union represent him in the grievance?
 2      A.   Yes.
 3      Q.   Do you know what the nature of the grievance was?
 4      A.   I honestly don't recall.
 5      Q.   If I suggested to you that he has testified in
 6 depositions in this case that he believed he was being
 7 singled out for discipline because of his friendship with
 8 Michelle Kennedy, would that refresh your recollection?
 9           MR. SILVERFINE: Objection as to form.
10           THE WITNESS: Yes.
11      Q.   Do you recall that as being the basis for his
12 grievance?
13      A.   No.
14      Q.   Does that refresh your recollection as to anything?
15           MR. SILVERFINE: Objection as to form.
16           THE WITNESS: Yes.
17      Q.   What does it refresh your recollection about?
18      A.   Officer Royston being disciplined.
19      Q.   What about him being disciplined?
20      A.   I'm not sure I understand your question.
21      Q.   You said it refreshes your recollection. I'm asking
22 what -- refreshing your recollection means that you are
23 remembering something now you didn't remember before this
24 reminded you. I'm asking you what do you now remember?
25      A.   That he did grieve it.
           COPLEY COURT REPORTING - (617) 423-5841
```

**Page 36**

```
 1      Q.   Do you remember what the grievance was about now?
 2      A.   I believe it was in regards to the suspension, the
 3 number of days itself.
 4      Q.   He was grieving it was too many days?
 5      A.   I believe so.
 6      Q.   What was his justification for grieving that?
 7      A.   I believe he thought it was excessive.
 8      Q.   Why did he think it was excessive?
 9      A.   I can't answer what he thought.
10      Q.   So is there anything that is likely to refresh your
11 memory?
12      A.   Possibly.
13      Q.   What could possibly refresh your memory?
14      A.   I don't know.
15      Q.   So if Dean Royston were to testify regarding his
16 grievance, you wouldn't be in a position to agree with or
17 disagree with his testimony?
18           MR. SILVERFINE: Objection as to form.
19           THE WITNESS: I'm not sure if I understood what your
20 question was.
21      Q.   If Dean Royston testified about his grievance, that
22 is something you say that you don't remember now, is that
23 correct?
24      A.   No, I remember him filing a grievance.
25      Q.   You don't remember any of the details about why he
           COPLEY COURT REPORTING - (617) 423-5841
```

**Page 97**

```
1    A.   Yes.
2    Q.   There was something called a complaint, it was a
3  lengthy many page document that spelled out all the charges
4  that the Kennedy's are making against you and all the other
5  officers.
6    A.   Yes.
7    Q.   Do you remember receiving that?
8    A.   Yes.
9    Q.   Did you read it?
10   A.   Not all of it, no.
11   Q.   Do you know who Teddy Galinaro is?
12   A.   Yes.
13   Q.   And who is he?
14   A.   There are a whole bunch of Galinaro's. I think I
15 know which one is Teddy. They grew up on Rodgers Street in
16 North Billerica.
17   Q.   Do you know what his involvement is with Brian or
18 Michelle Kennedy?
19   A.   No.
20   Q.   Do you know him personally?
21   A.   I know I've met him. There are several Galinaro's.
22 I could probably pick him out, which one is which but there
23 is John and I can't remember all of them but there is a lot
24 of them.
25   Q.   Have you spoken to either of them regarding this
        COPLEY COURT REPORTING - (617) 423-5841
```

**Page 98**

```
1  lawsuit?
2    A.   No.
3    Q.   Do you know if anyone has spoken with them
4  regarding this lawsuit?
5    A.   No idea.
6    MR. FISCHER: Let's take a short recess. Off the
7  record.
8              (Off the Record)
9    MR. FISCHER: Back on the record.
10   Q.   Do you recall on the morning of November 9, you had
11 some discussion -- you said that you spoke with Lieutenant
12 Rosa, he was then Lieutenant Rosa and is now Chief Rosa?
13   A.   Yes.
14   Q.   As a result of your conversation with Lieutenant
15 Rosa, you ended up arresting Michelle Kennedy and Billy
16 Ashton?
17   A.   I arrested Michelle Kennedy.
18   Q.   Do you recall whether before that ---
19   MR. FISCHER: Strike that.
20   Q.   Before arresting Michelle Kennedy, you had
21 conversation with Lieutenant Rosa?
22   A.   Yes.
23   Q.   And do you recall whether Lieutenant Rosa spoke to
24 anyone else just before speaking to you?
25   A.   I believe it was Officer DeVito.
        COPLEY COURT REPORTING - (617) 423-5841
```

**Page 99**

```
1    Q.   Did he call the station or speak to anyone or did
2  he call anyone else in that time frame?
3    MR. SILVERFINE: Objection as to form.
4    THE WITNESS: When you say he, you mean Lieutenant
5  Rosa?
6    Q.   Yes.
7    A.   I don't recall. I was talking to the Kennedy's. He
8  could have. I don't recall.
9    Q.   So you don't know if he made a cell phone call to
10 anyone in the station?
11   A.   I don't know.
12   MR. FISCHER: I have no other questions at this
13 point. I'm going to suspend subject to the resolution of
14 questions to which I reserved earlier.
15   MR. SILVERFINE: Okay.
16   MR. FISCHER: Before we suspend, I would like to
17 mark these photographs as Exhibit Number 3.
18              (Marked Exhibit Number 3,
19              Photographs.)
20   MR. FISCHER: We can suspend at this point.
21              (Whereupon at 1:40 p.m., the
22              Deposition was Suspended.)
23
24
25
        COPLEY COURT REPORTING - (617) 423-5841
```

**Page 100**

```
1
2
3    I, MARTIN E. CONWAY, do hereby certify that I have read
4  the foregoing transcript of my testimony given on November
5  27, 2006, and I further certify that said transcript is a
6  true and accurate record of said testimony (with the
7  exception of the following corrections listed below):
8  Page          Line          Correction
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19
20   Dated at _____, this _____
21 day of _____, 2006.
22
23              _____
24              MARTIN E. CONWAY
25 Signed under the pains and penalties of perjury.
        COPLEY COURT REPORTING - (617) 423-5841
```

**Page 101**

```
1
2
3
4              CERTIFICATE
5
6  COMMONWEALTH OF MASSACHUSETTS
7  SUFFOLK, SS.
8
9    I, Vincent R. Martino, Shorthand Reporter and
10 Notary Public within and for the Commonwealth of
11 Massachusetts, do hereby Certify:
12   That MARTIN E. CONWAY, the witness whose deposition
13 is hereinbefore set forth, was duly sworn by me and that
14 such deposition is a true record of the testimony given by
15 the said witness to the best of my skill and ability.
16   IN WITNESS WHEREOF, I have hereunto set my hand and
17 Notarial Seal this 30th day of November, 2006.
18
19              _____
20              Vincent R. Martino
21              Shorthand Reporter
22
23
24
25
        COPLEY COURT REPORTING - (617) 423-5841
```