UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BRIAN KENNEDY, et al * | |
| * | |
| Plaintiffs * | |
| * | |
| v. * | Civil Action no. 04-12357 - PBS |
| * | |
| TOWN OF BILLERICA, et al * | |
| * | |
| Defendants * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPPOSITION TO DEFENDANTS'**
**MOTION TO BIFURCATE AND SEVER**

Now come the plaintiffs and state the following in opposition to defendants' Motion to Compel Sever:

**1. The Defendants have the burden of showing that bifurcation is merited**.

Under Rule 42(b) of the Federal Rules of Civil Procedure, the burden is on the moving party to demonstrate that bifurcation is justified. _McRae v. Pittsburgh Corning Corp._, 97 F.R.D. 490 (E.D. Pa. 1983); _Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc._, 982 F. Supp. 923 (W.D.N.Y. 1997); _Industrias Metalicas Marva, Inc. v. Lausell_, 172 F.R.D. 1, 2 (D.P.R. 1997). Bifurcation is only appropriate when defendants can demonstrate that it would further convenience, "avoid prejudice" or be "conducive to expedition and economy". F.R.C.P. Rule 42

Indeed, as set forth herein below, bifurcation would likely lead to two trials, regardless of the outcome of the first trial against the individual officers. Moreover, because of the plaintiffs' conspiracy and joint venture theory, bifurcating would not limit the evidence or length of the first trial. Thus the defendants are unable to show any "efficiency" from bifurcation.

**2. Defendants have failed to show that "it is inconceivable that the Town and former police chiefs could be liable" if there is no liability against any of the individual defendant officers.**

Defendants contend, in arguing for bifurcation, that if the jury finds for the individual defendants, then "it is inconceivable that the town and the former and present police chiefs could be liable". This is an incorrect reading of both the facts and the law.

**a. The plaintiffs need not establish liability against any individual defendant to proceed against the defendant municipality**.

The defendants rely on *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), which holds that where the jury found that the individual officers did not violate plaintiff Heller's civil rights, there can be no *Monell* claim. While this is correct, it does not address the possibility, very likely here, that while the jury could find that one, or indeed all, of the defendant officers are not liable, the town and its chiefs of police are liable. Given such a likelihood, this requires that there be two trials, whether or not the jury finds that any individual defendant has committed a knowing and willful constitutional violation.

Here, the jury could find that the officers did not willfully or deliberately violate the plaintiffs' civil rights because they were acting in good faith under orders and pursuant to what they understood to be a constitutionally sound set of policies and procedures. However, if these policies and procedures were constitutionally defective, then the jury could and should find the town and the supervising present and former chiefs are liable even though the individual officers, who acted in good faith are not.

Distinguishing *City of Los Angeles v. Heller* in just such a situation, the second circuit

held, in <u>Dodd v City of Norwich</u>, 827 F2d 1 (1st Cir., 1987) that "[w]here as here, a police officer carries out municipal policy with the result that an arrestee is killed, there is a potential for municipal liability even though the police officer may be personally immune from liability for having executed the arrest in a manner in which he has been trained under the city's policy", at 6, citing <u>City of Los Angeles v. Heller</u>.

See also <u>Fairley v. Luman</u>, 281 F3d 918 (9th Cir., 2002), where the Court held that <u>Heller</u> and "these decisions [that follow <u>Heller</u>] have no bearing on [plaintiffs'] Fourth and Fourteenth Amendment claims against the City for . . . [t]hese alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result" of the failure of the defendant city to implement and carry out proper procedures.  In explaining this the Court notes that in the seminal <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), the claim against the city for failure to train properly its officers stood even though no individual officer was even sued.

Here, as plaintiffs have set forth from the outset, the strongest claim is not against any of the twenty eight (28) individual defendants, but against the town for creating an atmosphere and practice where every officer felt it was acceptable, indeed desired, for them to go after the Kennedys.  Thus the situation here, where there are so many defendants, some of whom (like defendant MacKenzie) carried the torch early, some of whom picked up the torch later (such as defendant Tsoukalas), because the message from on high was that going after the Kennedys was not only acceptable, it was a way to win favor.

This has been the plaintiff's theory from the outset.  For this reason, plaintiffs have made clear from the outset their intention to pursue their <u>Monell</u> claim even ahead of claims against individual defendants.  Where this is the case, the seeming benefit of avoiding two trials is

illusory, as there will be a trial on the *Monell* claim whether or not some or all of the individual defendants are found liable and thus there is no saving or benefit to bifurcation.

> **b. Case law holds that the fact that certain admissible evidence may be prejudicial to an individual defendant is best addressed by appropriate limiting instructions where the alternative is multiple trials of the same facts.**

Defendants' claim that "certain evidence may be admissible against certain defendants while it would be prejudicial against other defendants does not overcome their burden to show why there should be two trials. Evidence of other misconduct by other co-defendants may well be deemed admissible against each of the individual defendants to prove motive, opportunity, intent, plan, knowledge or absence of mistake or accident. Fed. R. Evid. 404 (b) Such evidence of other misconduct here goes to each defendants' state of mind and intent at the time he arrested or engaged with any plaintiff. [See *McCabe v Mach*, 908 F3d 1333 (1st Cir., 1996), admitting prior acts of institutional violence because the probative value of this testimony outweighed any prejudicial effect it might have had, *Senra v Cunningham*, 9 F3d 168, 171 (1st Cir., 1993), which found prior incidents of intoxication and domestic disturbances admissible under Fed. R. Evid. 404 (b), and *Gytan v. Kapus*, 181 F.R.D. 537 (N.D.Ill. 1998) where evidence of other disciplinary complaints were admitted to show intent.]

Additionally, such evidence of the acts of others may well be relevant to the issues of joint or conspiracy as well as whether any individual defendant acted as part of a scheme, knowing that he may not have had probable cause or a reasonable belief that he had the right to stop or arrest the plaintiff. The "facts" upon which each defendant allegedly acted are colored by the attitude of the department towards the plaintiffs and thus all the conduct of all of the defendants may be relevant to whether any individual defendant's decision to stop or arrest may

be colored by callous indifference to constitutional rights. See *Guiterrez-Rodriguez v Cartagena*, 882 F2d 553, 559 (1ˢᵗ Cir., 1989)

What might otherwise be misperceived as a random or isolated act may actually be part of a pattern of conduct. That is what is suggested here. Evidence of other conduct with respect to the Kennedys is thus probative of motive, intent and lack of good faith in each defendants' dealings with the plaintiffs. See *Jay Edwards, Inc., v New England Toyota Distributor, Inc*., 708 F2d 814, 824 (1ˢᵗ Cir., 1983)

Thus there will be little savings of judicial time by reserving the *Monell* claim for a second trial, as much of the *Monell* evidence will be admitted in the first trial, in any event. Accordingly, defendants have not met their affirmative burden of showing what interests would be served by bifurcation.

**3. The plaintiffs and the Court are prejudiced by the defendants' untimely delay in requesting bifurcation**.

The plaintiffs indicated their desire to try this case as one trial at the initial scheduling conference on July 12, 2005, at which time the defendants indicated an intention to move to bifurcate but failed to do so. Plaintiffs repeated their intention to proceed with their *Monell* claim again at the initial pre-trial conference on May 22, 2006. At this hearing, the Court asked the plaintiffs to identify which individual defendants plaintiffs intended to proceed against, initially.

Plaintiffs responded to the Court's order with a Status Report [docket # 25] listing the seven (7) individual defendants they were proceeding against "along with the defendant Town of Billerica, in the initial trial". The Court thereafter set dates for expert witness disclosure,

extending these dates and then setting dates to supplement these disclosures, all with the participation of the defendants. [See, eg, ORDERs and docket entries dated 9/07/06 and 9/26/06]

Throughout all of these extensions, defendants knew that plaintiffs were incurring substantial costs and attorneys fees in consulting with their expert in departmental policies and procedures, yet the defendants failed at any point to move to bifurcate. One of the legitimate reasons for bifurcating is to save costs if a second trial may prove unnecessary. Here, the defendants waited until plaintiffs have incurred expert witness costs of over fifteen thousand ($15,000.00) dollars plus substantial attorneys fees.

Defendants knew that plaintiffs were incurring these expenses yet failed to seek the bifurcation they now, belatedly on the eve of trial, seek, not for reasons of judicial economy but to exclude evidence of the entire pattern of conduct. The substantial costs and prejudice to the plaintiffs due to the defendants' huge delay in seeking bifurcation is one more reason to deny the defendants' motion to bifurcate.

## **CONCLUSION**

This is not a case, like a usual excessive force case, where there will be no *Monell* claim against the municipality if the jury finds that the individual defendant did not use excessive force or that the arrest was justified. In those situations, there is a judicial efficiency and economy in bifurcating and deferring the time and expense of litigating a *Monell* claim that may never be reached.

Here, if there were a bifurcated trial, the first trial would still have to include much, if not all, of the *Monell* evidence, as at least three of the *Monell* supervisors, defendants Rosa, Connors

and MacKenzie are principal co-conspirators and instigators in the conspiracy. Thus any savings of time or judicial resources is illusory. Bifurcation will require two trials.

Where a second trial is inevitable, judicial economy is best served by having the jury that has already heard all of the fact evidence over a two week trial hear the entire evidence.

For these reasons, the defendants' untimely motion to sever should be denied.

                                                                   Respectfully submitted,
                                                                   Brian Kennedy, et al
                                                                   by their counsel

Date: March 5, 2007                                  /s/ Andrew M. Fischer
                                                                   Andrew M. Fischer
                                                                   BB0# 167040
                                                                   JASON & FISCHER
                                                                   47 Winter Street
                                                                   Boston, MA 02108
                                                                   (617) 423-7904
                                                                   afischer@jasonandfischer.com

kennedy/oppmopbiurcate