UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
BRIAN KENNEDY, et al                 \*
                                     \*
        Plaintiffs                   \*
                                     \*
v.                                   \*   Civil Action no. 04-12357 - PBS
                                     \*
TOWN OF BILLERICA, et al             \*
                                     \*
        Defendants                   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case involves a fifteen year history of intimidation, threats, beatings, multiple stops and, literally, dozens of arrests and other acts of harassment by twenty eight (28) defendant Billerica police officers. These arrests and other acts of harassment cannot be disputed. Whether there was a basis for the arrests and stops is

This pattern of intimidation and harassment began in late 1991, after Michelle Kennedy rejected the sexual advances of defendant Frank McKenzie, one of three defendants who belatedly now seek summary judgment, and informed his wife of these sexual advances and continues through this day.

### STATEMENT OF FACTS

The plaintiffs' claims arise from a fifteen (15) year pattern of intimidation and harassment that began in late 1991, after Michelle Kennedy rejected the sexual advances of defendant Frank McKenzie and informed his wife of these sexual advances and continues through this day. This pattern of intimidation and harassment began in late 1991, after Michelle Kennedy rejected the sexual advances of defendant Frank McKenzie and informed his wife of these sexual advances.

Shortly after her communication to Mrs. McKenzie, her husband, plaintiff Brian Kennedy's pickup truck was firebombed while parked in the Kennedy's driveway. Then Mr. Kennedy was attacked and beaten in a local pub while several of the defendant police officers, including defendants McKenzie, Nestor, Elmore and McDonald, off duty at the time, stood and watched.

The intimidation continues through the present, despite the multiple complaints and requests for internal affairs investigations by the plaintiffs, from 1991 through to this lawsuit. The abated for awhile, then resumed after defendant Connors' cap and badge were stolen and the defendants erroneously blamed the plaintiffs for this. The intimidation and harassment has included physical assaults on the Kennedys and their sons, some twenty five (25) arrests, continued stops of each of the plaintiffs and their sons, hiring thugs to beat Brian Kennedy, defendant police cars parking and sitting for prolonged times in front of the plaintiffs' homes in both Billerica and Lowell and other acts of harassment.

Some of these acts are acknowledged in the statement of facts filed with the defendants' motion for summary judgment and in the "background" section of the defendants' memorandum in support of their summary judgment motion. Plaintiffs note that all of these facts must be presumed as true for purposes of summary judgment and that the court must accept the plaintiffs' conspiracy and joint venture theory as true for purposes of this summary judgment motion.

**ARGUMENT**

**I. DEFENDANTS. MOTION FOR SUMMARY JUDGMENT SHOULD BE DISMISSED AS UNTIMELY WHEN THE COURT ORDERED THAT THE DEFENDANTS' SUMMARY JUDGMENT MOTIONS WERE TO BE FILED BY SEPTEMBER 11, 2006**

After raising doubts about the basis for summary judgment in this case at the scheduling

conference and the initial pre-trial conference on May 22, 2006, the Court relented to defendants' request that they be permitted to file a summary judgment motion but ordered that it be filed by September 11, 2006. There is no reason defendants could not have done so.

Their summary judgment motion is based solely on a statute of limitations argument based on the complaint. There is nothing raised by the motion that was not know long before September 11, 2006 or any reason for the defendants to delay in filing this motion, other than to harass or delay the plaintiffs as the plaintiffs seek to prepare for trial. [See Section V, below]

On this ground alone, the defendants' motion for summary judgment should be denied as untimely.

## II.  THE STANDARD FOR SUMMARY JUDGMENT REQUIRES DEFENDANTS TO ACCEPT THE FACTS IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF.

Summary Judgment must be sparingly granted in civil rights cases. *Howard v. Topeka-Shawnee County Metropolitan Planning Commission*, 578 F. Supp. 534 at 536 (D.C. Kan. 1983), *Oaks v. City of Fairhope Alabama,* 515 F. Supp. 1004 at 1009 (D.C. Ala. 1981). The procedure is "drastic and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes." *Howard v. Topeka-Shawnee County Metropolitan Planning Commission*, 578 F. Supp. at 536.

Summary judgment may be entered only when there is no dispute as to material fact. The moving party has the burden of showing that they are entitled to judgment as a matter of law as there is no genuine issue as to material fact. *Bromley-Heath Modernization Committee v. BHA*, 459 F. 2d 1067 at 1071 (1st Cir. 1972).

The test for summary judgment is rigorous. *Greenburg v. Puerto Rico Maritime Shipping*

*Authority*, 835 F.2d 932, 934 (1st Cir.1987)  The court must look at the record in the light most favorable to the nonmoving party and "must indulge all inferences favorable to that party ." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983) and *Staffier v. Sandoz Pharmaceuticals Corp*., 888 F.Supp. 28 (D.Mass.,1995), citing *O'Connor v. Steeves*, 994 F.2d 905, at 907 (1st Cir.1993)  If a reasonable factfinder could resolve any material issue in favor of the non-moving party after reviewing the record in this generous light, then summary judgment must be denied.  *Mack v. Great Atlantic and Pacific Tea Company*, 87 F.2d 179, 181 (1st Cir.1989)

Thus, the Court in ruling on defendants' motion for summary judgment must accept as true each of the allegations of harassment as well as the plaintiffs' allegations of a joint venture and conspiracy that has instigated and perpetuated this ongoing and continuing pattern of harassment.  "With respect to a motion for summary judgment, the burden is on the moving party to show that 'there is an absence of evidence to support the non-moving party's case.'" *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))  The defendants, failing to recognize that the ongoing and continuing pattern of harassment, as part e facts that support the plaintiffs's case, have not done so, and so the Court should reject their motion without further consideration.

**III.  WHERE THERE ARE AMPLE FACTS TO LEAD A JURY TO FIND THAT DEFENDANT BILLERICA POLICE OFFICERS ENGAGED IN AN ONGOING CONSPIRACY AND JOINT VENTURE TO VIOLATE THE PLAINTIFFS' CIVIL RIGHTS, THEN EACH OF THE DEFENDANTS ARE LIABLE FOR ACTS OF EACH CO-CONSPIRATOR AND THUS SUMMARY JUDGMENT SHOULD BE DENIED FOR ANY DEFENDANT.**

Defendants, belatedly and on the eve of trial, have moved for summary judgment as to

three of the twenty eight (28) defendants, ignoring the black letter law that each joint-venturer or co-conspirator is liable for every act of each co-conspirator or joint venturer, even if they did not plan, know about or benefit from that act. *Halberstam v. Welch*, 705 F.2d 472, 481, 482 (D.C.Cir.1983); *Aetna Casualty & Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir.1994); *Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035 (D.Mass.1981)

This basic legal principle applies as well to police officers in a conspiracy or joint venture to violate a citizen's civil rights. *Wilson v. Town of Mendon*, 294 F.3d 1 (1st Cir., 2002) and *Com. v Adams*, 416 Mass. 558, 624 N.E.2d 102 (Mass.,1993), citing *Bell v. Mazza*, 394 Mass. 176, 184, 474 N.E.2d 1111 (1985); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir.1988) Thus, if the plaintiffs' allegation of an ongoing joint venture and conspiracy is true -- which must be assumed for purposes of summary judgment -- then each of the defendants, including McKenzie, Elmore and Casey, who now move for summary judgment, are liable for each of the acts of each oc-defendant.

This undermines theory upon which these three defendants now seek summary judgment: that most (but not all, as the defendants concede in their memorandum) of the specific acts of McKenzie, Elmore and Casey, occurred more than three years prior to the filing of the complaint and thus should be barred by the statute of limitations.

Indeed the first acts of the conspiracy and joint-venture were triggered by defendant McKenzie, when his inappropriate sexual advances were rejected by plaintiff Michelle Kennedy and when Michelle Kennedy then told McKenzie's wife of his behavior. McKenzie retaliated, not just directly himself but through the acts of his brother Billerica police officers, now co-defendants, with the many acts of the co-conspirator fellow officer defendants.

In fact, there was an organized system for just such retribution and payback, as set forth in the affidavit of former Billerica police officer Dean Royston, filed herewith. The series of stops, arrests, beatings and other acts of harassment is all part of an organized and systemic retribution for which not only defendant McKenzie, as the instigator, is liable but for which his co-conspirators, Elmore and Casey, are equally liable. Thus even if all of their direct acts occurred more than three years before the filing of the complaint (which the defendant concede is not the case), they are not entitled to summary judgment as they are liable for the acts of their co-conspirators (and for their acts) which occurred within three years of the filing of the complaint.

**III. WHERE THERE ARE AMPLE FACTS TO LEAD A JURY TO BELIEVE THAT THE JOINT VENTURE AND CONSPIRACY THAT BEGAN IN 1991 AND CONTINUES TO THIS DAY, THEN EVEN THE ACTS THAT OCCURRED MORE THAN THREE YEARS AGO ARE PART OF THE ONGOING PATTERN OF CIVIL RIGHTS VIOLATIONS**.

The defendants' argument relies wholly and singularly on the holding in *Nieves v. McSweeney*, 241 F3d 46 (1st Cir., 2001) that the statute of limitations "runs separately from each action constituting a civil rights violation that causes actual damages". However, the facts in *Nieves v. McSweeney* are quite distinguishable from the lengthy pattern of harassment by the defendants here. *Nieves v. McSweeney* involved a single arrest.

Failing to file their lawsuit within three years of the single arrest, the *Nieves* plaintiffs claimed that the prosecution following the arrest was malicious prosecution and a conspiracy to cover up the bad arrest. Using this "conspiracy" theory, the *Nieves* plaintiffs contended that the statute of limitations ran from the conclusion of the criminal prosecution and not the date of the arrest. Judge Selya caustically dismissed this theory writing, in his inimitable style, at p. 51, of

the plaintiffs' "attempt to withstand the blow [of the statute of limitations] by cloaking themselves in the protective armor" of a conspiracy theory.

Thus the seemingly helpful language of *Nieves v. McSweeney*, upon which the defendants rest their entire summary judgment basket, are not applicable to the facts of this case. When the Court in *Nieves v. McSweeney* writes that "in the context of a continuing conspiracy to violate civil rights, the statute of limitations runs separately from the occurrence of each civil rights violation" [at 51], the Court is speaking about the underlying arrest and the subsequent cover-up, not about a pattern of multiple arrests and harassment, such as the conduct of the defendants here.

This is clear from the language in *Nieves* referencing "comparable situations", such as *Landrigan v. City of Warwick*, 628 F2d 736 (1st Cir., 1980), also relied on by the defendants, where "we have determined the conspiracy [to cover up] to be distinct from the events that triggered the need for it". Supra at 52. Indeed, although *Nieves v. McSweeney* is an oft cited case, not one of the close to sixty (60) cases citing it involves a pattern of harassment such as the fifteen (15) year, twenty five (25) arrest pattern in this case. *Nieves v. McSweeney* is often cited on issues of what constitutes malicious prosecution and for the proposition that in order to cite an actionable conspiracy under §1983, a plaintiff must also show a deprivation of a federally protected right. It is less often cited for the proposition that §1983 statute of limitations borrows from the state statute and occasionally for the fact situation where a "conspiracy" is alleged based on the cover up of the initial civil rights violation.

However, not one of the many cases that cite *Nieves* involves any pattern of multiple

stops and arrests, let alone a pattern of twenty (25) arrests over fifteen (15) years, as we have here. *Landrigan* and *Nieves* and their related cases, when speaking of the statute of limitations running separately from the occurrence of each act all involve the situation where the first "act" is the civil rights violation and the second the cover-up, and the language there is intended to make clear that "the conspiracy [is] to be distinct from the events that triggered the need for it", as Justice Selya writes at p. 52 of *Nieves v. McSweeney*, citing *Landrigan*.

    Thus the holdings in *Nieves* and *Landrigan* do not apply to the facts here, where the conspiracy is not just the cover-up but a series of arrests, stops, tailing the plaintiffs, beating the plaintiffs not as part of a cover-up of some earlier civil rights violation but as a deliberate and discriminatory "retaliation" first because Michelle Kennedy would not sleep with defendant MacKenzie and then because Connors had his cap and badge stolen and the defendants blamed this on the Kennedys.

    Neither *Nieves* nor *Landrigan* contemplate a broad and brazen and deliberate pattern of harrasment such as here, involving multiple acts by multiple defendants acting in concert over an extended period of time.  Nor does the one other case relied upon by the defendants, *Kadar Corp., v. Milbury et al*, 549 F2d 230 (1977), a case cited in *Nieves* but otherwise not applicable.

    *Kadar* involved a developer who sued forty one (41) defendants, including town employees and individuals appointed to various town boards, alleging a conspiracy to prevent the developer from building housing in the town.  The First Circuit upheld the District Court's di dismissal of fourteen (14) defendants outright, as there was no allegations of any acts by these fourteen.  With respect to four others, the Court allowed dismissal on statute of limitation grounds, as the acts alleged -- votes while members of the town Board of Health – occurred more

than two years before the filing of the complaint.

In so doing, the Court did write that "Injury and damage in a civil action flow from the overt acts, not from 'the mere continuance of the conspiracy'", in rejecting the plaintiffs' contention that "[t]hey could rely on a the purported [later] overt acts of other co-conspirators . . . to hold open against those four (and all others) a conspiracy cause of action."

However, _Kadar_ is also distinguishable, both on its facts and on the law, having come before _Wilson v. Town of Mendon_, _Com. v Adams_, _Bell v. Mazza_, and _O'Neill v. Krzeminski_, 839 F.2d 9, 11-12 (2d Cir.1988)  _Kadar_ did not involve twenty five (25) arrests and multiple other acts of harassment by police officers acting under color of law, where, if proven, the conduct is an outrageous affront to civil liberties and abuse of police powers.  It was a case by a disgruntled developer suing everyone associated with the town that rejected his building project.  This is not the same as the Kennedys' claim.

Indeed, plaintiffs could find no reported cases involving such a pattern of multiple acts involving any police department or of harassment involving multiple stops and arrests as here based on a discriminatory motive as here.

A more appropriate precedent that this Court might apply to the ongoing conspiracy in this case is found in the employment discrimination cases that address a continuous pattern of sexual or racial harassment that gives rise to a civil rights violation, such as _O'Rourke v. City of Providence_, 235 F.3d 713 (1st Cir., 2001) and its progeny (see, e.g. _Johnson v. Spencer Press_, 364 F3d 368 (1st Cir., 2004), _Lee-Crespo v. Schering-Plough del Caribe_, 354 F3d 34 (1st Cir., 2003) and _Crowley v. L. L. Bean_, 303 F.3d 387 (1st Cir., 2002)

See also, e.g., _Velazquez v. Chardon_, 576 F. Supp. 476 (D.P.R. 1983), judgment aff'd,

736 F.2d 831 (1st Cir. 1984), "if the alleged violations of their civil rights are found to constitute a pattern of continuing discrimination, rather than single acts of discrimination, these cases would not be time barred."

These cases arise from ongoing patterns of harassment in sexual and racial employment discrimination cases are far more comparable to the facts here, where there is a long pattern of repeated acts than *Nieves* nor *Landrigan*, which involve an underlying civil rights violation and the subsequent cover-up. The employment civil rights cases, far more analogous to the facts here, consistently hold that a pattern of conduct is ongoing through the most recent act and so that even acts that are part of the pattern but preceded the statute of limitations (or the short EEOC filing deadline) are includable as part of the violation.

Such inclusion makes sense for other reasons. All of the acts, even those more than three years prior to the filing of this lawsuit, must be part of the evidence in order to present the scope of the joint venture and conspiracy to the jury. In addition, the perpetrators of the earlier acts are liable for the later acts of their joint venturers and co-conspirators, in any event. Forcing the jury to treat differently early acts that are "excludable" but in evidence as part of the conspiracy will serve no purpose but will confuse the jury, increasing the prospects of a mis-trial and will complicate the trial. Indeed, as defendants Elmore and Casey acknowledge that some of their involvement was within three years of the filing of suit, the Court will have to guide the jury in parsing between per and post involvement.

Nor does such parsing result in any benefit to the three defendants seeking summary judgment. Indeed, as the instigator of the retaliation, the spurned suitor defendant MacKenzie is, in any event, still liable for any act of his joint venturers and co-conspirators. Likewise, as joint

venturers and co-conspirators, defendants Casey and Elmore are also responsible for the acts of their co-conspirators.

Thus summary judgment does not lie for defendants MacKenzie, Elmore or Casey, as their acts are part of the ongoing pattern of violations of the plaintiffs' civil rights and all acts that are part of the pattern of harassment are properly before the Court as part of the ongoing pattern of harassment.

### IV. THE STATUTE OF LIMITATIONS DOES NOT EXPIRE FOR THE MINOR PLAINTIFFS UNTIL THEY REACH THE AGE OF MAJORITY

Defendants jump from their specious statute of limitations argument to the conclusion that the minor children have no claim for loss of consortium. Insofar as the defendants entire motion is grounded on a statute of limitations argument, the defendants' motion is derailed by M.G.L., c. 260 §7, which unequivocally holds that the statute of limitations for a minor does not commence until the minor reaches the age of majority. *Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.App.Ct. 645, 461 N.E.2d 256 (1984)

As the statute of limitations has not begun yet to toll for any of the three minor plaintiffs, all the acts by all of the defendants are still properly before the court as part of the loss of consortium claims of the minor children.

**V.  WHERE THERE IS NO BASIS IN LAW FOR THE DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION AND WHERE THE DEFENDANTS, AFTER MAKING THE COURT AWARE OF THEIR STATUTE OF LIMITATION CLAIM AT THE SCHEDULING CONFERENCE ON date , THEN DELAYED BRINGING THE MOTION UNTIL THE EVE OF TRIAL, THE COURT SHOULD CONCLUDE THAT THE MOTION WAS BROUGHT "TO HARASS OR TO CAUSE . . . NEEDLESS INCREASE IN THE COST OF LITIGATION", IN VIOLATION OF RULE 11 AND SHOULD SANCTION DEFENSE COUNSEL**.

The defendants pronounced their intent to file a motion for summary judgment at the initial scheduling conference on July 12, 2005, almost two years ago[1], yet delayed filing it until the eve of February vacation, when they knew plaintiffs' counsel would be away.  Defense counsel knows that undersigned plaintiffs counsel is also under a mid-March deadline to file a reply brief to defendants' cross appeal in the First Circuit in <u>Lockhart-Bembery v. Town of Wayland et al</u>, [First Circuit docket numbers 06-1720 and 06-2228] as defense counsel are opposing counsel in that case, as well.

There was nothing in the defendants' motion that required any discovery.  Indeed, the defendants' summary judgment rests wholly on the facts alleged in the complaint.  Thus, if the morion had any merit it should have been brought in the summer of 2005, not in the three weeks before trial, when the moving party knows that, in addition to trial preparation, plaintiff's counsel has a deadline for a significant appellate brief, as well.

Even if the motion had merit, it should not have been brought on the eve of trial, as it was. Moreover, defendants failed to confer in good faith to resolve or narrow the issues raised in

---

[1] This request was not looked at favorably by the Court, which refused to set a date for filing summary judgment, instead stating word to the effect that the defendant "could file whatever they want" but that any filing would not delay the trial date.  The Court later set a deadline of September 11, 2006 for the defendants to file a summary judgment motion.

summary judgment, as required by local rule 7.1(A)(2). Instead, defense counsel Silverfine called plaintiff's counsel on the afternoon of February 8, 2007, moments before filing the summary judgment motion, and announced that he was filing the motion. When plaintiffs' counsel inquired as to the basis of the motion, seeking to engage in discussion that might narrow or resolve the issue, defense counsel declared that he had fulfilled his obligation under Rule 7.1 and hung up.

The threat to move to strike the inaccurate Rule 7.1 certification prompted a reply from defense counsel Kesten. This led to a subsequent lengthy telephone conversation the following week, between undersigned plaintiffs' counsel, from his Florida hotel room, and defense counsel Kesten. Plaintiffs' counsel pointed out the timing of the filing and the absence of merit to the legal issue and insisted that defense counsel withdraw the motion.

Defense counsel refused to withdraw the motion, but did accede to a motion to extend the time for responding. This meant that undersigned counsel was able to prepare this opposition in the two weeks before trial, in between trial preparation and writing a brief for the First Circuit Court of Appeals. This is set forth in the Affidavit of Andrew M. Fischer, filed herewith.

Where the defendants' motion could have and should have been brought more than a year ago, and where the motion lacks merit, the timing of the filing of this motion raises the indisputable inference that the motion was filed to harass, to cause undue delay and to needlessly increase the cost of litigation. This is a violation of F.R.C.P., Rule 11.

Plaintiff has incurred an estimated 15-25 hours in attorneys fees preparing this opposition to a largely frivolous and wholly untimely motion for summary judgment. Plaintiff seeks a sanction in the amount of the attorneys fees expended in responding to this motion.

**CONCLUSION**

Defendants' motion for summary judgment should be denied as without merit and defendants should be sanctioned, pursuant to instead F.R.C.P., Rule 11, given the deliberate timing of the filing of a summary judgment motion so lacking in merit.

Plaintiffs, by their counsel

Date: March 5, 2007

/s/ Andrew M. Fischer
Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904
Afischer@jasonandfischer.com

Kennedy/oppsj