```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


_____
                                   )
BRIAN KENNEDY, et al.              )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )  CIVIL ACTION NO. 04-12357-PBS
                                   )
TOWN OF BILLERICA, et al.          )
                                   )
        Defendants.                )
                                   )
_____)
```

**MEMORANDUM AND ORDER**

March 26, 2007

Saris, U.S.D.J.

## I. INTRODUCTION

Plaintiffs Brian Kennedy and Michelle Kennedy, together with their children Brian Kennedy, Jr., Mitchell Kennedy, and Dylan Kennedy, have filed suit against the Town of Billerica and twenty-nine law enforcement officers, alleging a pattern of harassment and civil rights violations over the course of fifteen years. Three of the defendants in this case, Frank MacKenzie, Steven Elmore, and Michael Casey have moved for summary judgment. After hearing, the Court **ALLOWS**, in part, and **DENIES**, in part, the motion for summary judgment.

## II. BACKGROUND FACTS

The facts of the case, viewed in a light most favorable to the plaintiffs are as follows. Defendants hotly dispute most of

these contentions. The Billerica police began harassing the Kennedy family in 1991, shortly after one police officer, Frank MacKenzie, became infatuated with Ms. Kennedy. After rebuffing MacKenzie's advances, Kennedy reported the incident to her angered husband.

This slight sparked a fifteen year campaign of retribution against the Kennedy family. Kennedy's pickup truck was firebombed shortly after Ms. Kennedy told MacKenzie's wife about the sexual advances. Thereafter, Mr. Kennedy was attacked and beaten in a local pub while several of the defendant police officers, off duty at the time, stood and watched. The Kennedy family was erroneously blamed for the theft of one officer's cap and badge. The harassment includes physical assaults on the Kennedys and their sons, approximately twenty five arrests, repeated traffic stops of each of the plaintiffs, and incessant surveillance and verbal harassment by police officers in both Billerica and Lowell.

Although the complaint charges Officer MacKenzie with numerous incidents of misconduct, including extensive harassment of the family, none of the allegations made against him postdate November 5, 2001.

The vast majority of the allegations against Officer Steven Elmore occurred prior to November 5, 2001. The plaintiffs make only one allegation against him which occurred after November 5,

2001.  In the summer of 2002, G.B., a young boy from the plaintiffs' neighborhood, beat up one of the children, age 11, in the Kennedy family.  Officers Elmore and Richard Nestor were dispatched to the scene in response to the plaintiffs' 911 call.  Upon the arrival of the officers, the plaintiffs insisted that criminal charges be filed against G.B.  However, Elmore and Nestor refused to bring any charges against G.B. because he was "just a kid."

Many of the plaintiffs' allegations against Officer Casey also occurred prior to November 5, 2001.  After that date, however, plaintiffs point to several incidents of alleged misconduct.  First, on May 17, 2004, Michelle Kennedy returned home from running some errands, and she observed several police cars near her home.  On that same date, an unidentified female officer approached Brian Kennedy and asked if he had vandalized a neighbor's trailer with a hammer.  Mr. Kennedy replied that he had not.  Nevertheless, after this conversation with this unidentified female officer, Officers Casey and Jonn Zarro began taunting Mr. Kennedy by calling him a "pussy" and a "bitch".  Casey challenged him to a fight.  The officers lingered in the family's neighborhood for several hours for no apparent reason.

The following day, the assistant principal at the Kennedys' son's school entered a classroom where he was taking the MCAS examination and asked the teacher and all of the other students

to leave because Officer Casey needed to speak with the Kennedys' son, age 11.  After the students had exited the room, Officer Casey accused the son of breaking into the school and stealing money.  Officer Casey then requested that he remove his footwear for examination.  After searching the sneakers, Casey left the room.

Later that day, several men confronted the Kennedys at their home and attempted to goad Mr. Kennedy into a fight.  One of the men allegedly showed Mr. Kennedy a gun while another threw two bricks at Ms. Kennedy.  After a neighbor phoned 911, several officers, including Casey, reported to the scene.  Despite their explanation as to what had transpired that evening, Casey refused to take any action against the three men.  The son videotaped Casey's response.  Casey threatened the family with arrest if the son did not stop videotaping the incident.

The complaint was filed on November 5, 2004.

### III. DISCUSSION

#### A. Summary Judgment Standard

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (quoting

4

Fed. R. Civ. P. 56(c)).  "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position."  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'"  Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'"  Rogers, 902 F.2d at 143 (quoting Anderson, 477 U.S. at 249-50) (citations and footnote in Anderson omitted).  The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  Barbour, 63 F.3d at 36.

**B. Timeliness**

The three officers argue that the complaint was not filed in a timely fashion in accordance with the three-year statute of limitations governing federal civil rights claims under 42 U.S.C. § 1983.  See McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995)

(applying the Massachusetts three-year limitation period for personal injury actions to § 1983 claims). The limitations period generally begins to run when the plaintiff "knows or has reason to know of the injury which is the basis for his claim." Rodriguez-Narvaez v. Nazario, 895 F.2d 38, 41 n.5 (1st Cir. 1990).

The First Circuit has repeatedly held that "in the context of a continuing conspiracy to violate civil rights, the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of the injury)." Nieves, 241 F.3d at 51 (citing Hernandez Jimenez v. Calero Toledo, 576 F.2d 402, 404 (1st Cir. 1978)). As a consequence, the First Circuit has rejected the notion that "the statute of limitations for civil conspiracy should run from the date of the last overt act that causes damage to the plaintiff." Nieves, 241 F.3d at 51. In Hernandez Jiminez, the First Circuit opined:

> We recognize that some courts have spoken of the "last overt act" of a civil rights conspiracy as the time from which the statute begins to run, but do not believe those courts meant to depart from the traditional rule in civil conspiracies that the mere fact of a conspiracy does not toll the statute of limitations with respect to earlier clear-cut violations of rights that have not been concealed from the plaintiff.

576 F.2d at 404 n. 1 (citation omitted). As the Kennedys do not argue that the incidents that transpired in the course of the

6

alleged conspiracy were concealed from them, this "separate running" rule from Hernandez Jimenez and Nieves governs when the plaintiffs' causes of action accrued.  See also Landrigan v. City of Warwick, 628 F.2d 736, 741 (1st Cir. 1980) (treating separately the underlying acts of a conspiracy to deprive plaintiffs of civil rights).

Under this "separate running" rule, the three year statutory period began to run when each incident occurred.  This Court, therefore, will look separately at each incident to determine whether the plaintiff can ultimately recover for each event under the statute of limitations.  As a matter of law, the statute of limitations bars recovery for any of the moving defendants' unconcealed conduct that predates November 5, 2001.

Plaintiffs attempt to elude the grip of this timeliness rule in several fashions.  First, plaintiffs argue that the facts in the instant case are distinguishable from the facts in Nieves and Hernandez Jiminez because those cases did not involve a decade-long pattern of harassment involving two dozen wrongful arrests and a cornucopia of tortuous conduct.  Instead, plaintiffs submit that this Court should rely upon the cases in the employment area that address a continuous pattern of sexual harassment, such as O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001), and Lee-Crespo v. Schering Plough del Caribe, 354 F.3d 34 (1st Cir. 2003).  In both O'Rourke and Lee-Crespo, the First Circuit

recognized the continuing violation doctrine, which "is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some violation within the statute of limitations period that anchors the earlier claims.'"  O'Rourke, 235 F.3d at 730 (quoting Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998)).

The First Circuit in Nieves specifically repudiated a "continuing violation" theory for civil rights cases, except in narrow circumstances where conspiratorial conduct arises before any tort occurs.  241 F.3d at 52.  A plaintiff cannot circumvent the accrual rule articulated in Nieves and Hernandez Jiminez through a conspiracy theory of liability.  See Nieves, 241 F.3d at 52 (rejecting the appellants' theory of a single, unified conspiracy encompassing several torts and declaring "that the three-year statute of limitations runs from each civil rights violation identified in the complaint").  Thus, plaintiffs' attempt to import the "continuing violation" rule or the "last overt act" rule into this case is unavailing.

Even had this Court accepted plaintiffs' "continuing violation" argument, however, the statute of limitations would have begun to accrue once they became aware or should have become aware that a hostile environment existed.  See Rodriguez-Narvaez, 895 F.2d at 41 n.5 (stating general rule that statute of

limitations begins to run when plaintiff should have become aware of the wrong); see also O'Rourke, 235 F.3d at 728 (recognizing that the continuing violation theory is not a per se exception to the standard rule of accrual and stating that determinations of whether a continuing violation theory should apply is subject to a reasonableness inquiry). Under any fact-based theory advanced by plaintiffs, the Kennedys reasonably should have become aware of a hostile environment well before 2001. Therefore, the plaintiffs' claims would be similarly time barred, even if the continuing violation theory was imported into this arena.

Finally, plaintiffs assert that even if the moving defendants' acts occurred more than three years before the filing of the complaint, these officers should not be entirely dismissed from the suit because they may be liable for the acts of their co-conspirators that occurred after November 5, 2001. See Wilson v. Town of Mendon, 294 F.3d 1, 15 (1st Cir. 2002) (stating that when police officers act as "joint tortfeasors ... [they] may incur shared constitutional responsibility"). The plaintiffs have submitted an affidavit from a former Billerica police officer that suggests that the police department routinely agreed and conspired to harass and intimidate individuals, such as the Kennedys, with whom the department was "having a problem." On the basis of this evidence, plaintiffs have presented a material issue of triable fact as to whether a conspiracy existed to

violate the plaintiffs' civil rights under § 1983.  Indeed, if plaintiffs can show that the police officers conspired together to harass and intimidate the Kennedy family, then the three moving defendants may be held liable for any acts of their co-conspirators that occurred after November 5, 2001.  Such liability, however, cannot rest on alleged civil rights violations that predate the limitations period.

**C. Sufficiency of Post-2001 Claims**

**1. Civil Rights Violations**

Plaintiffs state claims for relief under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12 §§ 11H, 11I.  In examining Mass. Gen. Laws ch. 12 §§ 11H, 11I, the Massachusetts Supreme Judicial Court held that the "Legislature intended to provide a remedy under G.L. c. 12, § 11I, coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not."  Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985).  Another difference is the requirement that threats, intimidation, or coercion accompany the violation of rights.  See Longval v. Comm'r of Corr., 404 Mass. 325, 333 (1989) (citing Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 781 (1987)) ("Not every violation of law is a violation of the State Civil Rights Act.  A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate

the [state civil rights] Act").

As is well established, § 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law.  See Albright v. Oliver, 510 U.S. 266, 271 (1994).  Thus, "the first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  Baker v. McCollan, 443 U.S. 137, 140 (1979) (citations omitted); see also Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005) (citations omitted).  Thus, to defeat summary judgment on their state and federal civil rights claims, the Kennedys must present evidence sufficient to create a genuine issue of material fact as to whether the moving defendants deprived the plaintiffs of a right secured by the Constitution or the laws.  Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir. 1987).

### i.  **Elmore's refusal to bring assault charges**

According to the plaintiffs' verified complaint, Elmore refused to bring charges against a young boy from the plaintiffs' neighborhood, who beat up the Kennedys' son because the alleged perpetrator was "just a kid."  Even accepting this fact as true, the plaintiffs cannot show that this refusal to swear out a criminal complaint against the young boy was a violation of the Kennedys' rights.

Plaintiffs point to no case that creates or recognizes a right to have the police bring charges against any individual on demand. The plaintiffs do not challenge any aspect of Elmore's response except for his failure to file a complaint against the young boy. Elmore's refusal to bring assault charges, without more, is not a violation of plaintiffs' rights. Howard ex rel. Estate of Howard v. Bayes, 457 F.3d 568, 575 (6th Cir. 2006) (holding that the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, either in its procedural or in its substantive manifestations.). Therefore, this allegation of misconduct is insufficient to state a claim under § 1983 and its Massachusetts analogue.

### ii. Officer Casey's Actions

Plaintiffs allege that Officer Casey engaged in several instances of misconduct within the three year limitations period in violation of their First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. First, the complaint alleges that Casey refused to charge three men with assaulting Mr. Kennedy. As discussed above, this refusal to pursue criminal allegations against an individual is not a violation of the plaintiffs civil rights, and this fact cannot serve as the basis for recovery under § 1983 or Mass. Gen. Laws ch. 12 §§ 11H, 11I.

Plaintiffs further allege that Casey taunted Mr. Kennedy by

calling him a "pussy" and a "bitch" and by challenging him to a fight.  The following day, the complaint asserts that Casey interrupted an administration of the MCAS to question and search Mitchell Kennedy at school without any parental supervision or knowledge.[1]

As it relates to whether these actions violated the due process clause of the Fourteenth Amendment, Plaintiff must prove either the deprivation of a specific liberty or property interest, or that the state's conduct "shocks the conscience." <u>Brown v. Hot, Sexy & Safer Productions, Inc.</u>, 68 F.3d 525, 531 (1st Cir. 1995).  Before a constitutional infringement occurs, the state action must be egregiously unacceptable, outrageous, or conscience shocking.  <u>Amgden v. Moran</u>, 904 F.2d 748, 753-54 (1st Cir. 1990).

While the cases finding government conduct to shock the conscience frequently involve state action that is "highly physically intrusive," the First Circuit has left open "the possibility that verbal or other less physical harassment" might be a conscience-shocker.  The question here is whether the pattern of taunts combined with physical threats (like a challenge to a fight) arises to a conscience-shocking level.

---

[1] At the outset, it is unclear how either of these actions constitute a violation of plaintiffs' First, Fifth, or Eighth Amendment rights, and plaintiffs point to no cases to suggest that these particular rights were infringed by Officer Casey's alleged misconduct.

13

While the First Circuit has been chary about concluding that conduct is sufficiently outrageous to violate the substantive due process clause, it "expressly [left] open the question of whether verbal harassment and intimidation of this general type might, under appropriate circumstances, be found to violate due process." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 624 (1st Cir. 2000). While the issue is close, I find that this claim involves a disputed issue of fact for the jury because Casey not only taunted Kennedy and challenged him to the fight, but also singled out his 11 year old son in school the next day and arguably conducted an unlawful search. The inference could be drawn that this was conscience-shocking retaliation. See id. at 623 (dismissing § 1983 suit that alleged violation of Fourteenth Amendment where officers verbally taunted plaintiffs with threats of assault and prosecution because such action did not shock the conscience); see also Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) (finding that plaintiff could not recover where the defendant police officers allegedly threatened to kill her, told plaintiff's children that if the police caught their father the children would never see him again, and also refused to allow the children to give the father a goodbye hug when he was arrested); see also Grendell v. Gillway, 974 F. Supp. 46 (D. Me. 1997) (finding that the behavior of the police "shocked the conscience" when an officer lied to and threatened an eleven-year-old girl in

14

order to extract incriminating information about the suspected drug use of her parent because officer's behavior struck at "the basic fabric of all parent-child relations: love, trust, and faith").

Plaintiffs can also show that a triable issue of material fact exists as to Casey's search of the son under the Fourth Amendment.  The Fourth Amendment, through the Fourteenth Amendment, protects the rights of students against unreasonable searches by state actors.  New Jersey v. T.L.O., 469 U.S. 325, 334 (1985).  Ultimately, "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search."  Id. at 341.  In striking this balance, the Court must weigh "the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools."  Id.  Such a balance, however, "does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law."  Id.

Here, drawing all inferences in plaintiffs' favor, a reasonable trier of fact could conclude that the search of the sneaker at school was unreasonable - either at its inception or in its execution - given his young age, the alleged lack of evidence implicating him in the theft, and the decision to empty

15

the classroom during an administration of the MCAS.  Thus, summary judgment would be improper on this portion of the claim.

**2. <u>Intentional Infliction of Emotional Distress</u>**

To prevail on their claim for intentional infliction of emotional distress, the plaintiffs must ultimately establish:

> (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

<u>Payton v. Abbott Labs</u>, 386 Mass. 540, 555 (1982) (citations omitted).  Liability cannot be predicated on

> mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

<u>Foley v. Polaroid Corp.</u>, 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46 comment d (1965)) (internal quotation marks omitted).

Plaintiffs have submitted sufficient evidence to create a triable issue of material fact as to whether the defendant Casey

16

committed the tort of intentional infliction of emotional distress. However, the claims against the other two officers are dismissed because there is insufficient evidence of conduct after 2001 to support the claims.

### 3. **Assault by MacKenzie**

The plaintiffs claim that MacKenzie committed the intentional tort of assault against Mr. Kennedy. However, the alleged assault occurred well before November 5, 2001. The assault count against MacKenzie is dismissed as untimely.

### 4. **Malicious Prosecution**

To prove malicious prosecution, plaintiffs must show that the three defendants instituted criminal proceedings against them with malice and without probable cause and that those proceedings terminated in favor of plaintiffs. See Beecy v. Pucciarelli, 387 Mass. 589, 593-594 (1982) (outlining tort of malicious prosecution). "Central to the tort of malicious prosecution is that the actor to be held liable must have made perverse use of the litigation process by instigating criminal proceedings without probable cause and primarily for a purpose other than bringing the targeted person to justice." Conway v. Smerling, 635 N.E.2d 268, 271 (Mass. App. Ct. 1994).

Plaintiffs, however, can point to no facts to suggest that any of the three moving defendants participated in any effort to institute criminal proceedings against the plaintiffs after

November 5, 2001.  Therefore, any claims that plaintiffs may have had against the three officers are not timely.  The complaints against them are dismissed.

5. **Loss of Consortium**

Defendants argue that this Court should allow summary judgment on plaintiffs' claims for loss of consortium because the plaintiffs have not stated any other valid claims for relief. See Mouradian v. Gen. Elec. Co., 23 Mass. App. Ct. 538, 544 (Mass. App. Ct. 1987) (finding that a consortium claim may be brought only when claimant's spouse has a valid tort claim).

Relatives of a federal civil rights victim are not permitted to raise a claim for loss of consortium based upon the federal civil rights violation under § 1983.  Tauriac v. Polaroid Corp., 716 F. Supp. 672, 673 (D. Mass. 1989); see also Meaney v. Dever, 170 F. Supp. 2d 46, 64 (D. Mass. 2001), *rev'd on other grounds*, 326 F.3d 283 (1st Cir. 2003); see also Dawn v. City of Boston, 2002 WL 487161, at *8 (D. Mass. March 29, 2002), *rev'd on other grounds*, 329 F.3d 275 (1st Cir. 2003).  Similarly, it does not appear as if the plaintiffs can state a claim for loss of consortium for violations of Mass. Gen. Laws ch. 12 §§ 11H, 11I. See Tauriac, 716 F. Supp. 2d at 674 ("it is doubtful that Massachusetts would recognize the validity of a consortium claim that is ancillary to a state law civil rights action").

The plaintiffs' children also maintained a loss of

18

consortium claim arising out of the tort of intentional infliction of emotional distress. See Agis v. Howard Johnson Co., 371 Mass. 140, 146-47 (1976) ("we hold that, where a person has a cause of action for intentional or reckless infliction of severe emotional distress, his or her spouse also has a cause of action for loss of consortium arising out of that distress"). However, the Kennedy children cannot assert a loss of consortium claim where the underlying claim - here, the intentional infliction of emotional distress claim stated by the parents - is time-barred. See Short v. Town of Burlington, 11 Mass. App. Ct. 909 (Mass. App. Ct. 1981) (dismissing consortium complaint because plaintiff could not succeed on the related intentional infliction of emotional distress claim). The loss of consortium claims must fail on all time-barred claims. The only viable loss of consortium claim is based on the alleged intentional infliction of emotional distress by Casey.

## V.    ORDER

The motion for summary judgment [Docket No. 136] is **ALLOWED** with respect to all conduct that predates November 5, 2001; the malicious prosecution claim against MacKenzie, Elmore, and Casey; the intentional infliction of emotional distress claims against MacKenzie and Elmore; the claims for loss of consortium against MacKenzie and Elmore; and the claims for loss of consortium against Casey arising out of conduct that pre-dated November 5,

2001.  The motion is otherwise **DENIED**.  Plaintiffs' motion for sanctions [Docket No. 175] is **DENIED**.

                                               **S/PATTI B. SARIS**
                                               PATTI B. SARIS
                                               United States District Judge