UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*********************************
BRIAN KENNEDY AND MICHELLE KENNEDY,   *
Individually and as father and next friend of   *
BRIAN KENNEDY, JR., Individually and as mother   *
next friend of BRIAN KENNEDY, JR..   *
                                     *
        Plaintiffs                   *
                                     *
v.                                   *   C. A. No. 04-CV-12357-PBS
                                     *
TOWN OF BILLERICA, et al             *
                                     *
        Defendants                   *
*********************************
```

## OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING SECOND SET OF DEFENDANTS

Upon order of this Court, this case, originally brought against twenty eight (28) individual defendants and the Town of Billerica, was bifurcated and the Court ordered the plaintiffs to identify a limited number of defendants, which plaintiffs did, and further ordered that the initial trial would proceed solely against these designated defendants.

Plaintiffs were led to understand that, pursuant to the bifurcation procedure imposed by the Court, if the plaintiffs did not prevail, they would be expected to drop claims against the remaining defendants. On the other hand, the plaintiffs were led to understand that if they obtained a judgment in the initial trial, as they have done, the defendants would be expected, if not to honor the judgment, at least to engage in good faith efforts to settle the remaining claims, thereby resolving the entire case short of multiple trials. This appeared to be the Court's intent behind its bifurcation order.

At the conclusion of the first trial, the Court reminded the plaintiffs of the Court's decision, time barring plaintiffs' claims based on incidents that predate 2001, and ordered plaintiffs to apply this decision to the remaining defendants and determine which of the remaining defendants it would prosecute in a second trial. Although plaintiffs do not agree with this Court's ruling regarding the application of the statute of limitations to claims prior to 2001, particularly with respect to the minor children's loss of consortium claims, the plaintiffs agreed to the dismissal of claims against fourteen (14) of the remaining defendants, (without waiving their rights of appeal on this issue) identifying six (6) defendants still remaining after application of this Court's statute of limitations ruling. Now the defendants bring a second summary judgment motion regarding these defendants, against whom viable claims remain.

## ARGUMENT

**I. The verdict against the defendant Town does not resolve the claims against the remaining defendants, as the evidence was limited to incidents involving the defendants on trial .**

The defendants' first argument, incredibly, is that the plaintiffs are collaterally estopped, based upon their success on the *Monell* failure to supervise claim, from asserting unlitigated claims against defendants who were not included in the initial trial. The defendants claim that because the Court instructed the Jury that it could return a verdict assessing damages for "conduct by any police officer in Billerica who violated the plaintiff's civil rights", the first trial has disposed of all claims against all Billerica police officers. [Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, at p. 2]

First of all, this is a gross mis-statement of the Court's instruction to the jury: the Court never gave such an instruction. Second, even if the Court had mis-instructed the Jury, as the defendants allege (without citation to the jury charge, which the Court made available to the parties) in this sweeping manner, such a hypothetical error would have been harmless, as the Court limited the evidence to conduct by the seven defendants identified for the initial trial.

The Court's instruction regarding the scope of the initial trial was quite explicit:: the plaintiffs were allowed to offer evidence of conduct of the seven defendants specified for the first trial or evidence of complaints by the plaintiffs to the department about misconduct. As virtually all of Michelle Kennedy's complaints that were put into evidence involved defendant MacKenzie, one of the original seven,[1] there was little, if any evidence involving the now remaining six defendants. Any evidence that may have been admitted involving the still remaining defendants was merely incidental evidence ancillary to the cases against the original seven.

For example, Ms. Kennedy complained about defendant MacKenzie, with other officers, confronting, challenging and then assaulting Mr. Kennedy at the Mr. Tips Restaurant. Defendant Munn was assigned by the defendant chief, Barretto, to "investigate" this incident. There was evidence of the inadequacy of this "investigation" but this peripheral piece of evidence certainly did not constitute a presentation of plaintiffs' case or claims against defendant Munn. Likewise, any other evidence that related to the still remaining six defendants that may have been

---

[1] Other complaints involved defendant Connors' failure to investigate the firebombing of the plaintiffs' pickup truck and complaints against defendant Tsoukalas, but they were also among the initial seven defendants selected for the first trial.

introduced in the initial trial also was limited to what was necessary to present the claims against the original seven and hardly a presentation of the plaintiffs' case against the still remaining six defendants.

**II.  Plaintiffs have sufficient evidence to support claims against each of the six remaining defendants.**

    **A.  The standard for summary judgment is whether, when viewing the facts in the light most favorable to the plaintiffs, there is no possible reading of the facts that would support a judgment for the plaintiffs.**

Summary Judgment must be sparingly granted in civil rights cases. *Howard v. Topeka-Shawnee County Metropolitan Planning Commission*, 578 F. Supp. 534 at 536 (D.C. Kan. 1983), *Oaks v. City of Fairhope Alabama*, 515 F. Supp. 1004 at 1009 (D.C. Ala. 1981).  The procedure is "drastic and should be applied with caution to the end that the litigants will have a trial on *bona fide* factual disputes."  *Howard v. Topeka-Shawnee County Metropolitan Planning Commission*, 578 F. Supp. at 536.

Summary judgment may be entered only when there is no dispute as to material fact.  The moving party has the burden of showing that they are entitled to judgment as a matter of law as there is no genuine issue as to material fact.  *Bromley-Heath Modernization Committee v. Boston Housing Authority*, 459 F. 2d 1067 at 1071 (1st Cir. 1972).

    **B.  Defendant Richard Rhonstock**

Defendants claim [at p. 3 of their memorandum] that since "the jury found that Chief Rosa neither used excessive force nor abused Michelle Kennedy", she has "fully litigated the issue of her alleged mistreatment while she was confined in the Billerica police station on November 9, 2001".   This is a gross mis-statement of the evidence in the initial trial.

The only claims litigated in the initial trial were against the seven (7) original defendants. With respect to what occurred in the Billerica Police Station on November 9, 2001, the only evidence offered was against initial defendants, Rosa and Connors. The plaintiffs were limited to evidence against these defendants and offered no evidence against defendant Rhonstock or anyone other than defendants Rosa and Connors.

In her direct testimony, plaintiff Michelle Kennedy was only asked what defendants Rosa and Connors did. Thus, with respect to the altercation in the jail cell, on direct examination, Michelle Kennedy was asked about what defendant Rosa did and she properly identified defendant Rosa as having struck her and having removed her sweatshirt, leaving her in her halter top. Abiding by the Court's guidelines, plaintiffs' counsel properly did not ask what defendant Rhonstock did or whether he struck her and Ms. Kennedy has not yet had the opportunity to answer those questions.

This is one example of how the plaintiffs were hampered by the bifurcation. On cross examination, defense counsel improperly raised that in the complaint, Ms. Kennedy had alleged that defendant Rhonstock had struck her after defendant Rosa had thrown a blanket over the video monitor recording what occurred in the jail cell. This made it appear that her trial testimony, that Rosa had assaulted her, was inconsistent with her prior allegation that defendant Rhonstock had struck, implying that before she had only said that it was Rhonstock that hit her and that she had changed her testimony. In fact, it was not either or: that she first said that Rhonstock had struck her, and then changed her testimony.

Rather, the plaintiffs, abiding by the bifurcation, offered no testimony regarding defendant Rhonstock's conduct in the police station in the early morning of November 9, 2001, as it was inappropriate to offer testimony regarding a defendant not a party to the first trial.

It may be that defendant Rosa avoided liability on Ms. Kennedy's claims for the November 9, 2001 assault because the defendants, through this confusion, were able to create the false impression that Ms. Kennedy had changed her testimony. In fact, she has not yet had the opportunity to pursue her claims against defendant Rhonstock or present evidence against him.

On summary judgment defendants, as moving party must concede the evidence in the light most favorable to the plaintiffs. Thus defendants are not entitled to present the evidence as "Having chosen to testify at the trial that Rosa, not Rhonstock, punched her, she cannot now be allowed to again reverse her story" [p. 4 of defendants' memorandum], an improper slur that suggests that Michelle Kennedy would alter her testimony out of convenience.

Even if that were true, the defendant may not rely upon such an insinuation but is obliged to view the evidence in the light most favorable to the plaintiff. Viewing the evidence in this light, it is possible that it was Rhonstock, not Rosa, that hit Michelle Kennedy. Alternatively, perhaps they both hit Michelle Kennedy. Where a reasonable reading of the evidence is that defendant Rhonstock hit Michelle Kennedy, defendant Rhonstock is not entitled to summary judgment, whether or not a jury rightly or wrongly decided that someone else, defendant Rosa, also hit or did not hit Michelle Kennedy.

Very simply, the defendants grossly mis-state the verdict, at p. 4 of their memorandum, when they claim "[t]he jury has spoken and they decided that Michelle Kennedy was not abused in the lockup of the Billerica Police Station in the lockup of the Billerica Police Department in November 9, 2001." There was no special question on this fact and the first jury said nothing of

the sort. All the jury found was that defendant Rosa did not assault and batter Michelle Kennedy in the lockup of the Billerica Police Department in November 9, 2001.

Whether she was assaulted and battered by defendant Rhonstock – or by anyone else – in the lockup of the Billerica Police Department in November 9, 2001 remains to be determined, which is why summary judgment for defendant Rhonstock is not appropriate.

### C. Defendant Andrew Devito

While the defendants are correct in stating that the plaintiffs' claims against defendant Devito derive primarily from the arrests after the Deanne Massone incident on November 9, 2001 and that this Court issued a directed verdict as to the claims against other defendants arising from that arrest, it does not necessarily follow that the claims against defendant Devito must also result in a directed verdict.

In granting the defendants' motion for directed verdict, the Court was only in a position to consider whether defendants Rosa and/or Conway had probable cause to arrest and prosecute the plaintiffs and not whether defendant Devito, who "assisted" the alleged victims with their dubious identifications of the plaintiffs, improperly and deliberately influenced these questionable identifications. The plaintiffs have not yet presented and thus the Court did not consider evidence regarding defendant Devito's role in obtaining these questionable identifications so there has been no determination (or facts to support such determination) whether defendant Devito improperly and deliberately influenced these identifications, deliberately tainting the evidence that formed the basis for giving defendants Rosa and Conway probable cause to make the arrests of the plaintiffs.

Defendant Devito was the first officer to speak with and interrogate Ms. Massone and her two companions, Christy Gilpatrick and Vanessa Minervini. It is undisputed that Ms. Minervini did not know and could not identify the plaintiffs. It is further undisputed that Ms. Gilpatrick and Ms. Minervini ducked when the windows of the car were smashed, to avoid the glass, and, consequently, did not see who struck the car and that they did not have a particularly good view or memory of the melee thereafter.

More troubling, it is further undisputed that Ms. Minervini's "witness statement" identifies Mitchell Kennedy as striking the car, something she did not see. Moreover, Ms. Minervini testified at trial that she did not know Mitchell Kennedy, that she could not and did not identify him and that she did not know and could not explain how his name got into her witness statement.

This leaves an open question of fact what role defendant Devito played in improperly influencing the identifications by Ms. Massone, Ms. Gilpatrick and Ms. Minervini. Despite the amount of time at the initial trial addressing the Massone incident, the plaintiffs, complying with the Court's order regarding the defendants on trial and not on trial, did not and have not had the opportunity to examine witnesses on defendant Devito's role in the identification issue. Examination and testimony of these three witnesses on this issue may well implicate defendant Devito in a deliberately misdirected identification of the plaintiffs.

After all, Ms. Massone's testimony changes with the wind. If plaintiff's counsel buys her the cheesecake before the second trial, maybe she will tell the truth. She and the defendants have yet to explain why she was never charged with drunk driving after being found drunk at the wheel. Likewise, Ms. Gilpatrick's testimony was protected by the defendants' police cars,

stationed around her home on a twenty four hour watch before trial, as the protection of Ray Trainor, her friend and likely percocet supplier, was not enough protection.  Was this protection from the Kennedys or from the risk that she might talk to plaintiffs' counsel before testifying?

The credibility of the witnesses who identified the Kennedys as assailants in the Massone incident is highly suspect and the evidence of undue and deliberately improper influencing of these witnesses is strong.  Defendant Devito was the first of the defendants to confront these witnesses, witnesses who would have been easily swayed, given the circumstances.  Although it is true that it was defendant Rosa, not defendant Devito, who made the decision to arrest.

Plaintiffs dispute the directed verdict to defendant Rosa's decision to arrest, but even accepting that Rosa's decision to arrest was based on probable cause, if the probable cause was derived from a deliberately false identification, obtained by defendant Devito, then the plaintiffs have stated a viable claim against defendant Devito and he may not be excused on summary judgment.

### D. Defendant Richard Howe

Defendants wrongfully contend that the only claims against defendant Howe "stem from events that are alleged to have occurred in November of 1997".  This is not correct.  Defendants Howe was assigned by the defendant chief, Daniel Rosa to "gather" evidence to prepare a

defense to the charges asserted in the claim presentment letter of February 20, 2002.[2] Evidence emerged for the first time at trial that at least one police report/incident report among those "gathered" by defendant Howe was altered.[3]

In at least two cases, the statements of Craig Pickering and Tracey Heffernan, the altered documents contained signatures to "retractions" that the signatories denied signing. Moreover, the copies of the original "statement" to which the "retraction" was added had a portion typed or printed in a different type style. This evidence permitted the inference that defendant Howe fabricated the "retractions" and forged the signatures.

In another case, defendant Connors' whitewash "report" of the firebombing of the Kennedys' pickup truck, evidence that emerged for the first time at trial (in the form of the new version of that report) was that at least one sentence was added to the "original" document which was generated by Defendant Howe in May, 2002. Given that the "original" document bore a date that indicated that it was printed out in 1999, the jury was entitled to the inference that the additional sentence was added during the time after plaintiffs made presentment when defendant Howe was "assembling" documents in preparation of the defendants' defense.

In addition, plaintiffs learned for the first time during the deposition of defendant Howe of his fabricated testimony that the pay telephone at the Billerica Mall did not receive incoming

---

[2]It is notable, and a foundation for the plaintiffs' successful *Monell* claim, that the undisputed evidence that Howe's assignment was not to investigate the substance of the charges but to prepare a defense.

[3]This altering of police reports did not come to light until trial, when, in preparation for cross examination of defendant Connors, plaintiffs found a second version of his report concerning the 1991 firebombing buried amidst the more than one thousand pages of documents "produced" on the eve of trial. Cross examination of the defendant witnesses through whom the reports were offered, in this case defendant Connors, provide the evidentiary basis for the jury's conclusion that the documents were altered after the presentment letter in February 20, 2002.

calls, offered as an explanation for Tracey Heffernan's recantation of her statement that defendant MacKenzie tried to hire her to beat Michelle Kennedy and "put her in the hospital".

This evidence provides a clear basis for due process and conspiracy claims against defendant Howe. Defendants claim that the details of this cover up were not specifically pled sound much like the boy on trial for murdering his parents asking mercy because he is an orphan. Here, at the time they filed their complaints, the plaintiffs did not know about Howe's altering and forging of documents to hide the mis-deeds of his co-defendants. Indeed, Howe did not perform these acts until after presentment of the plaintiffs' claims was made.

The plaintiffs did allege in the complaint that each of "the Individual Defendants, acting in concert with each other, acted to conspire and thereby violated the plaintiffs' civil rights". [Complaint ¶142] The plaintiffs could not have been more explicit, as the defendants – by defendant Howe's express acts – were concealing their conduct from the plaintiff.[4]

Rule 15(b) of the F.R.Civ.P. contemplates "[s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence". This is appropriate here, where additional "issues or evidence", in this case additional mis-deeds of the defendants, not known to the plaintiffs at the time they filed their complaint, become known through evidence at trial. When this occurs, according to Rule 15(b), the issues or evidence should be treated "as if they had been raised by the pleadings".

---

[4] Indeed, this concealment continued well after the complaint was filed and throughout discovery in the case. This is chronicled by plaintiffs' many complaints of not receiving documents, then receiving a box load of unsorted and unlabelled documents that constituted a haystack in which the needles were hidden. This was not the end of it, as defendants "produced" another several thousand pages of documents on the eve of trial, hiding in this second haystack, many of the documents they intended to use at trial.

Thus the defendants are not only incorrect in claiming that defendant Howe's misdeeds occurred before 2001. The defendants are also wrong in suggesting that there was no conspiracy because the jury did not find the original defendants, each individually, to be co-conspirators. Perhaps they were not co-conspirators with each other, but each of them, particularly defendant Rosa, who gave defendant Howe the order that led to the altering and forging of documents, may have been a co-conspirator with defendant Howe.

Even though defendant Rosa may have avoided liability on the conspiracy charge by hiding documents then having the good fortune that his case was severed from defendant Howe's, Plaintiffs are entitled still to proceed with all of their claims, including the conspiracy claim, against defendant Howe.

### E.  Defendant Richard Nestor

The defendants, in their second motion for summary judgment, claim that the plaintiffs do not have any claims against defendant Richard Nestor which survive the statute of limitations. In making this assertion the defendants ignore the fact that the three Kennedy children all were still minors when this action was filed, and thus the statute of limitation was tolled for their claims. This Court so ruled in response to the defendants' first summary judgment motion and repeated that ruling each of the many times that the defendants raised the same issue during trial.

The complaint clearly and explicitly alleges and Ms. Kennedy testified at the first trial that defendant Nestor followed Brian and Michelle Kennedy in June, 1993. At some point, the Kennedys pulled over and defendant Nestor pulled over behind them. Michelle Kennedy got out of her, went back to defendant Nestor's car and said to him "Why don't you get a life?"

Based upon this "threat", defendant Officer Nestor did not merely file an application for criminal complaint but sought and obtained an arrest warrant, as well. This enabled the Billerica police to come to Ms. Kennedy's front door, handcuff her and arrest her in front of her two young boys. Both of the young boys, Brian, Jr., and Mitchell, have testified to their memories of seeing their mother arrested as little children in the early nineties and to the impact that has had on them. Thus there is still a viable and valuable claim against defendant Nestor.

Finally, defendants argue that any damages recoverable from defendant Nestor are irrelevant as they would be duplicative of damages already awarded against the defendant town. Even if true, this argument is illusory, as defendants are not accepting the plaintiffs' award against the town. To the contrary, the defendants are claiming the Monell award against the town is invalid and indicate they will challenge the award with an appeal. This undermines the defendants argument that any further award is irrelevant, as the defendants' argument is premised upon the assumption that the defendants will pay the jury award against the town and the defendants have shown no intention of doing so.

This is one reason that plaintiffs are entitled to judgment against any and all defendants, jointly and severally. If the defendants should prevail on their appeal of the Monell award against the defendant town, then plaintiffs are still able to recover their damages from the individual wrongdoers. Plaintiffs would compromise their claims against defendant Nestor if they receive payment upon their judgment against the defendant town, as part of a universal settlement of all claims against the defendant town. However, the defendants have shown no interest in settlement and no offer of payment is not forthcoming, as the defendants appear to want to have it both ways.

The defendants claim that it is unnecessary to proceed with the claims against individual defendants, such as defendant Nestor, because there is a jury award against the defendant town. Yet the defendants refuse to accept that jury award, leaving the plaintiffs no recourse but to continue to litigate to obtain recovery of their damages.

F. **Defendant Scott Parker**

Defendants claim that since Michelle Kennedy testified, in support of the *Monell* claim, that defendant Scott Parker shoved her, screamed at her and kicked her,[5] she is somehow now barred from proceeding against defendant Parker. This is nonsensical and the assertion that "any claim against officer Parker has been fully adjudicated", made at p. 9 of the defendants' memorandum may well be in violation of F.D.R.Civ.P., Rule 11, as having no good faith basis in fact or law.

Quite simply, defendant Parker was not a defendant. The multi-page jury verdict form asked specific questions as to liability for specific claims as to the seven defendants tried in the first trial. There were no questions regarding defendant Parker. Thus the defendants are stepping beyond the limits of good faith proscribed in Rule 11 when they suggest that "any claim against officer Parker has been fully adjudicated". This is simply not true and not supported by fact or law.

Moreover, the suggestion that the claims against defendant Parker do not matter because "whatever harm Ms. Kennedy did or did not suffer as a result of her encounter with Officer Parker has already been decided" exposes the defendants' hypocrisy, as the defendants are

---

[5]Defendants have left out what defendant Parker was screaming: "Just because you're f–king the n–ger, you think you can do anything you want" and calling her a c-nt, a p–sy and similar obscenitie, as assaulted and berated her.

refusing to accept what they here claim "has already been decided".

Indeed, it is defendants' refusal to accept the verdict against them that forces the plaintiffs to continue to litigate remaining claims, as is set forth in §II E above.

### G. Defendant Alan Munn

Defendants argument that the plaintiffs have no remaining claims against defendant Munn is based on the erroneous assertion that the plaintiff's only claim arises from an incident in June 2002, in which defendant Munn called the Billerica Town Department of Public Works to come dismantle and remove skateboard ramps which Kennedy children (and other neighborhood children) had built on a quiet side street in the trailer park.

When the local newspaper arrived, potentially exposing defendant Munn's misuse of his authority to pick on the Kennedy children and their friend, defendant Munn backed off, but not before threatening the Kennedys that "Your time is coming!"

First, the defendants are incorrect in claiming that "[t]he skateboard incident was introduced into evidence at the trial when the videotapes became exhibits." This simply is not the case. Abiding by the Court's ruling that limited evidence to evidence involving the seven defendant on trial or evidence of complaints by the plaintiffs, the plaintiffs never offered any evidence regarding defendant Munn. If the videotape of the skateboard incident was offered, it was offered by the defendants, together with all the other available videos, as part of their argument that the videotapes did not show any wrongful conduct by the defendants.

In this context, the jury had no way of identifying any specific act by defendant Munn. Nor was there a single special jury question regarding defendant Munn.

Thus, when the defendants say, at p. 9 of their memorandum, that "the plaintiffs were allowed by this court to introduce any evidence they wished to show a conspiracy of harassment against the named officers and against the town", the defendants are either grossly misunderstanding the Court's consistent evidentiary ruling throughout the trial or are willfully violating Rule 11. The Court's parameters were clear. The evidence was limited to conduct by the seven defendants party to the first case and evidence of complaints by the Kennedys to the Billerica Police Department.

The plaintiffs did not offer any evidence regarding defendant Munn, except for the evidence of his failure to adequately investigate the 1993 incident at Mr. Tipps (which involved failure to investigate Ms. Kennedy's complaints about defendant MacKenzie's threats and assaultive behavior). The plaintiffs did not offer evidence of defendant Munn's conduct with regard to the skateboard incident. The plaintiffs did not offer specific evidence of defendant Munn pushing Brian Kennedy down the stairs of the trailer park office and telling him to "grow some balls". The plaintiffs did not offer evidence of defendant Munn pushing Michelle Kennedy at a fundraiser for her sister-in-law, after her brother's death, then forcefully kicking her out and removing her from the fundraiser.

This was because this Court never permitted the plaintiffs "to introduce any evidence they wished to show a conspiracy of harassment against the named officers and against the town" and the plaintiffs did their best to abide by the evidentiary limits set by the Court, limiting the evidence to conduct of the seven defendants identified for the first trial or evidence of complaints of misconduct by the Kennedys to the Billerica Police Department.

Plaintiffs adhered to the Court's ruling ,even though it hampered the plaintiffs' ability to establish a conspiracy.  As with defendant Howe, as explained above, the severing of defendant Munn and other defendants from the first trial prejudiced the plaintiffs ability to present their full conspiracy claim by forcing the plaintiffs to proceed against some but not all the alleged co-conspirators.

As noted above, this may have allowed the original defendants to avoid liability on the conspiracy theory, as the jury may have found, for example, that defendant Rosa's co-conspirators were defendants Howe and Munn, each of whom participated in the cover-up, but not defendants Connors and MacKenzie or any of the other original defendants.  If this were the case, as is reasonably possible, then the jury would not be able to issue a verdict for the conspiracy they found, as none of defendant Rosa's co-conspirators were co-defendants.

Whether or not the plaintiffs ability to present their conspiracy claim was compromised by the severance of potential co-conspirators such as defendants Munn and Howe from the first trial, there certainly is sufficient evidence to proceed against defendants Munn, Parker, Nestor, Devito, Howe and Rhonstock.

## CONCLUSION

Where the evidence, when viewed in the light most favorable to the plaintiffs, permits findings against defendants Munn, Parker, Nestor, Devito, Howe and Rhonstock, then the defendants' motion for summary judgment should be denied and the second trial, against these defendants, scheduled promptly.

>                                      Respectfully submitted,
>                                      Brian Kennedy, et al
>                                      by their counsel

Date: July 2, 2007                    /s/ Andrew M. Fischer
                                      Andrew M. Fischer
                                      BB0# 167040
                                      JASON & FISCHER
                                      47 Winter Street
                                      Boston, MA 02108
                                      (617) 423-7904
                                      afischer@jasonandfischer.com

kennedy\oppsj2