UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRIAN KENNEDY, et al.,

      Plaintiffs,

v.

TOWN OF BILLERICA, et al.,

      Defendants.

CIVIL ACTION NO. 04-12357-PBS

**MEMORANDUM AND ORDER**

August 15, 2007

Saris, U.S.D.J.

**INTRODUCTION**

Plaintiffs Brian (Sr.), Michelle, Brian (Jr.), Mitchell, and Dylan Kennedy filed their complaint on November 5, 2004 against twenty-nine officers in Billerica's police department. After several years of hotly contested discovery, the Court ordered on May 22, 2006 that these proceedings be bifurcated, allowing the plaintiffs to select seven of the individual defendants to go to trial in the first stage of the case. Having now completed the first trial, the Court turns to the second part of the plaintiffs' case against Alan Munn, Richard Howe, Richard Rhonstock, Andrew Devito, Scott Parker, and Richard Nestor. These remaining defendants now move for summary judgment.[1]

---

[1] In light of this Court's earlier ruling on summary judgment, the plaintiffs agreed to the dismissal of all remaining officers. Thus, pursuant to Fed. R. Civ. P. 56(b), the Court

The parties' briefs were like ships moving past each other in the night. Record cites were rare, case cites were infrequent, and the issues were poorly joined. After consideration of the verified complaint and the evidence at trial, the Court **ALLOWS**, in part, and **DENIES**, in part, defendants' motion for summary judgment.

I assume familiarity with the factual and legal background to this dispute set forth in Kennedy v. Town of Billerica, 2007 WL 927679 (D. Mass. March 26, 2007).

## DISCUSSION

1. Andrew Devito

Plaintiffs allege that Officer Andrew Devito violated their civil rights on November 9, 2000 when he arrested without probable cause and maliciously prosecuted Michelle Kennedy, Brian Kennedy, and Mitchell Kennedy for their role in the so-called Dianne Massone fight in the trailer park. At trial, the Court granted judgment as a matter of law in favor of two other police officers, Lieutenant (now Chief) Rosa and Conway, involved in the arrest and prosecution of Michelle and Brian Kennedy stemming from this incident. In addition, I directed out Mitchell's claim against Conway, but I allowed the jury to determine whether Chief

---

enters an order dismissing with prejudice: John Barretto, Paul Matthews, Robert Lee, Robert Bailey, John Zarro, Tara Connors, Donald MacEachern, Robert Brown, William Nest, Gregory Katz, Brian Micciche, William McNulty, Timothy McKenna, and Gerald Roche.

Rosa maliciously prosecuted the boy. The jury returned a verdict in favor of Rosa.

Plaintiffs argue that Officer Devito improperly and deliberately influenced the identifications by the eye witnesses who placed Michelle, Brian Sr., and Mitchell Kennedy at the scene of the brawl.

At trial, this Court heard copious testimony about the fight. In a nutshell, a woman named Dianne Massone got drunk at a bar and followed her former boyfriend John Cimino in her car back to his home in the trailer park. She had two girlfriends named Christy Gilpatrick and Vanessa Minervini in the car. This is the same trailer park in which the Kennedys lived. Inebriated, Dianne hit John's brother Louis in the leg with the car. When the Kennedys heard the yelling, Michelle exited her house to see what was happening. Her friend, Amy Baum, also went outside. John Cimino began to smash in the windows of the car. When Dianne got out of the car, she was assaulted by Amy Baum and others. It was hotly disputed whether Michelle also hit Dianne, whether Brian came out of his house with his Doberman, and whether the Doberman bit anyone. At some point, John got worried about his former girlfriend (the mother of his son) and put her back in the car. She drove off with her two friends still in the car. The police began to arrive. Devito interviewed the three women who had stopped in the smashed-up car at the side of the

road. Eventually he took witness statements from them. These statements each identified Brian, Michelle, and Mitchell as individuals who participated in the melee. The witnesses also accused plaintiffs of using baseball bats and their Doberman to assault Massone. Based on these statements, and other evidence at the scene, Rosa ordered the Kennedys arrested.

This evidence introduced at the trial of this case also included photos of: a bruised Massone after the brawl, Massone's shattered car windows, a blood-stained path leading into the Kennedy's house and backyard, pieces of automobile glass strewn about the family's trailer, and scratched and scored bats near the trailer.

All three eyewitnesses testified at trial. Plaintiffs have cited no admissible evidence from trial or discovery that Devito deliberately misdirected the testimony of these three witnesses, all three of whom placed Michelle and Brian in the middle of the fight. Mitchell Kennedy's case is somewhat closer because only one witness, Vanessa Minervini, provided his name as someone hitting the car with a bat, and she admitted she did not know the name of the boy hitting the car. Still, she did state that she saw one of the Kennedy boys at the scene, and she later learned the identity of the boy. However, this inability to identify the Kennedy son by name does not support an inference that Devito caused her to falsely identify Mitchell. Again, plaintiffs have

not produced admissible evidence that would allow a reasonable trier of fact to conclude that Devito participated in the later investigation and arrest of Mitchell Kennedy or solicited a false identification. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (stating that plaintiffs must provide admissible evidence to avoid summary judgment). Even the plaintiffs verified complaint is silent regarding Devito's role in the arrest and investigation of Mitchell Kennedy.

   3.   Richard Rhonstock: Jailhouse Assault of Michelle Kennedy

Plaintiffs accuse Richard Rhonstock of assaulting Michelle Kennedy in a holding cell after she was arrested for her role in the Massone incident on November 9, 2001. The verified complaint identifies "Sergeant Rohnstock" [sic] as the individual who "punched Mrs. Kennedy in the back while Chief Rosa and the other officer stood by and watched." (Compl ¶ 91.) Nevertheless, at trial, Michelle Kennedy testified that "Chief Rosa and another cop":

> came into the cell and they told me to take off my sweatshirt. And I said, "I want to leave it on, it's cold. And they said -- they started swearing, telling me to take it off. At one point they put something over the camera, and they just started yanking my sweatshirt off me and my halter was falling down and Chief Rosa -- at the time he wasn't chief -- like, was punching me -- punching in my back to make the sweatshirt come off.

(Trial Tr. 56, April 3, 2007.)

At this juncture, plaintiffs now attempt to shift their story again to blame Rhonstock. Even though plaintiffs lost on

this claim at trial, this flip-flopping and maneuvering raises serious concerns under the doctrine of judicial estoppel. See New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001); see also Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 26 (1st Cir. 2006). These concerns about abuse of judicial integrity are further heightened because plaintiffs do not provide any supporting documentation or affidavits as part of this summary judgment record to bolster their revised contentions or to even explain these discrepancies. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986); cf. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (plaintiffs cannot submit a self-serving affidavit that plainly contradicts earlier deposition testimony). Plaintiffs' claim that Rhonstock assaulted Michelle Kennedy must fail for lack of sufficient evidence.

In addition, at trial, the jury found that Chief Rosa did not use excessive force against Michelle Kennedy in the jail cell after her arrest for the Massone incident. Accordingly, Michelle Kennedy cannot now recover against Rhonstock for a violation of her civil rights for failing to intervene and stop Rosa from assaulting her under the doctrine of issue preclusion. See Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007).

   4.   Richard Howe: Altering Documents

6

The Kennedy plaintiffs assert[2] that Howe was assigned by the defendant Chief Daniel Rosa to gather evidence to prepare a defense to the charges asserted in the claim presentment letter of February 20, 2002 and that Howe covered up information relating to incidents from the early 1990s during his investigation by altering police reports, fabricating retractions, and forging signatures.  They argue that their due process rights were violated when Howe altered these police reports.

This claim fails because the documents which Howe allegedly altered as part of a cover-up involved time-barred claims.  See Kennedy, 2007 WL 927679 (D. Mass. March 26, 2007) In other words, even if plaintiffs' allegations are true, the plaintiffs would not have been able to recover for claims in the early 1990s.  As such, the plaintiffs were not prejudiced by Howe's actions because he didn't impede their ability to recover damages in this suit.

Further, the plaintiffs do not present sufficient evidence that Howe himself altered the documents.  Plaintiffs presented evidence that would support a reasonable inference that some of the retractions and signatures were forged, although this testimony was hotly disputed.  Plaintiffs suggest that during

---

[2] According to plaintiffs' summary judgment brief, plaintiffs admit that their other allegations against Howe are time-barred.

7

cross-examination of Connors at trial, Connors offered police reports that might have been doctored. Still, plaintiffs present insufficient evidence to link directly Howe to any alteration of the documents.

    5.   <u>Alan Munn: Skateboard Ramps</u>

Plaintiffs allege that Munn engaged in two acts of misconduct in 2002: 1.) that he wrongfully removed the Kennedy children's skateboard ramps from a public way in front of the family's trailer, and 2.) that he forcefully removed Michelle Kennedy from a fundraising event in Billerica held on behalf of her deceased brother's family.

The undisputed evidence is that the children had constructed ramps in the street. Munn called a tow company to remove the ramps from the street, but would not allow the Kennedys to slide them off the road. The plaintiffs also allege that Munn verbally taunted them during the encounter. At some point during this incident, a reporter arrived to catalogue the incident, and after several days, the ramps were returned to the family.

The Kennedys cannot show that the removal of the skateboarding ramps contravened their civil rights. The ramps were located in a public way, and the police had the right to remove them. While it may have been preferable to let the Kennedys remove their own ramps, Munn's conduct does not "shock the conscience." <u>Brown v. Hot, Sexy & Safer Productions, Inc.</u>,

68 F.3d 525, 531 (1st Cir. 1995). As the ramps were given back to the Kennedys shortly after the incident, there is no viable civil rights claim for deprivation of property without due process.

Second, plaintiffs provided no admissible evidence that Munn contravened Michelle Kennedy's rights by removing her from the fundraiser. When Michelle Kennedy testified about this event during the first trial, she stated: "It [the fundraiser] was for my brother that passed, and Officer Al Munn was there. And he was doing a detail because if there's over 200 people, you have to have an officer." (Trial Tr. 74, April 3, 2007.) She also testified, "In front of everybody, he *escorted* us and the kids and my mom out of there."[3] (Id. at 75. (emphasis added)) Although it is unclear in this record why Michelle Kennedy was removed from the fundraiser - neither the plaintiffs nor the defendants provide any explanation - Munn neither arrested the plaintiff nor have plaintiffs provided admissible evidence that Munn used excessive force against Michelle Kennedy in escorting her out. Again, from these facts, plaintiffs have produced no evidence to demonstrate how any of her civil rights were violated.

---

[3] In the brief, Plaintiffs contend that Munn "pushed Brian Kennedy down the stairs of the trailer park" and told him to "grow some balls." In addition, they contend that Munn pushed Michelle Kennedy at the fundraiser. However, there are no affidavits or record cites to support these contentions.

6. <u>Scott Parker: Assault on Michelle Kennedy</u>

Michelle Kennedy testified at trial that Parker hurled obscenities at her and kicked her car. (Trial Tr. 64-65, April 3, 2007). In the brief, Michelle Kennedy claims Parker also kicked her, but there is no record cite. In the verified complaint, plaintiffs allege that Parker "shoved" Michelle Kennedy. (Compl. ¶ 101). Ms. Kennedy says that Parker screamed: "Just because you're fucking the nigger, you think you can do anything you want." He also called her a "cunt," a "pussy," and berated her. A triable fact exists as to whether Parker assaulted Michelle Kennedy in the parking lot in 2002.

Defendants seek summary judgment on the ground that "any claim against officer Parker has been fully adjudicated and whatever harm Ms. Kennedy did or did not suffer as a result of her encounter with Officer Parker has already been decided." In other words, defendants argue (as they did with other claims) that the <u>Monell</u> verdict against the Town of Billerica disposes of Michelle Kennedy's claim against Parker as an individual officer. However, the claims against the town are distinct from any civil rights claims that the plaintiffs may have against the individual officers. <u>See</u> <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 7 (1st Cir. 2002) (holding that individual claims are distinct from claims against the town); <u>see also</u> <u>Ramallo Bros. Printing</u>, 490 F.3d at 90.

7. <u>Richard Nestor: Intentional Infliction Against Children</u>

The only claim against Nestor that is not time-barred under the statute of limitations is an intentional infliction of emotional distress claim brought on behalf of the Kennedy children. Specifically, plaintiffs allege that Nestor intentionally inflicted emotional distress on the children in 1993 by arresting Michelle in front of the children.

According to plaintiffs, defendant Nestor was improperly following Brian and Michelle in June 1993. At some point, the Kennedys pulled over and defendant Nestor pulled over behind them. Michelle Kennedy got out of her car, went to Nestor's car and said, "Why don't you get a life?" Nestor claims he was threatened and assaulted and got an "arrest warrant." They came to Michelle Kennedy's home and arrested her in front of her boys. She was handcuffed.

At trial, Michelle Kennedy described this incident:

> And then they just came and they kicked in my doors and they was putting me in handcuffs in front of my kids and they were screaming .... They were -- they were just like saying, "Come on, Michelle, come with us. You're under arrest."

(Trial Tr. 38-39, April 2, 2007.)

To avoid summary judgment, the plaintiffs must be able to establish:

> (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant's conduct was extreme and

>outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

Payton, 386 Mass. at 555 (citations omitted). See also Nancy P. v. D'Amato, 401 Mass. 516, 521-522 (recognizing liability for intentionally or recklessly causing severe emotional distress of a family member who is present "when extreme and outrageous conduct is directed at another family member").

First, the plaintiffs must show that Dylan Kennedy, who was an infant at the time of this incident in 1993, suffered severe emotional distress. The plaintiffs proffer no evidence at this juncture that would allow a trier of fact to conclude that Dylan suffered severe emotional distress. Accordingly, his claim against Nestor must be dismissed.

Mitchell Kennedy's claim for intentional infliction of emotional distress against Nestor is also flawed. Although plaintiffs contend in their brief that Mitchell was extremely troubled by seeing his mother arrested by Nestor, the fact remains that he was still quite young (about three years old) at the time of the incident. Indeed at trial, defense counsel asked Mitchell:

>Q. Have you testified you ever saw your mother arrested?
>
>A. Have I ever saw my mom get arrested before [the Masone incident in 2001]?

Q. Yeah.

A. I don't recall, so –

(Trial Tr. 87, April 6, 2007.)  Indeed, plaintiffs offer no other admissible evidence at this juncture to support Mitchell's claim of extreme distress, thus making dismissal of his claim necessary.

The case for Brian, Jr. is much closer.  At trial, Brian Kennedy, Jr. testified that he remembered this incident vividly, even though he was only five years old.  He testified: "I was really scared.  I was really young and I didn't know what was going on and where she was going and I was left alone with two younger brothers."  (Trial Tr. 4, April 6, 2007.)  He continued, "I was petrified of the police from then."  (Id.)  This testimony alone suffices to allow Brian Kennedy, Jr. to satisfy the third and fourth prongs of the Payton test at this juncture.

The question then becomes whether the plaintiffs can show "that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community," and whether Nestor "intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct."  Payton, 386 Mass. at 555.  As questions of intention present a question of fact for a jury to decide, the real issue is whether a fact-finder could determine that Nestor's conduct was extreme and

13

outrageous.

While Michelle Kennedy denied striking or spitting at Nestor during this quarrel, as the defendants allege, she admits that she got out of her vehicle, got very close to Nestor, and began yelling at him. Ultimately, the record indicates that she was prosecuted for this incident, but that the judge entered a required finding of not guilty at the close of the government's case. An issue of fact remains as to whether Nestor acted in an extreme and outrageous fashion in arresting Michelle in 1993 in front of Brian, Jr.

## ORDER

The defendants' motion for summary judgment [Docket No. 265] is **ALLOWED** as to the following defendants: Richard Howe, Alan Munn, Richard Rhonstock, and Andrew Devito. The defendants' motion is **DENIED** with respect to Scott Parker for the incident in the parking lot in 2002 and for Brian Kennedy, Jr.'s claim of intentional infliction of emotional distress against Nestor.

Pursuant to plaintiffs' stipulation of dismissal [Docket No. 258], the remaining defendants are dismissed from the case: John Barretto, Paul Matthews, Robert Lee, Robert Bailey, John Zarro, Tara Connors, Donald MacEachern, Robert Brown, William Nest, Gregory Katz, Brian Micciche, William McNulty, Timothy McKenna, and Gerald Roche. Separate judgment shall enter pursuant to Fed. R. Civ. P. 54(b).

/s/ Patti B. Saris
_____
PATTI B. SARIS
United States District Judge

15