UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*********************************
BRIAN KENNEDY, et al             *
                                 *
           Plaintiffs            *
                                 *
v.                               *   Civil Action no. 04-12357 - PBS
                                 *
TOWN OF BILLERICA, et al         *
                                 *
           Defendants            *
*********************************
```

**PLAINTIFFS' MOTION TO RECONSIDER
THAT PART OF THE MEMORANDUM AND ORDER OF AUGUST 21, 2007
REGARDING THE REDUCTION OF MICTHELL KENNEDY'S DAMAGES**

As the Court notes in its Memorandum and Order dated August 21, 2007, this case, involved a month long bitterly contested jury trial. Upon the jury verdict awarding a total of $600,000 to four of five plaintiffs, including $235,000 to Mitchell Kennedy, defendants moved for judgment as a matter of law. In the Court's Memorandum and Order of August 21, 2007, the Court properly dismissed the defendants' complaints about the proper finding of negligent supervision, the jury charge, the sufficiency of the evidence and the allotment of time by the Court but allowed the defendants' request that damages be reduced by reducing the damages awarded to Brian Kennedy, Jr., from $190,000 to $100,000 and by reducing the award of damages of $250,000 to Mitchell Kennedy to $115,000.

Plaintiffs herein request that the Court reconsider its reduction of damages to Mitchell Kennedy as inconsistent with the proper finding of the jury, with case law and with the Court's own findings of fact and rulings of law.

**I. The Court properly ruled that there is no cap on Monell Damages**.

As the Court properly found, at page 8 of its memorandum, "there is no cap on civil rights damages". The Court continued "[t]here is sufficient evidence to find the town liable against Mitchell Kennedy under a Monell theory for <u>at least</u> $15,000, which is the amount that the jury reasonably found for Officer's Tsoukalas's violation of his civil rights during the unlawful arrest." [emphasis added]

**II. There was evidence to support damages beyond the arrest by Officer Tsoukalas**.

Mitchell Kennedy's damages resulting from the Town's violation of his civil rights were not limited to the arrest by defendant Tsoukalas, as the Court has recognized. The Court noted the candor of defendant Tsoukalas's testimony that as a newer member of the force, he "followed the Kennedys everywhere becaue he was told that they were up to no good" and that he had "frequent 'interactions' with the Kennedys". [Memorandum and Order at p. 6]   However, the jury could, and apparently did, find that such behavior towards the Kennedys was not limited to defendant Tsoukalas.

Defendant Tsoukalas, with a candor missing from the testimony of the other defendant officers, "admitted that he routinely followed them [the Kennedys] because 'they were criminals, that they were up to something.'" [Memorandum and Order pp. 6-7] This is an attitude that was prevalent throughout the defendant Billerica Police Department, an attitude that the jury could and properly did find was shared not just by the defendant officers on trial but also by the twenty one (21) defendants not on trial during the first trial.

Indeed, the jury reasonably could have believed, upon the evidence, that this attitude towards the Kennedys prevailed throughout the entire department, save for Officer Royston (and

that Royston's discharge from the force was truly based upon his friendship with Michelle Kennedy, and that the stated basis for his discharge was a pretext, as there was evidence that other officers with similar offenses were not similarly discharged from the force ). As the Court properly found [at p. 7],

> [T]he evidence supported the plaintiffs' claim that the message from the supervisors to police officers throughout the decade was that the Kennedys were 'trailer trash,' and harassment of them would be tolerated without consequence. Significantly, there was evidence that the police harassed the Kennedy sons by unlawfully arresting and prosecuting them, and that the police officers followed the boys in their cruisers from school and hockey practice.

The jury was entitled to conclude, based on the evidence, that the harassment of the Kennedys -- and of Mitchell Kennedy -- was not limited solely to Officer Tsoukalas, although he may have been the only defendant whose testimony was honest enough to acknowledge it. The several videotapes in evidence support the testimony of the Kennedys and their three sons of the many instances of being followed and of having police cruisers sit outside their door for lengthy periods of time, for no apparent proper law enforcement purpose.[1]

In addition both Mitchell and his older brother, Brian, testified about seeing their mother arrested by officer Nestor and Mitchell testified about numerous incidents of being followed,

---

[1] Although the defendants complained that the limited number of videotapes is evidence that the harassment was limited or even non-existent, the jury was entitled to conclude that, to the contrary, the limited amount of truly damning video proved that the video camera served as an effective deterrent: as soon as the video camera came out, the defendant officers would lower their tone and the harassment would diminish, for the officers knew that they were being taped.

Similarly, the jury was entitled to ignore the defendants' vigorous claims that the plaintiffs had deliberately destroyed or lost exculpatory video and conclude, on the evidence, that the lost videos were the result of the incompetence and limited record keeping skills of the plaintiffs and their companion, Mr. Ashton. Such a finding would certainly by supported by the evidence.

stopped or harassed. The jury did not need to identify any particular officer to find ongoing constitutional violations on the _Monell_ claim, or even to find that the individual officer committed a violation of plaintiff Mitchell Kennedy's civil rights. See _Fairley v. Luman_, 281 F.3d 913, 917 (9th Cir.2002), which held that a municipality may be liable under Monell even though no employee is liable, finding "If a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983."

See, also, _Fagan v. City of Vineland_, 22 F.3d 1283, 1294 (3d Cir.1994), where the 3d Circuit held that "a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, **even if no individual officer participating in the chase violated the Constitution**." [emphasis added]

As this Court wrote, at p. 5 of its Memorandum and Order, the jury was free to believe the evidence of the plaintiffs' police expert that

> the Billerica Police Department: lacked the capacity to handle complaints from citizens, frequently ignored complaints from the Kennedys, failed to train adequately its officers about the meanings of probable cause, encouraged its officers to give bogus traffic citations to individuals who complained about the department, and actively fostered an "us-versus-them" mentality designed to protect fellow-officers (even at the expense of the rights of others).

As this Court continued, "While this evidence was all hotly disputed, the jury could have reasonably found it reliable." On this basis, alone, the conclusion fairly inferred from the Court's Memorandum and Order was that there may have been many ongoing and cumulative violations of each of the plaintiffs' civil rights without any deliberate violation by any individual Billerica Police officer, each of whom may have believed honestly, as did defendant Tsoukalas, that they

were merely following the policies instituted by the police department, both formally and informally, with regard to the Kennedys.  While there is no 1st Circuit case directly on point, such a finding is amply supported by the holdings of the 3d Circuit in <u>Fagan v. City of Vineland</u>, 22 F.3d 1283, 1294 (3d Cir.1994) and the 9th Circuit in <u>Fairley v. Luman</u>, 281 F.3d 913, 917 (9th Cir.2002).

Alternatively, there were individual defendants besides Tsoukalas and the unnamed defendants who may have caused damage to Mitchell Kennedy.  First, because of the bifurcation of defendants, it is not clear whether the jury found that Mitchell Kennedy's damages included his being framed in the Massone incident.  What is clear is that the only witness who "identified" him as being at the scene in her witness statement, Vanessa Minervini, testified at trial that she did not know Mitchell Kennedy, that she could not identify him, and that she had no idea how his name got into her witness statement.

The jury could have found that since the defendants on trial, Rosa and Conway, were at the scene, they were not the officers who "suggested" Mitchell's name when Ms. Minervini made out her statement at the station, but that the "suggestion" was made by some unidentified officer who, like Tsoukalas, understood the "policy" of getting the Kennedys.  Likewise, there was no evidence which officer filed charges and prosecuted Mitchell on the false Massone charges, but it was clearly a Billerica Police officer, also operating under the tacit "always get the Kennedys" policy.  This was ample basis for damages against the town under the <u>Monell</u> theory.

More generally, there were some twenty defendants who were not part of the trial, based upon the Court's bifurcation, permitting a first trial against only seven defendants.  It was well within the evidence for the jury to find harm to Mitchell Kennedy based on the ongoing acts of

harassment and other behavior of police officer defendants who were not part of this trial, like defendant Nestor who wrongfully arrested Mitchell's mother in front of him as a small child.

It was equally well within reason for the jury to find harm to Mitchell Kennedy based on the acts of police officer who were not specific defendants or who were not identified specifically as the others who followed the plaintiffs, as defendant Tsoukalas did, or who sat in cruisers outside the Kennedy house or who were the ones who followed the Kennedy car from school and from hockey practice in a regular basis.

The Court correctly pointed out, at p. 8 of its Memorandum and Order, that there is sufficient evidence to support the full amount of $100,000 authorized by M.G.L. c. 258 for Brian and Mitchell Kennedy "because their claims were not time-limited like the parents' claims."[2] This means that the jury was entitled to award Mitchell Kennedy for the emotional damage of witnessing his mother's arrest as a small child and for the emotional impact the cumulative harassment of many police officers over virtually Mitchell's entire life, and not just the arrest by defendant Tsoukalas.

Likewise, there was support from other evidence to justify a greater award for Mitchell Kennedy. The jury was entitled to give weight to the testimony of Billy Ashton that Mitchell, as a young child, reacted with panic and alarm and recklessly ran into a chair when he heard police sirens on television, or would run to the bathroom and hide when he heard knocks on the front door. The full award of $235,000 was certainly not so excessive as to warrant any reduction as to the amount and to do so is not only inappropriate: it is inconsistent with the overall findings and

---

[2] As this is true of the loss of consortium claims as well as the emotional distress claims, the Court should have allowed the Jury to award damages for loss of consortium, as well.

conclusions of the Court's own Memorandum and Order.

The Court is simply incorrect in suggesting that any reduction in damages could be justified by a misunderstanding construed as a "waiver" of any theory of damages. The plaintiffs argued throughout and the Court accepted the plaintiff's theory of a substantive due process violation, writing, at p. 9 of its Memorandum and Order that "officers of the Billerica Police force followed [the Kennedys] around in their cruisers, parked near their home to intimidate them, and engaged in various other conduct (like verbal insults) **which rose to the level of a deprivation of liberty**." [emphasis added]

The plaintiffs never waived this substantive due process claim. While undersigned counsel did answer a question from the Court that was understood by the Court to be such a waiver, in discussing jury instructions, this was an error based upon a misunderstanding of the question. Upon realizing this error, undersigned counsel corrected himself, making clear on the record that the plaintiffs were quite affirmatively asserting and not waiving any due process claim. This is clear on the record.

Where the reduction in Mitchell Kennedy's damages seems to be based on the misunderstanding that plaintiffs have waived a theory of recovery and where the reduction is otherwise not only contrary to the Court's own well reasoned Memorandum and Order, the original damages awarded by the jury should be reinstated.

**III. The jury verdict cannot be reduced unless it is contrary to the overwhelming weight of the evidence.**

"An award of damages will not be deemed unreasonably high ... as long as it comports with some rational appraisal or estimate of the damages that could be based on the evidence

before the jury," and is not "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Larch v. Mansfield Mun. Elec. Dept.*, 272 F.3d 63 (1st Cir., 2001), citing *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1161 (1st Cir.1996) and other cases.

In reviewing an award of damages, this Court is obliged to review the evidence in the light most favorable to the prevailing party. *Eastern Mount. Platform Tennis, Inc. v. Sherwin-Williams Co., Inc.*, 40 F.3d 492, 502 (1st Cir.1994) cert. denied, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 256 (1995). A jury's assessment of the appropriate damage award is afforded great deference. *Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 11 (1st Cir.1993).

Generally, a Court may set aside a jury verdict may only if "there is no legally sufficient basis" to support the jury's finding. Fed.R.Civ.P., Rule 50(a) "The yardstick . . . [for] refusal to grant a directed verdict is the same as that which we apply to the denial of a judgment n.o.v. [internal cites omitted] In conducting that exercise, [the trial judge] may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. [internal cites omitted] Rather, [she] must examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant. [internal cites omitted]

"Put another way, '[the trial judge must] take the facts as shown by the [nonmovant's] evidence and by at least such of [movant's] uncontradicted and unimpeached evidence as, under all the circumstances, the jury virtually must have believed.'" *Wagenmann v Adams*, 829 F2d 196 (1st Cir., 1987), quoting *Karelitz v. Damson Oil Corp.*, 820 F.2d 529, 530 (1st Cir.1987), and making clear that a verdict may be set aside "only when the evidence, viewed from this perspective, is such that reasonable persons could reach but one conclusion."

The Court has done so in its Memorandum and Order, clearly understanding the basis for the jury's award. This is why the Court's reduction of the amount of damages awarded to Mitchell Kennedy is so puzzling. The Court has explained, in response to the defendants' motions to set aside the verdict that they must assume that the jury accepted the plaintiff's evidence to the full extent supported by fact and law. The Court, in ruling on defendants' motion to set aside a verdict, did respect and, indeed, clearly explained and justified, the jury's evaluation of the credibility of witnesses, the jury's resolution of conflicts in testimony and the jury's assessment of the weight of the evidence in denying several of the defendants' misapplied arguments.[3]

Thus, the Court's reduction of the amount awarded Mitchell Kennedy is at odds with the Court's otherwise clear reading of how the jury's verdict is amply supported by the evidence. The Court should not alter the jury's finding unless the jury's findings have no reasonable basis.

---

[3] One exception is the Court's misplaced conclusion that "There was persuasive evidence that [the Kennedys] were drug traffickers in the early 1990's. In fact, except for the testimony of Richard Prior, who claimed to have made undercover buys from both Michelle and Brian Kennedy but could not recognize either of them, there was no properly admissible evidence of drug trafficking.

The defendants were permitted, however, to admit quantitative but unsubstantiated hearsay evidence of "investigation" of a drug ring that they claimed involved Michelle and Brian Kennedy, in order to smear and taint them as drug traffickers. However, even if the records were accurate, the plaintiffs' involvement was limited at best. The "investigation" centered around Michelle's brothers and others – including Ray Trainer, who ended up as the defendants' witness – and resulted in no arrests of anyone, let alone of the Kennedys. Yet, it appears that the taint of being "drug traffickers" may have been the reason why the jury was reluctant to award comparable damages to Brian and Michelle Kennedy as they did to the Kennedy children. The admission of these records of investigation of a "drug ring" was thus hugely prejudicial to Michelle and Brian Kennedy.

The defendants could not argue that there was any ongoing drug investigation, as the only drug investigation began before any of the harassment of the Kennedys began, and the fair reading of the evidence was that the defendants only added the Kennedys to the already ongoing investigation once the harassment of the Kennedys had begun after Michelle Kennedy spurned defendant MacKenzie's advances in September,1991. Thus, the hugely prejudicial hearsay evidence, even if it were not so peripheral to Michelle and Brian Kennedy should have been excluded under Federal Rules of Evidence, Rule 403, as any probative value was substantially outweighed by the obvious unfair prejudice.

Where the Court's well reasoned Memorandum and Order is to the contrary, the reduction in damages to Mitchell Kennedy can only be viewed as an error inconsistent with not only the jury's verdict but with the Court's own reasoning, and should be corrected.

Where the standard for the Court to alter a verdict is that the Court "must find that the jury's verdict was so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice." *Wagenmann v Adams*, supra, citing *Valm v. Hercules Fish Products, Inc*., 701 F.2d 235, 237 (1st Cir.1983) (same); *Coffran v. Hitchcock Clinic, Inc*., 683 F.2d 5, 6 (1st Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982) and other cases, the Court should restore the original jury award of $235,000 to Mitchell Kennedy, consistent with its other findings in its Memorandum and Order of August 21, 2007.

|  |  |
|---|---|
|  | Respectfully submitted,<br>Brian Kennedy, et al<br>by their counsel |
| Date: September 7, 2007 | /s/ Andrew M. Fischer<br>Andrew M. Fischer<br>BB0# 167040<br>JASON & FISCHER<br>47 Winter Street<br>Boston, MA 02108<br>(617) 423-7904<br>afischer@jasonandfischer.com |

kennedy/moreconsider