UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BRIAN KENNEDY, et al           \* | |
| \* | |
| Plaintiffs                     \* | |
| \* | |
| v.                             \* | Civil Action no. 04-12357 - PBS |
| \* | |
| TOWN OF BILLERICA, et al       \* | |
| \* | |
| Defendants                     \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**JOINT PRE-TRIAL MEMORANDUM**

**I. PLAINTIFFS' INTRODUCTION -BIFURCATION ISSUES**

This case was originally brought against twenty seven (27) individual defendants and the Town of Billerica.. In order to facilitate trial, the Court ordered the plaintiffs to identify a limited number of defendants against whom trial would proceed. Plaintiffs did so, identifying seven (7) individual defendants and the defendant town, with the understanding that if they did not prevail, they would give up claims against the remaining defendants.

Plaintiffs understood that this would be reciprocal: that if there was a judgment against the defendants (who were assertively confident that they would prevail on each and every claim), the defendants would resolve by settlement the claims against the remaining defendants. Unfortunately, this has not been the case. The judgment has made no impact whatsoever on the defendants, who, despite the jury's finding of municipal liability for failure to supervise or discipline the individual officers, continue to act as if they have no exposure, refusing even to discuss settlement, let alone payment of the existing verdict.

This has created a context in which the need for a second trial prejudices the plaintiffs in a number of ways. First, initial discovery was directed at the defendants identified for the first trial. Plaintiffs only deposed the seven individual defendants identified for the initial trial and the Billerica police officers necessary to prosecute the <u>Monell</u> on which the plaintiffs succeeded, limiting discovery to what was needed for the first trial, with the understanding that, one way or the other, a second trial would be unlikely. Consequently, the plaintiffs have not deposed either of the officers against whom claims remain to be tried.

Additionally, the defendants have identified numerous other officers as witnesses. These include at least seven (7) officers who not only have not been deposed: the subject of their potential testimony has not been disclosed. This places plaintiffs at a severe disadvantage, allowing the defendants to defend by ambush.

Secondly, as to the two remaining defendants, there are claims for intentional infliction of emotional distress. When viewed in isolation, the conduct that forms the basis of these claims may not, bu itself, be conscious shocking. However, in the context of a 15 year pattern of harassment that was not only tolerated but sanctioned by the department, the specific acts of the two remaining defendants takes on a much different context.

As this Court noted on more than one occasion during the first trial, the harm to the Kennedys was not one blow but a death by a thousand cuts. In the initial trial, plaintiffs were permitted to show the thousand cuts. In a second trial, involving but two incidents, there is no way the plaintiffs can introduce the full panoply of threats, arrests, intimidation and harassment, that continues with arrests and beatings this month of Mitchell and Dylan Kennedy, even with generous indulgence of the Court.

Similarly, the bifurcation has eliminated the plaintiffs' ability to establish the evidence of the participation in a conspiracy by defendants Nestor and Parker. Absent evidence of the acts of twenty five other co-conspirators, the plaintiffs are handicapped in presenting their conspiracy theory. Moreover, in retrospect, the inability to fully present evidence of all of the acts of all of the defendant officers in the first trial irreparably prejudiced the plaintiffs in the first trial, as the inability to present the full evidence and extent of the conspiracy in the first trial may well be the reason the Jury in the first trial did not see the conspiracy.

In any event, plaintiffs' claims against defendants Nestor and Parker are severely prejudiced because the defendants have taken advantage of the Court's bifurcation order in failing to acknowledge the clear jury verdict and forcing a second trial.

## II.  ISSUES REMAINING FOR SECOND TRIAL

1. Whether defendant Nestor intentionally inflicted emotional distress upon Brian Kennedy, Jr., by causing his mother, Michelle Kennedy to be arrested in front of him, at their home.

2. Whether defendant Parker intentionally inflicted emotional distress upon Michelle Kennedy and assaulted and battered her and violated her civil rights, in an incident on June 5, 2002.

## III.  AGREED UPON FACTS

None.

## IV. BRIEF STATEMENT OF EACH PARTY'S EXPECTED EVIDENCE

### A. Plaintiff's Expected Evidence

#### 1. Background

Plaintiffs expect to introduce evidence that after plaintiff Michelle Kennedy spurned the advances of Billerica Police Officer Frank MacKenzie, a pattern of harassment, threats, beatings, arrests and intimidation began which continues through the present, with the beating and arrest in the past two weeks of Dylan and Mitchell Kennedy.

Plaintiffs expect to introduce evidence, in the form of a jury verdict and otherwise, that this pattern was condoned, even sanctioned, by the Billerica Police Department. In this context, harassment of the plaintiffs by the remaining defendants, Nestor and Parker was part of a much larger campaign against the plaintiffs.

#### 2. Nestor incident:

Plaintiff's evidence will show that on June 5, 1993, defendant Richard Nestor, off duty and in his own vehicle, followed Mr. and Mrs. Kennedy as they were driving on Boston Road in Billerica. Defendant Nestor pulled along side the Kennedys' car and swerved towards it, forcing the Kennedy to the side of the road. Defendant Nestor repeated this several times until the Kennedys pulled over and stopped their vehicle. Defendant Nestor pulled behind the Kennedys and waited in his vehicle.

The Kennedys waited for Nestor to leave. After he sat n his car behind them for some time, Mrs. Kennedy approached him and asked him to stop playing his games and leave them alone. When she accused Nestor of running them off the road, he simply laughed. Mrs. Kennedy then returned to her car and left without further incident.

Several days later, several Billerica police officers stormed into the Kennedy home, acting pursuant to a recently issued warrant and handcuffed and arrested Mrs. Kennedy in front of her two young children, based on false charges Nestor had fabricated of assault and intimidation of a witness based upon their encounter on June 5,1993. At the trial of this matter, the judge entered a required finding of not guilty at the close of the Commonwealth's case.

3. **Parker incident**

The evidence will show that on March 31, 2002, defendant Parker approached and shoved Michelle at the Billerica Boys and Girls Club. She ran to her car and locked the doors. Defendant Parker began kicking her car calling her a "cunt" and "little bitch". Frightened, Michelle called her friend, Dean Royston on her cell phone. The African-American Royston, who then was a Billerica police officer, could hear defendant Parker yelling "Just because you're f —king the nigger, don't think you can do whatever you want."

Royston arrived to witness Parker screaming curses and kicking the car.

Within days, Royston began getting a hard time from other officers, led by MacKenzie. Cartoons depicting Royston's cruiser at the Kennedy house, with his clothes strewn across the lawn appeared on the Police Station bulletin board. Instead of reprimanding Parker, it is Royston who is disciplined. Defendant Chief Rosa issued an order on April 23, 2002 banning any Billerica Police officer from contact with the Kennedys. This is the beginning of Royston's removal from the department. He is eventually suspended for violating this order. He is also charged with possession of a small amount of marijuana. These are the only charges against him.

The evidence will show that Royston was selectively targeted because of his friendship with Michelle Kennedy. Evidence will show that defendant Parker was never disciplined for his unbecoming assault on Michelle Kennedy.

A few days later, on April 16, 2002, defendant Munn was in the Kennedy's neighborhood and told about 14 children to get off the road. He called two tow truck companies to come pick up the skateboard ramps the children had built. When the tow trucks did not show up within the hour Officer Munn called some town employees who picked up the ramps. A newspaper lady and man took pictures of the employees taking the ramps away. Within 20 minutes the employees returned the ramps. Officer Munn told the Mr. and Mrs. Kennedy "Your time is coming".

Several days later the Chief Rosa called the Kennedy residence, leaving at least 4 messages. Ms Kennedy returned the call expecting the Chief to be sympathetic and offer assistance with respect to the incident involving Officer Munn. Instead, after hearing Ms. Kennedy recount the incident, Rosa laughed and told her to never call the police station again.

**B. Defendants' Expected Evidence**

There are two incidents cited by Judge Saris' memorandum and order dated August 15, 2007. The Court ruled that there are two issues left for trial. The first is an allegation that officer Richard Nestor intentionally inflicted emotional distress on Mitchell Kennedy in the manner in which he arrested Michelle Kennedy in front of him in 1993. The second is an allegation that officer Scott Parker assaulted Michelle Kennedy in a confrontation in the Spring of 2002.

As to the first incident, the defendants anticipate that the evidence will be that June 5, 1993, Billerica Police Officer Richard Nestor was driving his personal car off-duty when he saw a pick-up truck at an intersection. The plaintiffs Brian and Michelle Kennedy got out of the truck and walked towards Nestor's car. Michelle was yelling, "if you ever arrest my husband again you'll get it." Nestor had arrested Brian Kennedy for a motor vehicle offense a number of weeks before. Brian was trying to restrain Michelle. About ten feet from Nestor's car, Michelle spit at Nestor. Michelle continued to yell at Nestor, "you're going to get it, arresting Brian." Both plaintiffs Brian and Michelle Kennedy got back into their vehicle. Nestor spoke to his supervisor who told him to write a report. Later, Nestor applied for a criminal complaint against Michelle Kennedy for Assault and Intimidation of a witness. The magistrate, after reviewing reviewed Nestors' report, issued a warrant for the arrest of Michelle Kennedy. She was arrested by other Billerica Police Officers, not Nestor. At Michelle Kennedy's trial, the court entered a finding of not guilty.

The defendants anticipate that the evidence on the second incident will show that on March 31, 2002, at approximately 6 p.m. Billerica police officer Scott Parker was dispatched to 19 Campbell Road on a report of suspicious activity. Upon arrival he observed a parked white Lexus and a blue pick-up truck with 4 people loading bike ramps owned by the Billerica P.A.L. program onto the pick-up truck. Parker checked and was informed by the Officer in Charge, that no one had permission to remove the ramps. Parker then observed the two vehicles attempt to leave the area with the ramps in the pick-up and therefore stopped both vehicles. The plaintiffs Brian and Michelle Kennedy exited the Lexus and began to curse at Parker. Parker requested that ramps be returned. The occupants of the pick-up truck then returned the ramps. Brian and

Michelle Kennedy continued to curse at Parker. Michelle Kennedy stated to Parker that she was going to call "Dean". Now former Billerica Police Officer Dean Royston arrived and requested that Michelle Kennedy leave the scene. No charges were ever sought by Parker.

## V. DESCRIPTION OF CASE TO BE READ TO JURY

### A. Defendant's Description of the Case to be Read to the Jury

The plaintiffs allege that on June 5, 1993, Billerica Officer Richard Nestor intentionally inflicted emotional distress upon Brian Kennedy, Jr. by the manner in which he arrested his mother, Michelle Kennedy, in front of him. The defendants deny that officer Nestor participated in the arrest and state that the officers who did arrest Michelle Kennedy did so properly.

The plaintiffs also allege that on March 31, 2002 Officer Parker assaulted Michelle Kennedy by shoving her, cursing her, and kicking her car. The defendants deny that Officer Parker touched Michelle Kennedy and state that she cursed at him.

### A. Plaintiff's Description of the Case to be Read to the Jury

This case involves the acts of two Billerica police officers whom the plaintiffs allege were participants in a pattern of threats, intimidation and harassment that began after the wife of a Billerica police officer found out about his flirtations with plaintiff Michelle Kennedy.

In an earlier trial, a Jury found that the Billerica Police Department was liable for violating the civil rights of Michelle Kennedy and her three sons because it failed to adequately supervise or discipline its officers who were involved in the ongoing harassment of the Kennedys. The jury also found two individual officers, including the chief of the Billerica Police, Daniel Rosa, liable for claims against the Kennedys, including intentional infliction of emotional distress and violation of the Kennedys' civil rights.

## VI. LEGAL QUESTIONS STILL TO BE RESOLVED

1. The extent of the prejudice to the plaintiffs caused by bifurcation of these remaining claims and the remedy.

2. Whether the minor plaintiffs may claim loss of consortium for the conduct of defendants Nestor and Parker against their mother.

3. The extent to which the verdict in the first trial serves as res judicata or the law of the case.

4. The relevance, and thereby admissibility of the plaintiff's medical records.

5. The admissibility of police reports, where the police officers who prepared the reports are available to testify.

## VIII. EXPERT WITNESSES

Defendants do not anticipate calling any expert witnesses.

## IX. LENGTH OF TRIAL

Three days, if the trial is limited to the two remaining events, five days if not.

## X. WITNESSES

**A. Plaintiff's possible witnesses include**:

1. William Ashton, 1248 Gorham Street, Lowell, MA  01852

2. Tracy Heffernan, 54 Oak Street, Billerica, MA 01862.

3. Brian Kennedy, 1248 Gorham Street, Lowell, Massachusetts.

4. Brian Kennedy, Jr., 1248 Gorham Street, Lowell, Massachusetts.

5. Dylan Kennedy, 1248 Gorham Street, Lowell, Massachusetts.

6.    Michelle Kennedy, 1248 Gorham Street, Lowell, Massachusetts.

7.    Mitchell Kennedy, 1248 Gorham Street, Lowell, Massachusetts.

8.    Craig Pickering, 195 Central Hill Road, Wells, ME.

9.    Dean Royston, 28 Bay Street, Lowell, MA 01854. Tel. No. (978)-621-6350

10.    Joyce Tibbetts, Englewood, FL. Tel. No (941)460-9688

11.    Kriss Swimm, Billerica, Mass.

13.    Defendant Nestor

14.    Defendant Parker

15.    Defendant Rosa

16.    Ltnt. Greenhalgh

17.    Sergeant Cathleen Coneeny

Plaintiff reserves the right to supplement this list, to all rebuttal witnesses, or otherwise as needed.

**B. Defendants' witnesses include:**

Pursuant to the Court order, the defendants list the following witnesses whom they expect to call and those whom they may call if the need arises. In addition, the defendants reserve the right to call any witnesses from the plaintiffs list of witnesses. Further, depending upon any of the court further pretrial rulings, the defendants reserve the right to call any witnesses listed in their previous filings in this case. (Document #s 170, 207, 209).

The defendants may call the following witnesses:

1.    Chief Daniel C. Rosa, Jr., Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

2.    Chief John Barretto (former), Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

3.    Lieutenant Richard Rhonstock, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

4. Lieutenant Robert Bailey (retired), Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

5. (Retired) Detective Richard Howe, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

6. Detective Donald MacEachern, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

7. Officer Richard Nestor, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

8. Officer Scott Parker, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

9. Sergeant Alan Munn (former), Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

10. Officer William Pfaff (retired), Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

11. Sergeant Cathleen Coneeny, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

12. Lieutenant Ronald Balboni, Billerica Police Department, 6 Good Street, Billerica, Massachusetts;

13. Lieutenant Tom Greenhalgh, Billerica Police Department, 6 Good Street, Billerica, Massachusetts.

## XI. POSSIBILITIES OF SETTLEMENT

The plaintiffs understood that, had they lost the initial trial, they would give up their remaining claims. The plaintiffs further understood that, in consideration for agreeing to do so, the defendants would respect and honor any judgment against them.

This has not been the case. The defendants continue to refuse to discuss settlement.

| | |
|---|---|
| Respectfully submitted,<br>Defendants by counsel, | Respectfully submitted,<br>Plaintiffs by counsel, |
| /s/ Jermy Silverfine<br>Jeremy Silverfine, Esquire<br>BB0# 542042<br>Brody, Hardoon, Perkins & Kesten, LLP<br>One Exeter Plaza<br>Boston, MA 02116<br>617-880-7100<br>jsilverfine@bhpklaw.com<br>Date: September 19, 2007 | /s/ Andrew M. Fischer<br>Andrew M. Fischer<br>BB0# 167040<br>JASON & FISCHER<br>47 Winter Street<br>Boston, MA 02108<br>(617) 423-7904<br>afischer@jasonandfischer.com<br>Date: September 19, 2007 |

kennedy/ptmemo2