UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************
BRIAN KENNEDY AND MICHELLE KENNEDY,    *
Individually and as father and next friend of    *
BRIAN KENNEDY, JR., Individually and as mother    *
next friend of BRIAN KENNEDY, JR..    *
    *
       Plaintiffs    *
    *
v.    *    C. A. No. 04-CV-12357-PBS
    *
TOWN OF BILLERICA, et al    *
    *
       Defendants    *
*********************************************

## PLAINTIFFS' OPPOSITION TO
## MOTION TO RECONSIDER SUMMARY JUDGMENT

**I. Massachusetts allows for recovery for infliction of emotional distress upon a family member related to the target of the defendant's conduct**

      In support of their motion to reconsider summary judgment, defendants rely wholly upon and mis-cite *Nancy P. v. D'Amato*, 517 N.E.2d 824, 827-828 (Mass. 1988) for the proposition that a family member may not assert a "derivative" claim for infliction of emotional distress. Although the Supreme Judicial Court did not find evidence of damages to the related family member in *Nancy P.*, its holding was quite clear, and to the contrary of what the defendants contend:

> We have placed reckless and intentional infliction of emotional distress in the same category. . . . If a defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely consequence of his conduct, if his conduct was extreme and outrageous . . ., and if his conduct caused the plaintiff severe emotional distress, we would impose liability.

The Court continued

> Here [the defendant] did not intend to cause emotional distress to the [mother and brother of the victim]. It was his hope that they would never learn of his misconduct. Yet it would be a question for the trier of fact whether [the defendant] acted recklessly,

>indifferent to the likely effect of his conduct on family members who would be apt in time to learn of his outrageous conduct. Surely a trier of fact would have been warranted in concluding that [the defendant's] conduct was extreme and outrageous and that he acted with reckless indifference to the likely effect of his conduct on the mother and on [the brother].

*Nancy P. v. D'Amato* has been cited several times for the proposition that emotional distress can be inflicted on a family member of the intended victim, although in these cases, like in *Nancy P.*, there was insufficient evidence of injury to the related family member to sustain a judgment. See, e.g., *Anthony H. v. John*, 415 Mass. 196, 199, 612 N.E.2d 663 (1993) and *Zachary v. Centrus Premier Home Care, Inc.*, 1999 WL 1295110 (Mass.Super. 1999) and *Migliori v. Airborne Freight Corp.*, 426 Mass. 629, 631, 690 N.E.2d 413 (1998), which held that "Clearly, a family member could claim damage if he or she were actually present [as Brian Junior was when his mother was arrested] when the defendant's extreme and outrageous conduct took place", citing the Restatement (Second) of Torts § 46(2) (1965)

Moreover, the Supreme Judicial Court has suggested that, in the right case, it may reconsider the requirement of the physical presence of the claiming family member. See, e.g., *Anthony H. v. John G.*, 415 Mass. at 199, 612 N.E.2d 663, "[e]ven if the family member's presence were not a condition of liability, we would normally require both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response." [citing *Nancy P. v. D'Amato*]

## II. There is no requirement of physical harm, as the defendants claim, for the intentional infliction of emotional distress.

It is black letter law set forth clearly in the lead case cited by the defendants, *Agis v. Howard Johnson*, 371 Mass. 140, 355 NE2d 315, at 145, 318 that there is no requirement of physical harm to recover for the intentional infliction of emotional distress: "[O]ne who, by

extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress <u>even though no bodily harm may result</u>." [emphasis added]

It should further be noted that the requirement of a "physical" harm has been significantly relaxed for claims of negligent infliction of emotional distress, as well,, as Judge Brant elucidated in his recent opinion in <u>Pizzochero et al v. Vergadas</u> et al (Lawyers Weekly No. 13-049-07):

> "Traditionally, there was no recovery in Massachusetts for emotional distress because the courts were concerned about opening the door to 'unjust claims.' <u>Spade v. Lynn & Boston R.R.,</u> 168 Mass. 285, 290 (1897). In 1978, however, the Supreme Judicial Court overruled <u>Spade</u> and permitted recovery for emotional distress where there was 'both a substantial physical injury and proof that the injury was caused by the defendant's negligence.' ... Four years later, in the seminal case of <u>Payton v. Abbott Labs</u>, 386 Mass. 547 (1982), the Court required only that there be objective evidence that a plaintiff had suffered some physical manifestation of the claimed emotional distress. ... Specifically, the Court required proof of 'physical harm manifested by objective symptomatology.' ...
> 
> "The Supreme Judicial Court then relaxed the standard in <u>Sullivan v. Boston Gas Co.</u>, 414 Mass. 129, 134 (1993) to require plaintiffs to advance 'enough objective evidence of harm to convince a judge that their claims present[ed] a sufficient likelihood of genuineness to go to trial.' ... <u>Sullivan</u> did not eliminate the need for proof of physical harm to support an emotional distress claim, 'but merely expanded the range of symptoms that may provide the type of objective evidence to prove physical harm.' ...
> 
> "Recent cases have outlined what constitutes adequate physical symptoms to support an emotional distress claim. In <u>Sullivan</u>, supra at 131-132, the physical manifestations claimed were post traumatic stress disorder, headaches, sleeplessness, gastrointestinal distress, nightmares and depression. In <u>Kelly v. Brigham & Women's Hosp.</u>, 51 Mass. App. Ct. 297, 306 (2001), the plaintiff suffered depression, nightmares, cramps and shortness of breath. In <u>Bresnahan v. McAuliffe</u>, 47 Mass. App. Ct. 278, 282 (1999), the symptoms included stomach pain, headaches and loss of concentration.

Thus, as this Court has noted, one can recover for infliction of emotional distress for what is recognized as "garden variety" emotional distress damages, such as headaches, nausea, minimal loss of sleep and loss of appetite even without medical records of psychological treatment.

**III. Defendant are incorrect in claiming that "the only conduct that Officer Nestor is charged with is applying for criminal charges".**

On June 1, 1993, eleven days after Brian Kennedy was confronted and threatened in the Mr. Tipps restaurant by defendant Nestor's fellow officers, defendant Nestor arrested Brian Kennedy for Operating a Motor Vehicle after License Suspension.

The evidence could be construed that defendant Nestor initiated the confrontation on June 5, 1993 that led to his seeking a criminal complaint. Moreover, given sufficient background of the harassment of the Kennedys by Nestor and his fellow officers, the jury need not believe defendant Nestor's protestations that he did not seek an arrest warrant but just applied for a criminal complaint.[1] Here, defendant Nestor's actions and credibility must be viewed in the context of his participation in an extended pattern of ongoing harassment.

Defendant Nestor continued his harassment of Ms. Kennedy and her family after the June, 1993 arrest, when he and Officer Roche arrested Ms. Kennedy in the afternoon or evening of September 5, 1993, Ms. Kennedy and charged her with Operating a Motor Vehicle Without a License. Ms. Kennedy explained that she had a valid license to operate her vehicle at that time since her license was only suspended between the hours of 10:00 PM and 10:00 AM. Nevertheless, defendant Nestor and Officer Roche ignored this information and arrested Ms. Kennedy.

The next day Ms. Kennedy was visiting her friend, Casey Heffernan, when defendant Nestor and Officer Roche knocked on Mr. Heffernan's door and claimed they were looking for Michelle

---

[1] The plaintiffs already have made note of the prejudice to them that the defendants in the past several days recently "discovered", conveniently, that former defendant Connors signed the criminal complaint, to which they now claim, he added two additional charges and circled the request for an arrest warrant to issue. The plaintiffs are prejudiced thereby by the severance of claims and bifurcation, as this evidence was not made available during the first trial, in which defendant Connors was not found liable but may have been, with this additional, newly found evidence.

Kennedy.  When Mr. Heffernan refused to open the door the officers threatened him.  Nevertheless Mr. Heffernan refused to open the door and the officers left.  Subsequently Ms. Kennedy received a citation in the mail from Officer Roche charging her with operating a motor vehicle without a license.  Ultimately Ms. Kennedy was acquitted of all of these charges arising from these two incidents.

In October, 1993, shortly after Ms. Kennedy was found not guilty of assaulting Defendant Nestor, Ms. Kennedy was picking up her son, Brian, from karate when she noticed Defendant Nestor sitting in a police cruiser outside the building where her son's class was being held.  Defendant Nestor followed Ms. Kennedy and her son from the karate studio all the way to her home.  Later that evening, Defendant Nestor, with Officer MacKenzie, followed Ms. Kennedy to a MacDonalds in Billerica where they tried to intimidate her by shining their lights in her car and driving next to her while she went through the drive-thru.

Thus, defendant Nestor's application for criminal process that led to Ms. Kennedy's arrest was part of a much more extended attempt to inflict emotional distress upon the plaintiffs than the defendants acknowledge.

# CONCLUSION

Where there is evidence that defendant Nestor has engaged in behavior deliberately intended to inflict emotional distress upon the plaintiffs,[2] as set forth above, defendants motion to reconsider summary judgment should be denied.

|   |   |
|---|---|
|   | Respectfully submitted,<br>Brian Kennedy, et al<br>by their counsel |
| Date: September 28, 2007 | /s/ Andrew M. Fischer<br>Andrew M. Fischer<br>BB0# 167040<br>JASON & FISCHER<br>47 Winter Street<br>Boston, MA 02108<br>(617) 423-7904<br>afischer@jasonandfischer.com |

kennedy\oppreconssj

---

[2] Defendants correctly note that plaintiffs also have claims for loss of consortium and note that this Court, Gertner, J., has allowed such loss of consortium claims in a similar civil rights context, in *Limone v. United States*, 497 F.Supp 2d 143 (D. Mass, 2007) (miscited by the defendants as "Limore".) Defendants are incorrect, however, in suggesting that the plaintiff's damages should be substantially less than the $50,000 award for loss of consortium. The award was not based on "decades of false imprisonment", as the defendants misunderstand, but on the loss of consortium of a grown son who had little contact with his largely estranged father, as opposed to the facts here, where a small child witnessed the wrongful arrest of his mother who was removed from their home in handcuffs before his eyes.

The loss of consortium of a five (5) year old of his mother's companionship and care may be worth more than the longer loss of an adult who had little contact with his falsely imprisoned father.