UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
BRIAN KENNEDY, et al                    *
                                        *
                    Plaintiffs          *
                                        *
v.                                      *    Civil Action no. 04-12357 - PBS
                                        *
TOWN OF BILLERICA, et al                *
                                        *
                    Defendants          *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SELF STYLED
SECOND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

## I. Introduction and procedural background

The defendants now bring their self styled second motion for a judgment notwithstanding

the verdict. The first [docket # 259] was filed on May 10, 2007, after the first of the two trials in

this case. At the time, plaintiffs' counsel wrote to the defendants, pursuant to Local Rule

7.1(A)(2) [see letter of counsel dated May 16, 2007, Exhibit A, hereto], pointing out that the

defendants do not have the right to bring more than one motion JNOV and suggesting that the

defendants either withdraw the first motion or waive the second, as plaintiffs should not have to

argue the same motion twice. Defendants' response [Exhibit B, hereto] was ambiguous.

Thus the Court already has considered and, except for reducing the negligence awards to

Brian Kennedy, Jr., and Mitchell Kennedy to conform to the tort cap of $100,000 of M.G.L., C.

258, has denied the arguments now raised for at least the second time with respect to the first

trial. Actually, this is the third time the defendants have raised many of these same arguments,

the first being in the first of two motions for directed verdict [docket #247], filed on April 25,

2007, after the first trial.[1]  A motion for directed verdict  [docket # 309] was also filed after the

second trial, on October 3, 2007.  This motion also was denied by this Court.

Thus, this second motion only raises issues already asserted and denied by the Court or

which the defendants have waived, having failed to raise them in their motions for directed

verdict, filed after each trial.

## II.  Argument of law

### A.  Standard for Judgment notwithstanding the Verdict

Defendants mis-state the standard for a Rule 50(b).  While it is <u>similar</u> to the standard for

summary judgment, it is not <u>the same</u> standard, as the defendants claim.[2]

The court's review of a renewed motion for judgment as a matter of law, in the form of a

Motion for Judgment NOV, is very limited.  First, the moving party may not assert any argument

not argued in its motion for a directed verdict.  *Martinez Moll v. Levitt & Sons of Puerto Rico,*

*Inc.*, 583 F.2d 565, 568 (1st Cir.1978); 5A Moore's Federal Practice ¶ 50.08 at 50-86 (1977).  A

motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure

may be granted only when there is no legally sufficient evidentiary basis for a reasonable jury to

find for the non-moving party. See *Richards v. Relentless, Inc*., 342 F.3d 35, 41 (1st Cir.2003);

---

[1]In fact the defendants are barred from asserting any new arguments not asserted in the motions
for directed verdict by F.R.C.P., Rule 50, as the motion JNOV merely reasserts the Motion for Directed
Verdict and therefore may not assert any grounds not raised in the motion for judgment of law at the
close of the record. *Martinez Moll v. Levitt & Sons of Puerto Rico, Inc*., 583 F.2d 565, 568 (1st
Cir.1978); *Ross v. Rhodes Furniture, Inc.*, 146 F3d 1286, 1289-1290 (11th. Cir., 1998); National Indus.,
Inc. v. Sharon Steel Corp., 781 F.2d 1545(11th Cir.1986); *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835,
845-46 (5th Cir.1975); 5A Moore's Federal Practice ¶ 50.08 at 50-86 (1977).

[2]The actual words used in the case cited by the defendants, *Reeves v. Sanderson Plumbing
Prods., Inc.*, 530 U.S. 133 (2000) is that the standard for granting summary judgment "mirrors" the
standard for judgment as a matter of law. (at p. 150)

*Guilloty Perez v. Pierluisi*, 339 F.3d 43, 50 (1st Cir.2003). "A party seeking to overturn a jury verdict faces an uphill battle." See *Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 168 (1st Cir.2005).

"Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (quoting *Rivera Castillo v. Autokirey, Inc*., 370 F.3d 4, 9 (1st Cir.2004)). See also *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir.2003); *Keisling v. SER-Jobs for Progress, Inc*., 19 F.3d 755, 759-60 (1st Cir.1994).

"The standard for granting judgment n.o.v. in this circuit is well settled. Such a motion should be granted only upon a determination that the evidence could lead reasonable men to but one conclusion, a determination made without evaluating the credibility of witnesses or the weight of the evidence at trial. *DeMars v. The Equitable Life Assurance Society of the United States*, 610 F.2d 55, 57 (1st Cir. 1979). Thus, however plausible [defendants'] view of the case may be, [the district judge is] bound to review the evidence and the inferences to be drawn therefrom in the light most favorable to [the plaintiff]. *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 989 (1st Cir. 1978)" *Hubbard v. Faros Fisheries, Inc*., 626 F.2d 196 (1st Cir., 1980)

A jury verdict may be set aside only if "there is no legally sufficient basis" to support the jury's finding. Fed.R.Civ.P., Rule 50(a) The trial judge "may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence" but must "examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant." *Wagenmann v Adams*, 829 F.2d 196 (1st Cir., 1987)

-3-

In other words, the Court must assume that the jury accepted the plaintiff's evidence to the full extent supported by fact and law.  The Court, in ruling on a motion to set aside a verdict, must respect the jury's evaluation of the credibility of witnesses, the jury's resolution of conflicts in testimony and the jury's assessment of the weight of the evidence unless the jury's findings have no reasonable basis.

"In order to award a new trial [a Court] must find that the jury's verdict was **so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice**."  [emphasis added]  _Wagenmann v Adams_, supra, citing _Valm v. Hercules Fish Products, Inc._, 701 F.2d 235, 237 (1st Cir.1983) (same); _Coffran v. Hitchcock Clinic, Inc_., 683 F.2d 5, 6 (1st Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982) and other cases.

Thus, in ruling upon a motion to set aside a verdict, the Court should view the evidence and make all reasonable inferences in the light most favorable to the plaintiff.  The question is whether when the evidence is seen in this light, reasonable jurors could come to but one conclusion.  _Pittsley v. Warish_, 927 F.2d 3, 32 Fed. R. Evid. Serv. 544, (1st Cir., 1991), citing _Kinan v. Brockton_, 876 F.2d at 1036; _Kuras v. International Harvester Co._, 820 F.2d 15, 17 (1st Cir.1987). _Wildman v. Lerner Stores Corp._, 771 F.2d 605, 607 (1st Cir.1985); _Goldstein v. Kelleher_, 728 F.2d 32, 39 (1st Cir.), cert. denied, 469 U.S. 852, 83 L.Ed.2d 107 (1984).

**B.  The Standard for new trial under Rule 59 is narrower than stated by the defendants.**

Defendants cite the correct case but add to the language from _Coffran v. Hitchcock Clinic, Inc._, 683 F.2d 5 (1st Cir., N.H., 1982) in writing that the standard for ordering a new trial after a verdict, is that a trial judge may set aside the verdict and grant a new trial where "the verdict is against the clear weight of the credible evidence or results in a clear miscarriage of justice".  The

word "credible" is not in the First Circuit opinion.  This is because the defendants are not entitled

to second guess the jurys' findings of credibility, *Borras v. Sea-Land Service, Inc.*, 586 F.2d 881,

887 (1st Cir.1978), or to reargue issues of credibility.

As the First Circuit explained in *Coffran*, supra, quoting *Borras,* 586 F.2d 881, 886-87

(1st Cir. 1978), a "trial judge should not act merely as a '13th juror' and set a verdict aside

simply because he would have reached a different result had he been the trier of fact." 586 F.2d

at 887. Rather the judge's duty is to exercise a more limited discretion. He should not interfere

with the verdict " 'unless it is quite clear that the jury has reached a seriously erroneous result.'

Id., at 887, quoting 6A Moore's Federal Practice P 59.08(5), at 59-160."

The defendants omit this from their definition of the Rule 59 standard.

**C.  The defendants fail to show that any of the juries' verdicts were so contrary to the weight of the evidence as to represent a "miscarriage" of justice**.

Defendants raise an assortment of arguments, some of them already rejected by the Court

and others not previously asserted in any motion for directed verdict, and thus not raised properly

now.   Plaintiffs address each of these arguments below

**1.  Even without considering the context of a thirteen year pattern of harassment including assaults, false arrests, false accusations, bringing of false criminal charges, altering documents and multiple other acts of harassment, the jury was justified in finding that defendant Parker's conduct, brought in retaliation for the Kennedys making a claim against the Billerica police shocked the conscience.**

In asking the Court to set aside the Jury's verdict against defendant Scott Parker, the

defendants misstate both the facts and the law, omitting facts that undermine their contention that

defendant Parker's conduct was not conscience shocking and citing inappropriate cases to support

their incorrect assertion, at p. 11 of their memorandum, that the plaintiffs factually do not state a constitutional 14th Amendment due process claim.

Neither of the cases the defendants rely upon involve behavior that approaches the conscience shocking deliberate harassment spewed by the defendant Billerica police. In *Centro Medico Del Turabo, Inc., v. Feliciano De Melecio*, 406 F3d 1 (1st Cir., 2005), the plaintiff claimed a 14th Amendment violation because a government official did not issue a certificate necessary to transfer a license allowing the sale of a medical facility. The First Circuit, understandably, found that this did not rise to a constitutional violation, citing *Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiff Daniels, an inmate in a Virginia prison, slipped on a pillow left on a stairway and the Supreme Court held that this act of negligence did not constitute a violation.

Neither of these cases are on point. More apt is the First Circuit's language from language from *Yerardi's Moody Street Restaurant v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir.1989). While the First Circuit did not find a due process violation on the facts in that case, it made clear that "the right to equal protection is the right not to be treated differently from those similarly situated.". Supra, 21, citing the Supreme Court in *Yick Wo*, 118 U.S. at 374, 6 S.Ct. at 1073.

Judge Posner cited *Yerardi*, as well as 5th and 7th Circuit cases in holding in *Esmail v. Macrane*, 53 F3d 196 (7th Cir., 1995), that unequal treatment brought to bear on individuals merely because powerful state or local officials (like the defendant Chief Rosa and his cohorts) harbor malignant animosity towards them violates the equal protection clause, writing, at 179,

> If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court. This was implied by the Supreme Court in City of *Cleburne v. Cleburne Living Center, Inc.*, supra, 473 U.S. at 446-47, 105 S.Ct. at 3257-58, when it pointed out that some objectives of state action simply are illegitimate and will not support actions challenged as denials of equal protection.

While the legal standard is, understandably, high, for a substantive due process claim, no case

cited by the defendants suggests that the plaintiffs' facts do not support a due process claim. To

the contrary, as Judge Posner notes, the kind of treatment the plaintiffs received is the exceptional

kind of situation that requires a constitutional remedy.

### a.  In claiming that defendant Parker's conduct was no more than "profane language" and "possibly" kicking the plaintiff's car door, the defendants ignore facts that supported the jury's verdict and fail to present the facts in the light most favorable to the plaintiffs.

In their argument, defendants present defendant Parker's conduct as no more than and

"isolated outburst" that "included swearing and possibly kicking the plaintiff's car door".

[Defendants' memorandum, p. 19]  This attempt to re-argue evidence that the jury obviously did

not believe ignores the first tenet of the legal standard the defendants must meet: that they must

accept "the evidence and the inferences reasonably to be drawn therefrom in the light most

favorable to the nonmovant". _Wagenmann v Adams_, supra.

In dismissing defendant Parker's attack upon Michelle Kennedy as no more than an

isolated swearing match between two equals, the defendants ignore evidence that supports the

Jury finding: of not just an unprovoked assault but a sufficiently deliberate and malicious assault

that warranted, in the Jury's mind, an additional finding of punitive damages.  There was evidence

that defendant Parker's assault, in and of itself, was deliberate and pre-meditated.  There was

evidence that from the outset defendant Parker was deliberately attempting to provoke an incident

that would allow him to beat and arrest Brian Kennedy.

Accepting all inferences in favor of the plaintiff, the Court must let stand the jury's

finding, as the Jury chose to believe the evidence that defendant Parker went after Michelle

Kennedy, deliberately, ordering her not to leave, so that he could assault her after she foiled his

attempt to get her husband.  This deliberately planned assault, by itself, was enough to shock the conscience, even without considering the context and background of the long campaign the Billerica Police waged against the Kennedys.

In fact, there was much more, all of which the defendants, contrary to the standard they must accept, fail to consider.  The defendants must accept that defendant Parker's assault on Michelle Kennedy was not an isolated and aberrant incident, as defendants still contend, as there was evidence to support the Jury's verdict to the contrary.  The jury did not have to and did not accept the defendants' claim that defendant Parker was "provoked" by an equally out of control Michelle Kennedy.

First, the jury did not have to believe the defendants' claims that Ms. Kennedy was yelling back or yelling at all, as the defendants still argue.  Even if it did, the jury was free to ignore this evidence, as Ms. Kennedy had no duty not to swear or yell at defendant Parker, while defendant Parker, as a police officer, had a duty under the department's rules of courtesy (which he violated), as well as a duty to respect Ms. Kennedy's First Amendment right to free speech (which he also violated).   Moreover, they were hardly equals: defendant Parker, a male police officer was in uniform, fully armed, while Ms. Kennedy, a woman, was alone, defenseless and unarmed.

Ms. Kennedy's testimony was that she was subdued and retreating in fear until Dean Royston arrived and that she did not initially leave because she was diverting defendant Parker's attention to her so that her husband could get away without being beaten and then arrested.   The defendants may not now continue to argue contrary facts: they are obliged to accept the facts that support the Jury's finding. The Jury also was free to accept Ms. Kennedy's testimony that she retreated to her car, locking herself in, because she was afraid that she was about to be beaten then arrested.  In accepting all inferences in favor of the plaintiffs, defendants must accept these facts.

The jury was also free to believe and accepted Ms. Kennedy's testimony that she did not yell or curse back at defendant Parker until after Dean Royston arrived.  In fact, although no longer an issue they can dispute, the evidence is contrary to what the defendants are still arguing. Ms. Kennedy's testimony that she did not yell or curse back at defendant Parker until after Dean Royston arrived is not inconsistent with Mr. Royston's testimony that Ms. Kennedy did not exit the car until after he arrived and only then did she yell back at the out of control defendant Parker.[3]

The evidence at trial also included testimony from defendant Parker himself that when he spoke with his superior, Lt.  Greenhalgh, after the incident, Greenhalgh assured him that he had "spoken" to Dean Royston and was assured that the voice massage recording Parker's tirade was "erased" and that there would "be no problems".   The Jury was understandably outraged by this admitted cover-up.

This reading of the facts cannot now be disputed, as it supports the Jury's finding. Oblivious to this standard, the defendants, still presenting the facts their way, disregard the Jury's express answer to special verdict question 4 in arguing that defendant Parker did not assault Michelle Kennedy.  There can be no question that defendant Parker's verbal and physical assault upon Michelle Kennedy was not a reaction in the heat of the moment, as the defendants now seek to reargue, but was a deliberate and planned attack that placed her in fear.

_____

[3]The defendants claim, at page 15 of their memorandum, that Officer Royston heard Michelle Kennedy "yelling" at defendant Parker – that they were yelling at each other, and cite but do not provide the transcript. Notes of plaintiffs' counsel, who do not have the trial transcript, indicate that Officer Royston testified that he heard defendant Parker yelling and swearing in the background as he spoke with Ms. Kennedy.  One might note (and the jury could have concluded) that Ms. Kennedy could not have been yelling back at defendant Parker while she was calling and talking to Officer Royston.

The defendants may not now reassert defendant Parker's testimony that the skate board ramps belonged to the Police Athletic League (PAL). They must accept as fact Ms. Kennedy's testimony that she had been given permission to take the skate board ramps that were being discarded by the Boy's Club. This leads to the obvious inference that defendant Parker was using the alleged "theft" of the skate board ramps as a pretext for deliberately stopping and harassing the Kennedys in the hope of provoking an incident that would allow him to beat, then falsely arrest Brian Kennedy, whom defendant Parker knew was on probation and whom defendant Parker was targeting for retribution for having filed the presentment letter. Indeed this was why Michelle Kennedy distracted defendant Parker while telling her husband to leave. It was also within the Jury's purview to find that the defendant Parker's provocation was akin to defendant Nestor's like provocation in a similar retaliatory act years earlier, also part of the second trial.

The evidence also supports the Jury's finding that, having been foiled in his attempt to fabricate an arrest and beating of Brian Kennedy, defendant Parker's attention turned to Michelle Kennedy, and that his assault on her also was deliberate and pre-medicated, intended to provoke Michelle Kennedy into a response that would allow defendant Parker to beat and then arrest her, a plan that was foiled only because Ms. Kennedy kept her cool, retreated and summoned Dean Royston. There was more than ample evidence that defendant Parker's conduct was deliberate, done "maliciously and sadistically for the very purpose of causing harm", _Cummings v McIntyre_, 271 F3d 341, 345 (1st Cir., 2001), "conduct intended to injure in some way unjustifiable by any government interest" _Sacramento v. Lewis_, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) and not simply a careless, provoked or an isolated incident, as the defendants are still arguing.

On top of this, the defendants must now accept as fact the context in which defendant Parker's assault on Ms. Kennedy occurred.  Although the second Jury did not hear all the evidence of the thirteen year campaign against the Kennedys, it heard enough to get a flavor.  The second Jury heard about defendant MacKenzie's pursuit of Michelle Kennedy and of defendant Parker's fellow officers taunting Brian Kennedy, daring him to fight them, at Mr. Tipps restaurant.

The second Jury heard about the deliberate ticketing of the Kennedys.  The second Jury heard about defendant Parker's fellow Billerica Police officers following the Kennedy car on a regular basis, most days when the Kennedy boys were picked up from hockey practice.  The second Jury heard about defendant Parker's fellow Billerica Police officers deliberately arresting Michelle Kennedy not once but on multiple occasions (in the context of the testimony of the claims against defendant Nestor) for driving without a license even though the arresting officers knew she had a valid license.

The second Jury heard evidence about Billerica police officer defendant Nestor running the Kennedys off the road to threaten them, in retaliation for Michelle Kennedy making complaints about the treatment they were receiving at the hands of the Billerica police.  The second Jury also heard evidence of how defendant Nestor then twisted the incident around, falsely charging Michelle Kennedy with threatening him.

The second Jury heard evidence that allowed it to conclude, as it did, that defendant Nestor played a part in the arrest of Michelle Kennedy for the false charges he had brought.  Particularly, the second Jury heard evidence that the application for complaint had been altered, in order to have a warrant issue to allow the defendant Billerica police to arrest Michelle Kennedy, even though they knew she had not committed any crime.

-11-

The second Jury heard evidence, from the clerk of the Lowell District Court, Charles Patsourakos, that allowed the Jury to conclude not only that the defendant police officers had altered the document but that both defendant Nestor and his superior, Thomas Connors, had lied about altering Court documents, documents they altered in order to have Michelle Kennedy arrested on false charges.

The second Jury did not hear all the evidence about the campaign against the Kennedys. The second Jury did not hear about the firebombing of Brian Kennedy's pickup truck and the cover up of the investigation into the possible, indeed likely, involvement of the Billerica police in that crime. The second Jury did not hear of the assault on Brian at the Concord Shores restaurant or the false accusations that the Kennedys had stolen defendant Connors' hat and badge. The second Jury did not hear of defendant Tsoukalas' false arrest and assault on little Mitchell Kennedy or of defendant Rosa falsely accusing Brian, Jr., of crimes because he wanted the Kennedys out of town "so bad he could taste it", or of countless other acts against the Kennedys. Nonetheless, the second Jury did hear enough to understand what was happening and it shocked their consciences.

The defendants offered into evidence that defendant Parker's assault took place shortly after the Kennedys, through counsel, had made a written presentment of their claims. Although the Court did not allow the presentment letter into evidence, the Jury knew that defendant Parker's assault came in the context of this letter and could conclude that the Parker assault, like the Nestor threats and arrest, was "payback" or retaliation for daring to bring a claim. This is conduct which might be expected from gangsters or racketeers. When it comes, repeatedly, as a practice and

pattern of conduct from law enforcement officers it is, indeed, conscience shocking, as the second Jury found.[4]

The defendants raised the timing of the presentment issue to the Jury, arguing that Michelle Kennedy was, somehow, "emboldened" into taunting defendant Parker by the fact that she had made a claim.  This was a curious argument, in light of the fact that she had been complaining for years about her family's mistreatment by the Billerica police, to no avail.  To the contrary, the defendants may not now contest the Jury's conclusion, as it was based on their own evidence, that defendant Parker's assault upon the plaintiff was retaliation for her daring to proceed with complaints against her fellow officers, just as his co-defendant Nestor had done. The Jury did not have the opportunity to condemn defendant Nestor's conduct as conscience shocking, but rightly offered its verdict where it was given the opportunity:   The outrageous abuse of power of the Billerica police defendants, particularly abuse of power as retribution for reporting misconduct by Billerica police officers, indeed did shock their collective consciences.

> **b. Contrary to the Defendants' contention, the First Circuit has expressly left open whether verbal harassment and intimidation less than what the Billerica Police  perpetrated upon the Kennedys would "under appropriate circumstances" "shock the conscience" and thereby constitute a constitutional violation, anticipating the possibility of facts as egregious as the defendants' here.**

The defendants argue, incorrectly, that the First Circuit has "repeatedly held that conduct more egregious than Officer Parker's does not shock the conscience". [Defendants' memorandum, p. 16]  The cases they cite do not support this argument.

---

[4]Neither jury was asked to make any shocks the conscience finding as to any other defendant, so the only opportunity for either jury to do so was with respect to defendant Parker.

*Cummings v. McIntyre*, 271 F3d 341 (1ˢᵗ Cir., 2000) is hardly comparable to this case. It involved neither a long pattern of conduct or multiple police officers.  Rather it involved a single isolated incident, where a police officer, directing traffic during a road race, was distracted by the plaintiff asking him directions.  The police officer not only responded rudely but shoved the plaintiff.  The Court found that, unlike defendant Parker, who a jury was entitled to find acted with premeditation,  "maliciously and sadistically for the very purpose of causing harm", McIntyre's "action was reactive rather than reflective, seemingly inspired by a 'careless or unwise excess of zeal' in communicating his displeasure with Cummings' interruption, rather than by a purpose to harm." Supra, 345-346

Indeed *Cummings v. McIntyre* is the proverbial case that proves that "not every push or shove . . . violates the constitution".  *Pittsley v. Warish et al*, 927 F2d 3 (1ˢᵗ Cir., 1991), quoting *Johnson v. Glick*, 481 F2d 1028 (2d Cir.)

Nor does *Cummings* support the standard claimed by the defendants [at p. 16 of their memorandum] that to shock the conscience, conduct must be "brutal, inhumane and intolerable" or that it must be done "maliciously and sadistically for the very purpose of causing harm". Although these quotes are from cases that described conscience shocking conduct in these terms (and although one fairly could apply this language specifically to defendant Parker's conduct as well as to the collective conduct of the Billerica police defendants), the First Circuit, in *Cummings*, used these terms as among possible criteria in a broader and more flexible test, writing that the "shock the conscience" standard

> is obviously not a standard with precise boundaries, but in its lengthy discussion of substantive due process in *[Sacramento v.] Lewis* the Supreme Court noted certain uniform principles that do operate: negligent conduct is "categorically beneath the

threshold of constitutional due process," while "behavior at the other end of the culpability spectrum," i.e., "conduct intended to injure in some way unjustifiable by any government interest," is most likely to support a substantive due process claim. 523 U.S. at 849, 118 S.Ct. 1708.FN3 When the culpability resulting in injury falls somewhere between these extremes, it is "a matter for closer calls," id., and whether conduct is actionable as a due process violation will depend upon the context in which it occurs.

Similarly, _Pittsley v. Warish et al_, 927 F2d 3 (1st Cir., 1991) involved rude or threatening comments in four separate incidents, one of which involved a lawful arrest of the plaintiffs' mother's live-in boy friend and two of the three others name calling or threats to plaintiff Pittsley's minor children. Indeed, the First Circuit, in _Pittsley_, anticipated that a more egregious pattern of threats and intimidation could well support a substantive due process claim, adding, after writing that "the single threat made by the officers is not sufficient to 'shock the conscience', in Footnote 3, "This does not mean that under no circumstances will verbal threats or harassment rise to the level of a constitutional violation."

_Souza v. Depina_, 53 F3d 423 (1st Cir., 1995), upon which the defendants also rely, did not involve any pattern of police harassment or abuse. It was a claim against a district attorney for making negative public statements about the plaintiff that was dismissed based on qualified immunity. In rejecting plaintiff Souza's argument that the defendant district attorney's conduct in making statements to the press about the plaintiff "shocked the conscience", the First Circuit, supra at 427, citing _Pittsley_, again left open the possibility that a government official's statements, by themselves, or that "other forms of psychological harm, may constitute a violation of a citizen's substantive due process rights".

The First Circuit went even further in _Cruz-Frazo v. Rivera-Montanez_, 212 F3d 617 (1stCir., 2000), the case the defendants most heavily rely upon, referring to _Pittsley_ in writing, at 623-624, "As in previous decisions, we expressly leave open the question of whether verbal

harassment and intimidation of this general type might, under appropriate circumstances, be found to violate due process. We simply hold that appellants have failed to state such a claim in this case."

The pattern of harassment and intimidation by the defendant Billerica police was far more extensive than any case yet reported in the First Circuit.  Moreover, the harassment was accompanied by other overt acts, including false arrests, malicious prosecution, altering Court documents, police reports and witness statements and physical assaults.  Defendant Parker's tirade and assault on Michelle Kennedy was not an isolated act, as the Jury correctly perceived.

The standard established by the Supreme Court in _Sacramento v. Lewis_, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) for a substantive due process is a high one: the official conduct "most likely to rise to the conscience-shocking level" is the "conduct intended to injure in some way unjustifiable by any government interest".  As the defendants point out, citing _McIntyre_, supra, conscience shocking conduct is conduct done  "maliciously and sadistically for the very purpose of causing harm".

 The Jury found that this was the case with Defendant Parker's conduct.  Viewed in the light most favorable to the plaintiffs, there was more than enough evidence to support this finding.

## 2.  There is ample evidence to find that defendant Parker assaulted Michelle Kennedy.

The defendants, in the face of the Jury's express answer of "Yes" to special verdict question #4, that defendant Scott Parker did assault Michelle Kennedy, now argue, again, at p. 21 (and 16) of their memorandum that "[a] reasonable Jury could not have found that Officer Parker assaulted the plaintiff, Michelle Kennedy."  Ignoring the Jury's express finding, the defendants'

argue that since the Jury found that the force Parker used was not excessive, there was therefore no assault.

There was evidence that defendant Parker yelled and threatened Michelle Kennedy, that he came after her and that she retreated into her car.  There was also evidence that defendant Parker continued to swear and yell and kicked her car after she retreated into it.  The obvious inference is that Michelle Kennedy retreated into her car because she feared an imminent battery. This is an assault, plain and simple.

### 3.  <u>The Court has already denied the defendants claim that there was insufficient evidence to support the findings of Intentional Infliction of Emotional Distress</u>.

The defendants have already argued that the conduct of defendants Rosa and Tsoukalas did not rise to the level of intentional infliction of emotional distress in their first motion for JNOV and their initial motions for a directed verdict.  The Court has rejected that argument two times already.  The defendants already have made the same argument as to defendant Parker in their motion for directed evidence and the Court has rejected it, as well.  The plaintiffs should not have to reargue these same issues again.

As plaintiffs already have pointed out, herein and previously, the standard is not what the defendants propose as a reading of the facts.  The standard is whether a reasonable jury could come to no other possible conclusion than the defendants' version.  It is clear from the jury's finding that defendant Parker's conduct so shocked their conscience that the Jury not only found him liable but found his conduct  "utterly intolerable in a civilized community" or "so severe and of a nature that no reasonable person could be expected to endure it".  <u>Doyle v Hasbro</u>, 103 F.3d 186, 195, citing <u>Agis v Howard Johnson Co.</u>, 372 Mass. 140, 355 N.E.2d 315 (1976)  This is why

the Jury awarded punitive damages: it was their way of showing how egregiously their collective conscience had been shocked.

The Jury was justified in doing so.  Contrary to the defendants' assertion, defendant Parker's assault on Michelle Kennedy was not an isolated incident of a police officer losing control and swearing.  The jury was well justified in finding that, like with his fellow officer, defendant Nestor, defendant Parker's conduct was a deliberate retaliation against the Kennedys, in response to their making complaint about past harassment and abuse.

Although this second jury did not know the full extent of the prior conduct about which the Kennedys were complaining, the Jury had enough of a flavor to understand the extent of the defendants' conduct, of which defendant Parker was a player.  When individuals who threaten, harass, intimidate, beat, imprison and arrest their victims then retaliate when the victims complain to authorities, civilized society terms such individuals as gangsters and the behavior as criminal. When the individuals are law enforcement officials, committing these acts under color of law by abusing their badges and guns, civilized society indeed does consider such conduct as utterly intolerable, and beyond the pale of what is acceptable.

Defendant Parker's assault on Michelle Kennedy was not "reactive rather than reflective", as the First Circuit described officer McIntyre in _Cummings v. McIntyre_, supra, but was a planned act of retaliation, carried out willfully and  "maliciously and sadistically for the very purpose of causing harm", the standard the Supreme Court sets for conscience shocking behavior.

Indeed, the defendants are correct in saying that the standard for inflicting emotional distress is extremely high.  However, their conduct, generally, and defendant Parker's retaliatory assault on Michelle Kennedy, in particular, is conduct that a reasonable jury easily could find

"utterly intolerable in a civilized community" or "so severe and of a nature that no reasonable person could be expected to endure it".  [_Doyle v Hasbro_, 103 F3d 186, 195, citing _Agis v Howard Johnson Co._, 372 Mass 140, 355 NE2d 315 (1976)]   Such a finding is hardly unreasonable in light of Lt. Greenhalgh reassuring defendant Parker not to worry, that the evidence of his tirade and assault had been erased by his brother officer, Dean Royston.

Nor is such a finding unreasonable in light of the revelation in the middle of the second trial, that the defendants had altered Court documents in order to arrange for Michelle Kennedy's arrest in a prior act of retaliation.  The second jury also heard of other arrests of Michelle Kennedy for driving without a license, when the arresting officers knew her license was valid when she was driving.  The second jury may have heard only limited evidence of the extensive campaign against the Kennedys, but it heard enough to conclude that no reasonable person should have to endure what Michelle Kennedy had to endure.

The defendants sought to view the myriad offenses against the Kennedys as individual and separate acts.  The Court has rejected this argument over and over again, as the overwhelming evidence does not support such an argument.  One can view and the Jury did view defendant Parker's stop of the Kennedys (who were committing no crime but merely retrieving skate board jumps which had been discarded by the Boy's Club and which they were authorized to take) as a deliberate confrontation and willful act of retaliation.  It is hardly unreasonable for a reasonable jury to find such conduct by a police officer as intolerable and beyond the bounds of civilized society.

### 4.  **Defendants failed to raise any issues regarding presentment in either of their motions for directed verdicts, and therefore have waived all issues regarding 258 presentment or damages.**

"Under the Federal Rules, a judgment n.o.v. is, in effect, a renewal of a motion for a directed verdict made at the conclusion of the evidence. **A party may not base its motion for a judgment n.o.v. on a ground that was not argued in its motion for a directed verdict**." *Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1035-1036 (1st Cir. 1984) [emphasis added]

"A motion for judgment as a matter of law made at the close of all the evidence preserves for review **only those grounds specified at the time, and no others** . . . . [a] motion for judgment as a matter of law under F.R.C.P. 50(b) is bounded by the movant's earlier Rule 50(a) motion. The movant cannot use such a motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict . . . . [A] motion for judgment after the verdict under Rule 50(b) may only be premised upon particular grounds raised in the earlier motion made at the close of all the evidence, and ... any argument omitted from the motion made at the close of the evidence is waived as a ground for judgment under Rule 50(b)." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1196 (1st Cir. 1995)   [Emphasis added]

As presentment was not mentioned at all in any of their previous motions for directed verdicts or motions for judgment, the defendants may not now raise the issue of presentment, as they have failed to preserve it.

Similarly, the defendants' contention that the plaintiffs only complained to defendant Barreto [at p. 23 of their memorandum "The bulk of the plaintiffs' alleged complaints . . . were allegedly made  to retired Chief John Barreto"] was not an issue raised in either of the earlier motions for directed verdicts and thus has been waived.  In any event, the contention is not factually correct, contradicted by the defendants' own offer of evidence of Ms. Kennedy's

contemporaneous handwritten complaints submitted to the Town Manager.  These handwritten

complaints were offered to impeach Ms. Kennedy's testimony not only that she called and

complained to defendant Rosa frequently but that he rudely brushed her off and told her not to call

the station any more.  As this evidence supports the Jury's finding, the defendants are bound by it

and may not now reargue this evidence.

### 5.  The defendants have waived any defense based upon presentment by failing to identify any defense based upon presentment in their answer or raise presentment as an issue prior to or even during trial.

Having failed to raise any issue regarding presentment in their answer or by motion to

dismiss before trial, the defendants have waived the right to assert any defense based upon any

claimed defect in presentment.  The very case  upon which the defendants rely for their novel

theory that would convert the presentment requirement into a second statute of limitations [see

below], _Vasys v. Metropolitan Dist. Com'n_, 438 N.E.2d 836 (Mass. 1982), holds that a defense

based on inadequacy of the presentment must be pled in the answer and is waived if not asserted

in a timely fashion.  _Vasys_, supra, at 840, citing _Travers v. Travelers Ins. Co._, 385 Mass. 811, 434

N.E.2d 208 (1982). _Ginsburg v. Insurance Co. of N. America_, 427 F.2d 1318, 1322 (6th Cir.

1970) and _Equal Employment Opportunity Comm'n v. Continental Oil Co._, 393 F.Supp. 167, 171

(D.Colo.1975), aff'd, 548 F.2d 884 (10th Cir. 1977).

### 6.  To the extent that the defendants have not waived all issues arising from presentment, their novel legal theory of presentment as a bar to recovery is not valid, as the defendants conduct was ongoing and the presentment requirement does not limit ongoing conduct.

The defendants make an incorrect leap of logic when they argue that because M.G.L., c.

258, the Massachusetts Tort Claims Act ["MTCA"] requires a presentment letter as a condition

precedent to bringing suit, it creates a new statute of limitations limited to the two years immediately preceding the date of the presentment. There is no such requirement where the conduct is ongoing or involves multiple acts.

Indeed the case law interpreting chapter 258, the MTCA, makes clear that the purpose of the presentment requirement is not to limit claims, but to ensure that the responsible public official "can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." _Lodge v. District Attorney for the Suffolk Dist._, 21 Mass.App.Ct. at 283, 486 N.E.2d 764. Presentment is mandatory to permit the responsible executive officers to investigate, negotiate, and settle claims. See _Weaver v. Commonwealth_, 387 Mass. at 47, 438 N.E.2d 831. "The presentment requirement envisions arbitration, compromise, or settlement of claims. See G.L. c. 258, § 5." _Tambolleo v. West Boylston_, 34 Mass.App.Ct. 526, 532, 613 N.E.2d 127 (1993), quoting from _Pickett v. Commonwealth_, 33 Mass.App.Ct. 645, 647, 604 N.E.2d 43 (1992).

The defendants thus never complied with this statutory goal. Their own testimony is that they never "investigated" the claim. Rather, the defendants response was to gather what dirt they could on the plaintiffs, in preparation for their defense [See Rosa deposition, pp. Exhibit A, hereto], while escalating their harassment of the plaintiffs. Scott Parker's assault on Michelle Kennedy, after his false accusation of "stealing" the skate board ramps occurred the month following receipt of the presentment letter.

It defies logic to argue, as the defendants do, that if harm to the claimant continues after presentment, it does not count. Needless to say, the caselaw does not support this illogic.[5]

---

[5] By the defendants' logic, a new presentment letter would be required for each new incident and each new element of damage that continued to occur from the negligent supervision, require a potentially endless loop of re-presentment. This was surely not the intent of the

To the contrary, "[w]here the tortious conduct is a continuing event, the two-year presentment requirement is tolled." _Doe v. Town of Blandford_, 525 N.E.2d 403, 409 (Mass. 1988), which cites _Sixty-Eight Devonshire, Inc. v. Shapiro_, 348 Mass. 177, 183-184, 202 N.E.2d 811 (1964) then states that "This is in accord with Federal cases decided under the Federal Tort Claims Act. _Gross v. United States_, 676 F.2d 295, 300 (8th Cir.1982). _Maslauskas v. United States_, 583 F.Supp. 349, 351 (D.Mass.1984)", in holding that the negligent supervision of a municipal employee is ongoing.

Thus, where, as here, the tortious negligent conduct is ongoing, the presentment requirement is tolled, as Judge Gants held in _Colonial Color Corp. v. Massachusetts Highway Dept._, 1999 WL 791956 (Mass.Super. July 12, 1999), citing _Doe v. Town of Blandford_.

With respect to conduct that preceded the defendants' unilaterally declared two year window, the continuing violation doctrine creates an equitable exception when the unlawful behavior, as here, is deemed ongoing. See, e.g., _Lawton v. State Mut. Life Assurance Co. of Am._, 101 F.3d 218, 221 (1st Cir. 1996); _Sabree v. United Bhd. of Carpenters and Joiners Local No.33_, 921 F.2d 396, 400-02 (1st Cir. 1990); and _Jensen v. Frank_, 912 F.2d 517, 522 (1st Cir. 1990). A continuing violation allows a plaintiff not only to allege otherwise time-barred acts, but more concretely, to receive damages based on and reaching back to those acts. See _DeNovellis v. Shalala_, 124 F.3d 298, 307-08 (1st Cir. 1997)

**7. The fact that the jury did not find all individual defendants liable for deliberate and willful civil rights violations does not mean that the defendant Town cannot be held liable for the damage caused by its negligent supervision.**

---

legislature in enacting M.G.L. c. 258, with its clearly stated intent to make public authorities liable aware of claims, so they could investigate their validity.

In arguing that there were no damages from the town's negligence because the jury did not find damages against some individual officers, the defendants are confusing two different standards. With respect to the individual defendants, the jury was never asked to find whether any plaintiff suffered damages from that defendants' negligence. With respect to five individual defendants in the first trial, the jury was asked to find whether each of them willfully and knowingly violated the civil rights of the plaintiffs.

A negative answer to this question does not, as the defendants argue, establish that the conduct of these individual defendants did not harm the plaintiffs. By suggesting, erroneously, that this is the case, the defendants avoid the inescapable connection between the negligence of the defendant Town, in failing to supervise and discipline the individual defendant officer, and substantial harm that resulted from the many acts of the individual defendants, acts which, because of the failure to supervise, may have been done not out of willful intent to violate civil rights but with the belief that these acts were sanctioned and condoned.

As this Court made note, in its August 21, 2007 order, defendant Tsoukalas testified "poignantly" (and perhaps much more honestly than his fellow defendant officers) that as a new member of the force, he was told that he should follow the Kennedys because they were "criminals and were likely to be up to no good", and because of these "warnings", he had more frequent interactions with the Kennedys.

While each of these "interactions" may not have been willful and deliberate civil rights violations by defendant Tsoukalas, the defendant Town is liable for the harm that resulted from these "interactions", because they resulted from the defendant Town's negligent supervision and discipline of its police officers. There was evidence of multiple stops and multiple instances of

police cruisers following the Kennedys without any cause and the multiple occasions that the Kennedy boys encountered Billerica police officers, all resulting from the defendant department's negligent supervision and discipline. The evidence was that the admitted behavior of defendant Tsoukalas was prevalent throughout the department.

### 8. **There was more than ample evidence of damages in the time period arbitrarily created by the defendants.**

In support of their argument that there was "no tortious conduct in the relevant [sic] time period" and that there was "no evidence to support additional damages for negligent supervision", the defendants ascribe to jury findings conclusions that do not derive therefrom. The defendants do so in order to create a view of the facts that supports their contentions, something they are not permitted to do in the face of the verdicts against them.

For example, at page 27 of their memorandum, the defendants claim that "The jury found that he [Mitchell] was properly charged in the Massone incident". This is not necessarily true. The jury was only asked to find whether defendant Rosa maliciously prosecuted Mitchell. Left unanswered is whether the other officers involved, none of whom faced jury verdict questions, altered evidence, misreported evidence or fed Mitchell's Kennedy's name to Ms. Minervini, to set up Mitchell Kennedy. The jury finding that defendant Rosa did not maliciously prosecute Mitchell, a deliberate tort, does not conflict with the same jury finding that Mitchell was prosecuted wrongfully as a result of a pattern of conduct designed to "run the Kennedys out of town" that was tolerated, even encouraged by the defendant Town's negligent supervision.

Mitchell was charged with serious crimes based on the identification of him by Vanessa Minervini. Ms. Minervini testified that she never met Mitchell Kennedy, did not know him and could not identify him. More important, she testified that she could not explain how his name appeared in her witness statement.

This was part of the plaintiff's evidence that the defendants deliberately framed and charged not only Mitchell but his parents, as well.  This included evidence that the defendants made false statements about glass on the baseball bats, exaggerated evidence of blood on the doorstep, creating a "trail of blood" that did not exist and otherwise fitting the evidence to their predetermined decision to charge the Kennedys with crimes arising out of the Massone incident. There also was evidence that the arrests of the parents led to significant harm to all three of the Kennedy boys, harm sufficient to warrant findings for each of them in excess of the $100,000 tort threshold under c. 258.

Contrary to the defendants' contention, the Jury did not resolve all issues arising from the Massone incident.  Nor did the jury resolve all issues from the Massone incident in favor of the defendants.  In fact, the law requires inferences to be drawn the other way.  Accepting such inferences, it is reasonable to conclude that the Jury found that Mitchell was framed and wrongfully prosecuted and this was the result of the defendant Town's failure to supervise.

The Jury did hear the evidence of the Massone frame up.  The Jury may have been outraged at this frame up, which arose from the "investigation" of the Massone incident, an investigation that resulted in Mitchell's name appearing on a witness statement of a witness who did not know him, did not know his name and could not identify him.

Even if the Jury was not outraged, it was entitled to conclude that, while it could not identify any individual officer as responsible for the false identification of Mitchell Kennedy, it could conclude that it was not just the lax supervision but the deliberate policy of a department intent on running the Kennedys out of town that permitted its officers to abuse the Kennedys and that this deliberate policy is what led to the false charging of Mitchell Kennedy.  While no individual officer could be held responsible, it is wholly within the purview of a reasonable Jury

to find that the station house culture provided an atmosphere that not only tolerated but also encouraged such abuses by the individual officers.

This is ample basis for a finding that the department's negligent supervision caused damages to Mitchell Kennedy in the amount of $235,000, as the jury did find. The defendants overlook the fact that there were no special verdict questions of negligence against any individual. Thus there is no inconsistency between the jury finding negligent supervision against the town but no negligence against any individual, as the jury was not asked to find any individual defendant negligent.

The defendants also fail to acknowledge that the Massone frame ups led to the arrests of both Michelle and Brian Kennedy, leaving their three young boys without their parents in the days following the arrests that arose from the Massone incidemt. The defendants also do not acknowledge, as they must, in the face of the Jury's findings, that the Jury found credible the testimony of each of the three boys as to the impact of the defendant police upon them, both directly and through the harassment of their parents.

This evidence included numerous incidents of Billerica police cruisers tailing the Kennedys cars, assorted random stops of the Kennedy boys, targeting of the Kennedy boys in the neighborhood. One example was the incident at Papa Ginos, which occurred after the presentment letter was sent, where defendants Tsoukalas and other Billerica police officers gave chase to the Kennedy boys through Papa Ginos and adjoining parking lots for no reason.

There was also evidence that defendant Tsoukalas drove into the oncoming lane, forcing Brian Kennedy to swerve off the road, with Brian, Jr., in the car. In another incident, defendant Tsoukalas grabbed Brian, Jr., called him "numb nuts" and demanded that he pay him "respect".

The Jury was justified in concluding that such incidents were not isolated but were numerous. While none of these incidents individually constituted deliberate and willful civil rights violations by the individual perpetrators, cumulatively, they constituted damage resulting from the defendant Town's negligent supervision.

Cumulatively, and coupled with testimony of the boys being left alone, of watching their parents harassed and arrested, of developing fear of sirens and police, there was more than ample evidence to support the Juries' damage awards to the three boys.

### 9.  The Defendants already have argued and the Court already has addressed and rejected the defendants' contention that there was insufficient evidence to support the Monell claim, when it reduced Mitchell Kennedy's damages from $235,000 to $115,000.

The defendants' argument that there was insufficient evidence to support the Monell finding that the Billerica Police Department failed to adequately supervise and discipline its officers was asserted in their first motion for judgment JNOV or for a new trial and this Court reduced the award of damages to Mitchell Kennedy from $235,000 to $115,000, writing at page 8 of its decision of August 21, 2007, that "there is insufficient evidence to support Mitchell's Monell claim against the town greater than the $15,000 for the unlawful arrest claim" [against defendant Tsoukalas].

However, the Court also wrote, correctly, at p. 8 of its August 21 Order and that "the town could be liable for more than $100,000 because there is no cap on civil rights damages." As explained in §8, above, there was ample evidence that the charging and prosecution of Mitchell Kennedy in the Massone case was a result of a failure to supervise based upon the deliberate indifference to the civil rights of the Kennedys. This was ample evidence to warrant the Jury's finding of $235,000 damages for Mitchell. Thus the award to Mitchell was not limited by the tort claims cap and should not have been reduced to $100,000.

Otherwise, with respect to the claim that there was no evidence to support the Monell claim of failure to supervise, the defendants basically repeat the same argument they made in their first two bites at the apple, their first motion for a directed verdict [docket #247] and their first motion for judgment JNOV [docket #259].   Although they elaborate their argument somewhat, the defendants still fail to acknowledge the extensive testimony of the plaintiff's expert, Reginald Allard, regarding the absence of any effective documentation of civilian or other complaints or procedure for handling them. The defendants also ignore Mr. Allard's testimony regarding the absolute failure to respond to such complaints with any sort of hearing or other disciplinary process at all.  The defendants also still fail to acknowledge the absence of any meaningful investigation into any of Michelle Kennedy's many complaints.

The defendants also still fail to acknowledge that defendant Connors' investigation of the firebombing was a coverup that avoided any investigation into the probability that Billerica police officers were involved or that the "investigations" of the beating of Brian Kennedy at the Concord Shores and the Mr. Tipps confrontation could also be viewed as coverups.  The defendants still fail to acknowledge the testimony regarding the "Retribution Gang" writing tickets against chosen targets or the locker room mentality that allowed the posting of the cartoons of Dean Royston. The defendants still fail to acknowledge Lt. Greenhalgh's purposeful coverup of defendant Parker's racial and obscene tirade or the fact that Dean Royston was disciplined but defendant Parker was not.

The defendants also ignore what this Court called the poignant testimony of defendant Tsoukalas, who admitted that he followed the Kennedys because he was told that they were "criminals" and it was department policy to do so.  This was just part of the basis for Mr. Allard's

conclusion that the absence of effective supervision and discipline allowed an "anything goes" mentality to fester that allowed the abuse of the Kennedys. As this Court wrote, at page 7 of its August 21, 2007 Order "a reasonable jury could have found that the message from the supervisors to police officers . . . was that the Kennedys were 'trailer trash', and harassment of them would be tolerated without consequence.

The Court need not revisit the question of Monell damages except to correct the error in reducing the full award to Mitchell Kennedy that the defendants unwittingly point out in their otherwise redundant motion.

### 10.  The Court gave the Defendants ample time to present their case and their failure to present any evidence was due to their own choice of what to ask defendant Rosa in his several hours of direct examination.

The defendants raise again the argument that the Court did not give them ample time to complete their case, specifically the testimony of defendant Rosa. This argument also has been rejected in the Court's rulings on defendants' previous motions, yet the defendants continue to complain that they did not have the full 24 hours promised to them. Arguably, this is not true, as the time kept by the clerk only included time witnesses were testifying and not time counsel spent arguing. Had this time been included, defendants would also be well over their allotted 24 hours, for the Court, in setting aside four weeks for trial, made ample accommodation for 48 hours of testimony, as well as other necessary trial time.

As the plaintiffs already have explained, in opposition to the first motion for JNOV, defendant Rosa testified for the last two hours of trial and had full opportunity to offer any testimony he wanted. This was after the Court asked defense Counsel how much time he needed for defendant Rosa's testimony. Defense counsel answered an hour or two and was afforded this time.

-30-

The Court considered and correctly determined that defendant Rosa, after hours on the witness stand, had no new relevant testimony to offer.  Thus the Court fairly considered and ruled upon this issue before the jury was discharged, indeed before the defendants rested, and gave the issue full consideration.  Moreover, as the plaintiffs had used their twenty four hours, were unable to cross examine defendant Rosa.  Thus his testimony, the last words of trial testimony, was unchallenged.  This should have provided an immense advantage for the defendants.

In any event, the Court has broad discretion to limit testimony.  "A trial judge has wide latitude to regulate the conduct of trial . . . [and] . . . may impose reasonable time limits on the presentation of evidence."  _Borges v. Our Lady of the Sea Corp._, 935 F.2d 436, 442 (1st Cir. 1991)  The verdict may withstand appeal even if the trial court arbitrarily reduces the time allotment for each side mid-trial, if the court on appeal is "unable to conclude that the trial judge's ruling had any impact on the outcome of the case".  _Matton v. White Mountain Cable Const. Corp._, 190 F.R.D. 21, 24 (D.Mass. 1999), citing to _Duquesne Light Co. v. Westinghouse Electric Corp._, 66 F.3d 604 (3d Cir. 1995)

There was certainly no abuse of the Court's broad discretion here, as the defendants had ample opportunity to offer any evidence they chose.  Before concluding defendant Rosa's testimony, defense counsel had the opportunity to make a proffer of the expected further testimony of defendant Rosa.  Defense counsel did not do so, leaving the Court with no other possible conclusion except that defendant Rosa had nothing further to offer.

It is disingenuous for the defense counsel, having now had months to think of what they could have asked defendant Rosa, to now present the questions they have thought of and claim prejudice.  It is to avoid this very kind of abuse that the First Circuit has made clear that a party

may not assert any argument not argued in its motion for a directed verdict.  *Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.*, 583 F.2d 565, 568 (1st Cir.1978)

The defendants failure to identify at trial any evidence that they were prevented from offering because of the Court's time limits indicates that the Court's time limitations did not harm or prejudice the defendants in any way.  The defendants' new claim that defendant Rosa would have explained the steps he had taken to "clean up the department" is contradicted by the defendants' own behavior at trial.

On the last day of trial, after defendant Rosa had been on the stand for some time already, the Court inquired "How much longer?"   Defense counsel responded "an hour or two".  [Memorandum and Order, August 21, 2007, p.12]   The Court allowed the defendants another hour.  After defense counsel spent the hour, much of it trying to ask questions about the alleged eviction from the trailer park, an area of examination the Court already had excluded, the Court, following a sidebar, allowed an additional half hour, then additional re-direct and follow-up.  [Memorandum and Order, August 21, 2007, pp.12-13]

The defendants had ample time to offer testimony by defendant Rosa to inquire about any efforts they now claim he made to "clean up" the department, after what they apparently now admit were the deficiencies under the prior chiefs, defendants Barretto and Matthews.  It was the defendants own choice not to do so, perhaps because such self-serving testimony was inconsistent with defendant Rosa's earlier testimony on cross examination and in his deposition.  Thus the defendants are hardly in a position to complain now.

### 11.  **The Court's Order of August 21, 2007 accurately reflected the evidence and the Juries' findings regarding defendant Rosa**.

In this new motion for JNOV,  in addition to re-arguing their complaint about time management, the defendants further complain that the Court's "remarks about Chief Rosa were

not supported by the evidence".   The defendants are once again trying to reargue the evidence after the jury has found against them, something that is wholly improper.

There was evidence that defendant Rosa told Mrs. Kaiser that he wanted the Kennedys out of town "so bad I can taste it".  The defendants offered evidence that Ms. Kaiser could have been confused and that it might have been another officer who made this comment.  The jury chose not to believe that evidence.  The defendants also argue, now for the first time, that maybe it was the trailer park neighbors and not defendant Rosa who said they wanted the Kennedys "out of town.

It is highly inappropriate for the defendants to re-argue issues the jury already has found against them.  It is even more inappropriate to demand, as the defendants do at page 34 of their memorandum, that the Court "retract" any part of its Memorandum and Order.

## CONCLUSION

For the reasons stated above, the defendants' Motion for Judgment NOV should be denied and the plaintiffs awarded additional attorneys fees for the time plaintiff's attorneys fees

Respectfully submitted,
Brian Kennedy, et al
by their counsel

Date: <u>January 4, 2008</u>

/s/Andrew M. Fischer
Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904
afischer@jasonandfischer.com

kennedy/opp2dmodirectedverdict

-33-