UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-CV-12357-PBS

| | |
|---|---|
| BRIAN KENNEDY AND MICHELLE KENNEDY, Individually and as mother and next friend of BRIAN KENNEDY, Individually and as mother and next friend of BRIAN KENNEDY, JR., Plaintiffs | ) ) ) ) ) ) ) |
| VS. | ) ) |
| TOWN OF BILLERICA, DANIEL C. ROSA, JR. Individually and as Chief of the Billerica Police Department, JOHN BARRETTO, Individually and as former Chief of the Billerica Police Department, PAUL W. MATTHEWS, Individually and as former Chief of the Billerica Police Department, ROBERT LEE, Individually and as former Deputy Chief of the Billerica Police Department, THOMAS CONNORS, FRANK A. MACKENZIE, RICHARD RHONSTOCK, ROBERT BAILEY, JONN ZARRO, MARK TSOUKALAS, TARA CONNORS, MARTIN E. CONWAY, ANDREW DEVITO, RICHARD HOWE, STEVEN ELMORE, WILLIAM MCNULTY, DONALD MACEACHERN, MICHAEL A. CASEY, RICHARD NESTOR, ROBERT BROWN, WILLIAM G. WEST, GREGORY KATZ, GERALD B. ROCHE, BRIAN MICCICHE, WILLIAM MCNULTY, SCOTT PARKER, ALAN MUNN, TIMOTHY F. MCKENNA AND JOHN DOE, Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES DUE TO THE ABJECT FAILURE OF THEIR LAWSUIT**

I.    **INTRODUCTION**

The Plaintiffs, Michelle and Brian Kennedy and their three children brought this action and claimed that they would prove a 13-year "conspiratorial campaign" by the Billerica Police Department to "terrorize" them through acts of violence, which resulted in violations their civil rights. In their attempt to prove this overriding conspiracy, the plaintiffs brought a lawsuit against 29 police officers and the Town of Billerica alleging at least 64 discrete incidents of alleged

1

abuse. The alleged conspiracy supposedly culminated in November of 2001 when Brian, Michelle, and Mitchell Kennedy were falsely charged with felonies; Michelle was beaten and abused in a cell; Brian was beaten and kicked by five police officers, and, shortly thereafter a police officer deliberately broke Michelle Kennedy's finger while giving her a traffic ticket.

    The plaintiffs conducted extensive discovery at great cost to the defendants. Prior to the first trial, the defendants brought a Motion for Summary Judgment based on the statute of limitations. The Court recognized that the majority of the claims made by the plaintiffs were time barred and issued a Summary Judgment as to most of the claims made by the adult plaintiffs. The central issue left for trial was the propriety of the arrests of November 9, 2001 and the alleged brutality supposedly inflicted on Brian and Michelle Kennedy that day. After hearing the actual evidence, the Court recognized that the arrests of Michelle and Brian Kennedy in the November 2001 incident were supported by ample probable cause and entered a directed verdict for the defendants. The jury found that Michelle Kennedy was not abused in a cell and Brian was not beaten and kicked, as they claimed. The jury found that Mitchell Kennedy was properly charged in that same incident. The jury also found that officer Tsoukalas did not break Michelle Kennedy's finger and did not touch her breast as she alleged.

    As a result of the first trial, the only Civil Rights claim against any individual defendant that succeeded was a jury finding for Mitchell Kennedy for an arrest by officer Tsoukalas that resulted in $15,000.00 in damages.

    Prior to the second trial, the plaintiffs apparently recognized that the claims that they had brought against sixteen of the twenty-nine individual

officers had no merit and dismissed them from the action. The plaintiffs wanted to proceed against the six officers let in the case. The defendants moved for Summary Judgment and the court entered Judgment in favor of four of the six. As a result of the second trial, an additional finding of outrageous conduct by officer Parker in verbally insulting Michelle Kennedy resulted in the only other finding of a Civil Rights violation which resulted in an award of $2,000.00 in compensatory damages, and an award of $30,000.00 in punitive damages. The defendants believe that this Court will vacate that award as the conduct of officer Parker did not rise to the level of a constitutional deprivation as a matter of law.

Thus, after two trials and nearly five weeks of testimony, the central allegation made by the plaintiffs was found to be without merit, there was no conspiracy. Brian and Michelle Kennedy's claims of illegal arrests and violence visited upon them by multitudes of police officers failed. The plaintiffs succeeded on two de minimis individual civil rights claims; one arrest of Mitchell Kennedy and another incident of verbal abuse of Michelle Kennedy. Despite this, the plaintiffs have asked this Court to award fees for all of the time that their counsel put into this case related to these unsuccessful allegations. The defendants suggest that, at best, the plaintiffs can recover fees only for the work done to prove those two successful civil rights claims. However, due to the overall failure of the lawsuit, and the fact that the plaintiffs' counsel insisted on bringing and pressing non-viable claims, these fees should be adjusted significantly downward.

II.   **ARGUMENT**

    A.   **Standard for recovery of attorney's fees.**

3

Under the so-called "American Rule," litigants generally pay their own way. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Under the Fees Act, 42 U.S.C. § 1988, however, the court may allow a reasonable attorney's fee for successful civil rights claims brought under 42 U.S.C. § 1983. Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001); 42 U.S.C. § 1988(b).

The First Circuit instructs that, under the Fees Act, the trial judge must determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Gay Officers Action League at 295 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community, taking into account the qualifications, experience, and specialized competence of the attorneys involved. Gay Officers Action League at 295-296; Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992); United States v. Metro. Dist. Comm'n, 847 F.2d 12, 15-17 (1st Cir. 1988); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984). Moreover, the court has an affirmative duty to winnow out excessive and unnecessary hours. Gay Officers Action League at 296.

> B. **"Reasonable hours" standard entitles plaintiffs to attorney's fees for only two successful civil rights claims.**
>
> > 1. **Plaintiffs entitled to fees only for claims related to successful Civil Rights claims.**

Plaintiffs can recover attorney's fees only for their successful civil rights claims--not for unrelated claims involving different facts and legal theories. The United States Supreme Court instructs that attorney's fees may not be awarded

for unsuccessful claims based on different facts and legal theories from the successful civil rights claims. Hensley v. Eckerhart, 461 U.S. 424, 434-435 (1983). In such a case, any unrelated claims are to be treated as if they "had been raised in separate lawsuits." See Id. at 435. Attorney's fees should not be awarded for time spent on unsuccessful claims where those claims rest on different facts and legal theories. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 339 (1st Cir. 1997). A claim is severable where it rests on different facts and legal theories. Figuroa-Torres v. Toledo-Davila, 232 F.3d 270, 278-279 (1st Cir. 2000).

      Here, the plaintiffs' central and overriding legal theory was their allegation of a conspiracy to repeatedly violate their civil rights through a pattern of false arrests and violence visited against them by twenty nine Billerica police officers over the course of thirteen years. The vast majority of the work conducted by the attorneys during discovery and Motion practice was devoted in this futile effort. The first jury rejected the allegations of a Civil Rights conspiracy completely. The first jury rejected the allegations of violence allegedly inflicted upon the plaintiffs. The Court rejected the claims made of a "frame up" as to the November 2001 arrests of Brian and Michelle for their violent acts. The only Civil Rights success achieved as to the individual police officers in the first trial was a finding of one non-violent arrest without probable cause of Mitchell Kennedy. Exhibit A, p. 1, ¶ 3, attached. The only other Civil Rights violation found against any individual officer was in the second trial where the jury found that Officer Richard Parker's conduct in using inappropriate language towards Michelle Kennedy "shocked the conscience" and awarded $2,000.00 in compensatory damages. Exhibit B, p. 1, ¶ 3, attached.

5

Because the first jury rejected all conspiracy claims, it is a simple task to separate out the hours spent on claims not based on the same common core of facts or legal theories as the successful Civil Rights claims. Plaintiffs succeeded on two individual civil rights claims: (1) against Officer Tsoukalas for the March 2004 arrest of Mitchell Kennedy, and (2) against Officer Parker for the incident with Michelle Kennedy. <u>Exhibit A</u>, p. 1, ¶ 3 and <u>Exhibit B</u>, p. 1, ¶ 3. Plaintiffs, therefore, may only recover attorney's fees for time spent on those Civil Rights claims. Since these were discreet incidents, there are no other claims with the same "core of facts". It is, therefore, impermissible for plaintiffs to recover fees for the other incidents as to which they prevailed, as they were not inextricably intertwined with those successful Civil Rights claims. Thus, plaintiffs cannot recover fees associated with Brian Kennedy, Jr.'s two unrelated successful tort claims.

Brian Jr. prevailed on a state tort claim in the Kaiser rock-throwing incident and for his "emotional distress" because Michelle was arrested in 1991. Neither of these claims have any common facts nor legal theories related to the two successful Civil Rights claims.

In sum, under the principles outlined by the U.S. Supreme Court and First Circuit, plaintiffs cannot recover fees for any claims – including successful tort claims – not factually related to the two incidents for which plaintiffs succeeded in civil rights claims.

> **2.   Plaintiffs are entitled to fees for only the actual time spent on the two successful Civil Rights claims.**

Plaintiffs can recover fees for only the extremely limited time their attorneys spent on discovering and proving the claims arising out of Officer

6

Tsoukalas' arrest of Mitchell Kennedy and Officer Parker's incident with Michelle Kennedy.  Plaintiffs' attorneys deposed Officer Tsoukalas twice but took a total of only 9 pages of testimony regarding the 2004 arrest of Mitchell Kennedy.  <u>Exhibit C</u>, attached.   At trial, Mitchell Kennedy's direct testimony on this claim was contained in only 8 pages of testimony.  <u>Exhibit D</u>, attached.  In light of the scope of the first trial, this incident was peripheral at best. Therefore, the defendants suggest that the plaintiffs be credited with one hour of deposition time and one day of trial time for prevailing as to this incident.

As to the claim against Officer Parker for swearing at Michelle Kennedy, it was deemed so insignificant by these plaintiffs that plaintiffs' counsel failed to take Parker's deposition at all.  Given the fact that Parker had no other interactions with the Kennedy clan, it was obvious that this one incident could not bolster any conspiracy claim.  At the second trial, plaintiffs devoted only 9 pages of direct testimony to this incident.  <u>Exhibit E</u>, attached.  A reasonable award of attorney's fees related to this claim would be one hour of discovery time and one day of trial.  Accordingly, this Court should only credit the plaintiffs' fees incurred during the brief time actually spent proving Mitchell Kennedy's claim against Tsoukalas for his 2004 arrest, and on proving Michelle Kennedy's claim against Officer Parker.

      **3.    Plaintiffs cannot recover fees for the redundant <u>Monell</u> and negligence claims.**

Plaintiffs cannot recover attorney's fees for the duplicative <u>Monell</u> and negligence claims. A plaintiff who succeeds on a <u>Monell</u> claim may not recover compensatory damages in excess of those awarded on the individual §1983 claims.  <u>Spanish Action Committee of Chicago v. City of Chicago</u>, 766 F.2d 315,

321 (7th Cir. 1985). Likewise, the negligent training and supervision claims under M.G.L. c. 258 do not add value to the case. "A basic principle of compensatory damages is that an injury can be compensated only once." Bender v. City of New York, 78 F.3d 787, 793 (2nd Cir. 1996); see also Freeman v. Package Mach. Co., 865 F.2d 1331, 1344 n. 7 (1st Cir. 1988). Once damages have been awarded for an injury, there may not be additional compensatory damages for that same injury between different defendants. Bender at 793. Similarly, if two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained. Id.; see also Clark v. Taylor, 710 F.2d 4, 8 (1st Cir. 1983) (amount of compensatory damages properly awardable does not depend on number of theories under which plaintiffs may recover but on extent of injury).

  Here, prior to trial, the defendant Town of Billerica stipulated that it would pay any judgment obtained against any individual officer, thus making the Monell and negligence claims redundant and pointless. Accordingly, competent counsel would not have insisted that those claims go forward. Plaintiffs' counsel, however, pressed these useless claims and used most of the resulting testimony to support their futile conspiracy claim. Such an error of judgment wasted weeks of the Court's time and caused great expenditure on the part of the defendants. In the end, the verdict obtained by the plaintiffs on the Civil Rights claim against the Town of Billerica merely resulted in the Town being ordered to pay the $15,000.00 awarded against Officer Tsoukalas. Since the Town had offered to pay any judgment obtained by any plaintiff against any individual police officer, the finding was wholly unnecessary. Thus, the plaintiffs

should receive no award of attorney's fees or costs associated with the findings against the Town of Billerica.

### C. Reasonable hourly rate for plaintiffs' attorneys.

After determining the reasonable number of hours spent on the successful Civil Rights (and factually related) claims, the next step of the lodestar analysis requires an evaluation of the reasonable hourly rate charged by plaintiffs' attorneys. See Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d at 295 (citing Hensley v. Eckerhart, 461 U.S. at 433). This Court needs to consider the "prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." Id.; see also Parker v. Town of Swansea, 310 F.Supp.2d 376, 388 (D.Mass.2004) ("'the Court must find the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation'").

Plaintiffs bear the burden of providing affidavits that establish their attorneys' skills and experience, while also providing information regarding the prevailing market rate in Boston for similarly experienced lawyers. Blum v. Stenson, 465 U.S. 895-96 n. 11, (1984); accord Parker v. Town of Swansea at 388. This Court "should not accept attorney submissions at face value but rather should assign more realistic rates to time spent." Guckenberger v. Boston University, 8 F.Supp.2d 91, 103 (D.Mass.1998); accord Parker at 388; see also Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 8 (1st Cir. 1993) ("a district court ... is not bound by the hourly rate requested by the victor's counsel; rather, the court may establish a rate that it considers reasonable based on counsel's skill and experience and prevailing market rates").

In order to establish a reasonable hourly rate, Attorney Fischer submitted two attorneys' affidavits. Notably, Howard Friedman, respected civil rights attorney, is silent about Mr. Fischer's skill and knowledge as an attorney. Mr. Friedman's affidavit merely states that Mr. Fischer has been around a while ("quite a bit of experience"). Of most interest, Mr. Friedman notes that he turned the case down because most of the claims were time barred. A skilled attorney would have come to the same conclusion and would not have forced the defendants and this Court to deal with non-viable claims. However, attorneys Fisher and Gilgun proceeded. Likewise, the affidavit by Attorney Joel P. Suttenberg is also silent about Mr. Fischer's skill. While those affidavits are telling, in determining a reasonable hourly rate for Mr. Fischer, this Court should use its own observations of his skills and knowledge, and whether his handling of the case benefited his clients.

From a front row seat the Court witnessed Mr. Fischer's abilities in understanding the law, interacting with counsel, and examining witnesses. Plaintiffs' attorneys report that Mr. Fischer was brought into the case as a civil rights "expert". Mr. Fischer and Mr. Gilgun filed a 43 page, 19 count, 192 paragraph complaint against 30 Billerica Police Department defendants. In this pleading, plaintiffs' alleged a 13- year "conspiratorial campaign" by at least 29 members of the Billerica Police Department "to harass, intimidate and terrorize the plaintiffs through acts of violence and abuse" of police powers, which included at least 64 separate incidents of abuse. Andrew Fischer, an alleged civil rights expert, managed to get only 7 of those 29 individual defendants to trial. The rest of the defendants were voluntarily dismissed, or Summary Judged out of the case. Of the seven individuals actually tried, five were wholly exonerated.

Chief Daniel Rosa, against whom one plaintiff, Brian, Jr., prevailed in a state tort, was accused of being one of the "masterminds" of the "conspiracy". Specifically, he was accused of orchestrating the arrests of Brian, Michelle, and Mitchell Kennedy in November of 2001, and mistreating Michelle in a jail cell. The jury, however, exonerated Chief Rosa of all of those scurrilous accusations.

Frank Mackenzie, the originator of the "conspiracy" was wholly exonerated. Likewise, deputy chief Connors, the alleged leader of the later "conspiracy" was found not liable for anything. Despite the protestations of plaintiffs counsel, their Civil Rights case failed.

As to Mr. Gilgun, he admits that he had so little expertise in Civil Rights litigation that brought in Mr. Fisher to assist him. While it is true that his handling of the case in court was competent and he was unfailingly courteous, the fact is that he was also responsible for drafting and filing this wildly overblown action.

In determining what hourly rate is appropriate, this Court should factor in that these two attorneys built their case around the alleged conspiracy which culminated in the "framing" of Brian, Michelle, and Mitchell Kennedy because they were charged with felonies in the extremely violent incident which occurred in the early morning hours of November 9, 2001, the so called "Massone incident". A reasonably competent Civil Rights counsel, such as Mr. Friedman, would have recognized that there could be no recovery for the criminal charges brought against Brian and Michelle because they were indicted by a Grand Jury. One way that plaintiffs could in good faith bring this claim would be if they had evidence that police officers testified falsely at the Grand Jury, however, in this case there was no such evidence. Another way the case could have been brought

11

in good faith would be if plaintiffs produced evidence that the civilian witnesses had conspired with the police officers to make false statements. Attorneys Fischer and Gilgun, however, prosecuted this lawsuit without even taking the depositions of the civilian witnesses or police officers that they had spoken to on the night of the crime. Once the Court heard the evidence, a directed verdict was ordered as to the adult plaintiffs and the jury found against Mitchell Kennedy. No reasonably competent attorney would have proceeded with the claims arising out of the arrests of Brian and Michelle Kennedy on November 9, 2001, had he or she understood the law and had reviewed the Grand Jury testimony. Nevertheless, Attorneys Fisher and Gilgun built their case around these arrests. This should weigh heavily in the Court's determination of a reasonable hourly rate.

Another factor to be considered in determining a reasonable rate for Attorney Fisher is the Court's observations at trial. Mr. Fisher is a self-described Civil Rights trial "expert". Yet, at the first trial, Attorney Fisher's examination of witnesses was apparently so ineffective that Attorney Gilgun took over the examination of witnesses by himself, and conducted the closing argument. By the second trial, Mr. Fisher did not speak to the jury, the entire presentation was handled by Attorney Gilgun. At one point, when Mr. Fischer spoke at the second trial, Mr. Gilgun objected to Mr. Fischer's statement so as to limit any further damage to their client's case.  Finally, together Gilgun and Fischer's knowledge of basic federal trial procedure was so poor that this Court had to tell them "I'm not here to teach you" before explaining how the First Circuit works. <u>Exhibit G</u>, attached.

### D. Based on plaintiffs' failure a significant downward adjustment in fees is necessary.

Based on the extremely limited results obtained, an equally extreme downward adjustment in fees is warranted should the Court find that any claims were related to the successful individual claims against Officers Tsoukalas or Parker.  This Court has the ability and discretion to adjust the lodestar amount up or down depending on certain factors.  <u>Coutin v. Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331, 337 (1st Cir.1997) ("the trial court retains the authority to adjust the lodestar after initially computing it-but it must do so in accordance with accepted principles").  Included in the relevant factors for the Court to consider are the amount involved and the results obtained, and the experience, reputation, and ability of the attorney.  <u>Id</u>. at 337 n. 3.

"[T]he Supreme Court has identified results obtained as a preeminent consideration in the fee-adjustment process."  <u>Coutin</u> 124 F.3d at 338.  The "results obtained" encompasses three meanings, to wit, "'a plaintiff's success claim by claim,' 'the relief actually achieved,' and 'the societal importance of the right which has been vindicated.'"  <u>Alfonso v. Aufiero</u>, 66 F.Supp.2d 183, 198 (D.Mass.1999) (quoting <u>Coutin</u> 124 F.3d at 338).

By any measure, plaintiffs' results demonstrated an almost complete failure of their Civil Rights allegations.  Plaintiffs set out to prove a 13-year conspiracy against 29 officers and the Billerica Police Department.  They failed.  Plaintiffs were only partially successful on four out of 64 alleged incidents of abuse.  In the Civil Rights context, plaintiffs were only successful in two minor incidents.  All claims against the alleged leaders of the conspiracy, Lieutenant MacKenzie and Deputy Chief Connors failed.  The claim that plaintiffs were

13

framed for the Massone incident failed. The claim that felony charges were wrongly brought against Brian, Sr. and Michelle failed. The allegation Officer Tsoukalas broke Michelle's finger failed. Brian, Sr.'s claim that he was beaten by police officers failed. Michelle's claim that she was abused in a cell failed. Michelle's claim that her breast was touched failed. In the end, the jury only found two civil right violations for minor incidents not related to their central claim. See Parker v. Town of Swansea, 310 F.Supp.2d 376, 399 (D.Mass.2004) ("[t]he fact that Parker did not prevail against the majority of the defendants and on claims he clearly deemed an important part of his case, indicates that a reduction is appropriate").

Finally, in no way can it be said that this case vindicated important societal rights. Instead, the case demonstrated that a group of violent antisocial individuals, Brian Kennedy, Michelle Kennedy, and William Ashton, engaged in a long series of violent activities involving their neighbors and family members, as well as members of the Billerica Police Department. The plaintiffs ignored traffic laws, spewed hatred and venom toward people that they did not like, and were likely small time drug dealers. The case further demonstrated that they are well known to most, if not all, Billerica Police Officers as people who create havoc in the community. The plaintiffs taunted the police officers, and, some officers taunted them back. The fact that many citizens of Billerica, including some police officers, hoped that this group would move out of Town is not surprising. The fact that officer Tsoukalas, as well as Tewksbury police officers, routinely followed the plaintiffs because, in the words of Dennis Peterson, Lieutenant, Tewksbury Police Department, it was "a safe bet that either they had committed a crime or about to commit a crime." See Exhibit G, attached. A fact

14

the defendants readily conceded before trial. Moreover, it is important to note that any "following" is not a Civil Rights violation or tort, and resulted in no verdict against any officer. Thus, no societal rights were vindicated by these trials or the verdicts.

### E. Plaintiffs' attorneys did not separate core v. non-core work.

The plaintiffs have failed to distinguish between core and non-core activities. Core work is considered to be tasks that require the special skill of lawyers and involves "independent legal thought." Alfonso v. Aufiero, 66 F.Supp.2d 183, 196 (D.Mass.1999). Non-core legal work "consists of less demanding tasks." Brewster v. Dukakis, 3 F.3d 488, 492 n. 4 (1st Cir.1993). Non-core work is billed at two-thirds of the determined reasonable rate for attorney's fees. Id. at 492. Core work includes legal research, writing of legal documents (drafting and editing legal documents for submission to the court and defendants), court appearances, negotiations with opposing counsel, implementation of court orders, reviewing legal submissions of opposing parties, preparing for hearings and trial and preparing for and taking depositions. Alfonso v. Aufiero, 66 F.Supp.2d at 196. Non-core work includes writing and reviewing correspondence, telephone calls (including calls to opposing counsel), consultations with third parties, meetings with plaintiffs other than those preparing for depositions or immediately before trial, responding to discovery requests, issuing subpoenas and noticing depositions, writing memoranda to the file, scheduling, travel and file review. Id.

Here, the plaintiffs' counsel ignored the First Circuit and submitted bills that do not differentiate between core and non-core work. Accordingly, the plaintiffs must either submit bills that separate core from non-core work, or all

counsel's work should be billed at two-thirds the reasonable rate determined by the Court.

### F. Plaintiffs can only recover costs for successful clams.

Plaintiffs may only recover costs expended in furtherance of their successful claims. Under Fed. R. Civ. P. 54 a party may recover "reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client [.]" Poy v. Boutselis, 352 F.3d 479, 490 (1st Cir. 2003). A party seeking costs must establish that the time and costs were reasonable and necessary to advance the litigation. Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992); Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 9 (1st Cir. 1993).

In this case, reasonable costs are only reasonable if they were necessary to prove (or are factually intertwined with) the following claims: Officer Tsoukalas' 2004 arrest of Mitchell, Chief Rosa intentional infliction of emotional distress on Brian Kennedy, Jr. in the Kaiser rock throwing incident, Officer Parker's incident with Michelle Kennedy and Officer Nestor applying for a summons. In total, for competent counsel, such claims should not require more than a half dozen depositions and four days at trial.

### G. Plaintiffs' attorneys' bills are not adequately detailed.

The bills submitted are not adequately detailed to allow for meaningful review of time spent on each task. The First Circuit instructs that fee petitions must be supported by "detailed contemporaneous time records" and a petitioning party's failure to provide the necessary detail runs the risk of a "substantial reduction in any award or, in egregious cases, disallowance." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).

Here, the details in plaintiffs' bills are woefully inadequate. Accordingly, following the instruction of the First Circuit, plaintiffs' attorney should not recover fees from this petition or they should be drastically reduced.  See Grendel's Den at 952.  As one egregious example, plaintiffs' attorneys repeatedly submit entries such as "preparation for trial" and "trial."  Moreover, the vast majority of entries contain numerous "professional services" within one billing entry.  These records fail to allow the Court and defendants to dispute the accuracy of the records as well as the reasonableness of the time spent.  Accordingly, counsel's fee petition should be denied or substantially reduced.

### III.    CONCLUSION

For the reasons stated above, defendants ask that this honorable Court award plaintiffs either no fees or costs, or, at most, five thousand dollars in fees and one thousand dollars in costs.

### REQUEST FOR HEARING

Defendants hereby respectfully request a Hearing in this matter as they believe a hearing will assist the Court in rendering a just and fair decision.

> Respectfully submitted,
> DEFENDANTS,
> By their attorneys,
>
>
> /s/ Leonard H. Kesten
> Leonard H. Kesten, BBO No. 542042
> BRODY, HARDOON, PERKINS & KESTEN, LLP
> One Exeter Plaza
> Boston, MA 02116
> 617- 880-7100

Dated:  January 22, 2008

## CERTIFICATE OF SERVICE

      I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants on January 22, 2008.

      January 22, 2008    /s/ Leonard H. Kesten
      ―――――――――――――――――――――
           Date           Leonard H. Kesten