UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************
BRIAN KENNEDY AND MICHELLE KENNEDY,   *
Individually and as father and next friend of   *
BRIAN KENNEDY, JR., Individually and as mother   *
next friend of BRIAN KENNEDY, JR..   *
  *
      Plaintiffs   *
  *
v.   *   C. A. No. 04-CV-12357-PBS
  *
TOWN OF BILLERICA, et al   *
  *
      Defendants   *
*********************************************

## MOTION FOR RESTRAINING ORDER

Now come the plaintiffs and move this Honorable Court order that the defendants immediately return all videotapes, a digital camera, binoculars, CDs, cash and all other materials seized during their SWAT team raid of the plaintiffs' Lowell home on July 1, 2008 [the "Seized Property"] and further move this Court issue an immediate restraining order restraining and enjoining the defendants (1) from using any materials in any investigation of the plaintiffs, (2) further restraining the defendants from denying the plaintiffs any of the seized property of the plaintiffs not specifically identified in a warrant or other order authorizing such seizure and (3) enjoining and restraining the defendants from executing any search or arrest warrant upon any of the plaintiffs or upon William "Billy" Ashton outside the jurisdiction of Billerica but instead giving any warrant to the Lowell Police or other local police to execute.

As reason, the Billerica police department, having obtained a warrant for the search of the plaintiffs' home and two cars, arranged for the warrant to be executed on July 1, 2008, by a SWAT team that threatened and terrorized the plaintiffs. The search of the plaintiffs' home was

then conducted by five (5) Billerica police officers, including two (2) defendants in this case [Officers West and Devito] and one other [Sgt. Frost] who was involved in the prior harassment of the plaintiffs. These Billerica police officers seized videotapes and other items not listed or identified on the warrant, including approximately $2,400.00 in cash and a set of videotapes which the plaintiffs suspect were targeted for seizure because the defendant police feared these tapes contained recorded witness statements of witnesses to the arrest and beating of Dylan and Mitchell Kennedy or were tapes of evidence in the trial(s) in this case.

As set forth in further detail below, the Billerica Police actions suggest that their real intention in carrying out the search of the Kennedys' home was to frighten and intimidate the Kennedys and interfere with the Kennedys' ability to defend the false criminal charges now pending against their sons.

## ARGUMENT

I. **Background Facts**

   A. **Arrest and beating at Wendy's**

Billerica high school students normally gather at a local Wendy's fast food restaurant on Friday nights after the high school football game. On September 7, 2007, there were perhaps several hundred students at the local Wendy's, including Mitchell and Dylan Kennedy, when Billerica police responded to a fight or other altercation that did not involve either of the Kennedy boys. Giving up pursuit of the individuals actually involved the chase, the responding Billerica police officers went after Mitchell and Dylan Kennedy, assaulted them, beat them and arrested them.

The Billerica Police brought charges against Mitchell for assault and battery on a police officer, disorderly conduct and resisting arrest and against Dylan for assault and battery on a police officer, assault and battery with a dangerous weapon (to wit his shod foot), disorderly conduct and resisting arrest.

The plaintiffs, through their own efforts and through the work of a private investigator, Jay Groob, of American Investigative Services (AIS), obtained video recordings of over twenty (20) of these witnesses, all of whom corroborate that the responding Billerica police officers arriving at Wendy's sought out Mitchell and Dylan and headed for them, instigating the altercation, assaulting and then arresting Mitchell and Dylan. [These basic facts are set forth in the affidavit of Jay Groob, filed herewith.]

After numerous delays, in part for the district attorney's office to investigate the Kennedy's request that complaints issue against the police,[1] the criminal charges against Mitchell and Dylan were scheduled to go forward during the week of July 7, 2008.[2]

**B. Raid to seize videotapes**

On July 1, 2008, between 9:30 and 10:00 pm , a SWAT team of approximately twenty officers in black fatigues armed with machine guns rammed open the front door to the Kennedy home, barged in exploding flash grenades. They then forced the surprised occupants, Brian and Michelle Kennedy, their son, Mitchell, Michelle's mother, Joyce Tibbets and Billy Ashton face

---

[1] Perhaps the district attorney's office interest in further investigation this incident was due to the language in the officer's police report that reads ". . . and then I punched him [Dylan] in the head".

[2] The Assault and Battery on a Police Officer charge against Mitchell has been dismissed. Trial on the remaining charges has been rescheduled for September 23, 2008.

down with guns to their heads. Five (5) Billerica police officers, two (2) of them defendants in this case,[3] then proceeded to search the premises, pursuant to a warrant. [Exhibit A, hereto]

Instead of searching for the weapons that were the ostensible reason for calling out the SWAT team[4], the officers headed straight for the porch that contained Billy Ashton's possessions, making a beeline to a transparent plastic box containing various family and personal videotapes. This was the first thing that the defendant Billerica police seized, event though the warrant did not specify videotapes or in any way authorize seizure of any videotapes.

The videotapes were not the only items taken that were outside the scope and authority of the warrant. The return of service for the warrant [Exhibit B, hereto] lists fourteen (14) items, only one of which corresponds to any item identified as "stolen property", the only materials the warrant authorized the defendant police to seize[5], a hunting bow which was brought to the Kennedys' home by Patricia Barbarosa, whom the affidavit in support of the warrant [Exhibit C hereto] implicates as involved in the break-ins.

---

[3] Officers West and Devito. A third, Sargent Frost was also involved in the harassment or investigations of the Kennedys.

[4] The defendant Billerica Police, in justifying the need for the SWAT team, also called attention to Brian Kennedy's prior convictions, not pointing out that none of them involved weapons, let alone firearms.

[5] Four specific pieces of jewelry are also listed on the return of the warrant, but these items are generic enough that it is an open question whether these four pieces of jewelry matched any items of jewelry on the warrant's list. For example, the return of the warrant lists "Diamond ring with multiple smaller diamonds" [Item 6]. This may or may not correspond with the last item on the first page of the Addendum to the warrant, which identifies a "Diamond ring with one large stone and several stones". On the other hand, it may be a ring that belongs to Michelle Kennedy, or to her mother, Joyce Tibbets, who was staying with the Kennedys while in Massachusetts for medical treatment.

In addition to the box of videotapes, which the defendant officers knew or should have known was likely to contain evidence in a civil case in which they were parties and defense evidence in a separate criminal defense[6], the outcome of which is likely to provide the basis of a new civil rights suit against the Billerica Police Department, the defendant Billerica police officers acknowledge taking four pieces of fairly generic jewelry that may or may not correspond to items of jewelry identified on the warrant, a computer keyboard, a set of deer antlers (the warrant specifically itemizes a deer head <u>mount</u>, not antlers), a computer key board and mouse, a hunting knife, an expandable baton, two pair of binoculars and "Knum-Chucks" (sic). In addition, the defendant Billerica officers took but did not list on the return of service a digital camera, various CDs an audiocassette and approximately two thousand four hundred ($2,400.00) dollars in cash. This cash included the Kennedys' rent money, one thousand four hundred ($1,400.00) dollars that was in their night stand drawer; eight hundred ($800.00) dollars from the room where Ms. Tibbets was staying, cash she had for her trip to Massachusetts; and approximately two hundred dollars ($200.00) belonging to Dylan Kennedy, proceeds from his paycheck which he had just cashed and was in a water bottle in his bedroom.

The defendant officers spent between two and three hours trashing the Kennedys' home, turning beds and other furniture over, emptying clothes out of all the closets and ransacking the home before leaving sometime around 1:00 AM. [See Photos, Exhibit D, hereto]

---

[6] When the defendant officers took the box of videotapes, Billy Ashton exclaimed that they were evidence in a Federal case, referring to this case. Sgt. Frost heard this and turned away. Michelle Kennedy also told the defendant officers that they could not take the videotapes, as they were "evidence" in a case.

**II. <u>It was improper for Billerica Police to conduct a search outside of their jurisdiction</u>**.

Plaintiffs right to be free from unreasonable search and seizure is guaranteed by both the fourth amendment to the United States Constitution and Article Fourteen of the Massachusetts Declaration of Rights.  Both the fourth amendment and Article Fourteen require that a search warrant be obtained before law enforcement officials may invade the home of a citizen.

The search then must be conducted by police officers who have jurisdiction to do so. The Kennedys moved out of the town of Billerica in order to avoid further confrontations with the Billerica Police and it is undisputed that the authority of the Billerica police does not extend beyond the boundaries of the town of Billerica.

When officers are physically outside of their jurisdiction, they have no authority to act using their police power other than a few very limited and statutorily prescribed circumstances. <u>Com. v. Kerr</u>, 409 Mass 284, 286 (1991)  There does not appear to be any authority to conduct a search, even with a warrant, outside their jurisdiction.  "A police officer's authority to act is limited to his or her jurisdiction, unless specifically authorized by statute or if performing a valid citizen's arrest at common law." <u>Com. v. Twombly</u>, 50 Mass. App. Ct., 667, 740 NE2d 1030 (2001), citing <u>Com., v. Savage</u>, 430 Mass. 341, 343-346, 719 NE2d 473 (1999)

Plaintiffs expect that the defendants will argue that since they were accompanied by Lowell police, that somehow the authority of the Lowell police to conduct a search pursuant to a warrant was "transferred" to the defendant officers.  Although this may be a common practice, there appears to be no statutory or common law basis to support this practice.  Even if there were, the avoidance of an appearance of impropriety, any modicum of good judgment over the desire to

"get" the Kennedys, but most important, the desire to have any evidence seized not be subject to challenge, would suggest that the defendants allow a more neutral law enforcement department to execute the search warrant.

This creates the clear and undeniable inference that the defendants' purpose in obtaining and executing the warrant was not to obtain evidence for the criminal investigation regarding the stolen property, as represented in the application for the warrant, but to intimidate the Kennedys, perhaps in anticipation of the pending charges arising out of the Wendy's case and to gather what they felt was evidence they could use in that case or in this case.[7]

### III. It was improper for the Billerica Police to seize and take items outside the scope of the warrant.

A police officer has no right to seize articles not described in the warrant which were neither weapons nor contraband. Com. v. Wojcik, 358 Mass. 623, 266 NE2d 645 (1971) See, also, Com. v. Bilicki, 436 Mass 1, 762 NE2d 290 (2002) ["Searches and seizures conducted outside the scope of a valid warrant are deemed to be unreasonable], and United States v. Hamie, 165 F3d 80, 84 (1999). This is well established black letter law which is not subject to "interpretation" or excusable error. As the United States Supreme Court made abundantly clear many years ago, as to articles not included in the warrant, "nothing is left to the discretion of the officer executing the warrant" to seize additional items. Marron v. United States, 275 U.S. 192, 196 (1927)

---

[7] See the threats contained in the correspondence of defense counsel, dated July 3, 2008 [Exhibit E-1, hereto, and subsequent correspondence between counsel. [Exhibits E-2 to E-4]

The fact that the defendant or their counsel suspect that there are items beyond the scope of the warrant that may be relevant to other crimes or other legal issues is no excuse. There are other remedies for the defendants or their counsel to obtain such items, including coming before this Court and seeking an appropriate order.

Moreover, this Court has the authority to determine that the seized property is beyond the scope of the warrant and was taken illegally and to order its immediate return. <u>Com. v. Sacco</u>, 402 Mass, 204, 207 (1987)

**IV. <u>Using their police powers to seize, without Court authority, materials the defendants seek to use in civil litigation is an abuse of police power which warrants sanction for such flagrant and outrageous abuse of power</u>**.

The conduct of the Billerica police demonstrates their improper intent. There was no need for the defendant Billerica police department to execute a warrant in Lowell that the Lowell Police, in whose jurisdiction the warrant was to be executed, could have conducted the search on their own. Although the defendant can argue that they technically had to right to do so, one would think that the defendant department might think it wise to avoid unnecessary confrontations with the plaintiffs, rather than go out of their way to serve a warrant upon the plaintiffs out of the defendants' jurisdiction, given the circumstances of two jury verdicts and many allegations back and forth,.

Similarly, the defendants can argue that technically they complied with that warrant's requirement that it not be served at night. <u>Com. v. Grimshaw</u>, 413 Mass 73, 595 NE2d 302 (1992) holds that this means a warrant cannot be executed after 10:00 p.m. The defendants' return on the warrant indicates the "time of search" as "2115 hours", or 9:15. While this may indicate that the defendant police <u>arrived</u> at the plaintiffs' home at 9:15, the search did not begin until some time later, after the SWAT team rammed open the front door, stormed in and "subdued" the

terrified occupants. Moreover, the "search", which included a methodical room by room dismantling of all furniture, closets, drawers and storage spaces, took well over three hours. This meant that the defendants were "searching" well after the proscribed 10:00 p.m. cutoff, until after 1:00 a.m.

Finally, there was no legitimate law enforcement purpose served by calling in the SWAT team, which only served to frighten and terrorize the plaintiffs. Given the clear desire of defendants' counsel in this case to become involved, defendants' counsel could have called plaintiffs' counsel -- as defense counsel offered to do the last time plaintiffs sought relief from the defendants coming in to Lowell to confront and threaten the plaintiffs. This would have led to a consensual and peaceful entry.

However, this would not have led to the defendants grabbing videotapes and other personal property that was beyond the scope of the warrant. Likewise, avoiding a confrontation by allowing the Lowell Police to execute a search warrant for a home located in Lowell would not have allowed the Billerica police to seize videotapes and other personal property that was beyond the scope of the warrant, or to frighten and further terrorize the plaintiffs.

The letter from defendants' counsel, sent within 48 hours of the "search" and five (5) days before the Return of the warrant was made to the state Court, makes clear the real agenda of the defendants: using their police power to circumvent Fourth Amendment and Article XIV of the state Declaration of Rights and to seize videotapes that the defendants claim are relevant to this case.

If any of the seized property has any relevance to this case, the defendants have a proper recourse to obtaining it. They are free to bring a request before this Court, to petition this Court for an order or to otherwise seek relief from this Court. The defendants have not done so. Instead, they have taken the law into their own hands: this is the abuse of power that §1983 cases are meant to cure.

To use the pretext of a warrant in a they claim to be a legitimate police investigation is not only an abuse of their police power to gain advantage in a civil case to which they are a party: it also undermines their criminal investigation, as it raises serious questions about whether the criminal investigation is legitimate or just a pretext for obtaining evidence to gain advantage in a civil case in which the defendant police are parties. This raises serious ethical questions that could easily undermine the criminal investigation, to the extent that it may be legitimate.

Perhaps this is of no concern to the defendants, who have not charged Trish Barbarosa, the one person who is tied to the break-ins, the person who brought to the Kennedys' house the one item seized in the search that is clearly identified on the warrant. Given the history and pattern of the defendants' conduct presented in the two trials in this case, the defendants' behavior is readily transparent: they are more interested in using Ms. Barbarosa to get the Kennedys than to prosecute Ms. Barbarosa for the crimes she may have committed.

Such conduct by a police department raised serious issues of public safety. The willing of a police department to abuse its authority to enter and search a private home in order to advance its ends in unrelated civil litigation (and steal $2,400 of cash they find) is not only a violation of

the Kennedys' Fourth Amendment and Article XIV rights, it is an ethical violation by the defendants and, if unpunished, is a threat to all citizens who seek protection under the Bill of Rights and the Massachusetts Declaration of Rights.

There is a procedure for getting materials in a civil case. Using one's badge and authority in a criminal investigation, taking things not identified on the warrant and giving them to your lawyer in civil case is not the way to do it: it is an abuse of power that undermines our rights as citizens as well as the legitimacy (if any) of the purported criminal investigation.

Such behavior should not be tolerated. Yet it seems that this behavior is only part of a broader pattern of violence and intimidation. The vandalism to the plaintiffs' automobile is all too reminiscent of the firebombing of the plaintiff's truck and the lighting of skateboard ramps on fire next to the plaintiffs' trailer park home in the past. This is coupled with several instances of gunshots in earshot of the plaintiffs' home.

In these circumstances, the plaintiffs seek the protection of this Court, not just for the return of their property but for their personal safety, and for this reason seek first the return of the illegally seized personal property but also an order that the Billerica Police stay away from the plaintiffs' home, as the Lowell Police can carry out any police activity necessary with respect to the plaintiffs, should such exercise of police power prove necessary.

CONCLUSION

Where plaintiff's constitutionally protected rights to be free from improper search and seizure unquestionably were ignored, shunted aside for improper motive by the defendants, who illegally abused their power to gain an improper advantage in this civil litigation thereby violating the plaintiffs' privacy rights and right to be safe and secure in their persons, the defendants should

be ordered to return immediately all of the improperly seized property, including but not limited to all videotapes and to further be ordered to stay away from the Kennedys outside of the defendants' jurisdiction in Billerica and to allow the Lowell Police to serve any warrants or carry out any other police activities with respect to the Kennedys that can be effected in Lowell.

The Court should also order the United States Attorney to investigate the theft of moneys taken by the Billerica police in the course of their "search", as well as any other wrongdoing arising from this wrongful search.

The Court should also order that the defendant pay the plaintiffs attorneys fees and other costs required by the defendants' outrageous abuse of their police powers.

Plaintiff by counsel,

Date: July 15, 2008

/s/ Andrew M. Fischer
Andrew M. Fischer
BBO# 167040
JASON & FISCHER
47 Winter Street, 4th Floor
Boston, MA 02108
(617) 423-7904
afischer@jasonandfischer.com

mtnresord-returntapes