```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|                               |   |                                  |
|---|---|---|
| BRIAN KENNEDY, et al.,        | ) |                                  |
|                               | ) |                                  |
|          Plaintiffs,          | ) |                                  |
|                               | ) |                                  |
|     v.                        | ) | CIVIL ACTION NO. 04-12357-PBS    |
|                               | ) |                                  |
| TOWN OF BILLERICA, et al.,    | ) |                                  |
|                               | ) |                                  |
|          Defendants.          | ) |                                  |

**MEMORANDUM AND ORDER**

July 24, 2008

Saris, U.S.D.J.

The Court addresses the next chapter in a continuing saga involving two bitterly contested trials. The second trial, held in October 2007, concerned alleged civil rights and state tort violations by Town of Billerica police officers Richard Nestor and Scott Parker. The second trial completed, the parties now move for post-trial relief.[1] In addressing the motions, the Court assumes knowledge and incorporates by reference its orders dated March 26, 2007 ("First Summary Judgment Order," <u>Kennedy v. Town of Billerica</u>, 502 F. Supp. 2d 150 (D. Mass. 2007)), August 15, 2007 ("Second Summary Judgment Order," Docket No. 270), and August 21, 2007 ("First JNOV Order," Docket No. 271).

**I. DEFENDANTS' SECOND MOTION FOR JNOV (Docket No. 334)**

---

[1] Plaintiffs also separately move for attorneys' fees (Docket No. 338). The Court will address the motion separately.

Defendants' move for judgment notwithstanding the verdict under Fed. R. Civ. P. 50(b), or, in the alternative, for a new trial under Fed. R. Civ. P. 59.[2]

Rule 50(b) permits judgment as a matter of law only if "the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party [i]s entitled to judgment." PH Group Ltd. v. Birch, 985 F.2d 649, 653 (1st Cir. 1993) (citation omitted). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005) (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)).

Similarly, a party is entitled to a new trial under Rule 59(a) "only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice." Acevedo-Garcia v. Monroig, 351 F.3d 547, 565 (1st Cir. 2003) (quoting Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir. 1994)).

A. Scott Parker

Defendants first challenge the jury verdict against Scott Parker, arguing a variety of grounds.

---

[2] Defendants also moved for such relief at the close of the first trial. (See generally First JNOV Order).

2

As background, plaintiff Michelle Kennedy ("Michelle") alleged in the verified complaint that Parker, a Billerica officer, "shoved" her at the Billerica Boys' Club on March 31, 2002. (Compl. ¶¶ 100-01). At the first trial, Michelle further testified that Parker confronted Michelle in the parking lot and hurled obscenities at her and kicked her car. (Tr.[3] at 64-65, April 3, 2007). Pursuant to the Court's May 22, 2006 order bifurcating the proceedings, (See Second Summary Judgment Order at 1), the claims against Parker were not at issue in the first trial.

After the first trial, defendants moved for summary judgment with respect to the claims against Parker, arguing that the Monell verdict against the Town disposed of the claims. The Court denied the motion, emphasizing that "the claims against the town are distinct from any civil rights claims that the plaintiffs may have against the individual officers." (Second Summary Judgment Order at 10 (citing Wilson v. Town of Mendon, 294 F.3d 1, 7 (1st Cir. 2002)). The Court concluded that "[a] triable issue of fact exists as to whether Parker assaulted Michelle Kennedy in the parking lot in 2002." (Id.).

At the second trial Michelle elaborated on the confrontation. She testified that she and her husband, plaintiff Brian Kennedy ("Brian, Sr.") received permission to remove ramps,

---

[3] All references to the Trial Transcript ("Tr.") are by page number and day.

or "jumps," from the Boys' Club. (Tr. at 104, Oct. 1, 2007). On March 31, 2002, Michelle, Brian, Sr., their son Billy, and Chris Swimm went to remove the jumps from the Club's trash. As they were leaving, Parker arrived at the Club's parking lot in his police cruiser and proceeded to ask what they were doing, swore at them, and threatened to arrest them if they did not put back the jumps. Michelle then asked Brian, Sr. and the others to leave in Chris Swimm's pick-up truck and called Dean Royston, another Billerica police officer, for help.

Michelle then testified that, as she was walking back to her car, "Parker said, 'You're not going anywhere,' and he shoved me really hard." (Tr. at 105, Oct. 1, 2007). In response, Michelle entered her car and locked the doors. Parker then tried to get in the car, and "he was kicking it and calling me really bad names and things like that," such as "cunt" and that she was "F'ing a nigger" (Officer Royston is African-American). (Id. at 105-06). During this tirade Michelle testified that she was on the phone with Royston, who told her that "I just got a call for backup there. I'll be there in a minute." (Id. at 106). Upon arriving, Royston witnessed the kicking of the door by Parker. Michelle got out of her car, but Royston ordered her to get back into the car and leave, which she did.

Royston also testified at trial. He testified that on March 31, 2002, at approximately 6:00 P.M., he received a dispatch that a suspicious vehicle was at the Billerica Boys' Club. Parker, who was closer to the Club at the time, responded to the

4

dispatch.  Parker later requested back up, and Royston responded to the request.  Soon after, Royston received the phone call from Michelle "en route" to the scene, and "hear[d] yelling in the background."  (Tr. 220, Oct. 2, 2007).  Royston testified that upon arriving, he saw Michelle locked in her car and Parker "yelling at Michelle," calling Michelle a "fucking cunt," among other things.  (Id. at 221).  "They were both swearing at each other."  (Id. at 223).  According to Royston, Michelle then got out of the car, he had to separate the two, and then "convince[d] Michelle to get into her vehicle and leave the scene."  (Id. at 223-24).

Finally, Parker testified at trial.  He confirmed that he arrived at the Billerica Boys' Club parking lot in response to a dispatch.  (See Tr. at 500, Oct. 4, 2007).  He testified that swearing by Brian, Sr. and Billy Ashton gave him probable cause to arrest them.  He denied shoving Michelle or kicking her car.  However, Parker admitted to swearing at Michelle, stating, "I lost my cool and started giving it back to her, cursing at her, swearing at her."  (Tr. at 504, Oct. 4, 2007; see also id. at 505 ("I swore at her.  I called her a fucking bitch or a slut, things of that nature.")).  Upon Royston's arrival, Parker testified that he told Royston, "She's either leaving, or she's going to be subject to arrest for being a disorderly person."  (Id. at 506).

The jury found for Parker with respect to Michelle's claims that Parker's actions constituted (1) excessive force and (2) unreasonable detention, in violation of her constitutional

rights. However, the jury found for Michelle with respect to her constitutional claim that Parker's conduct was "egregiously unacceptable, outrageous, or conscience-shocking" in violation of her (3) substantive due process rights, and that Parker committed the common law torts of (4) assault, and (5) intentional infliction of emotional distress. In finding an assault, the jury specifically found that Parker did not commit a "battery." (See Docket No. 315 (Verdict Form), at 1 (crossing out "battery"); see also Tr. at 785, Oct. 9, 2007 (instructing jury to "cross out 'and battery'" on Verdict Form if no finding of battery). The jury awarded Michelle $2,000 in compensatory damages and $30,000 in punitive damages. The punitive damages award was based solely on the substantive due process violation.

Defendants first argue that Parker's conduct, as a matter of law, does not arise to the level of "conscious-shocking" to constitute a violation of substantive due process under the Fourteenth Amendment. To prove a violation of substantive due process, a plaintiff must prove either the deprivation of a liberty or property interest protected by the Fourteenth Amendment, or that the state's conduct "shocks the conscience." Brown v. Hot, Sexy, & Safer Prods., Inc., 68 F.3d 525, 531 (1st Cir. 1995)  Although the First Circuit has "expressly [left] open the question of whether verbal harassment and intimidation . . . might, under appropriate circumstances, be found to violate due process," conscious-shocking conduct frequently involves conduct that is "highly physically intrusive." Cruz-Erazo v. Rivera-

6

Montanez, 212 F.3d 617, 622, 624 (1st Cir. 2000).

Parker's conduct does not arise to the level of "conscious shocking" as a matter of law. Viewing the evidence in light most favorable to the plaintiff, to the extent consistent with the verdict, Parker's conduct consisted of the kicking of Michelle's car door, a threat of arrest, and profanities such as "fucking cunt." Plaintiffs also assert that Parker's conduct was pretextual, and was intended to goad Michelle into an attack that would result in Parker causing harm.

Even affording plaintiffs the inference of pretext, plaintiffs' claim fails, because the evidence does not arise to the level of conduct that the First Circuit has <u>rejected</u> as conscious-shocking. For example, despite the strong profanities used, there was no evidence of threats of significant physical violence. See, e.g., Pittsley v. Warish, 927 F.2d 3, 5, 7 (1st Cir. 1991) (finding no conscience shocking conduct where the defendant police officers <u>threatened to kill one of the plaintiffs and break her "F'n kneecaps</u>," as well as told her children that if the police caught their father the children would never see him again, and also refused to allow the children to give the father a goodbye hug when he was arrested) (emphasis added). In addition, there was also no physical harm suffered by the plaintiff. See, e.g., Cruz-Erazo, 212 F.3d at 618-20 (finding no conscious-shocking conduct where the conduct included threats of physical violence, insults, the filing of unsubstantiated charges, and <u>pushing a pregnant daughter who</u>

subsequently suffered a miscarriage) (emphasis added); Cummings v. McIntire, 271 F.3d 341, 343 (1st Cir. 2001) (finding no conscious-shocking conduct when officer shoved plaintiff, which resulted in severe injury due to a pre-existing condition).

Plaintiffs artfully attempt to up the ante by bootstrapping Parker's conduct to the "thirteen year campaign against the Kennedys." (Docket No. 354, at 11). Even in the context of the Town's prior history of harassment, which did not involve Parker, Parker's conduct does not rise to the level of conscious shocking. In awarding the defendants judgment as a matter of law with respect to the plaintiffs' substantive due process claim, the Court will correct the judgment to remove the punitive damage award against Parker.

Defendants also challenge the jury verdicts against Parker for intentional infliction of emotional distress and assault. For the tort of intentional infliction of emotional distress, a plaintiff must prove, among other things, "that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,'" and that "that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'" Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976) (internal citations and quotations omitted); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) ("The relevant requirements for this claim in Massachusetts were set forth in Agis"). Defendants argue that Parker's conduct was

not sufficiently "extreme and outrageous" as a matter of law, since "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" do not constitute outrageous conduct. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (citations omitted). Defendants also argue that Michelle's injuries were not sufficiently "severe."

In this case, construing all facts in favor of the plaintiffs, the evidence shows that Parker hurled obscenities to Michelle, called her a "cunt," and kicked her car door. While Parker did not involve physical injury, his actions did place Michelle in fear of her personal safety. See, e.g., O'Neil v. Daimlerchrysler Corp., 538 F. Supp. 2d 304, 320 (D. Mass. 2008) (Dein, M.J.) (finding triable issue of fact, and thus denying summary judgment, where defendant allegedly "burst[] into the plaintiff's home office without permission, threatening him with physical harm, and placing him in genuine fear for his personal safety in an effort to intimidate him and punish him for filing an action against them in small claims court."). Parker himself admitted that he "lost my cool" and that his conduct was in violation of his department rules and regulations. (See Tr. at 521, October 10, 2007).

Regardless, defendants are correct that the claim fails because Michelle's injuries were not sufficiently "'severe' and of a nature 'that no reasonable [person] could be expected to endure it.'" Agis, 371 Mass. at 145 (1976) (internal citations and quotations omitted). Michelle testified that as a result of

the confrontation she was "[j]ust always nervous that I'm going to get arrested for whatever," and that "I just couldn't think straight. I went -- you know, I couldn't sleep. I thought about it all the time" for "[s]everal months." (Tr. at 111, Oct. 1, 2007). Courts have routinely found that such generalized complaints of anxiety and loss of sleep, without more, are not sufficient to establish a claim of intentional infliction of emotional distress. See, e.g., Bailey v. Shirberg, 31 Mass. App. Ct. 277, 279-80 (1991) (upholding rejection of claim where "[t]here was no evidence that the emotional distress caused to the [plaintiffs] was of the requisite severity," since evidence only showed that plaintiffs "were upset and 'up tight' about the situation" and loss of sleep was not attributable to "emotional upset."); Sorenson v. H & R Block, Inc., No. 99-10268, 2002 WL 31194868, at *17 (D. Mass Aug. 27, 2007) (Woodlock, J.) (awarding summary judgment against claim, since "[g]eneralized assertions of loss of sleep, worry, confusion, doubt, fear of criminal proceedings . . . and, most of all, fear of incarceration" combined with continual work attendance, "is hardly sufficient to raise a genuine question that [plaintiff] actually suffered 'severe distress' . . . even as assessed from a subjective standpoint"); Richard v. Caplis, No. 200300491B, 2005 WL 3605477, at *7 (Mass. Super. Nov. 4, 2005) (awarding summary judgment against claim because "loss of sleep, anger, frustration, inability to enjoy normal activities, and increased blood pressure" were "insufficient to establish an injury encompassed

10

by the tort of intentional infliction of emotional distress"); Quinn v. Walsh, 49 Mass. App. Ct. 696, 706 (2000) ("out of the human condition may arise a myriad of emotional responses including anger, sadness, anxiety, and distress, many of which are attributable to the conduct of others.  While perhaps blameworthy, such conduct is often not legally compensable.").

Finally, defendants challenge the assault verdict against Parker, arguing that the jury did not find a "battery," and that the verdicts for the Town with respect to the excessive force claim foreclose a finding of assault.  However, an assault can occur without a battery; "Assault is a separate tort involving an act which puts another in reasonable apprehension of imminent harmful or offensive contact, that is, an attempted battery or an immediately threatened battery."  Conley v. Romeri, 60 Mass. App. Ct. 799, 805 n.6 (2004) (citing Restatement (Second) of Torts § 21 (1965)).  There are sufficient facts for the jury to find an assault in this case.

    B. Prejudgment Interest

Next, defendants claim that the Court erred in awarding prejudgment interest for the four successful negligent supervision claims against the Town of Billerica.  (See Judgment, Docket No. 333, ¶¶ 7-10).  Defendants cite M.G.L. c.258, § 2, which states that public employers "shall not be liable for interest prior to judgment."  Consistent with the plain terms of the statute, the Court will amend the judgment and not award prejudgment interest for the negligent supervision claims against

the Town.

    C. First JNOV Errors

Finally, defendants seek to revisit the First JNOV Order and assert a number of errors with respect to the jury's finding of negligent supervision (like the newly-minted contention that plaintiffs failed to adequately meet the presentment requirements). Defendants had an opportunity to seek reconsideration of the First JNOV Order, but did not avail themselves of that opportunity and the new arguments are waived. Thus, the Court declines to revisit the Order here.

**II. MOTION TO CORRECT THE JUDGMENT (Docket No. 346)**

Plaintiffs separately move to correct the judgment entered on December 10, 2007. Plaintiffs argue that because the Town of Billerica was found liable for the violation of their civil rights under a Monell theory and under state law for negligent supervision in the first trial, the Town is jointly and severally liable for any damages caused by Parker.

The Monell argument is easily disposed of. In order to have a viable § 1983 claim against a municipality, a state actor must first commit an underlying constitutional violation. See Monell v. New York Dept. of Social Services, 436 U.S. 658, 690-91 (1978). Since the Court awards judgment notwithstanding the verdict to the defendants with respect to the plaintiffs' substantive due process claim against Parker, there are no constitutional violations committed by Parker that would subject the Town to liability under Monell.

12

The negligent supervision claim is more difficult. In general, as the defendants assert, the Town cannot be held liable for intentional torts. See M.G.L. c.258, § 10(c) (under Massachusetts Tort Claims Act, municipal liability barred for "any claim arising out of an intentional tort, including assault . . . [and] intentional mental distress). One exception to such immunity, however, is a finding of negligent supervision. "Where the defendants allegedly had, or should have had, knowledge of [the intentional tort], the negligence of the defendants is the true focus of the case [and thus] [t]he claim is not barred by G.L. c.258, § 10(c)." Doe v. Town of Blandford, 402 Mass. 831, 838 (1988).

In order to establish a claim of negligent supervision, a plaintiff must prove, among other things, causation; that the Town's negligent supervision caused the intentional tort. See, e.g., Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 368 (D. Mass. 2002) (Dein, M.J.) (allowing summary judgment against state law negligent supervision claim because plaintiff "offered no evidence tending to show a causal relationship" between the alleged negligence and the "alleged injuries"); Vicarelli v. Bus. Int'l, Inc., 973 F. Supp. 241, 246-47 (D. Mass. 1997) (dismissing negligent supervision claim because plaintiff failed to allege that employer knew or should have known of employee's misconduct).

During the first trial, the "true focus" of the case was on the Town's conduct, where plaintiffs presented some evidence of

Parker's conduct, over defendants' objection, in support of its claims of police harassment and supervision. Parker himself did not testify at trial. (See Docket No. 255 (Witness List)). Although Royston did testify as to the Parker incident, he did not discuss the Town's conduct or knowledge with respect to Parker prior to the Parker incident. Instead, Royston testified about his own discipline resulting from the Parker incident. (See First JNOV Order at 5). Finally, counsel for plaintiffs made no mention of the Parker incident in his closing arguments at the first trial. In fact, as stated in its First JNOV Order, the Court noted that "[n]either side thoroughly discussed this claim during closing arguments." (Id. at 4). The only evidence of the Town's negligent supervision during the relevant time period, early 2002, concerned the Town's negligent supervision with respect to Officer Mark Tsoukalis, who "was told [the Kennedys] were criminals and were likely to be up to no good," and thus directed to harass them. (Id. at 6). There was no similar evidence concerning Parker's training.

It is true that during the second trial the plaintiffs presented evidence that the Parker incident was reported to the police department by both Royston and Parker, with Parker getting a pat on the wrist. Remarkably, Parker testified that the recording of exchange between Parker and Michelle on Royston's cell phone was erased by supervisor "so there would be no problems." (See Tr. at 508, October 10, 2007; see also id. at 513 (noting that he was only told by Chief Rosa to "[t]hink, use

14

your head, don't let it happen again.")). While this legerdemain supports Plaintiff's Monell claim that Tsoukalis' conduct in 2004 was caused by the town's civil rights violation, still, the purportedly negligent supervision post-dating the incident could not have caused it. In fact, Parker testified that, prior to the incident, he had little to no contact with the Kennedys since becoming an officer in December 1994, other than receiving "the middle finger" from Brian, Michelle, and Billy Ashton. (See id. at 497-99). Unlike the situation with Tsoukalis, Parker threw an irrational temper tantrum, and there is insufficient evidence that it was the result of his supervision or training. (See id. at 521). There was evidence of improper supervision, particularly in the early 1990s, but little evidence of improper training or supervision just prior to the Parker incident on Easter 2002.

   Even when the evidence is considered in the light most favorable to the plaintiffs, the plaintiffs have not put forth sufficient evidence to support a finding that the Town exercised negligent supervision which caused the Parker incident. Accordingly, the Court denies the motion.

**ORDER**

For the reasons stated, the Court orders as follows:

1. Defendants' Motion for Judgment Notwithstanding the Verdict under Fed. R. Civ. P. 50(b), or, in the alternative, for a New Trial under Fed. R. Civ. P. 59 (Docket No. 334) is **ALLOWED-IN-PART** and **DENIED-IN-PART**. Defendants are awarded judgment notwithstanding the verdict with respect to the substantive due process and intentional infliction of emotional distress claims against Scott Parker. The Court, moreover, corrects the judgment to remove the punitive damages award against Parker. The Court will also correct the judgment to reflect that the plaintiffs are not entitled to prejudgment interest on the four claims of negligent supervision. All remaining claims are denied.

2. Plaintiffs' Motion to Correct Judgment (Docket No. 346) is **DENIED**.

S/PATTI B. SARIS
United States District Judge